# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**    **2. PLEASE TYPE OR PRINT**    **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| 1199SEIU United Healthcare Workers v. PSC Community Services et al. | S.D.N.Y. | Hon. John G. Koeltl |

| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
|---|---|---|
| | June 24, 2022 | 20-cv-3611 |

| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
|---|---|---|
| | July 22, 2022 | ☐ Yes    ☑ No |

**Attorney(s) for Appellant(s):**
☐ Plaintiff
☐ Defendant

Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail:

See Exhibit 1

**Attorney(s) for Appellee(s):**
☐ Plaintiff
☐ Defendant

Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail:

Laureve Blackstone; Levy Ratner, P.C.; 80 Eighth Avenue, 8th Fl., NY, NY 10011; Tel: (212) 627-8100; Fax: (212) 627-8182; lblackstone@levyratner.com; James M. Reif; Gladstein, Reif & Meginniss, LLP; 39 Broadway, Suite 2430, New York, NY 10006; Tel.: 212-228-7727; Fax: (212) 228-7654; JReif@grmny.com (attorneys for Petitioner Appellee)

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously? ☑ Yes    ☐ No |
|---|---|---|---|
| No transcript | | | If Yes, provide the following:  Case Name: 1199SEIU United Healthcare Wo. v. PSC Com |

2d Cir. Docket No.: 21-631    Reporter Citation: (i.e., F.3d or Fed. App.)

***ADDENDUM "A":*** COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

***ADDENDUM "B":*** COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party    ☐ Diversity | ☑ Final Decision    ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ☑ Federal question (U.S. not a party)    ☐ Other (specify): | ☐ Interlocutory Decision Appealable As of Right    ☐ Other (specify): |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B: DISTRICT COURT DISPOSITION** **(Check as many as apply)**

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|

**1. Stage of Proceedings**
- [✓] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**
- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [✓] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [✓] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [✓] Other (specify): Denial of motion to intervene and motion to partially vacate arbitration award

**3. Relief**
- [ ] Damages:
  - [ ] Sought: $ _____
  - [ ] Granted: $ _____
  - [ ] Denied: $ _____
- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

Other: Confirmation of Arbitration Award

---

**PART C: NATURE OF SUIT** **(Check as many as apply)**

| 1. Federal Statutes | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|

**1. Federal Statutes**
- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [ ] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright ● Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**
- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**
- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**
- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**
- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**
- [✓] Arbitration
- [ ] Attorney Disqualification
- [✓] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7.** Will appeal raise constitutional issue(s)?
- [ ] Yes [✓] No

Will appeal raise a matter of first impression?
- [✓] Yes [ ] No

---

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [✓] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A) Arises from substantially the same case or controversy as this appeal? [✓] Yes [ ] No

    (B) Involves an issue that is substantially similar or related to an issue in this appeal? [✓] Yes [ ] No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: See Exhibit 1 | Docket No. See Exhibit 1 | Citation: See Exhibit 1 | Court or Agency: See Exhibit 1 |
|---|---|---|---|
| Name of Appellant: See Exhibit 1 | | | |

| Date: 8/9/2022 | Signature of Counsel of Record: /s/ LaDonna M. Lusher |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

    **PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

**EXHIBIT 1 TO FORM C**

**COUNSEL FOR INTERVENOR-APPELLANTS**

**Eugenia Barahona Alvarado**

LaDonna Lusher
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor New York, NY 10004
Tel.: (212) 943-9080
Fax: (212) 943-9082
Email: llusher@vandallp.com

**Rafaela Cruceta**

LaDonna Lusher
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor New York, NY 10004
Tel.: (212) 943-9080
Fax: (212) 943-9082
Email: llusher@vandallp.com

**Virtudes Duran**

LaDonna Lusher
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor New York, NY 10004
Tel.: (212) 943-9080
Fax: (212) 943-9082
Email: llusher@vandallp.com

**Alvaro Ramirez Guzman**

LaDonna Lusher
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor New York, NY 10004
Tel.: (212) 943-9080
Fax: (212) 943-9082
Email: llusher@vandallp.com

**Elida Agustina Mejia Herrera**

LaDonna Lusher
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor New York, NY 10004

Tel.: (212) 943-9080
Fax: (212) 943-9082
Email: llusher@vandallp.com

**Wai Kam Lou**

LaDonna Lusher
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor New York, NY 10004
Tel.: (212) 943-9080
Fax: (212) 943-9082
Email: llusher@vandallp.com

**Leticia Panama Rivas**

LaDonna Lusher
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor New York, NY 10004
Tel.: (212) 943-9080
Fax: (212) 943-9082
Email: llusher@vandallp.com

**Gail Yan**

LaDonna Lusher
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor New York, NY 10004
Tel.: (212) 943-9080
Fax: (212) 943-9082
Email: llusher@vandallp.com

**Mei Kum Chu**

Michael Taubenfeld Fisher Taubenfeld LLP
225 Broadway, Suite 1700
New York, NY 10007
Tel.: (212) 571-0700
Fax: (212) 505-2001
Email:Michael@fishertaubenfeld.Com

**Sau King Chung**

Michael Taubenfeld Fisher Taubenfeld LLP
225 Broadway, Suite 1700
New York, NY 10007

Tel.: (212) 571-0700
Fax: (212) 505-2001
Email:Michael@fishertaubenfeld.Com


**Qun Xiang Ling**

Michael Taubenfeld Fisher Taubenfeld LLP
225 Broadway, Suite 1700
New York, NY 10007
Tel.: (212) 571-0700
Fax: (212) 505-2001
Email:Michael@fishertaubenfeld.Com


Information on the *other* action(s):

Case Name: 1199SEIU United Healthcare Wo v. PSC Community Services
Docket No.: 21-631
Citation:
Court or Agency: 2d Cir.
Name of Appellant: Gail Yan, et al.

Case Name: Guzman et al. v. The First Chinese Presbyterian
Docket No.: 21-2106
Citation:
Court or Agency: 2d Cir.
Name of Appellant: Alvaro Ramirez Guzman, et al.

Case Name: Alvarado et al. v. Alliance For Health, Inc.
Docket No.: 21-2107
Citation:
Court or Agency: 2d Cir.
Name of Appellant: Eugenia Barahona Alvarado, et al.

**ADDENDUM "A" TO INTERVENOR-APPELLANTS' PRE-ARGUMENT STATEMENT**

**(1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION**

Intervenor-Appellants Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Gail Yan, Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Rafaela Cruceta, Virtudes Duran, and Wai Kam Lou (collectively "Intervenor-Appellants"), hereby appeal to the United States Court of Appeals for the Second Circuit from an opinion and order rendered by the District Court for the Southern District of New York ("District Court") entered in this action on June 24, 2022 and the corresponding judgment entered in this action on June 28, 2022 (collectively the order and judgment referred to as the "June 24, 2022 Order"). The June 24, 2022 Order granted Petitioner-Appellee 1199SEIU United Healthcare Workers East's (the "Union") Petition to Confirm a February 25, 2022 Arbitration Award that purports to arbitrate statutory unpaid wage claims, like those being litigated by Intervenor-Appellants. The June 24, 2022 Order also denied the Intervenor-Appellants' Motion to Intervene for the limited purposes of seeking to partially vacate the February 25, 2022 Arbitration Award, and Motion to Partially Vacate the February 25, 2022 Arbitration Award as it pertains to themselves and other former employees of Respondent-Employers Alliance for Health, Inc. ("Alliance"), The First Chinese Presbyterian Community Affairs Home Attendant Corporation, Inc. ("FCP") and Chinese-American Planning Council Home Attendant Program ("CPC"), who left the employ of Alliance, FCP and CPC prior to execution of the applicable memorandum of agreement ("MOA") requiring arbitration for statutory unpaid wage claims ("Pre-MOA employees").

**I.      The First Arbitration Award**

Intervenor-Appellants are home health aides that were formerly employed by Alliance, FCP and CPC. Intervenor-Appellants allege that their respective former employers did not pay them properly, and they have been litigating their statutory unpaid wage claims for years in still pending class action lawsuits. *See* Guzman et al v. The First Chinese Presbyterian Community Affairs Home Attendant Corp., Index No. 157401/2016 (Sup. Ct. N.Y. Co.), removed to 20-cv-03929-JGK (S.D.N.Y.) (the "Guzman" Action"); Alvarado v. Alliance for Health, Inc., Index No. 155417/2018 (Sup. Ct. N.Y. Co.), removed to 20-cv-03930-JGK (S.D.N.Y.) (the "Alvarado Action"); Chu v. Chinese-American Planning Council Home Attendant Program. Inc., No. 16-cv-3569 (KBF) (S.D.N.Y.).

Despite attempts by Alliance, FCP and CPC to compel Intervenor-Appellants to arbitrate their statutory unpaid wage claims, multiple courts have found they are not bound to arbitrate. This is because Intervenor-Appellants left their former employer's employment prior to the execution of MOAs that, for the first time, contained arbitration provisions for statutory unpaid wage claims, i.e., they are Pre-MOA Employees.

In fact, numerous trial and appellate courts, including this one, have denied the Respondent-Agencies' applications to compel arbitration for Pre-MOA employees, and held the

1

Court, and not the Arbitrator, has authority to made threshold arbitrability determinations. See e.g. Agarunova v. Stella Orton Home Care Agency, Inc., 794 F. App'x 138 (2d Cir. 2020) (only the 2015 MOA required arbitration of statutory wage claims, and that the plaintiff – a Pre-2015 MOA Employee – was not bound to arbitrate her statutory wage claims pursuant to the 2015 MOA because she was no longer Stella Orton's employee "as of December 16, 2015, the date of the signing of the 2015 MOA.") (citing Konstantynovska v. Caring Professionals, Inc., 172 A.D.3d 486 (1st Dept. 2019) (affirming employees were not "bound by [a MOA to arbitrate] because they were no longer defendant's employees when it was executed, they were not parties to that agreement, and there is no evidence that the Union was authorized to proceed on their behalf")); Lorentti-Herrera v. Alliance for Health, Inc., 173 A.D.3d 596 (1st Dept 2019) (Pre-2015 MOA employees are not bound to their former Respondent-Employer's 2015 MOA, and that the ADR Provisions in the 2014 MOA and CBA did not require arbitration for statutory wage claims, thus, the statutory wage claims for Pre-2015 MOA Employees are not arbitrable); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576 (1st Dept 2020) lv denied 37 N.Y.3d 909 (2021) (same and expressly holding the MOA did not delegate threshold arbitrability determinations to the Arbitrator); Teshabaeva v. Family Home Care Servs. Of Brooklyn & Queens, Inc., 198 A.D.3d 500 (1st Dept. 2021) lv denied 38 N.Y.3d 902 (2022) (same). See also Chu v. Chinese-American Planning Council Home Attendant Program, Inc., 194 F.Supp.3d 221, 228 (S.D.N.Y. 2016) ("plaintiffs may not be bound by subsequently adopted amendments to a collective bargaining agreement to which they were not parties"); Guzman, 2019 NY Slip Op 30895(U) (Sup. Ct. N.Y. Cty. March 29, 2019) (denying FCP's motion to compel arbitration); Pustilnik v. Premier Home Health Care Services, Inc., Index No. 155081/2016 (Sup. Ct. N.Y. Cty, December 18, 2017) (denying Respondent-Agency Premier Home Health Care Services' motion to compel arbitration). Some courts have even granted injunctions against arbitration of Pre-MOA Employees' wage claims. See Guzman, 2020 NY Slip Op 30096(U) (Sup. Ct. N.Y. Cty. January 13, 2020) (granting injunction against FCP's arbitration of plaintiffs' claims); Pustilnik, Index No. 155081/2016 (Sup. Ct. N.Y. Cty, December 18, 2017) (Sup. Ct. N.Y. Cty. January 14, 2020) (granting preliminary injunction against Respondent-Agency Premier's arbitration of plaintiffs' claims).

Nevertheless, on January 2, 2019, the Union initiated "a class action grievance on behalf of all of its home care bargaining unit members employed by various Respondent home health care agencies (the "Agencies")[1] concerning claims that employees were not properly paid on 24-hour cases and with respect to any other outstanding wage and hour claims arising under the

---

[1] The respondent Agencies are: PSC Community Services; New Partners, Inc. d/b/a/ Partners in Care; Stella Orton Home Care Agency; Richmond Home Needs; Sunnyside Home Care Project; Sunnyside Cityside Home Care; Family Home Care of Brooklyn and Queens; Care at Home; Chinese-American Planning Council Home Attendant Program; United Jewish Council of the East Side Home Attendant Service Corporation; The First Chinese Presbyterian Community Affairs Home Attendant Corporation; Azor Home Care; Bushwick Stuyvesant Heights Home Attendants, Inc.; CABS Homecare; River-Spring Licensed Homecare Services Agency, Inc.; St. Nicholas Human Supports Corporation; Wartburg; Alliance for Health, Inc.; Region Care, Inc.; Special Touch Home Care Services, Inc.; Rain Inc.; Prestige Home Care, Inc.; Prestige Home Attendant Inc. d/b/a All Season Home Attendant; Personal Touch Home Care of N.Y., Inc.; Priority Home Services; Premier Home Health; Bronx Jewish Community Council Home Attendant Services; CIDNY Independent Living Services; Home Care Services for Independent Living; New York Foundation for Senior Citizens Home Attendant Services; Cooperative Home Care Associates; RiseBoro Homecare, Inc.; Fegs Home Attendant Services; Home Health Management Services Inc.; School Settlement Home Attendant Corp.; Rockaway Home Attendant; Bronxwood Home for the Aged, Inc.; AccentCare of NY, Inc.; Isabella Visiting Care, Inc.; Social Concern Community Development Corp.; ABC Health Services Registry; and, Alliance Home Services.

Covered Statutes." The Union's grievance did not state that it was filed on behalf of Pre-MOA Employees.

Almost twelve months later, the Union and Agencies proceeded to an arbitration before Arbitrator Martin Scheinman, Esq., the contract arbitrator for the Union and the arbitrator identified in the applicable MOAs. Arbitrator Scheinman advised that the Union and the Agencies were engaging in a "global arbitration" to resolve all unpaid wage claims filed against the Agencies.

The Arbitrator scheduled an initial hearing to decide, *inter alia*, the following procedural issues:

1. Are the claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law arbitrable?

2. Does the Arbitrator have jurisdiction to adjudicate the claims asserted in the wage and hour grievances, arising under federal, state and local law, filed by the parties to the [MOA] which encompass all claims arising under the federal, state and local laws named in the [MOA], as well as any pending litigation…irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement . . ."

On April 17, 2020, the Arbitrator issued an Arbitrator's Award (the "First Award") finding that he had authority to determine threshold issues of arbitrability, and that all employees' claims, even claims for Pre-MOA Employees, were arbitrable before him. The First Award was a preliminary, non-final procedural ruling, and no findings as to the Agencies' liability or the merits of any claims were made.

The First Award, with respect to Pre-MOA Employees, was directly contrary to this Court's own ruling in Agarunova, as well as numerous decisions by the New York Appellate Division, First Department and New York trial courts.

## I.     Confirmation of the First Award and Pending Appeal Before the Second Circuit

On May 8, 2020, the Union initiated a civil action and filed a petition to confirm the First Award with the District Court. *See* 1199SEIU United Healthcare Workers E. v. PSA Cmty. Servs., No. 20-cv-3611 (JGK) (S.D.N.Y.), Dkt. No. 1.

On May 15, 2020, motions to partially vacate the First Award to exclude Pre-MOA Employees and stay the arbitration as to their claims were filed in the Alvarado and Guzman Actions, which were then removed to Federal Court and marked related to 1199SEIU United Healthcare Workers E. v. PSA Cmty. Servs., No. 20-cv-3611 (JGK) (S.D.N.Y.).

On June 29, 2020, several Pre-MOA employees moved to intervene and dismiss the petition for lack of subject matter jurisdiction or alternatively to stay its confirmation for Pre-MOA Employees. On February 18, 2021, the District Court confirmed the First Award in its entirety and denied all other requested relief (the "February 18, 2021 Order").

On March 19, 2021, a timely appeal was filed with respect to the District Court's February 18, 2021 Order. *See* 2d Cir. Case No. 21-631. On May 14, 2021, the Union filed a motion seeking to dismiss the appeal. *See* 1199 SEIU United Healthcare Wo v. PSC Community Services, 21-631, Doc. No. 50 (2d Cir.). On September 1, 2021, this Court denied the Union's motion to dismiss, holding that "one or more" of the appellants had "made a threshold showing that they have interests plausibly affected" by the February 18, 2021 Order. *Id.* at Dkt. 74, Motion Order, denying motion to dismiss, p.2 (citing NML Cap., Ltd. v. Republic of Argentina, 727 F.3d 230, 239 (2d Cir. 2013)). The appeal is currently scheduled for argument before this Court on September 12, 2022 at 10:00 am.[2]

## II. The Second Arbitration Award

The Union and Agencies continued to arbitrate the claims of Pre-MOA Employees despite (1) the pending appeal of the First Award, (2) numerous court orders and injunctions prohibiting arbitration of Pre-MOA Employees' claims in pending class action litigation proceeding against numerous Agencies, (3) unanimous decisions by the New York State Appellate Division in the Alvarado Action, Hichez and Teshabaeva holding that Pre-MOA Employees' statutory wage claims are not arbitrable and that none of the labor agreements delegated threshold arbitrability determinations for statutory wage claims to the arbitrator, (4) the New York Court of Appeal's denial to review the Appellate Division's decisions in Hichez and Teshabaeva, confirming that the highest court in New York saw no need to revisit these holdings, and (5) a February 16, 2022 Order by the District Court denying a request to enjoin the Teshabaeva state court class action. *See* 1199SEIU United Healthcare Workers E. v. PSA Cmty. Servs., No. 20-cv-3611 (JGK), 2022 U.S. Dist. LEXIS 29186 (S.D.N.Y. Feb. 16, 2022).

On February 25, 2022 Arbitrator Scheinman issued a second award that purports to resolve and fully release statutory wage claims for all workers, including, as relevant here, for almost all Pre-MOA Employees of Alliance, FCP and CPC (hereinafter referred to as the "Second Award").

## III. Confirmation of the Second Award and Intervenor-Appellants' Motions to Intervene and Partially Vacate

On March 1, 2022, the Union filed a petition to confirm the Second Award. *See* 1199SEIU United Healthcare Workers E. v. PSA Cmty. Servs., No. 20-cv-3611 (JGK) (S.D.N.Y.), Dkt. No. 183. On March 11, 2022, Intervenor-Appellants Alvaro Ramirez Guzman, Elida Agustina Mejia

---

[2] The appeal was consolidated with Case Nos. 21-2106 and 21-2107, which are appeals of the District Court's denial of motions to remand filed in the Guzman and Alvarado Actions.

Herrera, Leticia Panama Rivas, Gail Yan, Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Qun Xiang Ling, who are all Pre-MOA employees, moved to dismiss the Union's petition to confirm the Second Award, and for a preliminary injunction of the enforcement of the Second Award. On April 7, 2022, the District Court denied the motion to dismiss and for a preliminary injunction.

Accordingly, on April 26, 2022 Intervenor-Appellants moved to intervene pursuant to Fed. R. Civ. Pro 71 and 42 for the limited purposes of seeking to partially vacate the Second Award, and to partially vacate the Second Award as it pertains to themselves and other Pre-MOA Employees that were formerly employed by Respondent-Agencies Alliance, FCP and CPC. Intervenor-Appellants argued that the Second Award must be vacated with respect to Intervenor-Appellants as well as all other Pre-MOA Employees formerly employed by Alliance, FCP, and CPC on the grounds that, *inter alia*, 1) the arbitrator exceeded his authority with respect to their statutory claims because Pre-MOA Employees are not bound by the MOA requiring arbitration for statutory wage claims and therefore are not parties to the arbitration, 2) that the arbitrator did not have authority to determine arbitrability for Pre-MOA Employees because none of the labor agreements clearly and unmistakably delegated that power to the arbitrator; 3) that the District Court was bound by decisions of the Second Circuit in <u>Agarunova</u> and by the arbitrability determinations of the New York Appellate Division in <u>Lorentti-Herrera</u>, <u>Hichez</u>, and <u>Teshabaeva</u>; and 4) that orders and injunctions rendered by the New York trial courts should be enforced.

On June 24, 2022 the District Court issued an Order granting the Union's Petition to Confirm the Second Award, denying Intervenor-Appellants' motion to intervene and denying Intervenor-Appellants' motion to partially vacate. It is from this June 24, 2022 Order that Intervenor-Appellants take the instant appeal.


**(2) THE RESULT BELOW**

On June 24, 2022 the District Court issued an Order granting the Union's Petition to Confirm the Second Award and denying the Intervenor-Appellants' motion to intervene and denying the Intervenor-Appellants' motion to partially vacate.

**(3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET**

A copy of the July 22, 2022 Notice of Appeal and a current copy of the trial court docket sheet are annexed hereto as Exhibit 1.

**4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

Copies of all relevant opinions and orders forming the basis for this appeal are annexed hereto as Exhibit 2.

# ADDENDUM A TO FORM C – EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 1199SEIU UNITED HEALTHCARE WORKERS EAST,<br><br>Petitioner,<br><br>v.<br><br>PSC COMMUNITY SERVICES, NEW PARTNERS, INC. D/B/A PARTNERS IN CARE, STELLA ORTON HOME CARE AGENCY, RICHMOND HOME NEEDS, SUNNYSIDE HOME CARE PROJECT, SUNNYSIDE CITYWIDE HOME CARE, FAMILY HOME CARE OF BROOKLYN AND QUEENS, CARE AT HOME, CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, UNITED JEWISH COUNCIL OF THE EAST SIDE HOME ATTENDANT SERVICE CORP., THE FIRST CHINESE PRESBYTERIAN COMMUNITY AFFAIRS HOME ATTENDANT CORP., AZOR HOME CARE, BUSHWICK STUYVESANT HEIGHTS HOME ATTENDANT, INC., CABS HOMECARE, RIVERSPRING LICENSED HOMECARE SERVICES AGENCY, INC., ST. NICHOLAS HUMAN SUPPORTS CORP., WARTBURG, ALLIANCE FOR HEALTH, INC., REGION CARE, INC., SPECIAL TOUCH HOME CARE SERVICES, INC., RAIN, INC., PRESTIGE HOME CARE, INC., PRESTIGE HOME ATTENDANT, INC. D/B/A ALL SEASON HOME ATTENDANT, PERSONAL TOUCH HOME CARE OF N.Y., INC., PRIORITY HOME SERVICES, PREMIER HOME HEALTH CARE, INC., BRONX JEWISH COMMUNITY COUNCIL HOME ATTENDANT SERVICES, CIDNY INDEPENDENT LIVING SERVICES, HOME CARE SERVICES FOR INDEPENDENT LIVING, NEW YORK FOUNDATION FOR SENIOR CITIZENS HOME ATTENDANT SERVICES, COOPERATIVE HOME CARE ASSOCIATES, RISEBORO HOME CARE, INC., FEGS HOME ATTENDANT SERVICES, HOME HEALTH MANAGEMENT SERVICES, INC., SCHOOL SETTLEMENT HOME ATTENDANT CORP., ROCKAWAY HOME ATTENDANT, BRONXWOOD HOME FOR THE AGED, INC., ACCENTCARE OF NY, INC., ISABELLA VISITING CARE, INC., SOCIAL CONCERN COMMUNITY DEVELOPMENT CORP., ABC HEALTH SERVICES REGISTRY, ALLIANCE HOME SERVICES, *collectively identified by the Arbitrator as the* "HOME HEALTH CARE AGENCIES",<br><br>Respondents. | Civil No. 20-cv-03611<br><br>**NOTICE OF APPEAL** |

1

PLEASE TAKE NOTICE that Appellants/Movants Eugenia Barahona Alvarado, Mei Kum

Chu, Sau King Chung, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama

Rivas, Gail Yan, Qun Xiang Ling, Rafaela Cruceta, Virtudes Duran, Wai Kam Lou, Yue Ming

Wu, Cui Ying Mai (collectively "Appellants/Movants"), hereby appeal to the United States Court

of Appeals for the Second Circuit from the Order entered in this action on June 24, 2022, denying

Appellants/Movants' motion to intervene, denying Appellants/Movants' motion to partially vacate

the February 25, 2022 Arbitration Award, and granting Respondent/Petitioner 1199SEIU United

Healthcare Worker East's amended petition to confirm the February 25, 2022 Arbitration Award.

This appeal is taken from each and every part of the June 24, 2022 Order. Final judgment was

entered on June 28, 2022.

Dated: New York, New York
      July 22, 2022

VIRGINIA & AMBINDER, LLP
/s/ LaDonna M. Lusher
LaDonna M. Lusher, Esq.
Kara Miller, Esq.
Michele Moreno, Esq.
Alanna Sakovits, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080
 Fax: (212) 943-9082
llusher@vandallp.com

*Attorneys for Appellants/Movants*
*Alvaro Ramirez Guzman, Elida*
*Agustina Mejia Herrera, Leticia*
*Panama Rivas, Gail Yan, Eugenia*
*Barahona Alvarado, Rafaela*
*Cruceta, Virtudes Duran, Wai Kam*
*Lou, Yue Ming Wu and Cui Ying Mai*

FISHER TAUBENFELD LLP
Michael Taubenfeld
225 Broadway, Suite 1700
New York, NY, 10007
Tel: (212) 571-0700

Fax: (212) 505-2001
michael@fishertaubenfeld.com


and

TAKEROOT JUSTICE
Tito Sinha, Esq.
123 Williams Street, 16th Floor
New York, New York 10038
Tel:     (646) 459-3021
Fax:     (212)-533-4598
tsinha@takerootjustice.org

*Attorneys for Appellants/Movants*
*Mei Kum Chu, Sau King Chung, and*
*Qun Xiang Ling*

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:20-cv-03611-JGK

1199SEIU United HealthCare Workers East v. PSC Community
Services et al
Assigned to: Judge John G. Koeltl
Related Case: 1:20-cv-03929-JGK
Cause: 27:185 Enforcement of Arbitration Award

Date Filed: 05/08/2020
Date Terminated: 02/19/2021
Jury Demand: None
Nature of Suit: 720 Labor: Labor/Mgt.
Relations
Jurisdiction: Federal Question

**Petitioner**

**1199SEIU United HealthCare Workers East**
represented by **James Michael Reif**
Gladstein, Reif, Meginniss
39 Broadway, Suite 2430
New York, NY 10006
212-228-7727
Email: jreif@GRMNY.COM
*ATTORNEY TO BE NOTICED*

**Kimberly Lehmann**
Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011
(917)-684-9825
Email: klehmann@levyratner.com
*ATTORNEY TO BE NOTICED*

**Laureve Daniele Blackstone**
Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011
212-627-8100
Fax: 212-627-8182
Email: lblackstone@levyratner.com
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**PSC Community Services**
represented by **Michael Patrick Collins**
Bond, Schoeneck & King, PLLC (NYC)
600 Third Avenue 22nd Floor
New York, NY 10016
646-253-2318
Fax: 646-253-2301
Email: mcollins@bsk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mallory Campbell**
Bond, Schoeneck, and King
600 Third Avenue, 22nd Floor
New York, NY 10016
646-253-2339
Email: mcampbell@bsk.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**New Partners, Inc. d/b/a Partners in Care**          represented by   **James Joseph Sawczyn**
Epstein Becker & Green, P.C. (NJ)
One Gateway Center
13th Floor
Newark, NJ 07102
(973)-848-7728
Email: jsawczyn@ebglaw.com
*ATTORNEY TO BE NOTICED*

**Michael D Thompson**
Lewis Brisbois Bisgaard & Smith
LLP/Newark
One Riverfront Plaza
Suite 800
Newark, NJ 07102
973-792-8729
Fax: 973-577-6261
Email:
michael.d.thompson@lewisbrisbois.com
*ATTORNEY TO BE NOTICED*

**Patrick G. Brady**
Epstein Becker & Green, P.C. (NJ)
One Gateway Center
13th Floor
Newark, NJ 07102
(973) 642-1900
Fax: (973)642-0099
Email: pbrady@ebglaw.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**Stella Orton Home Care Agency**          represented by   **Philip K Davidoff**
FordHarrison LLP
366 Madison Avenue, 7th Fl
New York, NY 10017
914-316-1308
Fax: 212-453-5959
Email: pdavidoff@fordharrison.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Richmond Home Needs**

represented by **Philip K Davidoff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Sunnyside Home Care Project**

represented by **Philip K Davidoff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Sunnyside Citywide Home Care**

represented by **Philip K Davidoff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Family Home Care of Brooklyn and Queens**

represented by **Philip K Davidoff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Williamson**
FordHarrison LLP
366 Madison Avenue, 7th Fl
New York, NY 10017
212-453-5900
Fax: 212-453-5959
Email: awilliamson@fordharrison.com
*ATTORNEY TO BE NOTICED*

**Jeffrey Alan Shooman**
FordHarrison LLP
366 Madison Avenue, 7th Fl
New York, NY 10017
212-453-5922
Email: jshooman@fordharrison.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**Care at Home**

represented by **Philip K Davidoff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Williamson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Alan Shooman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Chinese-American Planning Council Home Attendant Program**

represented by **Kenneth Harold Kirschner**
Hogan Lovells US LLP (NYC)
390 Madison Ave.
New York, NY 10017
(212) 918-3000
Fax: (212) 918-3100
Email:
kenneth.kirschner@hoganlovells.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Justin Baron**
Hogan Lovells US LLP (NYC)
390 Madison Ave.
New York, NY 10017
(212)-918-3284
Fax: (212)-918-3100
Email: david.baron@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**United Jewish Council of the East Side Home Attendant Service Corp.**

represented by **Kenneth Harold Kirschner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Justin Baron**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**The First Chinese Presbyterian Community Affairs Home Attendant Corp.**

represented by **Douglas Joseph Klein**
Jackson Lewis P.C. (NY)
666 Third Avenue
New York, NY 10017
(212)-545-4020
Fax: (212) 972-3213
Email: douglas.klein@jacksonlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Michael Repole**
Jackson Lewis P.C.
666 Third Avenue
New York, NY 10017
(212)-545-4000
Fax: (212)-545-4019
Email:
christopher.repole@jacksonlewis.com
*ATTORNEY TO BE NOTICED*

**Felice B. Ekelman**

Jackson Lewis P.C. (NY)
666 Third Avenue
New York, NY 10017
212-545-4005
Fax: 212-972-3213
Email: Felice.Ekelman@jacksonlewis.com

**Ryan Christopher Chapoteau**
Jackson Lewis P.C. (NY)
666 Third Avenue
New York, NY 10017
(212) 545-4000
Fax: (212) 972-3213
Email: ryan.chapoteau@jacksonlewis.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**Azor Home Care**                          represented by    **Christopher Michael Repole**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas Joseph Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Philip Simon**
Jackson Lewis LLP(NYC)
666 Third Ave , 29th Floor
New York, NY 10017
(212)-545-4000
Fax: (212)-972-3213
Email: Eric.Simon@jacksonlewis.com
*ATTORNEY TO BE NOTICED*

**Ryan Christopher Chapoteau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Bushwick Stuyvesant Heights Home**        represented by    **Christopher Michael Repole**
**Attendant, Inc.**                                            (See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas Joseph Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Philip Simon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Christopher Chapoteau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**CABS Homecare**      represented by    **Christopher Michael Repole**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas Joseph Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Philip Simon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Christopher Chapoteau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Riverspring Licensed Homecare Services Agency, Inc.**    represented by    **Christopher Michael Repole**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas Joseph Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Philip Simon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Christopher Chapoteau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**St. Nicholas Human Supports Corp.**    represented by    **Christopher Michael Repole**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas Joseph Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Philip Simon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Christopher Chapoteau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Wartburg**                                        represented by **Christopher Michael Repole**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas Joseph Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Philip Simon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Christopher Chapoteau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Alliance for Health, Inc.**                       represented by **Christopher Michael Repole**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Felice B. Ekelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Christopher Chapoteau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Region Care, Inc.**                               represented by **Ira David Wincott**
Milman Labuda Law Group, PLLC
3000 Marcus Avenue
Suite 3W8
New Hyde Park, NY 11042
(516)-328-8899
Fax: (516)-328-0082
Email: iwincott@littler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lisa Marie Griffith**
Littler Mendelson, P.C.( Melville)
290 Broadhollow Road Suite 305
Melville, NY 11747
(516) 293-4525
Fax: (631) 293-4526
Email: lgriffith@littler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Special Touch Home Care Services, Inc.**          represented by **Richard Jay Reibstein**

Locke Lord LLP
200 Vesey Street, 20th Street
New York, NY 10281
212-912-2797
Fax: 212-812-8377
Email: rreibstein@lockelord.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**RAIN, Inc.**       represented by   **Robert F Milman**
Milman Labuda Law Roup PLLC
3000 Marcus Ave, Ste 3w8
New York, NY 11042
(516)-328-8899
Fax: (516)-328-0082
Email: robertmilman@mllaborlaw.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**Prestige Home Care, Inc.**       represented by   **Gregory R. Begg**
Peckar & Abramson, P.C.,(NJ)
70 Grand Avenue, 2nd Fl.
River Edge, NJ 07661
(201) 343-3434
Fax: 201-343-6306
Email: gbegg@pecklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Rayner Davis**
Peckar & Abramson, P.C.
1325 Avenue of the Americas, 10th Floor
New York, NY 10019
212-382-0909
Email: ldavis@pecklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shannon Danielle Azzaro**
Jackson Lewis P.C. (NY)
666 Third Avenue
New York, NY 10017
212-545-4000
Email: Shannon.Azzaro@jacksonlewis.com
*TERMINATED: 04/08/2022*

**Respondent**

**Prestige Home Attendant, Inc. d/b/a All**       represented by   **Gregory R. Begg**
**Season Home Attendant**       (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Rayner Davis**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shannon Danielle Azzaro**
(See above for address)
*TERMINATED: 04/08/2022*

**Respondent**

**Personal Touch Home Care of N.Y., Inc.**          represented by   **Lauren Rayner Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory R. Begg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shannon Danielle Azzaro**
(See above for address)
*TERMINATED: 04/08/2022*

**Respondent**

**Priority Home Services**          represented by   **James E. McGrath , III**
Putney Twombly Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
212-682-0020
Fax: 212-682-9380
Email: jmcgrath@bsk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kim Kimura**
Putney Twombly Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175
(212)-682-0020
Email: rkimura@bsk.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**Premier Home Health Care, Inc.**          represented by   **James E. McGrath , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kim Kimura**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Bronx Jewish Community Council Home**

**Attendant Services**

**Respondent**

**CIDNY Independent Living Services**

**Respondent**

**Home Care Services for Independent Living**

**Respondent**

**New York Foundation for Senior Citizens Home Attendant Services, Inc.**

**Respondent**

**Cooperative Home Care Associates**

**Respondent**

**Riseboro Home Care, Inc.**

**Respondent**

**FEGS Home Attendant Services**

**Respondent**

**Home Health Management Services, Inc.**

**Respondent**

**School Settlement Home Attendant Corp.**

**Respondent**

**Rockaway Home Attendant**

**Respondent**

**Bronxwood Home For the Aged, Inc.**

**Respondent**

**AccentCare of NY, Inc.**                    represented by **Christopher Michael Repole**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Felice B. Ekelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Christopher Chapoteau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Isabella Visiting Care, Inc.**

**Respondent**

**Social Concern Community Development**

Corp.

**Respondent**

**ABC Health Services Registry**　　　represented by　**Gregory R. Begg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Rayner Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Alliance Home Services, Inc.**
*collectively identified by the Arbitrator as*
*the Home Health Care Agencies*

**Respondent**

**Personal Touch LI**　　　represented by　**Gregory R. Begg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Rayner Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**Personal Touch WC**　　　represented by　**Gregory R. Begg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Rayner Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Maktumma Teshabaeva**

**Miscellaneous**

**Jian Hua Deng**

**Miscellaneous**

**Qun Xiang Ling**

**Miscellaneous**

**Rafaela Cruceta**　　　represented by　**Michele A Moreno**
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor

New York, NY 10004
212-943-9080
Email: mmoreno@vandallp.com
*ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Virtudes Duran**                    represented by   **Michele A Moreno**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Wai Kam Lou**                       represented by   **Michele A Moreno**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Yue Ming Wu**                       represented by   **Michele A Moreno**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Cui Ying Mai**                      represented by   **Michele A Moreno**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Interested Party**

**LaDonna Lusher**                    represented by   **LaDonna Marie Lusher**
                                                       Virginia & Ambinder, LLP
                                                       40 Broad Street, 7th Floor
                                                       New York, NY 10004
                                                       (212) 943-9080
                                                       Fax: (212) 943-9082
                                                       Email: llusher@vandallp.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Interested Party**

**Michele Moreno**                    represented by   **Michele A Moreno**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Interested Party**

**Kara Miller**                       represented by   **Kara Sue Miller**
                                                       Virginia & Ambinder, LLP
                                                       40 Broad Street, 7th Floor
                                                       New York, NY 10004
                                                       (212) 943-9080
                                                       Fax: (212) 943-9082
                                                       Email: kmiller@vandallp.com
                                                       *ATTORNEY TO BE NOTICED*

**Interested Party**

**Mercedes Pena**                     represented by   **Michael R. Minkoff**

Borrelli & Associates, P.L.L.C.
New York
910 Franklin Avenue
Ste 200
Garden City, NY 11530
516-248-5550
Fax: 516-248-6027
Email: michael@employeejustice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Todd Coleman**
Borrelli & Associates, P.L.L.C.
910 Franklin Avenue
Ste 200
Garden City, NY 11530
516-248-5550
Fax: 516-248-6027
Email:
atc@employmentlawyernewyork.com
*ATTORNEY TO BE NOTICED*

**Michael John Borrelli**
Borrelli & Associates, P.L.L.C.
910 Franklin Avenue
Suite 200
Garden City, NY 11530
516-248-5550
Email:
mjb@employmentlawyernewyork.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Gail Yan**                    represented by  **LaDonna Marie Lusher**
                                (See above for address)
                                *LEAD ATTORNEY*
                                *ATTORNEY TO BE NOTICED*

                                **Kara Sue Miller**
                                (See above for address)
                                *ATTORNEY TO BE NOTICED*

                                **Michele A Moreno**
                                (See above for address)
                                *ATTORNEY TO BE NOTICED*

**Interested Party**

**Alvaro Ramirez Guzman**       represented by  **LaDonna Marie Lusher**
                                (See above for address)
                                *ATTORNEY TO BE NOTICED*

                                **Michele A Moreno**
                                (See above for address)
                                *ATTORNEY TO BE NOTICED*

**Interested Party**

Elida Agustina Mejia Herrera

represented by **LaDonna Marie Lusher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michele A Moreno**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

Leticia Panama Rivas

represented by **LaDonna Marie Lusher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michele A Moreno**
(See above for address)

**Interested Party**

Eugenia Barahona Alvarado

represented by **LaDonna Marie Lusher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michele A Moreno**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Intervenor**

Mei Kum Chu

represented by **Michael Taubenfeld**
Fisher Taubenfeld LLP
225 Broadway, Suite 1700
New York, NY 10007
(212) 571-0700
Fax: (212) 505-2001
Email: michael@fishertaubenfeld.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michele A Moreno**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sumantra Tito Sinha**
TakeRoot Justice
123 William Street, 16th Floor
New York, NY 10038
646-459-3032
Email: tsinha@takerootjustice.org
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Sau King Chung**      represented by   **Michael Taubenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michele A Moreno**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sumantra Tito Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor**
**Qun Xiang Ling**      represented by   **Michael Taubenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sumantra Tito Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor**
**Epifania Hichez**      represented by   **Michael Taubenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sumantra Tito Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor**
**Carmen Carrasco**      represented by   **Michael Taubenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sumantra Tito Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor**
**Seferina Acosta**      represented by   **Michael Taubenfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sumantra Tito Sinha**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Ramona de la Cruz**                     represented by **Michael Taubenfeld**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

                                          **Sumantra Tito Sinha**
                                          (See above for address)
                                          *ATTORNEY TO BE NOTICED*

**Intervenor**

**Dulce Herrera Palma**                   represented by **Michael Taubenfeld**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

                                          **Sumantra Tito Sinha**
                                          (See above for address)
                                          *ATTORNEY TO BE NOTICED*

**Intervenor**

**Maria Diaz**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/08/2020 | 1 | PETITION TO CONFIRM ARBITRATION. (Filing Fee $ 400.00, Receipt Number ANYSDC-19764494).Document filed by 1199SEIU United HealthCare Workers East. (Attachments: # 1 Exhibit Ex. A (Arbitration Award), # 2 Exhibit Ex. B (CBA), # 3 Exhibit Ex C (2014 MOA), # 4 Exhibit Ex. D (2015 MOA)).(Blackstone, Laureve) (Entered: 05/08/2020) |
| 05/08/2020 | 2 | MEMORANDUM OF LAW re: 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, . Document filed by 1199SEIU United HealthCare Workers East.. (Blackstone, Laureve) (Entered: 05/08/2020) |
| 05/08/2020 | 3 | CIVIL COVER SHEET filed..(Blackstone, Laureve) (Entered: 05/08/2020) |
| 05/11/2020 |  | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Laureve Daniele Blackstone. The party information for the following party/parties has been modified: Chinese-American Planning Council Home Attendant Program Inc.. The information for the party/parties has been modified for the following reason/reasons: party name contained a typographical error;. (pc)** (Entered: 05/11/2020) |
| 05/11/2020 |  | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge John G. Koeltl. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(pc) (Entered: 05/11/2020) |
| 05/11/2020 |  | Magistrate Judge Barbara C. Moses is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed |

| | | |
|---|---|---|
| | | before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pc) (Entered: 05/11/2020) |
| 05/11/2020 | | Case Designated ECF. (pc) (Entered: 05/11/2020) |
| 05/12/2020 | 4 | NOTICE OF APPEARANCE by Kimberly Lehmann on behalf of 1199SEIU United HealthCare Workers East..(Lehmann, Kimberly) (Entered: 05/12/2020) |
| 05/13/2020 | 5 | AFFIDAVIT OF SERVICE of Petition to Confirm Arbitration Award (Dkt #1) and corresponding Exhibits A through D (Dkt #1-1 - 1-4), Memorandum of Law in Support of 1199 SEIUs Petition to Confirm Arbitration Award (Dkt #2), and Civil Cover Sheet (Dkt #3) served on Respondents PSC Community Services; Isabella Visiting Care, Inc.; New Partners Inc. (Partners in Care); Stella Orton Home Care Agency; Richmond Home Needs; Sunnyside Home Care Project; Sunnyside Citywide Home Care; Family Home Care of Brooklyn and Queens; Care at Home; Bronx Jewish Community Council Home Attendant Services; CIDNY Independent Living Services; Home Care Services for Independent Living; New York Foundation for Senior Citizens Home Attendant Services, Inc.; Cooperative Home Care Associates; Riseboro Home Care, Inc.; FEGS Home Attendant Services; Home Health Management Services, Inc.; Chinese-American Planning Council Home Attendant Program; United Jewish Council of the East Side Home Attendant Service Corp.; Region Care, Inc.; Special Touch Home Care Services, Inc. ; RAIN, Inc.; Prestige Home Care, Inc.; Prestige Home Attendant Inc. (All Season Home Attendant); Personal Touch Home Care of NY, Inc.; Priority Home Services and Premier Home Health Care, Inc. on May 8, 2020. Service was accepted by Michael P. Collins, Attorney; Patrick G. Brady, Attorney; Philip Davidoff, Attorney; Scott A. Gold, Attorney; Kenneth Kirschner, Attorney; Ira Wincott, Attorney; Richard J. Reibstein, Attorney; Robert Milman, Attorney; Gregory R. Begg, Attorney; James E. McGrath III, Attorney. Service was made by E-mail. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 05/13/2020) |
| 05/13/2020 | 6 | AFFIDAVIT OF SERVICE of Petition to Confirm Arbitration Award (Dkt #1) and corresponding Exhibits A through D (Dkt #1-1 - 1-4), Memorandum of Law in Support of 1199 SEIU's Petition to Confirm Arbitration Award (Dkt #2), and Civil Cover Sheet (Dkt #3) served on Respondents The First Chinese Presbyterian Community Affairs Home Attendant Corp.; Azor Home Care; Bushwick Stuyvesant Heights Home Attendant, Inc.; Riverspring Licensed Homecare Services Agency, Inc.; Wartburg; Alliance for Health, Inc.; and Accent Care of NY, Inc. on May 8, 2020. Service was accepted by Douglas J. Klein, Attorney. Service was made by E-mail. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 05/13/2020) |
| 05/14/2020 | 7 | NOTICE OF APPEARANCE by Douglas Joseph Klein on behalf of The First Chinese Presbyterian Community Affairs Home Attendant Corp...(Klein, Douglas) (Entered: 05/14/2020) |
| 05/14/2020 | 8 | NOTICE OF APPEARANCE by Ryan Christopher Chapoteau on behalf of The First Chinese Presbyterian Community Affairs Home Attendant Corp...(Chapoteau, Ryan) (Entered: 05/14/2020) |
| 05/15/2020 | 9 | AFFIDAVIT OF SERVICE of Petition to Confirm Arbitration Award (Dkt #1) and corresponding Exhibits A through D (Dkt #1-1 - 1-4), Memorandum of Law in Support of 1199 SEIU's Petition to Confirm Arbitration Award (Dkt #2), and Civil Cover Sheet (Dkt #3) served on School Settlement Home Attendant Corp.; Rockaway Home Attendant Services, Inc.; Bronxwood Home for the Aged, Inc.; Social Concern Community Development Corp.; ABC Health Services Registry, Inc.; and Alliance Home Services, Inc. on May 15, 2020. Service was made by Priority United States Mail. |

| | | |
|---|---|---|
| | | Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 05/15/2020) |
| 05/18/2020 | 10 | NOTICE OF APPEARANCE by Michael Patrick Collins on behalf of PSC Community Services..(Collins, Michael) (Entered: 05/18/2020) |
| 05/22/2020 | 11 | NOTICE OF APPEARANCE by Rebecca Kim Kimura on behalf of Premier Home Health Care, Inc...(Kimura, Rebecca) (Entered: 05/22/2020) |
| 05/22/2020 | 12 | NOTICE OF APPEARANCE by Rebecca Kim Kimura on behalf of Priority Home Services..(Kimura, Rebecca) (Entered: 05/22/2020) |
| 05/22/2020 | 13 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE DOCUMENT #118) -** NOTICE OF APPEARANCE by LaDonna Marie Lusher on behalf of LaDonna Lusher.. (Lusher, LaDonna) Modified on 7/17/2020 (ldi). (Entered: 05/22/2020) |
| 05/22/2020 | 14 | NOTICE OF APPEARANCE by James E. McGrath, III on behalf of Premier Home Health Care, Inc...(McGrath, James) (Entered: 05/22/2020) |
| 05/22/2020 | 15 | NOTICE OF APPEARANCE by James E. McGrath, III on behalf of Priority Home Services..(McGrath, James) (Entered: 05/22/2020) |
| 05/22/2020 | 16 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE DOCUMENT #119) -** NOTICE OF APPEARANCE by Michele A Moreno on behalf of Michele Moreno.. (Moreno, Michele) Modified on 7/17/2020 (ldi). (Entered: 05/22/2020) |
| 05/22/2020 | 17 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE DOCUMENT #120) -** NOTICE OF APPEARANCE by Kara Sue Miller on behalf of Kara Miller..(Miller, Kara) Modified on 7/17/2020 (ldi). (Entered: 05/22/2020) |
| 05/22/2020 | 18 | LETTER MOTION for Conference *to request a pre-motion conference or permission for non-party Gail Yan to file a Motion* addressed to Judge John G. Koeltl from LaDonna Lusher dated May 22, 2020. Document filed by LaDonna Lusher..(Lusher, LaDonna) (Entered: 05/22/2020) |
| 05/26/2020 | 19 | NOTICE OF APPEARANCE by Felice B. Ekelman on behalf of AccentCare of NY, Inc., Alliance for Health, Inc...(Ekelman, Felice) (Entered: 05/26/2020) |
| 05/26/2020 | 20 | NOTICE OF APPEARANCE by Ryan Christopher Chapoteau on behalf of AccentCare of NY, Inc., Alliance for Health, Inc...(Chapoteau, Ryan) (Entered: 05/26/2020) |
| 05/26/2020 | 21 | NOTICE OF APPEARANCE by Ryan Christopher Chapoteau on behalf of Azor Home Care, Bushwick Stuyvesant Heights Home Attendant, Inc., CABS Homecare, Riverspring Licensed Homecare Services Agency, Inc., St. Nicholas Human Supports Corp., Wartburg..(Chapoteau, Ryan) (Entered: 05/26/2020) |
| 05/26/2020 | 22 | NOTICE OF APPEARANCE by Douglas Joseph Klein on behalf of Azor Home Care, Bushwick Stuyvesant Heights Home Attendant, Inc., CABS Homecare, Riverspring Licensed Homecare Services Agency, Inc., St. Nicholas Human Supports Corp., Wartburg..(Klein, Douglas) (Entered: 05/26/2020) |
| 05/26/2020 | 23 | NOTICE OF APPEARANCE by Eric Philip Simon on behalf of Azor Home Care, Bushwick Stuyvesant Heights Home Attendant, Inc., CABS Homecare, Riverspring Licensed Homecare Services Agency, Inc., St. Nicholas Human Supports Corp., Wartburg..(Simon, Eric) (Entered: 05/26/2020) |
| 05/26/2020 | 24 | NOTICE OF APPEARANCE by Michael R. Minkoff on behalf of Mercedes Pena.. (Minkoff, Michael) (Entered: 05/26/2020) |
| 05/26/2020 | 25 | NOTICE OF APPEARANCE by Alexander Todd Coleman on behalf of Mercedes Pena.. |

| | | (Coleman, Alexander) (Entered: 05/26/2020) |
|---|---|---|
| 05/26/2020 | 26 | NOTICE OF APPEARANCE by Michael John Borrelli on behalf of Mercedes Pena.. (Borrelli, Michael) (Entered: 05/26/2020) |
| 05/27/2020 | 27 | NOTICE OF APPEARANCE by Michael Taubenfeld on behalf of Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta, Ramona de la Cruz..(Taubenfeld, Michael) (Entered: 05/27/2020) |
| 05/27/2020 | 28 | LETTER MOTION for Conference *Pre-Motion Conference* addressed to Judge John G. Koeltl from Michael Taubenfeld dated May 27, 2020. Document filed by Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Epifania Hichez, Qun Xiang Ling, Ramona de la Cruz..(Taubenfeld, Michael) (Entered: 05/27/2020) |
| 05/27/2020 | 29 | LETTER addressed to Judge John G. Koeltl from Laureve Blackstone dated May 27, 2020 re: Opposition to Pre-Motion Letter of Non-Party. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 05/27/2020) |
| 05/28/2020 | 30 | NOTICE OF APPEARANCE by Ira David Wincott on behalf of Region Care, Inc... (Wincott, Ira) (Entered: 05/28/2020) |
| 05/29/2020 | 31 | NOTICE OF APPEARANCE by Lisa Marie Griffith on behalf of Region Care, Inc... (Griffith, Lisa) (Entered: 05/29/2020) |
| 05/29/2020 | 32 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by The First Chinese Presbyterian Community Affairs Home Attendant Corp...(Klein, Douglas) (Entered: 05/29/2020) |
| 05/29/2020 | 33 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by Azor Home Care..(Klein, Douglas) (Entered: 05/29/2020) |
| 05/29/2020 | 34 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by Bushwick Stuyvesant Heights Home Attendant, Inc...(Klein, Douglas) (Entered: 05/29/2020) |
| 05/29/2020 | 35 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by CABS Homecare..(Klein, Douglas) (Entered: 05/29/2020) |
| 05/29/2020 | 36 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by Riverspring Licensed Homecare Services Agency, Inc...(Klein, Douglas) (Entered: 05/29/2020) |
| 05/29/2020 | 37 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by St. Nicholas Human Supports Corp...(Klein, Douglas) (Entered: 05/29/2020) |
| 05/29/2020 | 38 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by Wartburg..(Klein, Douglas) (Entered: 05/29/2020) |
| 05/29/2020 | 39 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by Alliance for Health, Inc...(Ekelman, Felice) (Entered: 05/29/2020) |
| 05/29/2020 | 40 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by AccentCare of NY, Inc...(Ekelman, Felice) (Entered: 05/29/2020) |
| 05/29/2020 | 41 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent AccentCare, Inc. for Alliance for Health, Inc.. Document filed by Alliance for Health, Inc...(Repole, Christopher) (Entered: 05/29/2020) |
| 05/29/2020 | 42 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by The First Chinese Presbyterian Community Affairs Home Attendant Corp... |

| | | (Repole, Christopher) (Entered: 05/29/2020) |
|---|---|---|
| 05/29/2020 | 43 | NOTICE OF APPEARANCE by James Michael Reif on behalf of 1199SEIU United HealthCare Workers East..(Reif, James) (Entered: 05/29/2020) |
| 05/29/2020 | 44 | CONSENT LETTER MOTION for Extension of Time to File Answer re: 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, addressed to Judge John G. Koeltl from Lisa M. Griffith dated 5/29/2020. Document filed by Region Care, Inc.. Return Date set for 6/12/2020 at 11:59 PM..(Griffith, Lisa) (Entered: 05/29/2020) |
| 05/29/2020 | 45 | NOTICE OF APPEARANCE by Gregory R. Begg on behalf of Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc...(Begg, Gregory) (Entered: 05/29/2020) |
| 05/29/2020 | 46 | NOTICE OF APPEARANCE by Gregory R. Begg on behalf of Personal Touch Home Care of N.Y., Inc...(Begg, Gregory) (Entered: 05/29/2020) |
| 05/29/2020 | 47 | NOTICE OF APPEARANCE by Shannon Danielle Azzaro on behalf of Personal Touch Home Care of N.Y., Inc...(Azzaro, Shannon) (Entered: 05/29/2020) |
| 05/29/2020 | 48 | NOTICE OF APPEARANCE by Shannon Danielle Azzaro on behalf of Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc...(Azzaro, Shannon) (Entered: 05/29/2020) |
| 06/01/2020 | 49 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Premier Home Health Care, Inc...(McGrath, James) (Entered: 06/01/2020) |
| 06/01/2020 | 50 | RESPONSE re: 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, . Document filed by Premier Home Health Care, Inc...(McGrath, James) (Entered: 06/01/2020) |
| 06/01/2020 | 51 | LETTER addressed to Judge John G. Koeltl from James E. McGrath, III dated June 1, 2020 re: Opposition to Pre-Motion Letter of Non-Party. Document filed by Premier Home Health Care, Inc...(McGrath, James) (Entered: 06/01/2020) |
| 06/01/2020 | 52 | ORDER: A teleconference in the related cases will be held on June 11, 2020 at 11:00 AM. The parties should call in to (888)-363-4749 and use access code 8140049. The parties should consult prior to the conference about a coordinated briefing schedule for the related cases. SO ORDERED. (Signed by Judge John G. Koeltl on 5/30/2020) ( Telephone Conference set for 6/11/2020 at 11:00 AM before Judge John G. Koeltl.) (ks) (Entered: 06/01/2020) |
| 06/01/2020 | 53 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Azor Home Care..(Klein, Douglas) (Entered: 06/01/2020) |
| 06/01/2020 | 54 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Bushwick Stuyvesant Heights Home Attendant, Inc...(Klein, Douglas) (Entered: 06/01/2020) |
| 06/01/2020 | 55 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by CABS Homecare..(Klein, Douglas) (Entered: 06/01/2020) |
| 06/01/2020 | 56 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Premier Home Health Care Services, Inc. for Priority Home Services. Document filed by Priority Home Services..(McGrath, James) (Entered: 06/01/2020) |
| 06/01/2020 | 57 | RESPONSE re: 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, . Document filed by Priority Home Services..(McGrath, James) (Entered: 06/01/2020) |
| 06/01/2020 | 58 | LETTER addressed to Judge John G. Koeltl from Felice B. Ekelman dated June 1, 2020 |

| | | |
|---|---|---|
| | | re: Response to Plaintiff's May 22, 2020 Letter (Dkt. 13). Document filed by Alliance for Health, Inc...(Ekelman, Felice) (Entered: 06/01/2020) |
| 06/01/2020 | 59 | LETTER addressed to Judge John G. Koeltl from Douglas J. Klein dated June 1, 2020 re: Response to May 22, 2020 Letter (Dkt. 13). Document filed by The First Chinese Presbyterian Community Affairs Home Attendant Corp...(Klein, Douglas) (Entered: 06/01/2020) |
| 06/01/2020 | 60 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Riverspring Licensed Homecare Services Agency, Inc...(Klein, Douglas) (Entered: 06/01/2020) |
| 06/01/2020 | 61 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Advent for AccentCare of NY, Inc.. Document filed by AccentCare of NY, Inc... (Ekelman, Felice) (Entered: 06/01/2020) |
| 06/01/2020 | 62 | ORDER granting 44 Letter Motion for Extension of Time to Answer. Application granted. SO ORDERED. (Signed by Judge John G. Koeltl on 6/1/2020) Region Care, Inc. answer due 6/12/2020 (ks) (Entered: 06/01/2020) |
| 06/01/2020 | 63 | CONSENT LETTER MOTION for Extension of Time to File Answer re: 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, addressed to Judge John G. Koeltl from Shannon D. Azzaro dated June 1, 2020. Document filed by Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc...(Azzaro, Shannon) (Entered: 06/01/2020) |
| 06/01/2020 | 64 | CONSENT LETTER MOTION for Extension of Time to File Answer re: 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, addressed to Judge John G. Koeltl from Shannon D. Azzaro dated June 1, 2020. Document filed by Personal Touch Home Care of N.Y., Inc...(Azzaro, Shannon) (Entered: 06/01/2020) |
| 06/02/2020 | 65 | NOTICE OF APPEARANCE by Kenneth Harold Kirschner on behalf of Chinese-American Planning Council Home Attendant Program..(Kirschner, Kenneth) (Entered: 06/02/2020) |
| 06/02/2020 | 66 | NOTICE OF APPEARANCE by David Justin Baron on behalf of Chinese-American Planning Council Home Attendant Program..(Baron, David) (Entered: 06/02/2020) |
| 06/02/2020 | 67 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Chinese-American Planning Council, Inc. for Chinese-American Planning Council Home Attendant Program. Document filed by Chinese-American Planning Council Home Attendant Program..(Kirschner, Kenneth) (Entered: 06/02/2020) |
| 06/02/2020 | 68 | NOTICE OF APPEARANCE by Kenneth Harold Kirschner on behalf of United Jewish Council of the East Side Home Attendant Service Corp...(Kirschner, Kenneth) (Entered: 06/02/2020) |
| 06/02/2020 | 69 | NOTICE OF APPEARANCE by David Justin Baron on behalf of United Jewish Council of the East Side Home Attendant Service Corp...(Baron, David) (Entered: 06/02/2020) |
| 06/02/2020 | 70 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent United Jewish Council of the East Side, Inc. for United Jewish Council of the East Side Home Attendant Service Corp.. Document filed by United Jewish Council of the East Side Home Attendant Service Corp...(Kirschner, Kenneth) (Entered: 06/02/2020) |
| 06/02/2020 | 71 | LETTER addressed to Judge John G. Koeltl from Kenneth Kirschner dated June 2, 2020 re: in response to the May 27, 2020 letter filed as ECF No. 28 by Fisher Taubenfeld LLP and TakeRoot Justice, counsel for certain proposed intervenors, and in opposition to Intervenors request for a pre-motion conference. Document filed by Chinese-American |

| | | |
|---|---|---|
| | | Planning Council Home Attendant Program, United Jewish Council of the East Side Home Attendant Service Corp...(Kirschner, Kenneth) (Entered: 06/02/2020) |
| 06/02/2020 | 72 | LETTER addressed to Judge John G. Koeltl from Laureve Blackstone, Esq. dated June 2, 2020 re: in Response to the May 27, 2020 Pre-Motion Letter of Non-Parties. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 06/02/2020) |
| 06/02/2020 | 73 | NOTICE OF APPEARANCE by Sumantra Tito Sinha on behalf of Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Epifania Hichez, Qun Xiang Ling, Ramona de la Cruz..(Sinha, Sumantra) (Entered: 06/02/2020) |
| 06/02/2020 | 74 | ORDER granting 64 Letter Motion for Extension of Time to Answer. Application granted.SO ORDERED. (Signed by Judge John G. Koeltl on 6/2/2020) Personal Touch Home Care of N.Y., Inc. answer due 6/12/2020 (ks) (Entered: 06/02/2020) |
| 06/02/2020 | 75 | ORDER granting 63 Letter Motion for Extension of Time to Answer re 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration. Application granted. SO ORDERED. Prestige Home Attendant, Inc. d/b/a All Season Home Attendant answer due 6/12/2020; Prestige Home Care, Inc. answer due 6/12/2020. (Signed by Judge John G. Koeltl on 6/2/2020) (va) (Entered: 06/02/2020) |
| 06/02/2020 | 76 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by Chinese-American Planning Council Home Attendant Program.. (Kirschner, Kenneth) (Entered: 06/02/2020) |
| 06/02/2020 | 77 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by United Jewish Council of the East Side Home Attendant Service Corp...(Kirschner, Kenneth) (Entered: 06/02/2020) |
| 06/03/2020 | 78 | NOTICE OF APPEARANCE by Philip K Davidoff on behalf of Care at Home, Family Home Care of Brooklyn and Queens, Richmond Home Needs, Stella Orton Home Care Agency, Sunnyside Citywide Home Care, Sunnyside Home Care Project..(Davidoff, Philip) (Entered: 06/03/2020) |
| 06/05/2020 | 79 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent St. Nick's Alliance Corp. for St. Nicholas Human Supports Corp.. Document filed by St. Nicholas Human Supports Corp...(Repole, Christopher) (Entered: 06/05/2020) |
| 06/08/2020 | 80 | NOTICE OF APPEARANCE by Patrick G. Brady on behalf of New Partners, Inc. d/b/a Partners in Care..(Brady, Patrick) (Entered: 06/08/2020) |
| 06/09/2020 | 81 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Visiting Nurse Service of New York for New Partners, Inc. d/b/a Partners in Care. Document filed by New Partners, Inc. d/b/a Partners in Care..(Brady, Patrick) (Entered: 06/09/2020) |
| 06/09/2020 | 82 | LETTER MOTION for Extension of Time to File Answer re: 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, addressed to Judge John G. Koeltl from Patrick G. Brady dated June 9, 2020. Document filed by New Partners, Inc. d/b/a Partners in Care..(Brady, Patrick) (Entered: 06/09/2020) |
| 06/09/2020 | 83 | NOTICE OF APPEARANCE by James Joseph Sawczyn on behalf of New Partners, Inc. d/b/a Partners in Care..(Sawczyn, James) (Entered: 06/09/2020) |
| 06/09/2020 | 84 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by PSC Community Services..(Collins, Michael) (Entered: 06/09/2020) |
| 06/09/2020 | 85 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. |

| | | |
|---|---|---|
| | | Document filed by PSC Community Services..(Collins, Michael) (Entered: 06/09/2020) |
| 06/10/2020 | 86 | ORDER granting 82 Letter Motion for Extension of Time to Answer. Application granted. SO ORDERED. (Signed by Judge John G. Koeltl on 6/10/2020) New Partners, Inc. d/b/a Partners in Care answer due 6/12/2020 (ks) (Entered: 06/10/2020) |
| 06/11/2020 | 87 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by New Partners, Inc. d/b/a Partners in Care..(Brady, Patrick) (Entered: 06/11/2020) |
| 06/11/2020 | 88 | ORDER: All motions in the three related cases, including motions to remand and motions to intervene, shall proceed on the following schedule: Motions are due by June 25, 2020; responses are due by July 10, 2020; replies are due by July 20, 2020. All moving parties should submit courtesy copies of their fully briefed motion papers to the Courthouse by July 20, 2020. SO ORDERED. (Signed by Judge John G. Koeltl on 6/11/2020) ( Motions due by 6/25/2020., Responses due by 7/10/2020, Replies due by 7/20/2020.) (ks) (Entered: 06/11/2020) |
| 06/11/2020 | | Minute Entry for proceedings held before Judge John G. Koeltl: Status Conference held on 6/11/2020. All parties present. (tro) (Entered: 06/17/2020) |
| 06/12/2020 | 89 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Personal Touch Home Care of N.Y., Inc...(Begg, Gregory) (Entered: 06/12/2020) |
| 06/12/2020 | 90 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by Personal Touch Home Care of N.Y., Inc...(Begg, Gregory) (Entered: 06/12/2020) |
| 06/12/2020 | 91 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Prestige Home Care, Inc...(Begg, Gregory) (Entered: 06/12/2020) |
| 06/12/2020 | 92 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Prestige Home Attendant, Inc. d/b/a All Season Home Attendant..(Begg, Gregory) (Entered: 06/12/2020) |
| 06/12/2020 | 93 | RESPONSE to 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,. Document filed by Prestige Home Attendant, Inc. d/b/a All Season Home Attendant.. (Begg, Gregory) (Entered: 06/12/2020) |
| 06/12/2020 | 94 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent North Shore Health Ednterprises, Inc. for Region Care, Inc.. Document filed by Region Care, Inc...(Griffith, Lisa) (Entered: 06/12/2020) |
| 06/12/2020 | 95 | RESPONSE re: 1 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration, . Document filed by Region Care, Inc...(Griffith, Lisa) (Entered: 06/12/2020) |
| 06/19/2020 | 96 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Wartburg Residential Community, Inc. for Wartburg. Document filed by Wartburg.. (Repole, Christopher) (Entered: 06/19/2020) |
| 06/23/2020 | 97 | LETTER MOTION for Extension of Time to File *Motion to Intervene and Dismiss or Stay* addressed to Judge John G. Koeltl from Michael Taubenfeld dated June 23, 2020. Document filed by Carmen Carrasco, Mei Kum Chu, Sau King Chung, Epifania Hichez, Qun Xiang Ling, Ramona de la Cruz..(Taubenfeld, Michael) (Entered: 06/23/2020) |
| 06/24/2020 | 98 | ORDER: granting 97 Letter Motion for Extension of Time to File. Application Granted. SO ORDERED. (Signed by Judge John G. Koeltl on 6/24/2020) (ama) (Entered: 06/24/2020) |
| 06/24/2020 | | Set/Reset Deadlines: Motions due by 6/29/2020. Responses due by 7/10/2020 Replies |

| | | |
|---|---|---|
| | | due by 7/20/2020. (ama) (Entered: 06/24/2020) |
| 06/25/2020 | 99 | TRANSCRIPT of Proceedings re: conference held on 6/11/2020 before Judge John G. Koeltl. Court Reporter/Transcriber: Vincent Bologna, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/16/2020. Redacted Transcript Deadline set for 7/27/2020. Release of Transcript Restriction set for 9/23/2020.. (McGuirk, Kelly) (Entered: 06/25/2020) |
| 06/25/2020 | 100 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a confernece proceeding held on 6/11/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 06/25/2020) |
| 06/29/2020 | 101 | MOTION to Dismiss . Document filed by LaDonna Lusher. (Attachments: # 1 Declaration of LaDonna Lusher, # 2 Exhibit A - Petition to Confirm Arbitration Award, # 3 Exhibit B - Guzman v. FCP (Jan 13 2020), # 4 Exhibit C - Pustilnik v. Premier (Jan 14 2020), # 5 Exhibit D - Alvarado v. Alliance (Jan 13 2020), # 6 Exhibit E - Affidavit of Gail Yan, # 7 Exhibit F - Guzman v. FCP (March 29 2019), # 8 Exhibit G - Hichez v. UJC (Sept. 17 2018), # 9 Exhibit H - Safanova v. Home Care Servs. (Jan 17, 2017), # 10 Exhibit I - 1199 Letter to FCP (Nov 7 2016), # 11 Exhibit J - 1199 Letter to NLRB (Jan 14 2016), # 12 Exhibit K - 1199 Letter to Arbitrator (Dec 11 2015), # 13 Exhibit L - Class Action Grievance (Jan 2 2016), # 14 Exhibit M - Arbitrator E-mail (Dec 24 2019), # 15 Exhibit N - Arbitrator's Award (April 17 2020), # 16 Memorandum of Law).(Lusher, LaDonna) (Entered: 06/29/2020) |
| 06/29/2020 | 102 | NOTICE OF APPEARANCE by Michael Taubenfeld on behalf of Dulce Herrera Palma.. (Taubenfeld, Michael) (Entered: 06/29/2020) |
| 06/29/2020 | 103 | MOTION to Intervene *and Dismiss or Stay*. Document filed by Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling..(Taubenfeld, Michael) (Entered: 06/29/2020) |
| 06/29/2020 | 104 | DECLARATION of Dulce Herrera Palma in Support re: 103 MOTION to Intervene *and Dismiss or Stay*.. Document filed by Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling..(Taubenfeld, Michael) (Entered: 06/29/2020) |
| 06/29/2020 | 105 | DECLARATION of Michael Taubenfeld in Support re: 103 MOTION to Intervene *and Dismiss or Stay*.. Document filed by Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling. (Attachments: # 1 1, # 2 2, # 3 3, # 4 4).(Taubenfeld, Michael) (Entered: 06/29/2020) |
| 06/29/2020 | 106 | MEMORANDUM OF LAW in Support re: 103 MOTION to Intervene *and Dismiss or Stay*. . Document filed by Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling..(Taubenfeld, Michael) (Entered: 06/29/2020) |
| 06/30/2020 | 107 | NOTICE OF APPEARANCE by Sumantra Tito Sinha on behalf of Dulce Herrera Palma..(Sinha, Sumantra) (Entered: 06/30/2020) |
| 07/10/2020 | 108 | MEMORANDUM OF LAW in Opposition re: 103 MOTION to Intervene *and Dismiss or Stay*. . Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 07/10/2020) |

| 07/10/2020 | 109 | JOINT MEMORANDUM OF LAW in Opposition re: 103 MOTION to Intervene *and Dismiss or Stay*. . Document filed by Chinese-American Planning Council Home Attendant Program, United Jewish Council of the East Side Home Attendant Service Corp...(Kirschner, Kenneth) (Entered: 07/10/2020) |
|---|---|---|
| 07/10/2020 | 110 | AFFIDAVIT of Denise Watkins in Opposition re: 103 MOTION to Intervene *and Dismiss or Stay*.. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 07/10/2020) |
| 07/10/2020 | 111 | DECLARATION of Kenneth Kirschner in Opposition re: 103 MOTION to Intervene *and Dismiss or Stay*.. Document filed by Chinese-American Planning Council Home Attendant Program, United Jewish Council of the East Side Home Attendant Service Corp.. (Attachments: # 1 Exhibit A - UJC CBA, # 2 Exhibit B - CPC CBA, # 3 Exhibit C - UJC 2015 MOA, # 4 Exhibit D - CPC 2015 MOA, # 5 Exhibit E - Chan Complaint, # 6 Exhibit F - CPC Grievance to Scheinman, # 7 Exhibit G - Forrest Compelling Arbitration in Chan, # 8 Exhibit H - Forrest Denying Motion for Consideration in Chan, # 9 Exhibit I - Chu Granting Motion to Stay, # 10 Exhibit J - Chu Dismissal Order No. 1, # 11 Exhibit K - Chu Dismissal Order No. 2, # 12 Exhibit L - UJC Grievance to Scheinman, # 13 Exhibit M - Jan 3, 2019 Emails with Opposing Counsel, # 14 Exhibit N - Hichez Continuing Stay and Denying Injunctive Relief).(Kirschner, Kenneth) (Entered: 07/10/2020) |
| 07/10/2020 | 112 | MEMORANDUM OF LAW in Opposition re: 101 MOTION to Dismiss . . Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 07/10/2020) |
| 07/10/2020 | 113 | DECLARATION of David Sitzer in Opposition re: 103 MOTION to Intervene *and Dismiss or Stay*.. Document filed by United Jewish Council of the East Side Home Attendant Service Corp.. (Attachments: # 1 Exhibit A - Dulce Herrera Records).(Kirschner, Kenneth) (Entered: 07/10/2020) |
| 07/10/2020 | 114 | JOINT MEMORANDUM OF LAW in Opposition re: 101 MOTION to Dismiss . . Document filed by Alliance for Health, Inc., The First Chinese Presbyterian Community Affairs Home Attendant Corp...(Ekelman, Felice) (Entered: 07/10/2020) |
| 07/10/2020 | 115 | DECLARATION of Felice B. Ekelman, Esq. in Opposition re: 101 MOTION to Dismiss .. Document filed by Alliance for Health, Inc., The First Chinese Presbyterian Community Affairs Home Attendant Corp.. (Attachments: # 1 Exhibit A - Correspondence with Arbitrator, # 2 Exhibit B - Arbitration Stipulation and Order, # 3 Exhibit C - Docket in Alvarado Litigation, # 4 Exhibit D - Notice of Entry in Alvarado Litigation, # 5 Exhibit E - Alvarado Litigation Appellate Decision, # 6 Exhibit F - Alvarado Litigation Order, # 7 Exhibit G - Guzman Litigation Docket, # 8 Exhibit H - Guzman Litigation 4.5.19 Order, # 9 Exhibit I - Guzman Litigation 1.13.20 Order, # 10 Exhibit J - Guzman Litigation 5.21.20 Order).(Ekelman, Felice) (Entered: 07/10/2020) |
| 07/10/2020 | 116 | LETTER MOTION for Oral Argument addressed to Judge John G. Koeltl from Douglas J. Klein, Esq. dated July 10, 2020. Document filed by Alliance for Health, Inc., The First Chinese Presbyterian Community Affairs Home Attendant Corp...(Ekelman, Felice) (Entered: 07/10/2020) |
| 07/15/2020 | 117 | LETTER addressed to Judge John G. Koeltl from Patrick G. Brady dated July 15, 2020 re: Motion to Dismiss the Petition. Document filed by New Partners, Inc. d/b/a Partners in Care..(Brady, Patrick) (Entered: 07/15/2020) |
| 07/17/2020 | 118 | NOTICE OF APPEARANCE by LaDonna Marie Lusher on behalf of Gail Yan..(Lusher, LaDonna) (Entered: 07/17/2020) |
| 07/17/2020 | 119 | NOTICE OF APPEARANCE by Michele A Moreno on behalf of Gail Yan..(Moreno, |

|  |  | Michele) (Entered: 07/17/2020) |
|---|---|---|
| 07/17/2020 | 120 | NOTICE OF APPEARANCE by Kara Sue Miller on behalf of Gail Yan..(Miller, Kara) (Entered: 07/17/2020) |
| 07/20/2020 | 121 | LETTER addressed to Judge John G. Koeltl from Michael P. Collins dated July 20, 2020 re: Adopting arguments of other parties. Document filed by PSC Community Services..(Collins, Michael) (Entered: 07/20/2020) |
| 07/20/2020 | 122 | REPLY MEMORANDUM OF LAW in Support re: 101 MOTION to Dismiss . *AND IN RESPONSE TO THE JOINT OPPOSITION SUBMITTED BY RESPONDENTS ALLIANCE FOR HEALTH, INC. AND THE FIRST CHINESE PRESBYTERIAN COMMUNITY HOME ATTENDANT CORP.*. Document filed by Gail Yan. (Attachments: # 1 Certification of Compliance).(Lusher, LaDonna) (Entered: 07/20/2020) |
| 07/20/2020 | 123 | LETTER addressed to Judge John G. Koeltl from James E. McGrath, III dated July 20, 2020 re: Adopting Arguments in Opposition to Motion to Intervene and Motion to Dismiss the Petition. Document filed by Premier Home Health Care, Inc., Priority Home Services..(McGrath, James) (Entered: 07/20/2020) |
| 07/20/2020 | 124 | REPLY AFFIRMATION of LaDonna M. Lusher in Support re: 101 MOTION to Dismiss .. Document filed by Gail Yan. (Attachments: # 1 Exhibit O - 2020-7-16 FHC Decision Granting Injunction).(Lusher, LaDonna) (Entered: 07/20/2020) |
| 07/20/2020 | 125 | REPLY MEMORANDUM OF LAW in Support re: 101 MOTION to Dismiss . *AND IN RESPONSE TO THE OPPOSITION SUBMITTED BY 1199 SEIU UNITED HEALTHCARE WORKERS EAST*. Document filed by Gail Yan..(Lusher, LaDonna) (Entered: 07/20/2020) |
| 07/20/2020 | 126 | REPLY AFFIRMATION of LaDonna M. Lusher in Support re: 101 MOTION to Dismiss .. Document filed by Gail Yan. (Attachments: # 1 Exhibit O - 2020-7-16 FHC Decision Granting Injunction).(Lusher, LaDonna) (Entered: 07/20/2020) |
| 07/20/2020 | 127 | REPLY MEMORANDUM OF LAW in Support re: 103 MOTION to Intervene *and Dismiss or Stay*. . Document filed by Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling..(Taubenfeld, Michael) (Entered: 07/20/2020) |
| 07/23/2020 | 128 | LETTER addressed to Judge John G. Koeltl from Lisa M. Griffith dated 7/23/2020 re: Letter to Join Arguments. Document filed by Region Care, Inc...(Griffith, Lisa) (Entered: 07/23/2020) |
| 07/24/2020 | 129 | RESPONSE to Motion re: 101 MOTION to Dismiss ., 103 MOTION to Intervene *and Dismiss or Stay*. . Document filed by Care at Home, Family Home Care of Brooklyn and Queens, Richmond Home Needs, Stella Orton Home Care Agency, Sunnyside Citywide Home Care, Sunnyside Home Care Project..(Davidoff, Philip) (Entered: 07/24/2020) |
| 07/24/2020 | 130 | LETTER addressed to Judge John G. Koeltl from Shannon D. Azzaro dated July 24, 2020 re: Adopting/Joining Arguments of co-Respondents. Document filed by Personal Touch Home Care of N.Y., Inc...(Azzaro, Shannon) (Entered: 07/24/2020) |
| 07/24/2020 | 131 | LETTER addressed to Judge John G. Koeltl from Shannon D. Azzaro dated July 24, 2020 re: Adopting/Joining Arguments of co-Respondents. Document filed by Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc...(Azzaro, Shannon) (Entered: 07/24/2020) |
| 08/11/2020 | 132 | LETTER addressed to Judge John G. Koeltl from Kimberly Lehmann dated August 11, 2020 re: Decision in Mannapova v. P.S.C. Community Services, Inc. Document filed by 1199SEIU United HealthCare Workers East..(Lehmann, Kimberly) (Entered: 08/11/2020) |

| | | |
|---|---|---|
| 08/14/2020 | [133](#) | LETTER addressed to Judge John G. Koeltl from LaDonna Lusher dated August 14, 2020 re: In response to the August 11, 2020 submission by 1199SEIU United Healthcare Workers East.. Document filed by Gail Yan..(Lusher, LaDonna) (Entered: 08/14/2020) |
| 10/08/2020 | [134](#) | LETTER addressed to Judge John G. Koeltl from LaDonna Lusher dated October 8, 2020 re: In further support of Gail Yans motion to dismiss the petition. Document filed by Gail Yan. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B).(Lusher, LaDonna) (Entered: 10/08/2020) |
| 10/10/2020 | [135](#) | LETTER addressed to Judge John G. Koeltl from James E. McGrath, III dated October 10, 2020 re: In response to the October 8, 2020 Letter Submitted by LaDonna Lusher on Behalf of Non-Party Gail Yan. Document filed by Premier Home Health Care, Inc... (McGrath, James) (Entered: 10/10/2020) |
| 10/12/2020 | [136](#) | LETTER addressed to Judge John G. Koeltl from Laureve Blackstone dated October 12, 2020 re: Response to Letter of Non-Party Counsel LaDonna Lusher. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 10/12/2020) |
| 11/23/2020 | | Minute Entry for proceedings held before Judge John G. Koeltl: Oral Argument set for 12/14/2020 at 02:30 PM before Judge John G. Koeltl. Dial-in: 888 363-4749, with access code 8140049. (Fletcher, Donnie) (Entered: 11/23/2020) |
| 11/23/2020 | | Minute Entry for proceedings held before Judge John G. Koeltl: Oral Argument set for 12/14/2020 at 02:30 PM before Judge John G. Koeltl. Dial-in: 888 363-4749, with access code 8140049. (Fletcher, Donnie) (Entered: 11/23/2020) |
| 11/24/2020 | [137](#) | ORDER: The Court will hear argument on the parties' pending motions on December 14, 2020, at 2:30 pm. The Court orders the parties in the 1199SEIU case (20-cv-3611) to file supplemental briefing addressing the following points as further set forth in this Order. The parties with similar interests are strongly encouraged to coordinate to reduce redundant briefing. All supplemental submissions should be submitted no later than December 7, 2020. As further set forth in this Order. SO ORDERED. (Signed by Judge John G. Koeltl on 11/24/2020) (ks) (Entered: 11/24/2020) |
| 12/07/2020 | [138](#) | DECLARATION of Brijesh Shah in Opposition re: [103](#) MOTION to Intervene *and Dismiss or Stay*.. Document filed by 1199SEIU United HealthCare Workers East.. (Blackstone, Laureve) (Entered: 12/07/2020) |
| 12/07/2020 | [139](#) | DECLARATION of Laureve Blackstone in Opposition re: [103](#) MOTION to Intervene *and Dismiss or Stay*.. Document filed by 1199SEIU United HealthCare Workers East.. (Blackstone, Laureve) (Entered: 12/07/2020) |
| 12/07/2020 | [140](#) | LETTER addressed to Judge John G. Koeltl from Laureve Blackstone dated December 7, 2020 re: Supplemental Briefing Pursuant to Nov. 24, 2020 Order. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 12/07/2020) |
| 12/07/2020 | [141](#) | LETTER addressed to Judge John G. Koeltl from Kenneth Kirschner dated December 7, 2020 re: Response to Request for Supplemental Briefing [ECF No. 137],. Document filed by Chinese-American Planning Council Home Attendant Program, United Jewish Council of the East Side Home Attendant Service Corp...(Kirschner, Kenneth) (Entered: 12/07/2020) |
| 12/07/2020 | [142](#) | LETTER addressed to Judge John G. Koeltl dated December 7, 2020 re: the Court's November 24 Order. Document filed by Alliance for Health, Inc., The First Chinese Presbyterian Community Affairs Home Attendant Corp...(Repole, Christopher) (Entered: 12/07/2020) |

| | | |
|---|---|---|
| 12/07/2020 | 143 | DECLARATION of LaDonna M. Lusher in Support re: 101 MOTION to Dismiss .. Document filed by Gail Yan. (Attachments: # 1 Exhibit Ex. 1 - Hichez v. UJC Sept. 17, 2018, # 2 Exhibit Ex. 2 - Hichez v. UJC (1st Dept 2019), # 3 Exhibit Ex. 3 - Pustilnik v. Premier Dec 18, 2017, # 4 Exhibit Ex. 4 - Pustilnik v. Premier Jan 14, 2020, # 5 Exhibit Ex. 5 - Alvarado v. Alliance Feb 7, 2019, # 6 Exhibit Ex. 6 - Alvarado v. Alliance (1st Dept. 2019), # 7 Exhibit Ex. 7 - Alvarado v. Alliance Jan 13, 2020, # 8 Exhibit Ex. 8 - Guzman v. FCP March 29, 2019, # 9 Exhibit Ex. 9 - Guzman v. FCP Jan 13, 2020, # 10 Exhibit Ex. 10 - Safanova v. Home Care Servs. (1st Dept. 2018), # 11 Exhibit Ex. 11 - Belabarodaya v. Personal Touch Dec 21, 2018, # 12 Exhibit Ex. 12 - Najmiev v. Special Touch Feb 15, 2018, # 13 Exhibit Ex. 13 - Pustilnik v. Premier July 16, 2020, # 14 Exhibit Ex. 14 - Teshabaeva v Family Home Care Servs. July 16, 2020, # 15 Exhibit Ex. 15 - Troshin v. Stella Orton Sept. 11, 2020).(Moreno, Michele) (Entered: 12/07/2020) |
| 12/07/2020 | 144 | RESPONSE in Support of Motion re: 101 MOTION to Dismiss . *Supplemental Brief pursuant to the November 24, 2020 Order*. Document filed by Gail Yan..(Moreno, Michele). (Entered: 12/07/2020) |
| 12/07/2020 | 145 | DECLARATION of Maria Diaz in Support re: 103 MOTION to Intervene *and Dismiss or Stay*.. Document filed by Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling..(Taubenfeld, Michael) (Entered: 12/07/2020) |
| 12/07/2020 | 146 | MEMORANDUM OF LAW in Support re: 103 MOTION to Intervene *and Dismiss or Stay*. . Document filed by Seferina Acosta, Carmen Carrasco, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling..(Taubenfeld, Michael) (Entered: 12/07/2020) |
| 12/08/2020 | 147 | LETTER addressed to Judge John G. Koeltl from James E. McGrath, III dated 12/08/2020 re: In response to the Supplemental Declaration of LaDonna M. Lusher, filed on December 7, 2020 (Dkt. 143). Document filed by Premier Home Health Care, Inc... (McGrath, James) (Entered: 12/08/2020) |
| 12/10/2020 | 148 | LETTER addressed to Judge John G. Koeltl from Patrick G. Brady dated 12/10/20 re: motion to dismiss submissions. Document filed by New Partners, Inc. d/b/a Partners in Care..(Brady, Patrick) (Entered: 12/10/2020) |
| 12/11/2020 | 149 | DECLARATION of Bobby Hocson in Opposition re: 103 MOTION to Intervene *and Dismiss or Stay*.. Document filed by 1199SEIU United HealthCare Workers East.. (Blackstone, Laureve) (Entered: 12/11/2020) |
| 12/11/2020 | 150 | DECLARATION of Laureve Blackstone in Opposition re: 103 MOTION to Intervene *and Dismiss or Stay*.. Document filed by 1199SEIU United HealthCare Workers East.. (Blackstone, Laureve) (Entered: 12/11/2020) |
| 12/14/2020 | 151 | NOTICE OF APPEARANCE by Mallory Campbell on behalf of PSC Community Services..(Campbell, Mallory) (Entered: 12/14/2020) |
| 12/14/2020 | 152 | ORDER: As discussed at oral argument held on December 14, 2020, the parties may file supplemental briefing on the most important cases regarding finality in this context by December 21, 2020. Submissions should be no more than two double-spaced pages, with regular typeface and font size. (Brief due by 12/21/2020.) (Signed by Judge John G. Koeltl on 12/14/2020) (jwh) (Entered: 12/14/2020) |
| 12/14/2020 | | Minute Entry for proceedings held before Judge John G. Koeltl: Oral Argument held on 12/14/2020 re: 101 MOTION to Dismiss. Filed by LaDonna Lusher, 103 MOTION to Intervene and Dismiss or Stay. Filed by Qun Xiang Ling, Seferina Acosta, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Mei Kum Chu, Carmen Carrasco. (Fletcher, Donnie) (Entered: 01/06/2021) |

| | | |
|---|---|---|
| 12/16/2020 | 153 | DECLARATION of Laureve Blackstone in Opposition re: 103 MOTION to Intervene *and Dismiss or Stay*.. Document filed by 1199SEIU United HealthCare Workers East.. (Blackstone, Laureve) (Entered: 12/16/2020) |
| 12/21/2020 | 154 | RESPONSE in Support of Motion re: 101 MOTION to Dismiss . *Supplemental Brief pursuant to the December 14, 2020 Order*. Document filed by Gail Yan..(Moreno, Michele) (Entered: 12/21/2020) |
| 12/21/2020 | 155 | LETTER addressed to Judge John G. Koeltl from Laureve Blackstone dated December 21, 2020 re: Supplemental Briefing Pursuant to Dec. 14, 2020 Order. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 12/21/2020) |
| 12/24/2020 | 156 | TRANSCRIPT of Proceedings re: CONFERENCE held on 12/14/2020 before Judge John G. Koeltl. Court Reporter/Transcriber: Raquel Robles, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/14/2021. Redacted Transcript Deadline set for 1/25/2021. Release of Transcript Restriction set for 3/24/2021..(Moya, Goretti) (Entered: 12/24/2020) |
| 12/24/2020 | 157 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 12/14/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/24/2020) |
| 02/10/2021 | 158 | LETTER addressed to Judge John G. Koeltl from Michael Taubenfeld dated February 10, 2021 re: Advising the Court that the Chu Intervenors' Case in State Court has been Reinstated. Document filed by Carmen Carrasco, Mei Kum Chu, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling, Ramona de la Cruz..(Taubenfeld, Michael) (Entered: 02/10/2021) |
| 02/18/2021 | 159 | OPINION AND ORDER re: 101 MOTION to Dismiss . filed by LaDonna Lusher, 116 LETTER MOTION for Oral Argument addressed to Judge John G. Koeltl from Douglas J. Klein, Esq. dated July 10, 2020. filed by Alliance for Health, Inc., The First Chinese Presbyterian Community Affairs Home Attendant Corp., 103 MOTION to Intervene *and Dismiss or Stay*. filed by Qun Xiang Ling, Seferina Acosta, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Mei Kum Chu, Carmen Carrasco. The Court has considered all of the arguments of the parties, Proposed Intervenors, and Non-Party Yan. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Proposed Intervenors' motion to intervene is DENIED, the motions to dismiss by the Proposed Intervenors and Non-Party Yan are DENIED, and the petition to confirm the Award is GRANTED. The Clerk is directed to enter judgment accordingly. The Clerk is also directed to close all pending motions and to close this case. SO ORDERED. (Signed by Judge John G. Koeltl on 2/18/2021) (ks) Transmission to Orders and Judgments Clerk for processing. (Entered: 02/18/2021) |
| 02/19/2021 | 160 | CLERK'S JUDGMENT re: 159 Memorandum & Opinion. in favor of 1199SEIU United HealthCare Workers East against ABC Health Services Registry, AccentCare of NY, Inc., Alliance Home Services, Inc., Alliance for Health, Inc., Azor Home Care, Bronx Jewish Community Council Home Attendant Services, Bronxwood Home For the Aged, Inc., Bushwick Stuyvesant Heights Home Attendant, Inc., CABS Homecare, CIDNY Independent Living Services, Care at Home, Chinese-American Planning Council Home |

| | | |
|---|---|---|
| | | Attendant Program, Cooperative Home Care Associates, FEGS Home Attendant Services, Family Home Care of Brooklyn and Queens, Home Care Services for Independent Living, Home Health Management Services, Inc., Isabella Visiting Care, Inc., New Partners, Inc. d/b/a Partners in Care, New York Foundation for Senior Citizens Home Attendant Services, Inc., PSC Community Services, Personal Touch Home Care of N.Y., Inc., Premier Home Health Care, Inc., Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc., Priority Home Services, RAIN, Inc., Region Care, Inc., Richmond Home Needs, Riseboro Home Care, Inc., Riverspring Licensed Homecare Services Agency, Inc., Rockaway Home Attendant, School Settlement Home Attendant Corp., Social Concern Community Development Corp., Special Touch Home Care Services, Inc., St. Nicholas Human Supports Corp., Stella Orton Home Care Agency, Sunnyside Citywide Home Care, Sunnyside Home Care Project, The First Chinese Presbyterian Community Affairs Home Attendant Corp., United Jewish Council of the East Side Home Attendant Service Corp., Wartburg, Carmen Carrasco, Dulce Herrera Palma, Epifania Hichez, Gail Yan, Kara Miller, Mei Kum Chu, Qun Xiang Ling, Sau King Chung, Seferina Acosta. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated February 18, 2021, The Court has considered all of the arguments of the parties, Proposed Intervenors, and Non-Party Yan. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Proposed Intervenors motion to intervene is DENIED, the motions to dismiss by the Proposed Intervenors and Non-Party Yan are DENIED, and the petition to confirm the Award is GRANTED; accordingly, this case is closed. (Signed by Clerk of Court Ruby Krajick on 2/19/2021) (Attachments: # 1 Notice of Right to Appeal) (dt) (Entered: 02/19/2021) |
| 02/19/2021 | | Terminate Transcript Deadlines (dt) (Entered: 02/19/2021) |
| 03/19/2021 | 161 | **FILING ERROR - NO ORDER SELECTED FOR APPEAL** - NOTICE OF APPEAL. Document filed by Gail Yan, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Eugenia Barahona Alvarado. Filing fee $ 505.00, receipt number ANYSDC-24280168. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Lusher, LaDonna) Modified on 3/22/2021 (tp). (Entered: 03/19/2021) |
| 03/19/2021 | 162 | **FILING ERROR - WRONG FILER SELECTED -** NOTICE OF APPEAL from 160 Clerk's Judgment,,,,,,,, 159 Memorandum & Opinion,,,,. Document filed by Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling, Ramona de la Cruz, Maria Diaz. Filing fee $ 505.00, receipt number ANYSDC-24281005. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Taubenfeld, Michael) Modified on 3/22/2021 (tp). (Entered: 03/19/2021) |
| 03/19/2021 | 163 | NOTICE OF APPEAL from 160 Clerk's Judgment,,,,,,,,, 159 Memorandum & Opinion,,,,. Document filed by Eugenia Barahona Alvarado, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Gail Yan. Filing fee $ 505.00, receipt number ANYSDC-24281385. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Lusher, LaDonna) Modified on 3/22/2021 (tp). (Entered: 03/19/2021) |
| 03/22/2021 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Taubenfeld, Michael to RE-FILE Document No. 162 Notice of Appeal. The filing is deficient for the following reason(s): different filer/filers were selected for the appeal than on pdf. Re-file the appeal using the event type Corrected Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed. (tp)** (Entered: 03/22/2021) |

| | | |
|---|---|---|
| 03/22/2021 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 163 Notice of Appeal. (tp) (Entered: 03/22/2021) |
| 03/22/2021 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 163 Notice of Appeal, filed by Eugenia Barahona Alvarado, Leticia Panama Rivas, Gail Yan, Elida Agustina Mejia Herrera, Alvaro Ramirez Guzman were transmitted to the U.S. Court of Appeals..(tp) (Entered: 03/22/2021) |
| 03/22/2021 | 164 | CORRECTED NOTICE OF APPEAL re: 162 Notice of Appeal,, 160 Clerk's Judgment,,,,,,,,,, 159 Memorandum & Opinion,,,,. Document filed by Seferina Acosta, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Maria Diaz, Epifania Hichez, Qun Xiang Ling..(Taubenfeld, Michael) Modified on 3/22/2021 (tp). (Entered: 03/22/2021) |
| 03/22/2021 | | Appeal Fee Paid electronically via Pay.gov: for 164 Corrected Notice of Appeal. Filing fee $ 505.00. Pay.gov receipt number ANYSDC-24281005, paid on 3/19/2021. (tp) (Entered: 03/22/2021) |
| 03/22/2021 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 164 Corrected Notice of Appeal. (tp) (Entered: 03/22/2021) |
| 03/22/2021 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 164 Corrected Notice of Appeal, filed by Maria Diaz, Qun Xiang Ling, Seferina Acosta, Sau King Chung, Epifania Hichez, Mei Kum Chu, Carmen Carrasco were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/22/2021) |
| 04/01/2021 | 165 | NOTICE OF CHANGE OF ADDRESS by James E. McGrath, III on behalf of Premier Home Health Care, Inc.. New Address: Bond, Schoeneck & King PLLC, 600 Third Avenue, 22nd Floor, New York, New York, United States 10016, 646-253-2319.. (McGrath, James) (Entered: 04/01/2021) |
| 04/01/2021 | 166 | NOTICE OF CHANGE OF ADDRESS by James E. McGrath, III on behalf of Priority Home Services. New Address: Bond, Schoeneck & King PLLC, 600 Third Avenue, 22nd Floor, New York, New York, United States 10016, 646-253-2319..(McGrath, James) (Entered: 04/01/2021) |
| 04/01/2021 | 167 | NOTICE OF CHANGE OF ADDRESS by Rebecca Kim Kimura on behalf of Premier Home Health Care, Inc.. New Address: Bond, Schoeneck & King PLLC, 600 Third Avenue, 22nd Floor, New York, New York, United States 10016, 646-253-2309.. (Kimura, Rebecca) (Entered: 04/01/2021) |
| 04/01/2021 | 168 | NOTICE OF CHANGE OF ADDRESS by Rebecca Kim Kimura on behalf of Priority Home Services. New Address: Bond, Schoeneck & King PLLC, 600 Third Avenue, 22nd Floor, New York, New York, United States 10016, 646-253-2309..(Kimura, Rebecca) (Entered: 04/01/2021) |
| 12/22/2021 | 169 | MOTION for Preliminary Injunction . Document filed by Care at Home, Family Home Care of Brooklyn and Queens..(Davidoff, Philip) (Entered: 12/22/2021) |
| 12/22/2021 | 170 | DECLARATION of Philip Davidoff in Support re: 169 MOTION for Preliminary Injunction .. Document filed by Care at Home, Family Home Care of Brooklyn and Queens. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit C2, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G).(Davidoff, Philip) (Entered: 12/22/2021) |
| 12/22/2021 | 171 | MEMORANDUM OF LAW in Support re: 169 MOTION for Preliminary Injunction . . Document filed by Care at Home, Family Home Care of Brooklyn and Queens.. (Davidoff, Philip) (Entered: 12/22/2021) |
| 12/22/2021 | 172 | PROPOSED ORDER TO SHOW CAUSE WITH EMERGENCY RELIEF. Document |

| | | |
|---|---|---|
| | | filed by Care at Home, Family Home Care of Brooklyn and Queens. Related Document Number: 169 ..(Davidoff, Philip) **Proposed Order to Show Cause to be reviewed by Clerk's Office staff.** (Entered: 12/22/2021) |
| 12/22/2021 | 173 | NOTICE OF APPEARANCE by Andrew Williamson on behalf of Care at Home, Family Home Care of Brooklyn and Queens..(Williamson, Andrew) (Entered: 12/22/2021) |
| 12/22/2021 | 174 | NOTICE OF APPEARANCE by Jeffrey Alan Shooman on behalf of Care at Home, Family Home Care of Brooklyn and Queens..(Shooman, Jeffrey) (Entered: 12/22/2021) |
| 12/22/2021 | | Minute Entry for proceedings held before Judge John G. Koeltl: Show Cause Hearing set for 12/23/2021 at 12:00 PM before Judge John G. Koeltl. Dial-in: 888 363-4749, with access code 8140049. (Fletcher, Donnie) (Entered: 12/22/2021) |
| 12/23/2021 | 175 | ORDER: As discussed at the conference held today, Maktumrna Teshabaeva and Jin Hua Deng's opposition to the movants' motion for a preliminary and/or permanent injunction is due by January 14, 2022. The movants' reply is due by January 28, 2022. SO ORDERED. (Signed by Judge John G. Koeltl on 12/23/2021) ( Responses due by 1/14/2022, Replies due by 1/28/2022.) (ks) (Entered: 12/27/2021) |
| 12/27/2021 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER TO SHOW CAUSE WITH EMERGENCY RELIEF. Document No. 172 Proposed Order to Show Cause With Emergency Relief was reviewed and approved as to form. (km)** (Entered: 12/27/2021) |
| 01/14/2022 | 176 | DECLARATION of LaDonna M. Lusher in Opposition re: 169 MOTION for Preliminary Injunction .. Document filed by Maktumma Teshabaeva, Jian Hua Deng. (Attachments: # 1 Exhibit 1 - Summons + Complaint (Teshabaeva Proceeding), # 2 Exhibit 2 - July 16, 2020 Decision and Order Granting Injunction and Denying Arbitration (Teshabaeva Proceeding), # 3 Exhibit 3 - October 14, 2021 1st Dept Order Affirming Injunction and Denying Arbitration (Teshabaeva Proceeding), # 4 Exhibit 4 - January 24, 2020 FHC Notice of Cross-Motion to Compel Arbitration (Teshabaeva Proceeding), # 5 Exhibit 5 - January 14, 2020 Order to Show Cause (Teshabaeva Proceeding), # 6 Exhibit 6 - April 8, 2021 Order on Motion to Compel Discovery (Teshabaeva Proceeding), # 7 Exhibit 7 - December 10, 2021 Order Striking FHC Answer (Teshabaeva Proceeding), # 8 Exhibit 8 - December 10, 2021 Order Denying FHC Motion to Renew and Awarding Sanctions (Teshabaeva Proceeding)).(Moreno, Michele) (Entered: 01/14/2022) |
| 01/14/2022 | 177 | MEMORANDUM OF LAW in Opposition re: 169 MOTION for Preliminary Injunction . . Document filed by Jian Hua Deng, Maktumma Teshabaeva..(Moreno, Michele) (Entered: 01/14/2022) |
| 01/28/2022 | 178 | REPLY MEMORANDUM OF LAW in Support re: 169 MOTION for Preliminary Injunction . . Document filed by Care at Home, Family Home Care of Brooklyn and Queens..(Davidoff, Philip) (Entered: 01/28/2022) |
| 01/28/2022 | 179 | DECLARATION of Philip Davidoff in Support re: 169 MOTION for Preliminary Injunction .. Document filed by Care at Home, Family Home Care of Brooklyn and Queens. (Attachments: # 1 Exhibit H).(Davidoff, Philip) (Entered: 01/28/2022) |
| 02/16/2022 | 180 | MEMORANDUM OPINION AND ORDER re: 169 MOTION for Preliminary Injunction . filed by Care at Home, Family Home Care of Brooklyn and Queens. The foregoing constitutes the Court's findings of fact and conclusions of law. The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movant's motion for preliminary and/or permanent injunction is denied. The Clerk is directed to close Docket No. 169. SO ORDERED. (Signed by Judge John G. Koeltl on 2/16/2022) (ks) (Entered: 02/16/2022) |

| 03/01/2022 | 181 | **FILING ERROR - DEFICIENT PLEADING - FRCP RULE 15 NON-COMPLIANCE** -PETITION TO Confirm Second Arbitration Award ARBITRATION. (Filing Fee $ 402.00, Receipt Number ANYSDC-25795918).Document filed by 1199SEIU United HealthCare Workers East. (Attachments: # 1 Exhibit A - A copy of Arbitrator Martin F. Scheinmans February 25, 2022 Second Arbitration Award, # 2 Exhibit B - A copy of the Collective Bargaining Agreement, # 3 Exhibit C - A copy of the 2014 Memorandum of Agreement, # 4 Exhibit D - A copy of the 2015 Memorandum of Agreement).(Blackstone, Laureve) Modified on 3/2/2022 (pc). (Entered: 03/01/2022) |
| 03/01/2022 | 182 | BRIEF re: 181 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,, . Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 03/01/2022) |
| 03/01/2022 | 183 | AMENDED PETITION amending 181 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,, against ABC Health Services Registry, AccentCare of NY, Inc., Alliance Home Services, Inc., Alliance for Health, Inc., Azor Home Care, Bronx Jewish Community Council Home Attendant Services, Bronxwood Home For the Aged, Inc., Bushwick Stuyvesant Heights Home Attendant, Inc., CABS Homecare, CIDNY Independent Living Services, Care at Home, Chinese-American Planning Council Home Attendant Program, Cooperative Home Care Associates, FEGS Home Attendant Services, Family Home Care of Brooklyn and Queens, Home Care Services for Independent Living, Home Health Management Services, Inc., Isabella Visiting Care, Inc., New Partners, Inc. d/b/a Partners in Care, New York Foundation for Senior Citizens Home Attendant Services, Inc., PSC Community Services, Personal Touch Home Care of N.Y., Inc., Premier Home Health Care, Inc., Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc., Priority Home Services, RAIN, Inc., Region Care, Inc., Richmond Home Needs, Riseboro Home Care, Inc., Riverspring Licensed Homecare Services Agency, Inc., Rockaway Home Attendant, School Settlement Home Attendant Corp., Social Concern Community Development Corp., Special Touch Home Care Services, Inc., St. Nicholas Human Supports Corp., Stella Orton Home Care Agency, Sunnyside Citywide Home Care, Sunnyside Home Care Project, The First Chinese Presbyterian Community Affairs Home Attendant Corp., United Jewish Council of the East Side Home Attendant Service Corp., Wartburg.Document filed by 1199SEIU United HealthCare Workers East. Related document: 181 Petition to Compel/Confirm/Modify/Stay/Vacate Arbitration,,. (Attachments: # 1 Exhibit A - A copy of Arbitrator Martin F. Scheinmans February 25, 2022 Second Arbitration Award, # 2 Exhibit B - A copy of the Collective Bargaining Agreement, # 3 Exhibit C - A copy of the 2014 Memorandum of Agreement, # 4 Exhibit D - A copy of the 2015 Memorandum of Agreement).(Blackstone, Laureve) Modified on 3/2/2022 (pc). Modified on 3/4/2022 (gp). (Entered: 03/01/2022) |
| 03/01/2022 | 184 | BRIEF re: 183 Amended Petition,,,,,,,,, . Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 03/01/2022) |
| 03/02/2022 | 185 | LETTER addressed to Judge John G. Koeltl from Laureve Blackstone dated March 2, 2022 re: Leave to File Amended Petition. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 03/02/2022) |
| 03/03/2022 | 186 | MEMO ENDORSEMENT on re: 185 Letter filed by 1199SEIU United HealthCare Workers East. ENDORSEMENT: Application granted. SO ORDERED. (Signed by Judge John G. Koeltl on 3/3/2022) (ks) (Entered: 03/03/2022) |
| 03/11/2022 | 187 | PROPOSED TEMPORARY RESTRAINING ORDER. Document filed by Seferina Acosta, Eugenia Barahona Alvarado, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Maria Diaz, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Epifania Hichez, Qun Xiang Ling, Leticia Panama Rivas, Gail Yan. Related Document Number: 183 .. |

| | | |
|---|---|---|
| | | (Moreno, Michele) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 03/11/2022) |
| 03/11/2022 | [188](#) | MOTION for Preliminary Injunction ., MOTION for Temporary Restraining Order ., MOTION to Dismiss . Document filed by Seferina Acosta, Eugenia Barahona Alvarado, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Maria Diaz, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Epifania Hichez, Qun Xiang Ling, Leticia Panama Rivas, Gail Yan..(Moreno, Michele) **(Refer to ECF Rule 13.19(b) and (c) for directions regarding promptly alerting the court to this filing.**<br><br>**)** (Entered: 03/11/2022) |
| 03/11/2022 | [189](#) | DECLARATION of LaDonna M. Lusher in Support re: [188](#) MOTION for Preliminary Injunction . MOTION for Temporary Restraining Order . MOTION to Dismiss .. Document filed by Seferina Acosta, Eugenia Barahona Alvarado, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Maria Diaz, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Epifania Hichez, Qun Xiang Ling, Leticia Panama Rivas, Gail Yan. (Attachments: # [1](#) Exhibit 1 - 2022 Arbitration Award, # [2](#) Exhibit 2 - 2020 Arbitration Award, # [3](#) Exhibit 3 - Notice of Appeal, # [4](#) Exhibit 4 - 2d Cir. Order denying motion to dismiss).(Moreno, Michele) (Entered: 03/11/2022) |
| 03/11/2022 | [190](#) | MEMORANDUM OF LAW in Support re: [188](#) MOTION for Preliminary Injunction . MOTION for Temporary Restraining Order . MOTION to Dismiss . . Document filed by Seferina Acosta, Eugenia Barahona Alvarado, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Maria Diaz, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Epifania Hichez, Qun Xiang Ling, Leticia Panama Rivas, Gail Yan..(Moreno, Michele) (Entered: 03/11/2022) |
| 03/11/2022 | | ***\*\*\*NOTICE TO COURT REGARDING PROPOSED ORDER TO SHOW CAUSE WITH EMERGENCY RELIEF. Document No. [187](#) Proposed Temporary Restraining Order, was reviewed and approved as to form. (nd)*** (Entered: 03/11/2022) |
| 03/14/2022 | | Minute Entry for proceedings held before Judge John G. Koeltl: Show Cause Hearing set for 3/15/2022 at 03:30 PM before Judge John G. Koeltl. Dial-in: 888 363-4749, with access code 8140049. (Fletcher, Donnie) (Entered: 03/14/2022) |
| 03/14/2022 | [191](#) | NOTICE OF APPEARANCE by Robert F Milman on behalf of RAIN, Inc...(Milman, Robert) (Entered: 03/14/2022) |
| 03/14/2022 | [192](#) | NOTICE OF APPEARANCE by Gregory R. Begg on behalf of ABC Health Services Registry..(Begg, Gregory) (Entered: 03/14/2022) |
| 03/14/2022 | [193](#) | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR - (SEE DOCUMENT #194) -** NOTICE OF APPEARANCE by Lauren Rayner Davis on behalf of ABC Health Services Registry, Personal Touch Home Care of N.Y., Inc., Premier Home Health Care, Inc., Prestige Home Attendant, Inc. d/b/a All Season Home Attendant..(Davis, Lauren) Modified on 3/15/2022 (lb). (Entered: 03/14/2022) |
| 03/15/2022 | [194](#) | NOTICE OF APPEARANCE by Lauren Rayner Davis on behalf of ABC Health Services Registry, Personal Touch Home Care of N.Y., Inc., Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc...(Davis, Lauren) (Entered: 03/15/2022) |
| 03/15/2022 | [195](#) | NOTICE OF APPEARANCE by Michael D Thompson on behalf of New Partners, Inc. d/b/a Partners in Care..(Thompson, Michael) (Entered: 03/15/2022) |
| 03/15/2022 | [196](#) | NOTICE OF APPEARANCE by Christopher Michael Repole on behalf of AccentCare of |

| | | |
|---|---|---|
| | | NY, Inc., Alliance for Health, Inc., Azor Home Care, Bushwick Stuyvesant Heights Home Attendant, Inc., CABS Homecare, Riverspring Licensed Homecare Services Agency, Inc., St. Nicholas Human Supports Corp., The First Chinese Presbyterian Community Affairs Home Attendant Corp., Wartburg..(Repole, Christopher) (Entered: 03/15/2022) |
| 03/15/2022 | 197 | ORDER with respect to 188 Motion for Preliminary Injunction; denying 188 Motion for TRO. The movants' motion for a temporary restraining order is denied. The petitioner should respond to the movants' motion for a preliminary injunction by March 22, 2022. The movants should reply by March 25, 2022. SO ORDERED. (Signed by Judge John G. Koeltl on 3/15/22) (yv) (Entered: 03/16/2022) |
| 03/15/2022 | | Set/Reset Deadlines as to 188 MOTION for Preliminary Injunction . MOTION for Temporary Restraining Order . MOTION to Dismiss . Responses due by 3/22/2022 (yv) (Entered: 03/16/2022) |
| 03/15/2022 | | Minute Entry for proceedings held before Judge John G. Koeltl: Show Cause Hearing held on 3/15/2022. (Fletcher, Donnie) (Entered: 04/04/2022) |
| 03/16/2022 | 198 | LETTER addressed to Judge John G. Koeltl from Gregory R. Begg, Esq. dated March 16, 2022 re: Entities Personal Touch LI and Personal Touch WC. Document filed by ABC Health Services Registry, Personal Touch Home Care of N.Y., Inc., Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc...(Begg, Gregory) (Entered: 03/16/2022) |
| 03/16/2022 | 199 | MEMO ENDORSEMENT on re: 198 Letter, filed by ABC Health Services Registry, Prestige Home Care, Inc., Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Personal Touch Home Care of N.Y., Inc.. ENDORSEMENT: APPLICATION GRANTED. SO ORDERED. (Signed by Judge John G. Koeltl on 3/16/2022) (kv) (Entered: 03/16/2022) |
| 03/17/2022 | 200 | NOTICE OF APPEARANCE by Lauren Rayner Davis on behalf of Personal Touch LI, Personal Touch WC..(Davis, Lauren) (Entered: 03/17/2022) |
| 03/17/2022 | 201 | NOTICE OF APPEARANCE by Gregory R. Begg on behalf of Personal Touch LI, Personal Touch WC..(Begg, Gregory) (Entered: 03/17/2022) |
| 03/18/2022 | 202 | NOTICE OF APPEARANCE by Richard Jay Reibstein on behalf of Special Touch Home Care Services, Inc...(Reibstein, Richard) (Entered: 03/18/2022) |
| 03/22/2022 | 203 | RESPONSE re: 183 Amended Petition,,,,,,,, . Document filed by AccentCare of NY, Inc... (Repole, Christopher) (Entered: 03/22/2022) |
| 03/22/2022 | 204 | RESPONSE re: 183 Amended Petition,,,,,,,, . Document filed by Azor Home Care.. (Repole, Christopher) (Entered: 03/22/2022) |
| 03/22/2022 | 205 | RESPONSE re: 183 Amended Petition,,,,,,,, . Document filed by Bushwick Stuyvesant Heights Home Attendant, Inc...(Repole, Christopher) (Entered: 03/22/2022) |
| 03/22/2022 | 206 | RESPONSE re: 183 Amended Petition,,,,,,,, . Document filed by CABS Homecare.. (Repole, Christopher) (Entered: 03/22/2022) |
| 03/22/2022 | 207 | RESPONSE re: 183 Amended Petition,,,,,,,, . Document filed by The First Chinese Presbyterian Community Affairs Home Attendant Corp...(Repole, Christopher) (Entered: 03/22/2022) |
| 03/22/2022 | 208 | RESPONSE re: 183 Amended Petition,,,,,,,, . Document filed by Riverspring Licensed Homecare Services Agency, Inc...(Repole, Christopher) (Entered: 03/22/2022) |
| 03/22/2022 | 209 | RESPONSE re: 183 Amended Petition,,,,,,,, . Document filed by St. Nicholas Human |

| | | Supports Corp...(Repole, Christopher) (Entered: 03/22/2022) |
|---|---|---|
| 03/22/2022 | 210 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by Wartburg..(Repole, Christopher) (Entered: 03/22/2022) |
| 03/22/2022 | 211 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by Alliance for Health, Inc...(Repole, Christopher) (Entered: 03/22/2022) |
| 03/22/2022 | 212 | DECLARATION of Laureve D. Blackstone in Opposition re: 188 MOTION for Preliminary Injunction . MOTION for Temporary Restraining Order . MOTION to Dismiss .. Document filed by 1199SEIU United HealthCare Workers East. (Attachments: # 1 Exhibit A - The transcript from the March 15, 2022 Oral Argument on Non-Parties Motion for a Temporary Restraining Order, # 2 Exhibit B - The Supplement to the Modified Award, dated March 16, 2022).(Blackstone, Laureve) (Entered: 03/22/2022) |
| 03/22/2022 | 213 | MEMORANDUM OF LAW in Opposition re: 188 MOTION for Preliminary Injunction . MOTION for Temporary Restraining Order . MOTION to Dismiss . . Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 03/22/2022) |
| 03/22/2022 | 214 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by New Partners, Inc. d/b/a Partners in Care..(Brady, Patrick) (Entered: 03/22/2022) |
| 03/22/2022 | 215 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by Premier Home Health Care, Inc...(McGrath, James) (Entered: 03/22/2022) |
| 03/22/2022 | 216 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by Priority Home Services..(McGrath, James) (Entered: 03/22/2022) |
| 03/22/2022 | 217 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by ABC Health Services Registry..(Begg, Gregory) (Entered: 03/22/2022) |
| 03/22/2022 | 218 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Personal Touch LI..(Begg, Gregory) (Entered: 03/22/2022) |
| 03/22/2022 | 219 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Personal Touch WC..(Begg, Gregory) (Entered: 03/22/2022) |
| 03/22/2022 | 220 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by ABC Health Services Registry..(Begg, Gregory) (Entered: 03/22/2022) |
| 03/22/2022 | 221 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by Personal Touch LI..(Begg, Gregory) (Entered: 03/22/2022) |
| 03/22/2022 | 222 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by Personal Touch WC..(Begg, Gregory) (Entered: 03/22/2022) |
| 03/22/2022 | 223 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by Personal Touch Home Care of N.Y., Inc...(Begg, Gregory) (Entered: 03/22/2022) |
| 03/22/2022 | 224 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by Prestige Home Care, Inc...(Begg, Gregory) (Entered: 03/22/2022) |
| 03/22/2022 | 225 | RESPONSE re: 183 Amended Petition,,,,,,,,, . Document filed by Prestige Home Attendant, Inc. d/b/a All Season Home Attendant..(Begg, Gregory) (Entered: 03/22/2022) |
| 03/22/2022 | 226 | LETTER MOTION for Extension of Time to File Answer re: 183 Amended Petition,,,,,,,,, addressed to Judge John G. Koeltl from Lisa M Griffith dated 3/22/2022. Document filed by Region Care, Inc...(Griffith, Lisa) (Entered: 03/23/2022) |
| 03/23/2022 | 227 | LETTER addressed to Judge John G. Koeltl from Michael P. Collins dated March 23, |

| | | |
|---|---|---|
| | | 2022 re: PSC does not dispute assertions of the Amended Petition of 1199SEIU and adopts arguments of 1199SEIU in opposition to the motion to dismiss and preliminary injunction. Document filed by PSC Community Services..(Collins, Michael) (Entered: 03/23/2022) |
| 03/23/2022 | 228 | ORDER granting 226 Letter Motion for Extension of Time to Answer re 226 LETTER MOTION for Extension of Time to File Answer re: 183 Amended Petition,,,,,,,,, addressed to Judge John G. Koeltl from Lisa M Griffith dated 3/22/2022.. APPLICATION GRANTED. SO ORDERED. (Signed by Judge John G. Koeltl on 3/23/2022) Region Care, Inc. answer due 3/25/2022 (ks) (Entered: 03/23/2022) |
| 03/23/2022 | 229 | LETTER addressed to Judge John G. Koeltl from Richard J. Reibstein on behalf of Special Touch Home Care Services dated March 23, 2022 re: Responding to Amended Petition Docket No. 183 and Motion for Preliminary Injunction, TRO and to Dismiss Docket No. 188.. Document filed by Special Touch Home Care Services, Inc...(Reibstein, Richard) (Entered: 03/23/2022) |
| 03/24/2022 | 230 | LETTER addressed to Judge John G. Koeltl from Patrick G. Brady dated March 24, 2022 re: not objecting to relief requested in Amended Petition (ECF No. 183) and opposing motion to dismiss Amended Petition and request for preliminary injunction (ECF No. 188). Document filed by New Partners, Inc. d/b/a Partners in Care..(Brady, Patrick) (Entered: 03/24/2022) |
| 03/25/2022 | 231 | REPLY MEMORANDUM OF LAW in Support re: 188 MOTION for Preliminary Injunction . MOTION for Temporary Restraining Order . MOTION to Dismiss . . Document filed by Seferina Acosta, Eugenia Barahona Alvarado, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Maria Diaz, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Epifania Hichez, Qun Xiang Ling, Leticia Panama Rivas, Gail Yan..(Moreno, Michele) (Entered: 03/25/2022) |
| 03/25/2022 | 232 | RESPONSE to 183 Amended Petition,,,,,,,,,. Document filed by Region Care, Inc... (Griffith, Lisa) (Entered: 03/25/2022) |
| 03/28/2022 | 233 | TRANSCRIPT of Proceedings re: CONFERENCE held on 3/15/2022 before Judge John G. Koeltl. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/18/2022. Redacted Transcript Deadline set for 4/28/2022. Release of Transcript Restriction set for 6/27/2022..(Moya, Goretti) (Entered: 03/28/2022) |
| 03/28/2022 | 234 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 3/15/22 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 03/28/2022) |
| 04/05/2022 | 235 | LETTER addressed to Judge John G. Koeltl from Laureve Blackstone dated April 5, 2022 re: Badgerow v. Walters. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 04/05/2022) |
| 04/07/2022 | 236 | OPINION AND ORDER re: 188 MOTION for Preliminary Injunction . MOTION for Temporary Restraining Order . MOTION to Dismiss . filed by Eugenia Barahona Alvarado, Maria Diaz, Leticia Panama Rivas, Sau King Chung, Elida Agustina Mejia Herrera, Alvaro Ramirez Guzman, Epifania Hichez, Qun Xiang Ling, Gail Yan, Seferina |

| | | |
|---|---|---|
| | | Acosta, Carmen Carrasco, Mei Kum Chu. The foregoing constitutes the Court's findings of fact and conclusions of law. The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movants' motions to dismiss and for a preliminary injunction are denied. The Clerk is directed to close Docket No. 188. SO ORDERED. (Signed by Judge John G. Koeltl on 4/7/2022) (ks) (Entered: 04/07/2022) |
| 04/08/2022 | 237 | LETTER addressed to Judge John G. Koeltl from Gregory R. Begg dated April 8, 2022 re: Shannon Azzaro. Document filed by ABC Health Services Registry, Personal Touch Home Care of N.Y., Inc., Personal Touch LI, Personal Touch WC, Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc...(Begg, Gregory) (Entered: 04/08/2022) |
| 04/08/2022 | 238 | FIRST LETTER MOTION for Leave to File Cross-motion to partially vacate arbitration award and motion to intervene *(proposed briefing schedule)* addressed to Judge John G. Koeltl from LaDonna Lusher dated 04/08/2022. Document filed by Seferina Acosta, Eugenia Barahona Alvarado, Carmen Carrasco, Mei Kum Chu, Sau King Chung, Maria Diaz, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Dulce Herrera Palma, Epifania Hichez, Qun Xiang Ling, Leticia Panama Rivas, Gail Yan, Ramona de la Cruz.. (Lusher, LaDonna) (Entered: 04/08/2022) |
| 04/08/2022 | 239 | MEMO ENDORSEMENT on re: 237 Letter Shannon Azzaro, filed by ABC Health Services Registry, Prestige Home Care, Inc., Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Personal Touch Home Care of N.Y., Inc., Personal Touch WC, Personal Touch LI. ENDORSEMENT: Application Granted. So Ordered., (Attorney Shannon Danielle Azzaro terminated.) (Signed by Judge John G. Koeltl on 4/8/22) (yv) (Entered: 04/11/2022) |
| 04/09/2022 | 240 | ORDER granting 238 Letter Motion for Leave to File Document. APPLICATION GRANTED. SO ORDERED. (Signed by Judge John G. Koeltl on 4/9/2022) (ks) (Entered: 04/11/2022) |
| 04/09/2022 | | Set/Reset Deadlines: Motions due by 4/26/2022. Responses due by 5/3/2022 Replies due by 5/10/2022. (ks) (Entered: 04/11/2022) |
| 04/26/2022 | 241 | MOTION to Intervene . Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Gail Yan, Qun Xiang Ling, Rafaela Cruceta, Virtudes Duran, Wai Kam Lou, Yue Ming Wu, Cui Ying Mai..(Moreno, Michele) (Entered: 04/26/2022) |
| 04/26/2022 | 242 | DECLARATION of LaDonna Lusher in Support re: 241 MOTION to Intervene .. Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan. (Attachments: # 1 Exhibit 1 - Guzman v. FCP Complaint and Amended Complaint, # 2 Exhibit 2 - Alvarado v. Alliance Complaint and Amended Complaint, # 3 Exhibit 3 - Chu v. CPC Complaint and Amended Complaint, # 4 Exhibit 4 - Affidavit of Gail Yan, # 5 Exhibit 5- Affidavit of Rafaela Cruceta, # 6 Exhibit 6 - Affidavit of Virtudes Duran, # 7 Exhibit 7 - Affidavit of Wai Kam Lou, # 8 Exhibit 8 - Jan 9 2020 Union Letter, # 9 Exhibit 9 - Nov. 7 2016 Union Letter, # 10 Exhibit 10 - January 13, 2020 Alvarado Order, # 11 Exhibit 11 - Jan 13 2020 Guzman Injunction Order).(Moreno, Michele) (Entered: 04/26/2022) |
| 04/26/2022 | 243 | MEMORANDUM OF LAW in Support re: 241 MOTION to Intervene . . Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang |

| | | |
|---|---|---|
| | | Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan.. (Moreno, Michele) (Entered: 04/26/2022) |
| 04/26/2022 | 244 | MOTION to Vacate Arbitration . Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan..(Moreno, Michele) (Entered: 04/26/2022) |
| 04/26/2022 | 245 | DECLARATION of LaDonna Lusher in Support re: 244 MOTION to Vacate Arbitration .. Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan. (Attachments: # 1 Exhibit 1 - 2020 Arbitration Award, # 2 Exhibit 2 - 2022 Arbitration Award, # 3 Exhibit 3 - Guzman v. FCP Complaint and Amended Complaint, # 4 Exhibit 4 - Alvarado v. Alliance Complaint and Amended Complaint, # 5 Exhibit 5 - Chu v. CPC Complaint and Amended Complaint, # 6 Exhibit 6 - Affidavit of Gail Yan, # 7 Exhibit 7- Affidavit of Rafaela Cruceta, # 8 Exhibit 8 - Affidavit of Virtudes Duran, # 9 Exhibit 9 - Affidavit of Wai Kam Lou, # 10 Exhibit 10 - Notice of Appeal, # 11 Exhibit 11 - Jan 13 2020 Guzman Injunction Order).(Moreno, Michele) (Entered: 04/26/2022) |
| 04/26/2022 | 246 | MEMORANDUM OF LAW in Support re: 244 MOTION to Vacate Arbitration . . Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan..(Moreno, Michele) (Entered: 04/26/2022) |
| 04/27/2022 | 247 | ORDER: The Court received the attached letter in opposition to the Union's pending motion to confirm the Second Award. SO ORDERED. (Signed by Judge John G. Koeltl on 4/27/2022) (ks) (Entered: 04/27/2022) |
| 05/03/2022 | 248 | ORDER: The Court received another copy of the attached letter in opposition to the Union's pending motion to confirm the Second Award. See also ECF No. 247. SO ORDERED. (Signed by Judge John G. Koeltl on 5/3/2022) (ks) (Entered: 05/03/2022) |
| 05/03/2022 | 249 | AFFIDAVIT of Bobby Hocson in Opposition re: 244 MOTION to Vacate Arbitration ., 241 MOTION to Intervene .. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 05/03/2022) |
| 05/03/2022 | 250 | MEMORANDUM OF LAW in Opposition re: 241 MOTION to Intervene . . Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 05/03/2022) |
| 05/03/2022 | 251 | MEMORANDUM OF LAW in Opposition re: 244 MOTION to Vacate Arbitration . . Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 05/03/2022) |
| 05/03/2022 | 252 | MEMORANDUM OF LAW in Opposition re: 241 MOTION to Intervene . . Document filed by Chinese-American Planning Council Home Attendant Program..(Kirschner, Kenneth) (Entered: 05/03/2022) |
| 05/03/2022 | 253 | DECLARATION of Kenneth Kirschner in Opposition re: 241 MOTION to Intervene .. Document filed by Chinese-American Planning Council Home Attendant Program. (Attachments: # 1 Exhibit A - CPC CBA, # 2 Exhibit B - 2015 MOA, # 3 Exhibit C - April 17, 2017 Order, # 4 Exhibit D - Chu Dismissal Order, # 5 Exhibit E - February 2020 Order, # 6 Exhibit F - Email from Kirschner).(Kirschner, Kenneth) (Entered: 05/03/2022) |
| 05/10/2022 | 254 | REPLY AFFIRMATION of LaDonna M. Lusher in Support re: 241 MOTION to |

| | | Intervene .. Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan. (Attachments: # 1 Exhibit 12 - New York State Home Care Registry for Movant Virtudes Duran, # 2 Exhibit 13 - New York State Home Care Registry for Movants Yue Ming Wu and Cui Ying Mai).(Moreno, Michele) (Entered: 05/10/2022) |
|---|---|---|
| 05/10/2022 | 255 | REPLY MEMORANDUM OF LAW in Support re: 241 MOTION to Intervene . . Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan..(Moreno, Michele) (Entered: 05/10/2022) |
| 05/10/2022 | 256 | REPLY MEMORANDUM OF LAW in Support re: 244 MOTION to Vacate Arbitration . . Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan..(Moreno, Michele) (Entered: 05/10/2022) |
| 05/10/2022 | 257 | REPLY MEMORANDUM OF LAW in Support re: 241 MOTION to Intervene . . Document filed by Mei Kum Chu, Sau King Chung, Qun Xiang Ling..(Taubenfeld, Michael) (Entered: 05/10/2022) |
| 05/11/2022 | 258 | ORDER: The Movants are directed to submit courtesy copies of the papers filed in connection with their motion to intervene and motion to vacate. See Individual Practice II.C. SO ORDERED. (Signed by Judge John G. Koeltl on 5/11/2022) (ks) (Entered: 05/12/2022) |
| 06/08/2022 | 259 | LETTER MOTION for Leave to File Affidavits (Doc. No. 241, Motion to Intervene and Doc. No. 244, Motion to Partially Vacate) addressed to Judge John G. Koeltl from LaDonna M. Lusher dated June 8, 2022. Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan. (Attachments: # 1 Exhibit A - Affidavits).(Moreno, Michele) (Entered: 06/08/2022) |
| 06/09/2022 | 260 | LETTER RESPONSE in Opposition to Motion addressed to Judge John G. Koeltl from Kenneth Kirschner dated June 9, 2022 re: 259 LETTER MOTION for Leave to File Affidavits (Doc. No. 241, Motion to Intervene and Doc. No. 244, Motion to Partially Vacate) addressed to Judge John G. Koeltl from LaDonna M. Lusher dated June 8, 2022. . Document filed by Chinese-American Planning Council Home Attendant Program..(Kirschner, Kenneth) (Entered: 06/09/2022) |
| 06/10/2022 | 261 | LETTER addressed to Judge John G. Koeltl from Laureve Blackstone dated June 10, 2022 re: Dismissal of DFR Charges. Document filed by 1199SEIU United HealthCare Workers East..(Blackstone, Laureve) (Entered: 06/10/2022) |
| 06/24/2022 | 262 | OPINION AND ORDER re: 259 LETTER MOTION for Leave to File Affidavits (Doc. No. 241, Motion to Intervene and Doc. No. 244, Motion to Partially Vacate) addressed to Judge John G. Koeltl from LaDonna M. Lusher dated June 8, 2022. filed by Eugenia Barahona Alvarado, Leticia Panama Rivas, Sau King Chung, Elida Agustina Mejia Herrera, Alvaro Ramirez Guzman, Rafaela Cruceta, Yue Ming Wu, Wai Kam Lou, Qun Xiang Ling, Virtudes Duran, Gail Yan, Mei Kum Chu, Cui Ying Mai, 244 MOTION to Vacate Arbitration . filed by Eugenia Barahona Alvarado, Leticia Panama Rivas, Sau King Chung, Elida Agustina Mejia Herrera, Alvaro Ramirez Guzman, Rafaela Cruceta, Yue Ming Wu, Wai Kam Lou, Qun Xiang Ling, Virtudes Duran, Gail Yan, Mei Kum Chu, Cui Ying Mai, 241 MOTION to Intervene . filed by Eugenia Barahona Alvarado, |

| | | |
|---|---|---|
| | | Leticia Panama Rivas, Sau King Chung, Elida Agustina Mejia Herrera, Alvaro Ramirez Guzman, Rafaela Cruceta, Yue Ming Wu, Wai Kam Lou, Qun Xiang Ling, Virtudes Duran, Gail Yan, Mei Kum Chu, Cui Ying Mai. The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movants' motion to intervene is denied. The Movants' motion to vacate the Award in part is denied. The Union's Amended Petition to confirm the Award is granted. The Clerk is directed to enter judgment accordingly. The Clerk is further directed to close all pending motions and to close this case. SO ORDERED. (Signed by Judge John G. Koeltl on 6/24/2022) (ks) Transmission to Orders and Judgments Clerk for processing. (Entered: 06/24/2022) |
| 06/28/2022 | 263 | CLERK'S JUDGMENT re: 262 Memorandum & Opinion in favor of 1199SEIU United HealthCare Workers East against ABC Health Services Registry, AccentCare of NY, Inc., Alliance Home Services, Inc., Alliance for Health, Inc., Azor Home Care, Bronx Jewish Community Council Home Attendant Services, Bronxwood Home For the Aged, Inc., Bushwick Stuyvesant Heights Home Attendant, Inc., CABS Homecare, CIDNY Independent Living Services, Care at Home, Chinese-American Planning Council Home Attendant Program, Cooperative Home Care Associates, FEGS Home Attendant Services, Family Home Care of Brooklyn and Queens, Home Care Services for Independent Living, Home Health Management Services, Inc., Isabella Visiting Care, Inc., New Partners, Inc. d/b/a Partners in Care, New York Foundation for Senior Citizens Home Attendant Services, Inc., PSC Community Services, Personal Touch Home Care of N.Y., Inc., Personal Touch LI, Personal Touch WC, Premier Home Health Care, Inc., Prestige Home Attendant, Inc. d/b/a All Season Home Attendant, Prestige Home Care, Inc., Priority Home Services, RAIN, Inc., Region Care, Inc., Richmond Home Needs, Riseboro Home Care, Inc., Riverspring Licensed Homecare Services Agency, Inc., Rockaway Home Attendant, School Settlement Home Attendant Corp., Social Concern Community Development Corp., Special Touch Home Care Services, Inc., St. Nicholas Human Supports Corp., Stella Orton Home Care Agency, Sunnyside Citywide Home Care, Sunnyside Home Care Project, The First Chinese Presbyterian Community Affairs Home Attendant Corp., United Jewish Council of the East Side Home Attendant Service Corp., Wartburg. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated June 24, 2022, the Court has considered all of the arguments of the parties. To the extent not discussed, the arguments are either moot or without merit. For the foregoing reasons, the Movants' motion to intervene is denied. The Movants' motion to vacate the Award in part is denied. The Union's Amended Petition to confirm the Award is granted; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 6/28/2022) (Attachments: # 1 Right to Appeal) (km) (Entered: 06/28/2022) |
| 06/28/2022 | | Terminate Transcript Deadlines (km) (Entered: 06/28/2022) |
| 07/22/2022 | 264 | NOTICE OF APPEAL from 263 Clerk's Judgment,,,,,,,,,, 262 Memorandum & Opinion,,,,,. Document filed by Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Rafaela Cruceta, Virtudes Duran, Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Qun Xiang Ling, Wai Kam Lou, Cui Ying Mai, Leticia Panama Rivas, Yue Ming Wu, Gail Yan. Filing fee $ 505.00, receipt number ANYSDC-26448537. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Moreno, Michele) Modified on 7/22/2022 (nd). (Entered: 07/22/2022) |
| 07/22/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 264 Notice of Appeal,,..(nd) (Entered: 07/22/2022) |
| 07/22/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 264 Notice of Appeal,, filed by Eugenia Barahona Alvarado, Leticia Panama Rivas, Sau King Chung, Elida Agustina Mejia Herrera, Alvaro Ramirez |

Guzman, Rafaela Cruceta, Yue Ming Wu, Wai Kam Lou, Qun Xiang Ling, Virtudes Duran, Gail Yan, Mei Kum Chu, Cui Ying Mai were transmitted to the U.S. Court of Appeals..(nd) (Entered: 07/22/2022)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/04/2022 17:24:49 | | | |
| **PACER Login:** | mamoreno | **Client Code:** | First Chinese |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-03611-JGK |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# ADDENDUM A TO FORM C – EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
──────────────────────────────────

**1199SEIU UNITED HEALTHCARE WORKERS**
**EAST**,                                        **20-cv-3611 (JGK)**

                          **Petitioner,**         **OPINION AND ORDER**

        **- against -**

**PSC COMMUNITY SERVICES, ET AL.,**

                          **Respondents.**

──────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The present motions concern an award rendered in an
arbitration pursuant to Section 301 of the Labor Management
Relations Act of 1947 (the "LMRA") involving the petitioner,
1199SEIU United Healthcare Workers East (the "Union") and the
respondents, a group of home care agencies (the "Award," ECF No.
183-1). In the Award, the arbitrator determined that the
respondents had committed various wage and hour laws violations
with respect to over 100,000 of the respondents' current and
former Union member-employees. Among other things, the
arbitrator ordered the respondents to create and contribute to a
compensation fund of approximately $30 million (the "Fund") and
to disburse the funds to eligible claimants. The Union
petitioned this Court to confirm the Award on March 1, 2022. See
ECF No. 183 (the "Amended Petition").

On March 11, 2022, twelve former employees of certain respondents moved for a preliminary injunction enjoining the parties from creating the Fund and otherwise implementing the Award. These movants also moved to dismiss the Amended Petition for lack of subject matter jurisdiction. The Court denied these motions in an Opinion and Order dated April 7, 2022. See 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs., No. 20-cv-3611, 2022 WL 1046464 (S.D.N.Y. Apr. 7, 2022) (the "Preliminary Injunction Order").

On April 26, 2022, thirteen former employees of three respondents, Employers Alliance for Health ("Alliance"), the First Chinese Presbyterian Community Affairs Home Attendant Corporation, Inc. ("FCP"), and the Chinese-American Planning Council Home Attendant Program ("CPC") (the "Movants") moved to intervene in this action for the purpose of seeking partial vacatur of the Award. The Movants also moved to vacate the aspects of the Award that pertain to themselves and certain former employees of those respondents.

For the following reasons, the Movant's motion to intervene for the purpose of seeking partial vacatur of the Award is **denied.** The Movant's motion to vacate the Award in part is **denied.** The Union's Amended Petition to confirm the Award is **granted.**

**I**

**A**

The Court assumes familiarity with the Preliminary
Injunction Order and its Opinion and Order dated February 19,
2021, in which the Court confirmed an earlier jurisdictional
award of the arbitrator and denied motions of former employees
of certain respondents to intervene and to dismiss the Union's
petition to confirm that award or to stay confirmation of that
award. See 1199SEIU United Healthcare Workers E. v. PSC Cmty.
Servs., 520 F. Supp. 3d 588 (S.D.N.Y. 2021) (the "First
Confirmation Order"). The facts relevant to resolving the
current motions are set forth below.

By way of brief background, in the jurisdictional award
issued on April 17, 2020, the arbitrator determined that
pursuant to the collective bargaining agreements ("CBAs")
between the Union and the respondents, the arbitrator had
arbitral jurisdiction to adjudicate the wage and hours claims of
former and current Union members irrespective of whether their
employment terminated prior to the effective date of a 2015
memorandum of agreement between the Union and the respondents
(the "Pre-2015 MOA Employees"). First Confirmation Order, 520 F.
Supp. 3d at 597. The Union petitioned this Court to confirm that
award, which the Court granted in the First Confirmation Order.

Several former employees of certain respondents had moved
to intervene in this action and moved to dismiss that petition.
The Court found these former employees' arguments against
confirmation of the first jurisdictional award to be without
merit and denied their motion to intervene, finding that they
lacked standing to challenge the award and that any purported
interest that they had in opposing confirmation of the award was
"too contingent or remote to be cognizable under Rule 24."[1] First
Confirmation Order, 520 F. Supp. 3d at 600. These former
employees filed a non-expedited appeal of the First Confirmation
Order with the Court of Appeals for the Second Circuit, which is
currently pending. Following the First Confirmation Order, the
Union and the respondents proceeded to litigate the merits of
the Union's grievance before the arbitrator.

The arbitrator then issued the Award on February 25, 2022.[2]
The Award is discussed in the Preliminary Injunction Order in
detail and that discussion is incorporated here by reference.
See Preliminary Injunction Order, 2022 WL 1046464, at *2-3. In
sum, the arbitrator determined that the respondents violated
wage and hour laws during the relevant time period and ordered

---

[1] Unless otherwise noted, this Opinion and Order omits all alterations,
omissions, emphasis, quotation marks, and citations in quoted text.

[2] The arbitrator issued a supplement to the Award on March 16, 2022, that
corrected certain minor errors in the Award. See ECF No. 212-2. For the
purposes of this Opinion and Order, references to the "Award" include the
arbitrator's March 16, 2022, supplement.

the respondents to contribute to the Fund on a per capita basis.
The arbitrator arrived at the per capita contribution remedy
after weighing several competing considerations, including the
financial stability of the home care industry. The arbitrator
ultimately concluded that a "per capita contribution greater
than two hundred fifty ($250) dollars is not sustainable and
will, inevitably, lead to deserving employees failing to recover
upon their meritorious claims," and ordered the creation and
financing of the Fund accordingly. Amended Petition ¶ 31. Once
fully financed, the Fund will exceed $30 million.

**B**

In the Preliminary Injunction Order, the Court denied the
motion by twelve non-party movants for a preliminary injunction
enjoining the parties' compliance with the Award. In that Order,
the Court also denied these movants' motion to dismiss the
Amended Petition for lack of subject matter jurisdiction. Eight
of the twelve movants who filed those motions are now in the
group of Movants presently before the Court.[3]

In the Preliminary Injunction Order, the Court found that
the movants lacked standing to seek the requested preliminary

---

[3] The twelve Movants who filed the motions for a preliminary injunction and to
dismiss were Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia
Panama Rivas, Gail Yan, Eugenia Barahona Alvarado, Mei Kum Chu, Sau King
Chung, Qun Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta, and
Maria Diaz. Guzman, Herrrea, Rivas, Yan, Alvarado, Chu, Chung, and Ling are
now part of the current group of Movants, along with Rafaela Cruceta,
Virtudes Duran, Wai Kam Lou, Yue Ming Wu, and Cui Ying Mai.

injunction and dismissal of the Amended Petition. See Preliminary Injunction Order, 2022 WL 1046464, at *3-6. The Court also found the movants' argument that the pending appeal of the First Confirmation Order stripped this Court of subject matter jurisdiction over the Amended Petition to be without merit. Id. at *8-9. In so holding, the Court reasoned that questions relating to the confirmation of the Award are not "involved in" the pending appeal of the First Confirmation Order. Id.

Finally, in the Preliminary Injunction Order, the Court afforded the movants an opportunity to file a motion to vacate the Award in part and directed the movants to explain in that motion why they have standing to challenge the Award notwithstanding the Preliminary Injunction Order and the First Confirmation Order. Id. at *10. The Court also directed the movants to "either file a motion to intervene for the purposes of challenging the [Amended] Petition or explain why they should be permitted to seek partial vacatur of the [Award] as non-parties and non-intervenors." Id.

C

On April 26, 2022, the thirteen Movants filed a motion to vacate the Award in part and a motion to intervene for the purpose of seeking partial vacatur of the Award. The Union opposed both motions and CPC filed a brief in opposition to the

6

request to intervene by Chu, Chung, and Ling (the "CPC Movants").

The thirteen Movants are former employees of either CPC, FCP, or Alliance. The CPC Movants are former employees of CPC who ceased to be CPC employees before CPC entered the 2015 MOA. All three CPC Movants are named plaintiffs in an action against CPC alleging wage and hour violations that was filed in the New York State Supreme Court on April 12, 2016. See Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc., No. 651947/2016 (N.Y. Sup. Ct., filed April 12, 2016) (the "Chu Action"). After CPC removed the Chu Action to federal court, Judge Forrest granted the CPC Movants' motion to remand and the case was remanded back to the state court. See Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc., 194 F. Supp. 3d 221 (S.D.N.Y. 2016). On April 17, 2017, the state court stayed the Chu Action pending resolution of a putative class action against CPC that was also pending in this district before Judge Forrest, Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc., No. 15-cv-9605 (S.D.N.Y., filed Dec. 8. 2015) (the "Chan Action"). The CPC Movants are members of the proposed class in the Chan Action.

In the Chan Action, Judge Forrest concluded that the Pre-2015 MOA Employees of CPC were bound by the arbitration provisions of the 2015 MOA and granted CPC's motion to compel

arbitration. <u>Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.</u>, 180 F. Supp. 3d 236, 241-42 (S.D.N.Y. 2016). After the state court lifted the stay in the <u>Chu</u> Action in 2021, CPC again removed the case to federal court. <u>See</u> <u>Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.</u>, No. 21-cv-2115 (S.D.N.Y., filed Mar. 11, 2021). Judge Torres then stayed the <u>Chu</u> Action pending resolution of the appeal of this Court's order denying a motion to remand in <u>Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corporation</u>, No. 20-cv-3929 (S.D.N.Y., filed May 20, 2020) (the "<u>Guzman</u> Action"). No class has been certified in the <u>Chu</u> Action.

Guzman, Herrera, Rivas, and Alvarado comprise a second set of Movants (the "Carved-Out Movants"). <u>See</u> Preliminary Injunction Order, 2022 WL 1046464, at *3 & n.3. These Movants are former employees of either FCP or Alliance and are the named plaintiffs in either the <u>Guzman</u> Action or a related case, <u>Alvarado v. Alliance for Health, Inc.</u>, No. 20-cv-3930 (S.D.N.Y. filed May 20, 2020) (the "<u>Alvarado</u> Action"). These Movants were expressly carved out of the arbitrator's awards because courts had previously enjoined arbitration of their claims. Consequently, the Carved-Out Movants are not bound by the arbitrator's awards.

The <u>Guzman</u> and <u>Alvarado</u> Actions concern alleged wage and hour violations and were both filed in state court and then

removed to this Court. The plaintiffs filed motions to remand in both actions, which this Court denied in an Opinion and Order dated February 18, 2021. See Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp., 520 F. Supp. 3d 353 (S.D.N.Y. 2021). This Court then certified an interlocutory appeal of that Opinion and Order. That appeal is pending and has been consolidated with the appeal of the First Confirmation Order before the Court of Appeals for the Second Circuit. See Guzman Action, ECF No. 42; Alvarado Action, ECF No. 41. No motions for class certification were filed and no classes were certified in the Guzman or Alvardo Actions.

With respect to Wu and Mai, in their brief in support of their motion to intervene, the Movants represented that "signed declarations" from Wu and Mai were "forthcoming, and will be filed as soon as they are executed." Mot. to Intervene at 2 n.5. In their opposition brief, the Union correctly noted that Wu and Mai had not, at that point, submitted any facts in support of their request to intervene. The Movants then appended documents from the New York State Home Care Registry to their reply brief which appear to show that (1) Wu is a former employee of CPC; (2) Mai is a former employee of FCP; and (3) both Wu's and Mai's respective terms of employment ended before their former employers entered the 2015 MOA. See ECF No. 254-2. The Movants never filed signed declarations from Wu or Mai with the Court.

9

Yan did not submit any evidence relating to her relationship to this dispute in connection with the pending motions. However, in a declaration filed in support of her motion to dismiss the petition to confirm the first jurisdictional award, Yan declared that she worked for FCP from approximately June 2010 to June 2014. See ECF No. 101-6.

Cruceta, Duran, and Lou each submitted declarations in which they declared that they are former employees of FCP and that they each ceased their respective terms of employment before FCP entered the 2015 MOA. See ECF Nos. 242-5, 242-6, 242-7. The Union submitted a declaration by Bobby Hocson, the Union's director of management information systems, who declared that the Union keeps records containing their members' dates of employment. ECF No. 249 ¶¶ 1-2. Mr. Hocson declared that the Union's records indicate that Lou's employment did not end until approximately August 2016 and that Duran's employment ended in approximately August 2010. Id. ¶¶ 3-4.

In sum, the CPC Movants are named plaintiffs in the Chu Action and the Carved-Out Movants are named plaintiffs in either the Guzman or Alvarado Actions. No classes have been certified in any of those actions. The Movants submit that Yan, Curceta, Duran, Lou, Wu, and Mai are each class members of at least one of the proposed classes in the Guzman, Alvarado, or Chu Actions. See Mot. to Intervene at 3. The Union contends that Lou and

10

Duran are not Pre-2015 Employees because Lou's employment
continued after the 2015 MOA was executed and because Duran's
last day of employment pre-dated the time period covered by the
Award.

III

The Movants contend that they have standing to seek partial
vacatur of the Award and that they satisfy the requirements to
intervene permissively and of right for the purpose of
challenging parts of the Award. The Union argues that the
Movants' motion to intervene should be denied because all the
Movants lack standing to seek partial vacatur of the Award and
have otherwise failed to demonstrate that they meet the
requirements of Federal Rule of Civil Procedure 24.

Rule 24(a)(2) provides for intervention as of right to any
party who can "(1) file a timely motion; (2) show an interest in
the litigation; (3) show that its interest may be impaired by
the disposition of the action; and (4) show that its interest is
not adequately protected by the parties to the action." First
Confirmation Order, 520 F. Supp. 3d at 599. Although permissive
intervention is left to the discretion of the district court,
courts consider substantially the same factors whether the claim
for intervention is of right under Rule 24(a)(2) or permissive
under Rule 24(b)(1)(B). Id. The court of appeals has instructed
that a "failure to satisfy any one of these four requirements is

a sufficient ground to deny the application." Floyd v. City of
New York, 770 F.3d 1051, 1057 (2d Cir. 2014). Additionally, a
request to intervene as of right or permissively must "be
accompanied by a pleading that sets out the claim or defense for
which intervention is sought." Fed. R. Civ. P. 24(c).

Moreover, if proposed intervenors seek different relief
from that which the parties to an action are seeking, then the
proposed intervenors must demonstrate that they have Article III
standing to pursue that relief. Preliminary Injunction Order,
2022 WL 1046464, at *4 (citing Chester v. Laroe Estates, Inc.,
137 S. Ct. 1645, 1651 (2017)). Although the Supreme Court in
Chester determined only that a proposed intervenor as of right
must demonstrate Article III standing in this context, lower
courts analyzing Chester have explained persuasively that the
reasoning employed by the Supreme Court applies equally in the
context of permissive intervention. See, e.g., Cross Sound Cable
Co., LLC v. Long Island Lighting Co., No. 21-cv-2771, 2022 WL
247996, at *9-10 (E.D.N.Y. Jan. 27, 2022) (collecting cases).

**A**

There is no dispute that the Movants are seeking to
intervene for the purpose of pursuing different relief from the
Union, which seeks confirmation of the Award, and the
respondents, who do not oppose confirmation. See, e.g., Mot. to
Intervene at 8. Accordingly, each Movant's request to intervene

12

must be denied unless that Movant can demonstrate the Movant's standing to seek partial vacatur of the Award.

In the First Confirmation Order and the Preliminary Injunction Order, the Court found that various former employees of the respondents (including some of the current Movants) lacked standing to oppose confirmation of the first jurisdictional award and to seek dismissal of the Amended Petition and a preliminary injunction enjoining enforcement of the Award. The Court explained in both Opinions that in the context of labor arbitrations, "an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." First Confirmation Order, 520 F. Supp. 3d at 598 (quoting Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir. 1994)). In order to have standing "to attack an arbitration award under section 301 of the [LMRA]," an employee must make a "showing of fraud or deceit" or demonstrate that "the union breached its statutory duty of fair representation" or "failed to act upon the award." First Confirmation Order, 520 F. Supp. 3d at 599.

These Movants, like the movants who opposed confirmation of the first jurisdictional award and the movants who sought dismissal of the Amended Petition and a preliminary injunction enjoining enforcement of the Award, were not parties to the

arbitration. Moreover, as before, there is no dispute that the Movants have failed to make a showing of fraud or deceit or demonstrate that the Union breached a duty of fair representation or failed to act upon the Award.[4] Accordingly, Katir compels the conclusion that the Movants lack standing to challenge the Award, as it did in the contexts of the First Confirmation Order and the Preliminary Injunction Order.

The Movants advance several unpersuasive arguments in support of their alleged standing to seek partial vacatur of the Award notwithstanding Katir. The Movants first point to Ass'n of Contracting Plumbers of City of N.Y., Inc. v. Local Union No. 2 United Ass'n of Journeymen, 841 F.2d 461 (2d Cir. 1988), and its progeny. In Contracting Plumbers, the court of appeals determined that a national union that was not party to an arbitration involving its local union and several workers' associations had standing to seek vacatur of the resulting arbitration award. Id. at 463. The court of appeals reasoned

---

[4] On April 27, 2022, the Court received a letter from Sarah Ahn of the Flushing Workers Center, a non-party, in which Ms. Ahn wrote that Chan and Chu had "filed charges" against the Union with the National Labor Relations Board ("NLRB") and requested that this Court not confirm the Award until the NLRB rendered a final decision. See ECF No. 247. On June 9, 2022, Region 29 of the NLRB dismissed the charges filed by Chu and Chan, concluding that "there is insufficient evidence to establish that the Union violated the [National Labor Relations Act] as alleged or in any other manner encompassed [in the] charge." ECF No. 261 at 3. In any event, in their motion, the Movants did not argue that the Union violated any duties. To the contrary, the Movants argued that the Union did not owe the Movants any such duties. See Mot. to Intervene at 5-6. Accordingly, there is no basis on which to conclude that the Union breached any duty of fair representation.

14

that because the arbitration award prevented the national union from "exercising its constitutional authority to establish work jurisdiction among its local unions," the national union had "a sufficient stake in the outcome" of the proceedings and consequently had standing to seek vacatur of the arbitration award. Id. at 466-67. In making that determination, the court of appeals explained:

> We are not persuaded by those cases which have held that an individual union member, who was not a party to the arbitration, lacked standing under § 10 [of the Federal Arbitration Act] to challenge the results of an arbitration between his union and his employer, absent a showing that the union breached its duty of fair representation. These courts have reasoned that allowing an individual employee to challenge the arbitration award would undermine the union's ability to pursue grievances on behalf of all its members and would destroy the employer's confidence in the union's authority. The situation here is quite the opposite. Refusing to recognize the [national union's] standing to challenge the arbitration awards and injunctions would undermine one of the primary reasons for the [national union's] existence: to avoid trade line jurisdiction disputes between the local unions.

Id. at 467.

The Contracting Plumbers court therefore recognized the general rule that non-party individual union members may not challenge awards rendered in arbitrations between their union and employer and made clear that its holding regarding a non-party national union's standing to challenge an award did not disturb that rule. The conclusion that Contracting Plumbers does not remedy the Movants' lack of standing is underscored by the

15

court of appeals' decision in <u>Katir</u>, which post-dated <u>Contracting Plumbers</u> and is squarely on point.

The Movants next argue that they need not contend that the Union breached its duty of fair representation to have standing to seek partial vacatur of the Award because the Union was not authorized to represent any Pre-2015 MOA Employees when the Union entered into the 2015 MOA and then later prosecuted the arbitration. In support of this theory, the Movants rely on various state court decisions that found that certain Pre-2015 MOA Employees were not bound by the arbitration provisions of the 2015 MOA. Therefore, according to the Movants, the Union cannot have breached a duty of fair representation to the Pre-2015 MOA Employees because the Union owed this group of former employees no such duty. <u>See</u> Mot. to Intervene at 6 (citing cases including <u>Williams v. Teamsters Local Union No. 727</u>, No. 03-cv-2122, 2003 WL 22424726, at *2 (N.D. Ill. Oct. 22, 2003) (concluding that a union did not owe a plaintiff a duty of fair representation in connection with a dispute between the plaintiff and the union that arose after the plaintiff became an employer and ceased to be a member of the collective bargaining unit that was represented by the union)).

The movants who sought to intervene for the purpose of challenging the first jurisdictional award made a similar

16

argument, which the Court found to be without merit. As
explained in the First Confirmation Order:

> The [movants] argue that the Union cannot represent its
> former employees, either in assenting to the 2015 MOA or
> in initiating the grievance, and thus — at least — former
> employees did not "consent" to arbitration. But this
> misconceives the relationship between a Union and its
> bargaining unit members and oversimplifies the CBA at
> issue. As the "exclusive bargaining" agent for home care
> employees of the Respondents, the Union had authority to
> enter into CBAs and subsequent agreements, on behalf of
> its bargaining unit members. The [movants'] arguments
> that former employees cannot be bound by a CBA or cannot
> be represented by their Union in arbitration are without
> merit. To accept that conclusory argument would
> essentially allow Union members to opt-out of their
> obligations under a collective bargaining agreement by
> simply withdrawing from their union prior to bringing
> suit. Indeed, courts in this Circuit have compelled
> former employees to arbitrate claims under CBA
> alternative dispute provisions, including in instances
> where supplemental agreements were executed after the
> plaintiff ceased employment.

First Confirmation Order, 520 F. Supp. 3d at 607-08.

The Movants' argument is therefore irreconcilable with the
First Confirmation Order and the first jurisdictional award, in
which the arbitrator determined that the claims of Pre-2015 MOA
Employees were arbitrable. Accordingly, because the Union had
the authority to enter the 2015 MOA and prosecute the
arbitration on behalf of the Pre-2015 MOA Employees, under
Katir, the Movants' failure to allege a breach of the Union's
duty of fair representation in connection with these activities
is dispositive on the issue of the Movants' standing.

**B**

The Movants advance several additional unpersuasive
arguments in support of their alleged standing. To satisfy the
requirements of Article III standing, a party must show that (1)
the party has suffered an actual or imminent injury in fact,
which is concrete and particularized; (2) there is a causal
connection between the injury and defendant's actions; and (3)
it is likely that a favorable decision in the case will redress
the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555,
560-61 (1992). "The party invoking federal jurisdiction bears
the burden of establishing these elements." Id. at 561; see
also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107, 2015 WL
9462083, at *3 (S.D.N.Y. Dec. 23, 2015). The Movants generally
contend that they have standing to challenge the Award because
the Award (1) purports to resolve their wage and hour claims for
a sum that is less than "full satisfaction" of those claims; and
(2) "potentially impact[s]" the ability of certain Movants from
moving to certify classes in the Guzman, Alvarado, and Chu
Actions. See Mot. to Intervene at 4, 7. These arguments are
without merit as to all the Movants.

First, the Carved-Out Movants lack standing to seek partial
vacatur of the Award for substantially the same reasons that
they lacked standing to seek a preliminary injunction enjoining
enforcement of the Award. As explained in the Preliminary

Injunction Order, the Carved-Out Movants are not bound by the
Award and the Award did not resolve any claims that they may
have against their former employers. Consequently, the Carved-
Out Movants' "active, ongoing efforts to prosecute their claims
in other forums will not be impeded by the [Award] in any way."
Preliminary Injunction Order, 2022 WL 1046464, at *5. The
Carved-Out Movants dispute this, arguing that confirmation of
the Award potentially impacts their ability to seek
certification of the putative classes in the Guzman and Alvarado
Actions, in which the Carved-Out Movants are the named
plaintiffs. But the Carved-Out Movants have pointed to no legal
authority that supports the proposition that confirmation of an
arbitration award that could have a speculative impact on a
potential forthcoming motion for class certification in a
separate action is a legally cognizable injury in fact.[5] See,

---

[5] The Movants rely on inapposite cases including Deposit Guaranty Nat'l Bank
v. Roper, 445 U.S. 326 (1980), United States Parole Comm'n v. Geraghty, 445
U.S. 388 (1980), and their progeny. These cases generally stand for the
proposition that named plaintiffs in putative class actions have standing to
appeal adverse rulings on class certification even if the named plaintiffs'
individual claims have been mooted or fully satisfied by the defendants. See
Bais Yaakov of Spring Valley v. Educ. Testing Serv., 251 F. Supp. 3d 724,
739-40 (S.D.N.Y. 2017) (discussing and summarizing Roper and Geraghty).
Specifically, in Roper, the Supreme Court reasoned that the satisfaction of
a named plaintiff's individual claim did not moot the entire action "so long as
the [named plaintiff] retained an economic interest in class certification."
445 U.S. at 333. Accordingly, if named plaintiffs in this context were not
permitted to appeal denials of class certification, then their ability to
protect this economic interest would be completely extinguished. This total
impairment to seek review of a denial of class certification is not
comparable to the claimed purported injury here – the abstract risk of a
potential impediment to class certification caused remotely, if at all, by
confirmation of an arbitration award in a separate proceeding to which the
named plaintiffs are not parties. Significantly, the claims of the Carved-Out

19

e.g., Eddystone Rail Co., LLC v. Jamex Transfer Servs. LLC, 289
F. Supp. 3d 582, 590-91 (S.D.N.Y. 2018) (proposed intervenors
lacked standing to seek vacatur of an arbitration award where
their alleged injury in fact was that confirmation of the award
would adversely affect their defenses in a separate action to
which the proposed intervenors were parties).

Moreover, appeals of interlocutory orders in the Guzman and
Alvarado Actions are currently pending before the court of
appeals. Motions for class certification have not yet been filed
in either action. Any such motions could only be filed at some
indeterminate time after the appeals in those cased are
resolved. Accordingly, any admittedly "potential[]" impact of
the Award on the Carved-Out Movants' purported ability to seek
class certification is remote, speculative, and insufficient to
constitute an injury in fact. See Mot. to Intervene at 4.

For similar reasons, the CPC Movants do not have standing
based on their alleged interest in class certification in the
Chu Action. No motion for class certification has been filed yet
and the action is stayed pending resolution of the appeals in
the Guzman and Alvarado Actions. Accordingly, any alleged injury

---

Movants have not been resolved by the Award, much less denied, and the
Carved-Out Movants are therefore not comparable to the plaintiffs in the
cases cited by the Movants.

to the CPC Movants based on a potential impediment to class certification is speculative and not cognizable.

Next, all the Movants that were not carved out from the Award do not have standing based on their dissatisfaction with how their claims were resolved in the arbitration. Katir is on point and dispositive. In Katir, the petitioner's union initiated an arbitration with Columbia University, the employee's former employer, after the petitioner was fired. 15 F.3d at 24. The arbitrator determined that Columbia had "just cause" to fire the petitioner and the petitioner's union did not seek to vacate the resulting award. Id. The petitioner then filed an action seeking vacatur of that award. Id.

The court of appeals determined that the petitioner's dissatisfaction with the resolution of arbitration did not confer standing upon the petitioner in the absence of an allegation that the union breached a duty of fair representation. Id. at 24-25. Likewise, the Movants here may be dissatisfied with the damages awarded by the arbitrator, but under Katir this dissatisfaction with the resolution of the arbitration cannot be a legally cognizable injury without an allegation that the Union breached its duties.[6]

---

[6] The Union also contends that Duran and Lou lack standing for the additional reason that they are not Pre-2015 MOA Employees because their terms of employment ended too early and too late, respectively. The Movants dispute this and submit that Duran's and Lou's correct dates of employment show that they are properly classified as Pre-2015 MOA Employees. The Movants further

Finally, the Movants argue that they have standing pursuant to Federal Rule of Civil Procedure 71 to intervene for the purposes of enforcing various state and federal court orders. Rule 71 provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." The Movants contend that they obtained orders in the Alvarado, Guzman, and Chu Actions that in substance provide that their claims are not arbitrable and that they have standing under Rule 71 to enforce those orders in this action.

The order from the Alvarado Action on which the Movants rely concluded that "Alvarado is not bound by the arbitration provision" of the CBA and 2015 MOA. Lorentti-Herrara v. Alliance for Health, Inc., 104 N.Y.S.3d 103, 104 (App. Div. 2019). The Movants cite two orders from the Guzman Action, in which the state courts found that the claims of Guzman, Herrera, and Rivas could not be arbitrated. Guzman v. The First Chinese Presbyterian Community Affairs Home Attendant Corp., No.

---

argue that the Court may not resolve these factual disputes in favor of the Union at this stage of the proceedings. Although it is accurate that all well-pleaded allegations in a proposed intervenor's pleading are accepted as true when resolving a motion to intervene, see, e.g., Avaras v. Clarkstown Cent. Sch. Dist., No. 15-cv-2042, 2021 WL 5180832, at *1 (S.D.N.Y. Nov. 8, 2021), the Movants' motion to intervene here was not accompanied by any pleading. Cf. Fed. R. Civ. P. 24(c) (motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.") (emphasis added). In any event, irrespective of whether Duran and Lou are in fact pre-2015 MOA employees, they lack standing for the same reasons that the other Movants lack standing.

157401/2016, 2019 WL 1502944, at *3 (N.Y. Sup. Ct. Apr. 5, 2019) ("Since [Guzman, Herrara, and Rivas] left the employ of [FCP] prior to December 1, 2015, the effective date of the 2015 MOA, the mandatory ADR provision of the 2015 MOA was inapplicable to them."); ECF No. 245-11 (enjoining arbitration of Guzman's, Herrara's, and Rivas's claims).

These orders do not support the Alvarado, Guzman, Herrara, and Rivas's standing pursuant to Rule 71 to seek partial vacatur of the Award. There can be no reasonable dispute that these orders have been implemented and fully complied with given that all four of these Movants were expressly carved out of the Award. Accordingly, confirmation of the Award does not affect these Movants' ability to prosecute their claims in other forums or infringe on any rights conferred by these state court orders.

The CPC Movants rely on the order from the <u>Chu</u> Action in which Judge Forrest granted the CPC Movants' motion to remand and denied CPC's motion to compel arbitration as moot for lack of subject matter jurisdiction. See <u>Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc.</u>, 194 F. Supp. 3d 221 (S.D.N.Y. 2016). In the course of rendering that decision, Judge Forrest suggested that the CPC Movants were not bound by the 2015 MOA. See <u>id.</u> at 228-29. The CPC Movants contend that this constituted a holding of Judge Forrest's order and can be enforced here pursuant to Rule 71.

23

This argument is without merit. The "relief" that Judge Forrest ordered in her decision was remanding the Chu Action and denying CPC's motion to compel for lack of subject matter jurisdiction. There is no dispute that the CPC Movants obtained that relief. There is therefore no basis for using Rule 71 to enforce Judge Forrest's order here. Judge Forrest's observations about the 2015 MOA were dicta and did not constitute an aspect of the relief afforded to the CPC Movants. See also First Confirmation Order, 520 F. Supp. 3d at 608 n.17 (explaining that the passage from the Chu Action on which the Movants now rely "clearly was dicta").

For these reasons, all the Movants lack standing to seek partial vacatur of the Award. Accordingly, the Movants' motion to intervene for the purposes of seeking partial vacatur of the Award is denied.

### c

For largely the same reasons that the Movants lack standing, the motion to intervene should also be denied because the Movants lack a sufficient interest in this litigation under Rule 24. The Carved-Out Movants lack an interest in this dispute because they are not bound by the Award and confirmation of the Award will not impede their ability to prosecute their claims in other forums. All the Movants that claim an interest in the confirmation of the Award based on the Award's potential impact

24

on their ability to seek class certification in other actions should not be permitted to intervene because any such interest is speculative, remote, and contingent. See, e.g., Eddystone, 289 F. Supp. 3d at 592-93 ("The Proposed Intervenors' apparent interest, as best this Court can discern, is the right to challenge the Arbitration Award because confirmation of such award will adversely affect their ability to mount a defense in [a separate action]. . . . But that winding articulation of the Proposed Intervenors' interest merely underscores its contingent and remote nature.").

Finally, the Movants that claim an interest in this proceeding because the Award resolves their wage and hour claims for an unsatisfactory amount should not be permitted to intervene for the purpose of challenging the Award. Because the Union was authorized under the LMRA, CBAs, and 2015 MOA to prosecute the arbitration on behalf of the Movants and to resolve their claims, the Movants do not have a cognizable interest in this action absent a showing that the Union breached its duties. See F. W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Loc. No. 781, 629 F.2d 1204, 1210 (7th Cir. 1980) ("[I]ndividual employees may not intervene in or maintain suits under the collective bargaining agreement to set aside arbitration awards reached in pursuance of the grievance procedure, particularly in opposition to the union, so long as

25

the union has represented the employees fairly. These principles, and the policies underlying them, reflect the philosophy of collective bargaining incorporated in the LMRA and exemplify the fundamental policy of entrusting labor disputes and grievances to the good faith discretion of exclusive bargaining agents."); U.S. Postal Serv. v. Am. Postal Workers Union, 564 F. Supp. 545, 550 (S.D.N.Y. 1983) (quoting Acuff v. Papermakers and Paperworkers, AFL-CIO, 404 F.2d 169, 171 (5th Cir. 1968)) ("It would be paradoxical in the extreme if the union, which is authorized to decide whether a grievance is to be pursued to the arbitration stage at all, could not be authorized to assume full responsibility for a grievance it did pursue, without the intervention of the individual union member immediately concerned."); Int'l Longshore & Warehouse Union, Loc. 142 v. McCabe Hamilton & Renny Co., No. 08-cv-458, 2009 WL 2143639, at *2-4 (D. Haw. July 14, 2009); see also Rodriguez v. New York Found. for Senior Citizens Home Attendant Servs., Inc., No. 15-cv-9817, 2016 WL 11707094, at *3 (S.D.N.Y. July 14, 2016); Germosen v. ABM Indus. Corp., No. 13-cv-1978, 2014 WL 4211347, at *6 & n.16 (S.D.N.Y. Aug. 26, 2014).

Accordingly, because all the Movants lack standing and because they have not demonstrated that they have a sufficient interest in this action to warrant intervention as of right or permissively, the Movants' motion to intervene is denied.

26

**IV**

The Union has petitioned this Court to confirm the Award and the respondents have not opposed its confirmation. The Movants filed a motion to vacate the aspects of the Award that relate to the Movants and all Pre-2015 MOA Employees of Alliance, FCP, and CPC.[7]

"Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998); 29 U.S.C. § 185. The LMRA "establishes a federal policy of promoting industrial stabilization through collective bargaining agreements, with a particular emphasis on private arbitration of grievances," and a "clear preference for the private resolution of labor disputes." Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). "Under [the LMRA's] framework of self-government, the collective bargaining agreement is not just a contract, but 'a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate,'" that "are negotiated and refined over time

---

[7] Because the Movants lack standing to seek partial vacatur of the Award and may not intervene in this action, the Movants' motion to vacate the Award in part is moot. However, for the sake of completeness, the arguments advanced in that motion are addressed here and, for the reasons explained below, are without merit.

by the parties themselves so as to best reflect their priorities, expectations, and experience." Id.

Accordingly, a federal court's review of an LMRA arbitration award is "narrowly circumscribed and highly deferential." A&A Maint. Enter., Inc. v. Ramnarain, 982 F.3d 864, 868 (2d Cir. 2020). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998) (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987)). Instead, a court's role is "simply to determine whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." New York City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of New York, Inc., 826 F.3d 611, 618 (2d Cir. 2016). "Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained, . . . [i]t is the arbitrator's construction of the contract and assessment of the facts that are dispositive, 'however good, bad, or ugly.'" Nat'l Football League Mgmt. Council, 820 F.3d at 536 (quoting Oxford Health Plans LLC v.

Sutter, 569 U.S. 564, 573 (2013)). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract," or "improvident, even silly" mistakes. Misco, 484 U.S. at 36, 39; see also Nat'l Football League Mgmt. Council, 820 F.3d at 536. Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. United States Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

The Union argues persuasively that the Award is thorough, rational, and well-founded. As summarized in the Preliminary Injunction Order:

> The arbitrator determined that the respondents violated the Covered Statutes during relevant time periods. The arbitrator ordered a per capita contribution remedy to compensate the respondents' current and former employees for these violations. The arbitrator explained that he arrived at the per capita contribution remedy after considering several submissions, including employee affidavits and the respondents' financial records, along with other factors including the financial stability of the home care industry. The arbitrator ultimately concluded that a per capita contribution greater than two hundred fifty ($250) dollars is not sustainable and will, inevitably, lead to deserving employees failing to recover upon their meritorious claims.

Preliminary Injunction Order, 2022 WL 1046464, at *2.

In making these determinations, the arbitrator also relied on "the parties' submissions, including their joint stipulation

of facts, addenda to the joint stipulation of facts, evidence of
the [respondents'] pay practices, and assertions made during
conference and hearings held during the course of this
proceeding." Amended Petition ¶ 29. The arbitrator further
explained that in rendering the Award, he was guided by the
parties' intention of adopting a "fair and expeditious process
for resolving that disputes" and empowering the arbitrator "to
fashion a remedy which takes into account conditions in the
industry and existing realities affecting the [respondents] and
employees alike." Id. ¶ 32. A review of the Award demonstrates
that the arbitrator carefully balanced these considerations when
he fashioned a remedy that resulted in a Fund of more than $30
million for over 100,000 current and former Union members.

The Movants advance no arguments that go to the substantive
merits of the Award.[8] Accordingly, because an arbitration award
rendered pursuant to the LMRA is entitled to a high level of
deference and because the Award is reasonable and well-founded,
the Award should be confirmed.

---

[8] Although the Movants did not advance any arguments in their motion to vacate
the Award in part that go to the merits of the Award, Chan and Chu appear to
have raised issues relating to the Award's compensation formula in their
charge before the NLRB. In its decision dismissing the charge, Region 29 of
the NLRB found the arguments by Chan and Chu to be without merit. See ECF No.
261 at 2-3 ("Contrary to what you have claimed, the [Award] does not
arbitrarily distribute funds equally to all employees in the class, but
rather compensates employees consistent with a formula that accounts for
which employees had worked 24-hour shifts.").

In support of their argument that the Award should be vacated in part, the Movants largely recycle arguments that this Court has previously considered and found to be without merit. The Movants first argue that the arbitrator exceeded his power because he resolved the claims of the Pre-2015 MOA Employees of Alliance, FCP, and CPC even though these former employees are not bound by the 2015 MOA. The Movants contend that the arbitrator's prior rulings regarding arbitrability and arbitral jurisdiction in the first jurisdictional award were erroneous and that this Court should review the arbitrator's threshold determination of the arbitrability of the Pre-2015 MOA Employees' claims under a de novo standard of review. But in the case on which the Movants rely for this argument, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995), the Supreme Court explained that "a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration." Id. at 943. And in the First Confirmation Order, this Court already concluded that:

> The CBA delegated questions of arbitrability to the Arbitrator by reference to the AAA Rules. Although the question of whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is presumptively an issue for judicial determination, the matter may be committed to the arbitrator if the parties clearly and unmistakably so provide. Courts in this Circuit have recognized that when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, such as the AAA Rules, the incorporation serves as clear and

31

> unmistakable evidence of the parties' intent to delegate
> such issues to an arbitrator.
> . . .
> [T]he CBA and 2015 MOA evince a clear consent to
> arbitrate and delegate questions of arbitrability to the
> arbitrator . . ..

First Confirmation Order, 520 F. Supp. 3d at 606-08.

This Court then confirmed the first jurisdictional award, including the arbitrator's determinations regarding the arbitrability of the Pre-2015 MOA Employees' claims. The Movants have offered no persuasive reason for why these conclusions should be revisited or upset at this stage in the litigation.

Next, the Movants cite various court decisions that largely pre-date the First Confirmation Order in which other courts found that the claims of certain Pre-2015 MOA Employees should not be arbitrated.[9] But the arbitrator determined in the first jurisdictional award that the claims of nearly all the Pre-2015 MOA Employees were arbitrable, and the Court confirmed that award. The Movants contend that these decisions by other courts somehow bind this Court now as "law of the case," but this argument is without merit. Under the law of the case doctrine, courts "generally adhere to prior decisions in subsequent stages

---

[9] Once again, the Movants also argue that the Court is "bound" to follow Agarunova v. Stella Orton Home Care Agency, Inc., 794 F. App'x 138 (2d Cir. 2020). The Court rejected this argument in both the First Confirmation Order and the Preliminary Injunction Order because in Agarunova, the court of appeals expressly declined to consider whether the question of arbitrability was delegated to the arbitrator. First Confirmation Order, 520 F. Supp. 3d at 608; Preliminary Injunction Order, 2022 WL 1046464, at *8 n.12.

of the same case unless cogent and compelling reasons militate
otherwise." Choi v. Tower Res. Capital LLC, 2 F.4th 10, 21 (2d
Cir. 2021) (emphasis added). Unlike the First Confirmation
Order, the decisions cited by the Movants were not rendered by
this Court in the course of this case. To the extent that the
law of the case doctrine is applicable here, it suggests that
the Court should not depart from the First Confirmation Order
absent compelling reasons, which the Movants have failed to
provide.

Finally, for the first time in their reply brief, the
Movants argue that this Court lacks subject matter jurisdiction
to consider the Amended Petition because of the pending appeal
of the First Confirmation Order. This Court already rejected a
substantially identical argument in the Preliminary Injunction
Order:

> A pending appeal only divests the district court of
> jurisdiction respecting the questions raised and decided
> in the order that is on appeal. Accordingly, the issue
> of this Court's jurisdiction over the [Amended] Petition
> turns on whether questions relating to the confirmation
> of the [Award] are "involved in" the pending appeal of
> the [First] Confirmation Order.
>
> The appeal of the [First] Confirmation Order and the
> pending [Amended] Petition to confirm the [Award] raise
> distinct questions. The questions currently before the
> court of appeals concern the arbitrability of the Pre-
> 2015 MOA Employees' claims and whether this Court's
> confirmation of the arbitrator's jurisdictional
> determinations was correct. By contrast, the [Amended]
> Petition concerns the merits of the entirety of the
> [Award], which resolved the wages and hours claims of

33

approximately 100,000 current and former Union members and fashioned a remedy that the arbitrator deemed to be appropriate in view of several competing considerations. These circumstances are illustrative of the general principle that merits issues on the one hand, and issues of jurisdiction and arbitrability on the other, are distinct inquiries that turn on the resolution of different questions. Accordingly, because the questions raised and decided in the [First] Confirmation Order are distinct from those raised by the [Amended] Petition to confirm the [Award], this Court has jurisdiction to consider the [Amended] Petition.

Preliminary Injunction Order, 2022 WL 1046464, at *8-9. None of the twelve movants who previously sought a preliminary injunction enjoining enforcement of the Award and dismissal of the Amended Petition (eight of whom are movants here) filed an appeal of the Preliminary Injunction Order.

The Movants contend that the Union's opposition to the Movants' motion to vacate demonstrates that the Court's prior ruling on subject matter jurisdiction was erroneous because in their papers, the Union raised issues that are "involved in" the pending appeal of the First Confirmation Order such as arbitrability. This argument is misplaced. The only reason that the Union addressed these issues was because the Movants chose to rehash previously rejected arguments attacking the first jurisdictional award in their opening brief rather than to discuss the Award presently before the Court. The fact that the Movants opted to raise inapposite, previously resolved arguments in its motion and thereby forced the Union to respond to them

does not demonstrate that the issues that are actually raised by the Amended Petition and are currently before this Court — those relating to the merits of the Award — are "involved in" the issues that will be decided in the pending appeal of the First Confirmation Order.

In sum, the Court has subject matter jurisdiction over the Amended Petition and all the Movants' arguments against confirmation of the Award are without merit. Accordingly, Union's Amended Petition to confirm the Award is granted.[10]

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movants' motion to intervene is **denied.** The Movants' motion to vacate the Award in part is **denied.** The Union's Amended Petition to confirm the Award is **granted.**

---

[10] The Movants' motion to intervene and motion to vacate the Award in part were due by April 26, 2022. See ECF No. 240. On June 8, 2022, the Movants filed a letter motion for leave to file affidavits by three individuals who purport to be Pre-2015 MOA Employees of CPC and requested that these affidavits be incorporated into the Movants' motions. See ECF No. 259. The three affiants have never appeared in this action and have not filed motions to intervene. Moreover, the affidavits include impermissible legal conclusions regarding the arbitrability of these affiants' wage and hour claims against CPC. See, e.g., ECF No. 259-1 ¶¶ 5-6. Finally, these affidavits were filed nearly a month after the Movants' motions were fully briefed and the Movants provided no persuasive reason why this untimeliness should be excused. For these reasons, the Movants' motion for leave to file three additional affidavits in support of their motions is denied.

The Clerk is directed to enter judgment accordingly. The Clerk is further directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**      **New York, New York**
              **June 24, 2022**

_____
      **John G. Koeltl**
**United States District Judge**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
1199 SEIU UNITED HEALTHCARE WORKERS
EAST,

                          Petitioner,

       -against-                                20 **CIVIL** 3611 (JGK)

                                                      **JUDGMENT**

PSC COMMUNITY SERVICES, ET AL.,

                         Respondents.
------------------------------------------------------------X

       It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons
stated in the Court's Opinion and Order dated June 24, 2022, the Court has considered all of the
arguments of the parties. To the extent not discussed, the arguments are either moot or without
merit. For the foregoing reasons, the Movants' motion to intervene is denied. The Movants'
motion to vacate the Award in part is denied. The Union's Amended Petition to confirm the
Award is granted; accordingly, the case is closed.

**Dated:** New York, New York

     June 28, 2022

                                      **RUBY J. KRAJICK**

                                      **Clerk of Court**

           **BY:**                   K. Mango

                                      **Deputy Clerk**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**1199SEIU UNITED HEALTHCARE WORKERS**
**EAST,**                                                      **20-cv-3611 (JGK)**

                                   **Petitioner,**        **OPINION AND ORDER**

            **- against -**

  **PSC COMMUNITY SERVICES, ET AL.,**

                                   **Respondents.**

────────────────────────────────

**JOHN G. KOELTL, District Judge:**

     The present motions concern an award rendered in an
arbitration pursuant to Section 301 of the Labor Management
Relations Act of 1947 (the "LMRA") involving the petitioner,
1199SEIU United Healthcare Workers East (the "Union") and the
respondents, a group of home care agencies. In the award, the
arbitrator determined that the respondents had committed various
wages and hours laws violations with respect to over 100,000 of
the respondents' current and former Union member-employees. The
arbitrator ordered the respondents to create and contribute to a
compensation fund of approximately $30 million (the "Fund"). The
Union, which prosecuted the arbitration on behalf of its current
and former members, opted not to take any attorney's fees from
the Fund.

     Twelve former employees of certain respondents (the
"Movants"), seven of whom were expressly excluded from the

1

award, now seek a preliminary injunction that would prevent the parties from complying with the award, setting up the Fund, and using the Fund to compensate claimants for the respondents' wages and hours violations. The Movants also seek to dismiss the Union's petition to confirm the award (the "Petition," ECF No. 183). None of the respondents have opposed the Petition or confirmation of the award.

Although the Movants purport to bring their motion on behalf of themselves and a relatively small group of former Union members, none of the Movants are named plaintiffs of any certified class of former Union members. The Movants seek to stop enforcement of the award with respect to all current and former Union members, arguing that the Movants and those that they purport to represent would be irreparably harmed if the arbitration award proceeded.

For the following reasons, the Movants' motions to dismiss and for a preliminary injunction are **denied.**

I

The Court assumes familiarity with the Court's prior opinion in this action, which confirmed an earlier jurisdictional award of the arbitrator and denied motions of former employees of certain respondents to intervene and to dismiss the Union's petition or to stay confirmation of that award. See 1199SEIU United Healthcare Workers E. v. PSC Cmty.

2

Servs., 520 F. Supp. 3d 588 (S.D.N.Y. 2021) (the "Confirmation Order"). The facts relevant to resolving the Movants' motions are set forth below and constitute the Court's findings of fact.

The Union is a labor union that serves as the sole and exclusive representative for the respondents' home health aide employees, including for purposes of collective bargaining over the terms and conditions of their employment. Confirmation Order, 520 F. Supp. 3d at 594. The respondents are licensed home care agencies. Id. At all relevant times, the Union was a party to collective bargaining agreements ("CBAs") with all the respondents. Id. at 594-95. In or about 2015, the Union signed a memorandum of agreement (the "2015 MOA") with the respondents that amended the CBAs. Id. at 595. The 2015 MOA laid out an alternative dispute resolution process through which all claims arising under the New York Labor Law, the New York Home Care Worker Wage Parity Law, and the Fair Labor Standards Act (collectively, the "Covered Statutes") must be resolved. Id. at 595-96. Specifically, the 2015 MOA required that "all claims brought by either the Union or Employees" for violations of any Covered Statute must first go through a grievance procedure or mediation and, if not resolved through the grievance procedure

or mediation, must be submitted to "final and binding arbitration." Id.[1]

On January 2, 2019, the Union filed a class action grievance against the respondents on behalf of the Union's home care members "concerning violations of the CBAs regarding wage and hour claims arising under the Covered Statutes." Confirmation Order, 520 F. Supp. 3d at 596. Certain parties then participated in a mediation pursuant to the 2015 MOA. On December 24, 2019, the arbitrator declared that the mediation had concluded and directed the parties to submit briefs addressing the issues of (1) whether the claims of former and current Union members were arbitrable; and (2) whether the arbitrator had jurisdiction to adjudicate those claims "irrespective of whether employees' employment terminated prior to the effective date of the" 2015 MOA. Id. at 597.

The arbitrator resolved these questions in an award dated April 17, 2020 (the "First Award"). In relevant part, the arbitrator determined that the claims of former and current Union members were arbitrable and that the arbitrator had jurisdiction to adjudicate those claims even if former employees had ceased their employment before the Union entered the 2015 MOA. See Confirmation Order, 520 F. Supp. 3d at 597. However,

---

[1] Unless otherwise noted, this Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

the arbitrator expressly excluded from the First Award eight former employees of certain respondents whose employment had ceased before the 2015 MOA was executed because state or federal courts had previously concluded that those former employees could not be compelled to arbitrate their claims. Id. The Union filed its petition to confirm the First Award in this Court on May 8, 2020.

The Court granted that petition in the Confirmation Order and denied motions of former employees of certain respondents to dismiss the Union's petition or stay confirmation of the First Award. In the Confirmation Order, the Court concluded that this group of former employees, which included several of the Movants, lacked standing to challenge the First Award because they were not parties to the arbitration and because they did not claim that the Union had breached any duties or engaged in any other malfeasance. Id. at 598-99. The Court also denied these movants' motions to intervene for the purposes of challenging the First Award, concluding that any purported interest that they had in opposing confirmation of the First Award was "too contingent or remote to be cognizable under Rule 24." Id. at 600. The former employees filed an appeal of the Confirmation Order with the Court of Appeals for the Second Circuit and that appeal remains pending. Following the Confirmation Order, the Union and the respondents proceeded to

5

litigate the merits of the Union's grievance before the arbitrator.

The arbitrator issued the second award resolving the merits of the Union's wages and hours claims on February 25, 2022 (the "Second Award," ECF No. 183-1, together with the First Award, the "Awards").[2] See Petition ¶ 24. In the Second Award, the arbitrator determined that the respondents violated the Covered Statutes during relevant time periods. Id. ¶¶ 28-29. The arbitrator ordered a per capita contribution remedy to compensate the respondents' current and former employees for these violations. Id. ¶ 30. The arbitrator explained that he arrived at the per capita contribution remedy after considering several submissions, including employee affidavits and the respondents' financial records, along with other factors including the financial stability of the home care industry. Id. ¶ 31. The arbitrator ultimately concluded that a "per capita contribution greater than two hundred fifty ($250) dollars is not sustainable and will, inevitably, lead to deserving employees failing to recover upon their meritorious claims." Id. ¶ 31. The parties now intend to establish the Fund, fund it with

---

[2] The arbitrator issued a supplement to the Second Award on March 16, 2022, that corrected certain minor errors in the Second Award. These corrections are not material to any issue before the Court. See ECF No. 212-2.

the respondents' contributions, and disburse awards to claimants
in accordance with the arbitrator's directions.

The arbitrator also ordered that: (1) within thirty days of
the issuance of the Second Award (on or about March 25, 2022),
the respondents should provide certain information to the
designated claims administrator and the Union; (2) within
thirty-five days of the issuance of the Second Award (on or
about March 30, 2022), the designated claims administrator
should create a website with information about the Second Award
and Fund; (3) within sixty days of the issuance of the Second
Award (on or about April 25, 2022), the respondents should fund
the Fund and the claims administrator should mail a notice
describing the Second Award and the Fund to eligible current and
former employees (the "Notice"); (4) within sixty days of the
date that the Notice is mailed (on or about June 25, 2022), the
recipients must return their claim forms; and (5) no later than
forty-five days after the claim forms are due (approximately
August 9, 2022), the claims administrator should issue checks to
the claimants. See Second Award at 50-65. The Notice contains
the following provisions:

> I understand that by submitting a Claim Form, I release
> my Employers and their owners, stockholders,
> predecessors, successors, assigns, agents, directors,
> officers, employees, representatives, attorneys,
> insurers, reinsurers, parents, subsidiaries,
> affiliates, benefit plans, plan fiduciaries, and/or
> administrators, and all persons acting by, through,

under or in concert with any of them ("Releasees"), from any claim that was or could have been asserted by me, or by the 1199 Union on my behalf either in the Arbitration or at any other time, based on facts or circumstances that occurred prior to September 30, 2021. The claims I am releasing include any and all claims under the 1199 Union collective bargaining agreement, the Fair Labor Standards Act, the New York Home Care Worker Wage Parity Law, the New York Labor Law, and any other claims under theories of contract, tort, third party beneficiary and other liability.
. . .
**Question 6. Can I decline to file a claim and pursue my claims elsewhere?** No, pursuant to your collective bargaining agreement and the Award your claims have already been decided and ruled on by the Arbitrator.
. . .
**Question 7. What happens if I do not submit the Claim Form or do not do so in a timely manner?** . . . Please also be advised that even if you do not submit a Claim Form, the Award precludes you from seeking relief, either on your own or through the 1199 Union, beyond what is provided for in the Award . . ..

Second Award, Ex. A, at 5-6.

The Union petitioned this Court to confirm the Second Award on March 1, 2022. On March 11, 2022, the Movants moved for a preliminary injunction enjoining the Union, the respondents, and the claims administrator from complying with the directions of the Second Award, including enjoining them from disseminating the Notice and paying out any claims from the Fund. The Movants also moved to dismiss the Petition on the basis that the Court lacks subject matter jurisdiction because of the pending appeal of the Confirmation Order. The Union opposes the Movants' motions, arguing that the requested preliminary injunction should not issue and that the Second Award should be confirmed.

8

## II

The Union contends that the motions should be denied because the Movants lack standing to seek dismissal of the Petition and the requested preliminary injunction. All twelve Movants are former employees of certain respondents whose respective terms of employment ceased before the 2015 MOA was executed. Seven of the twelve Movants are individuals who were expressly carved out of and are not bound by the Awards (the "Carved-Out Movants").[3] The remaining five Movants were not carved out of the Awards. Four of them had moved to intervene in this case for the purposes of opposing the petition to confirm the First Award.[4] The Court denied those motions to intervene. Gail Yan, the final Movant, did not previously move to intervene in this action but filed a motion to dismiss the petition to confirm the First Award. The Movants purport to bring their motions "for themselves and on behalf of all other individuals they represent and who are Pre-2015 MOA Employees." See ECF No. 190 at 1.

---

[3] They are Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Epifania Hichez, Carmen Carrasco, Eugenia Barahona Alvarado, and Seferina Acosta. See First Award at 44 & n.18; Second Award at 12 n.12.

[4] They are Mei Kum Chu, Sau King Chung, Qun Xiang Ling, and Maria Diaz. Three of the Carved-Out Movants — Hichez, Carrasco, and Acosta — had also moved to intervene in this case for the purposes of challenging the First Award. See Confirmation Order, 520 F. Supp. 3d at 597-98.

The parties in this case are the Union and the respondent
home care agencies. The Movants are not parties in this case.
Unlike when certain Movants moved to dismiss the petition to
confirm the First Award, none of the Movants here filed motions
to intervene in this action for the purposes of seeking
dismissal of the Petition or the requested preliminary
injunction. Instead, they filed their motions and assumed that
they were entitled to seek the requested relief as non-parties
and non-intervenors.[5] This was procedurally improper. Because the
Movants are not parties to this action and have not attempted to
intervene for the purposes of moving to dismiss the Petition to
confirm the Second Award or to seek a preliminary injunction,
they are not entitled to seek dismissal of the Petition or the
requested preliminary injunction. See, e.g., E.E.O.C. v. E.
Airlines, Inc., 736 F.2d 635, 637 (11th Cir. 1984) (a non-
party's "right to move to vacate [a] consent decree was, of
necessity, predicated on her ability to intervene successfully
in [the action]. Otherwise, [the non-party], as a non-party to
the [action] would lack standing to move to vacate the consent

---

[5] Those Movants who moved to intervene for the purposes of opposing
confirmation of the First Award appeared to understand that they needed to
intervene in order to participate in this case and seek relief from this
Court. See, e.g., ECF No. 106 at 1 ("The Court should permit Proposed
Intervenors, who all stopped working for CPC or UJC before those Agencies
signed the MOA with the Union, to intervene under Fed. R. Civ. Pro. 24 as of
right so that they can request that the Court dismiss the Petition [to
confirm the First Award] or stay the case.").

decree, or to make any other motion, in the [action]."); Greenbaum v. Islamic Republic of Iran, No. 08-cv-0740, 2008 WL 11336781, at *1 (C.D. Cal. July 7, 2008) (denying non-party's motion to dismiss because "if a party does not formally intervene, it does not have a right to be heard.") (citing Citibank Int'l v. Collier-Traino, Inc., 809 F.2d 1438, 1440 (9th Cir. 1987)); G-I Holdings, Inc. v. Baron & Budd, No. 01-cv-0216, 2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002) (denying non-parties' motion for partial summary judgment: "Until such time, if ever, that the Movants comply with the formal requirements of Rule 24(c), the parties to this suit shall not be required to respond to any motions that the Movants file."). Accordingly, because the Movants have not sought to intervene in this case for the purposes of making their motions, the motions are not properly before this Court and must be denied.[6]

Moreover, there are additional reasons that the Movants lack standing to pursue their current motions. If non-party intervenors seek different relief from that which the parties to an action are seeking, then the intervenors must demonstrate their Article III standing to pursue that relief. Town of

---

[6] The Union did not raise arguments relating to the Movants' failure to intervene in their brief in opposition to the Movants' motion. However, this issue must be addressed because the Movants' failure to make a motion to intervene is intertwined with the issue of the Movants' standing, which the Court has an independent obligation to investigate. See, e.g., Dodge v. County of Orange, 103 F. App'x 688, 689 (2d Cir. 2004).

Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1651 (2017);
Cross Sound Cable Co., LLC v. Long Island Lighting Co., No. 21-cv-2771, 2022 WL 247996, at *8-10 (E.D.N.Y. Jan. 27, 2022).[7] The
Movants are asking this Court to dismiss the Petition and to
grant a preliminary injunction barring enforcement of the Second
Award. The Movants are plainly seeking different relief from the
Union, which seeks confirmation of the Second Award, and the
respondents, who do not oppose confirmation. Accordingly, the
Movants must demonstrate that they have standing to seek
dismissal of the Petition and the requested preliminary
injunction.

The Movants lack standing to seek dismissal of the
Petition. As the Court explained in the Confirmation Order, in
the context of labor arbitrations, "an individual employee
represented by a union generally does not have standing to
challenge an arbitration proceeding to which the union and the
employer were the only parties." Katir v. Columbia Univ., 15
F.3d 23, 24-25 (2d Cir. 1994); see also Confirmation Order, 520
F. Supp. 3d at 598-99 (collecting cases). In order to have

---

[7] This would be the case if the Movants had moved to intervene either as of
right or permissively. In Chester, the Supreme Court determined only that an
intervenor as of right must demonstrate Article III standing when that
litigant is seeking different relief from what the parties are seeking. 137
S. Ct. at 1651. However, lower courts analyzing Chester have explained
persuasively that the reasoning employed by the Supreme Court applies equally
in the context of permissive intervention. See Cross Sound, 2022 WL 247996,
at *9-10 (collecting cases).

standing "to attack an arbitration award under section 301 of the [LMRA]," an employee must make a "showing of fraud or deceit" or demonstrate that "the union breached its statutory duty of fair representation" or "failed to act upon the award." Confirmation Order, 520 F. Supp. 3d at 599. Because the Movants that moved to dismiss the petition to confirm the First Award failed to make such a showing, the Court determined that they lacked standing to seek dismissal of that petition. Id.

The same result is appropriate here. It is undisputed that the Movants were not parties to the arbitration, which only involved the Union and the respondents. Moreover, the Movants still have not alleged that the Union breached any duties, failed to act on the Second Award, or engaged in any fraud or deceit. Accordingly, the Movants lack standing to make their motion to dismiss the Petition.

The Movants also lack standing to seek the requested preliminary injunction. To satisfy the requirements of Article III standing, a party must show that (1) the party has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of

13

establishing these elements." Id. at 561; see also Springer v.
U.S. Bank Nat'l Ass'n, No. 15-cv-1107, 2015 WL 9462083, at *3
(S.D.N.Y. Dec. 23, 2015).

The Movants are not suffering any actual or imminent injury
in fact that would likely be redressed by a preliminary
injunction. The Movants maintain that the arbitrator was without
jurisdiction to consider the claims of pre-2015 MOA employees
and that these employees are entitled to pursue their claims in
other forums. The Movants argue that the Notice misleadingly
advises recipients that the arbitration resolved all their
potential claims against their former employers and that the
recipients cannot prosecute any such claims in state or federal
court. The Movants argue that if the Notice were disseminated,
all pre-2015 MOA employee-recipients would be injured because
the Notice is false, misleading, and would confuse them about
where and in what manner they can prosecute their claims.

The prospect of this purported injury is insufficient to
confer standing on the Movants. The Carved-Out Movants will not
suffer this purported injury because they are expressly excluded
from the Awards and so are not bound by any of their provisions.
Because they are not bound by the Awards, the Carved-Out
Movants' active, ongoing efforts to prosecute their claims in
other forums will not be impeded by the Second Award in any way.
Moreover, the Carved-Out Movants cannot claim credibly that they

14

would be confused by any Notice because they and their lawyers are indisputably aware of the court orders enjoining arbitration of their claims and of the fact that they have been carved out of the Awards. The remaining Movants lack standing for similar reasons. They and their lawyers are obviously apprised of any purported issues with the Notice because they are the individuals that are bringing those purported issues to the Court's attention. Because none of the Movants could possibly be confused by the Notice, the Movants will not actually suffer the alleged injuries of which they complain in the absence of the requested preliminary injunction. The Movants therefore do not have standing to seek the requested preliminary injunction. See, e.g., Goldstein v. Home Depot U.S.A., Inc., 609 F. Supp. 2d 1340, 1348 (N.D. Ga. 2009) (plaintiff lacked standing to seek an injunction because "the injunction proposed by [the] plaintiff, if granted, would in no way benefit [the] plaintiff.").

To the extent that the Movants purport to base their standing on the alleged prospective confusion and related injuries to the pre-2015 MOA employees that have not appeared in this action, the Movants' arguments are without merit. To have standing, a party must allege a "concrete and particularized injury" that affects the party "in a personal and individual way." Lujan, 504 U.S. at 560 & n.1. Absent exceptional circumstances that are not present here, a party "must assert

his or her own legal rights and interests" to have Article III standing and "cannot rest a claim to relief on the legal rights or interests of third parties." <u>Dava v. City of New York</u>, No. 15-cv-8575, 2016 WL 4532203 at *10 (S.D.N.Y. Aug. 29, 2016) (quoting <u>Powers v. Ohio</u>, 499 U.S. 400, 410 (1991)). Accordingly, the Movants must demonstrate that they themselves would be injured and misled by the Notice if requested preliminary injunction did not issue; relying on the risk of confusion to parties not before this Court is insufficient. The Movants have failed to make such a showing because they cannot claim plausibly that the Notice would cause them any confusion.[8]

The Movants advance a single argument in support of their contention that they have standing to bring the present motions. During the pendency of the appeal of the Confirmation Order, the Union moved to dismiss the appeal on the basis that the appellants — a group of litigants that includes five of the Movants — lacked standing to prosecute the appeal.[9] In a motions

---

[8] This conclusion is not disturbed by the fact that certain Movants are named plaintiffs in putative class actions pending in state court and purport to seek relief here on behalf of potential class members. As the Movants conceded at argument on the present motions, the state courts have not yet certified any classes in those actions. In any event, in the context of class actions, "a court must analyze the injuries allegedly suffered by the named plaintiff, not unnamed members of the potential class, to determine whether the plaintiff has Article III standing." <u>Mason v. Reed's Inc.</u>, 515 F. Supp. 3d 135, 141 (S.D.N.Y. 2021) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975)).

[9] Specifically, the Union argued in its motion to dismiss the appeal that Yan lacked Article III standing and that Guzman, Herrera, Rivas, and Alvarado lacked appellate standing. <u>See</u> <u>1199SEIU United Healthcare Workers E. v.</u>

order dated September 1, 2021, the panel denied the motion to dismiss, explaining that "one or more of the Appellants" "have made a threshold showing that they have interests plausibly affected by the judgment." 1199SEIU United Healthcare Workers E. v. Chinese-American Planning Council Home Attendant Program, No. 21-631-cv, ECF No. 74 at 2 (2d Cir. Sept. 1, 2021) (citing NML Cap., Ltd. v. Republic of Argentina, 727 F.3d 230, 239 (2d Cir. 2013)). The denial of the motion to dismiss was "without prejudice to the [Union's] renewing its arguments to the merits panel." Id. The Movants contend that this order constrains this Court to find that the Movants have standing to seek dismissal of the Petition and the requested preliminary injunction. Reply at 9.

This argument is without merit. First, the issues raised in the Union's motion to dismiss the appeal related to whether the appellants had standing to prosecute the appeal of the order that confirmed the First Award. However, no Movant previously sought any injunction from this Court or from the court of appeals. The motions order therefore did not concern any issues related to the Movants' standing to seek a preliminary injunction directed to the Second Award. Accordingly, the motions order has no bearing on the question of whether the

---

Chinese-American Planning Council Home Attendant Program, No. 21-631-cv, ECF No. 50 (2d Cir.).

Movants have standing to seek the requested preliminary injunction.

Second, the motions order does not compel this Court to find that the Movants have standing to seek dismissal of the Petition. The motions order was without prejudice and constituted an interim, non-final resolution of the issue of the appellate standing of certain parties involved in the appeal. The issue of appellate standing was addressed in the parties' subsequent briefs and will be revisited by the merits panel, which may ultimately determine that the appellants lack appellate standing. See, e.g., Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148-52 (2d Cir. 1999) (merits panel dismissing an appeal after the motions panel denied a motion to dismiss the appeal). Unless and until the court of appeals finally resolves an issue relevant to the Movants' standing to challenge confirmation of the Second Award, the Court is bound to follow Katir, 15 F.3d 23, and its progeny, which provide plainly that the Movants lack standing to move to dismiss the Petition. See id. at 24-25.

Accordingly, because the Movants lack standing to seek dismissal of the Petition or the requested preliminary injunction, the Movants' motions are dismissed.

**III**

Irrespective of whether the motions are procedurally proper and whether the Movants have standing to bring the motions, the motions should be denied on the merits.

**A.**

A preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies," Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007), and it "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). Courts consider the following factors in determining whether a preliminary injunction pending appeal should issue: (1) whether the movant will suffer irreparable injury absent the injunction, (2) whether a party will suffer substantial injury if the injunction is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected. See LaRouche v. Kezer, 20 F.3d 68, 72 (2d Cir. 1994); Columbus Ale House, Inc. v. Cuomo, No. 20-cv-4291, 2020 WL 6507326, at *1 (E.D.N.Y. Nov. 5, 2020). The "probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002).

With respect to irreparable injury, the Movants contend that allowing the parties to disseminate the Notice would cause irreparable harm in the form of "mass confusion" among pre-2015 MOA employees. The Movants argue that the Notice is incorrect, misleading, and will improperly dissuade the pre-2015 MOA employees from prosecuting their claims against their former employers in state or federal court, which the Movants maintain this group of employees are entitled to do. The Movants also contend that the danger of disseminating the Notice with allegedly false and misleading information is particularly acute because the pre-2015 MOA employees, and home health aides in general, tend to comprise a socio-economically vulnerable population.

The Movants have failed to make the required showing of irreparably injury. First, the Movants have not demonstrated that the Notice is misleading. To the contrary, the Notice is consistent with the Awards and this Court's Confirmation Order. And to the extent that the Movants believe the Notice is misleading, they are fully aware of their contentions and could not be deceived by the Notice. Second, if the court of appeals ever found that the Notice were inaccurate, corrective notices could be disseminated to mitigate any confusion, which demonstrates that any alleged harm is not irreparable.

Additionally, the Movants' claim of irreparable harm is undercut by the way in which they have litigated this case. After the Confirmation Order, the Movants were aware that the arbitration was proceeding to the merits phase and would involve the claims of pre-2015 MOA employees. Despite this, none of the Movants sought an expedited appeal of the Confirmation Order and consequently, oral argument in the appeal of that order has not yet been scheduled. The Movants also did not seek an order from this Court or the court of appeals staying the arbitration pending the appeal of the Confirmation Order.[10] If the Movants thought that the Second Award would irreparably harm the pre-2015 MOA employees, then they could have sought relief at some point in the past year rather than seeking injunctive relief only after the arbitration was completed.

Although the Movants and those that they purport to represent would not be irreparably harmed in the absence of an injunction, the requested preliminary injunction would undoubtedly harm a large group of current and former Union

---

[10] On May 15, 2020, certain Movants moved a state court to stay the arbitration after the arbitrator issued the First Award. The defendants removed that action to this Court. See Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp., No. 20-cv-3929 (S.D.N.Y. filed May 20, 2020). Certain Movants then filed a motion to remand the case but did not renew their request to stay the arbitration either before this Court or the court of appeals. This Court denied the motion to remand but certified an interlocutory appeal of that order. See Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp., No. 20-cv-3929, 2021 WL 1852038 (S.D.N.Y. May 7, 2021). That appeal remains pending.

21

members. There is no dispute that the arbitrator properly exercised jurisdiction over and finally resolved the claims of some large fraction of a group of 100,000 of the respondents' current and former employees.[11] The arbitrator determined that the respondents violated the Covered Statutes with respect to these Union members and found that they are entitled to compensation for these violations. Despite this, the Movants seek an injunction enjoining enforcement of the entirety of the Second Award, which would result in unnecessarily delayed payouts to all post-2015 MOA employees. In view of this harm, it would be improper to allow twelve Movants that purport to represent the interests of a relatively small group of former employees to frustrate enforcement of the Second Award. Moreover, even the pre-2015 MOA employees would suffer some harm if the requested preliminary injunction issued because the disbursement of their awards from the Fund would be delayed.

Next, the Movants argue that they have a substantial possibility of success on appeal and in large part rehash certain arguments that were previously presented to this Court and rejected in the Confirmation Order.[12] However, the

---

[11] The Union's and the Movants' counsel were both unable to provide a specific estimate of how many former Union members are solely pre-2015 MOA employees.

[12] For example, the Movants once again invoke Agarunova v. Stella Orton Home Care Agency, Inc., 794 F. App'x 138 (2d Cir. 2020). As this Court explained in the Confirmation Order, Agarunova does not support the Movants' arguments. In that case, the court of appeals declined to address the argument that the question of arbitrability was delegated to the arbitrator because that

22

substantial questions with respect to the standing of the
Movants, combined with the careful reasoning of the arbitrator
in the Awards – which are owed deference – undermine the alleged
likelihood of success on the merits. See, e.g., United States v.
New York City Bd. of Educ., 620 F. Supp. 2d 413, 417 (E.D.N.Y.
2009) (denying injunction pending appeal because "neither the
threat of irreparable harm nor the likelihood of success on
appeal is sufficiently one-sided to justify disturbing what the
Court believes to be the legally correct result.").

Finally, the public interest would be undermined if the
injunction issued. The public interest would be promoted if the
arbitrator's decision were complied with and the group of more
than 100,000 current and former Union members were promptly
compensated for their injuries.[13] By contrast, the public
interest would not be served by allowing twelve pre-2015 MOA
employees to delay payouts to this entire class of individuals
based on the prospect of remote and speculative injuries.
Moreover, it is unclear when, if ever, the pending state court
litigations involving certain pre-2015 MOA employees will be
resolved favorably and whether any recovery obtained in those

---

argument was not properly raised before the district court. See Confirmation
Order, 520 F. Supp. 3d at 608.

[13] As noted above, the group of individuals that are entitled to recovery
pursuant to the Second Award are socio-economically vulnerable. This
underscores the public interest in ensuring that funds are promptly
distributed.

actions will be any more substantial than that awarded in the Second Award.[14] The public interest in ensuring that compliance with the Second Award is not delayed is further underscored by the fact that the Union's counsel forewent recovering legal fees from the Fund, which increased the total sum available to the claimants. See Second Award at 55 n.13.

Accordingly, the Movants have failed to demonstrate their entitlement to the requested preliminary injunction. The motion for a preliminary injunction is therefore denied.

**B.**

The Movants argue that the Petition should be dismissed because the pending appeal of the Confirmation Order strips this Court of subject matter jurisdiction to consider the Petition.

"The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Motorola Credit Corp. v. Uzan, 388 F.3d 39, 53 (2d Cir. 2004) (quoting

---

[14] At oral argument, counsel for the Movants represented that some of the state court actions involving pre-2015 MOA employees "have been proceeding since 2016; others were filed in 2017, 2018. All predate the arbitration." ECF No. 233 at 14. Certain Movants are named plaintiffs in a subset of these ongoing state court actions. In the state court actions in which the Movants are named plaintiffs, as of the date of this Opinion, no Movant has been certified as a class representative and no Movant has achieved a favorable award. Counsel further represented that out of all the pending state court litigations involving pre-2015 MOA employees, only one has been settled so far, and that in all but one of these cases, the putative classes have not yet been certified. Id. at 13-14, 29.

24

<u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58 (1982)). A pending appeal "only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal." <u>Id.</u> Accordingly, the issue of this Court's jurisdiction over the Petition turns on whether questions relating to the confirmation of the Second Award are "involved in" the pending appeal of the Confirmation Order.

The appeal of the Confirmation Order and the pending Petition to confirm the Second Award raise distinct questions. The questions currently before the court of appeals concern the arbitrability of the pre-2015 MOA employees' claims and whether this Court's confirmation of the arbitrator's jurisdictional determinations was correct. By contrast, the Petition concerns the merits of the entirety of the Second Award, which resolved the wages and hours claims of approximately 100,000 current and former Union members and fashioned a remedy that the arbitrator deemed to be appropriate in view of several competing considerations. These circumstances are illustrative of the general principle that merits issues on the one hand, and issues of jurisdiction and arbitrability on the other, are distinct inquiries that turn on the resolution of different questions. See, e.g., <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp</u>, 460 U.S. 1, 20-21 (1983) ("Although [the party] will have to litigate the arbitrability issue in federal rather than state

25

court, that dispute is easily severable from the merits of the underlying disputes."); Weingarten Realty Invs. v. Miller, 661 F.3d 904, 909 (5th Cir. 2011) ("[T]he merits are not an aspect of arbitrability. A determination on the arbitrability of a claim has an impact on what arbiter — judge or arbitrator — will decide the merits, but that determination does not itself decide the merits."). Accordingly, because the questions raised and decided in the Confirmation Order are distinct from those raised by the Petition to confirm the Second Award, this Court has jurisdiction to consider the Petition.

This conclusion is supported by the decision of the Court of Appeals for the Second Circuit in Motorola, 388 F.3d 39. In that case, the district court had denied the defendants' motion to compel arbitration. Id. at 53. The defendants appealed that decision and while that appeal was pending, the district court proceeded to hold a bench trial and decide the merits of the case. Id. at 46, 53. The defendants filed a second appeal from the district court's decision on the merits. In that appeal, the defendants argued that the pending appeal of the order denying the motion to compel had divested the district court of jurisdiction to proceed with the case. The court of appeals found this argument to be without merit and "explicitly adopt[ed] the Ninth Circuit's position that further district court proceedings are not 'involved in' an appeal of an order

refusing arbitration." Id. at 54 (citing Britton v. Co-op
Banking Grp., 916 F.2d 1405, 1412 (9th Cir. 1990) ("Since the
issue of arbitrability was the only substantive issue presented
in this appeal, the district court was not divested of
jurisdiction to proceed with the case on the merits.")).

While the facts of Motorola and this case are not perfectly
analogous, Motorola suggests that pending appeals from decisions
involving issues of arbitrability do not divest district courts
of jurisdiction to consider the merits of an underlying dispute.
Just as the district court in Motorola had jurisdiction to
resolve the merits of the parties' dispute notwithstanding the
pending appeal of the arbitrability decision, this Court
currently has jurisdiction to consider the Petition to confirm
the Second Award, which resolved the merits of the parties'
dispute. The Movants' motion to dismiss the Petition is
therefore denied.

IV

The Union filed the Petition and a memorandum of law in
support of the Petition on March 1, 2022. As of the date of this
Opinion, no party has filed a cross-motion to vacate the Second
Award. In its opposition to the Movants' motions to dismiss and
for a preliminary injunction, the Union reiterated that the
Court should grant the Petition and confirm the Second Award. In
their reply brief, the Movants requested a briefing schedule

27

regarding a potential cross-motion to partially vacate the Second Award if the Court denied the Movants' motion to dismiss. The Movants contend that confirmation of the Second Award on the current papers is premature and would prejudice the Movants.

The Movants are correct that the time to file a motion to vacate has not yet passed. See, e.g., Loc. Union 522, Int'l Bhd. of Teamsters, AFL-CIO v. Renewal Arts Contracting & Env't Corp., No. 02-cv-781, 2004 WL 213011, at *1 (S.D.N.Y. Feb. 4, 2004) (90-day statute of limitations for a party seeking to challenge an LMRA award). Accordingly, the Movants should be given an opportunity to file a cross-motion to partially vacate the Second Award.

It is doubtful that the Movants have standing to bring such a motion. In their motion, the Movants should explain why they have standing to challenge the Second Award notwithstanding this Opinion and the Confirmation Order. The Movants should also either file a motion to intervene for the purposes of challenging the Petition or explain why they should be permitted to seek partial vacatur of the Second Award as non-parties and non-intervenors.

The parties should submit a joint proposed scheduling order regarding any potential cross-motions to partially vacate the Second Award and motions to intervene by April 11, 2022.

28

## CONCLUSION

The foregoing constitutes the Court's findings of fact and conclusions of law. The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movants' motions to dismiss and for a preliminary injunction are **denied.**

The Clerk is directed to close Docket No. 188.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **April ⁄ , 2022**

_____
        John G. Koeltl
**United States District Judge**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

1199SEIU UNITED HEALTHCARE WORKERS
EAST,

                              Petitioner,

       - against -

PSA COMMUNITY SERVICES, ET AL.,

                          Respondents.

20-cv-3611 (JGK)

<u>MEMORANDUM OPINION
AND ORDER</u>

---

JOHN G. KOELTL, District Judge:

    In this action, 1199SEIU United Healthcare Workers East
(the "Union") filed a petition to confirm an arbitration award
under Section 301 of the Labor Management Relations Act of 1947
(the "LMRA"). The award, issued on April 17, 2020 (the "Award"),
was rendered pursuant to collective bargaining agreements (the
"CBAs") between the Union and the respondents, a group of home
care agencies. In an Opinion and Order dated February 19, 2021,
this Court confirmed the Award and denied motions of former
employees of certain respondents to intervene and to dismiss the
Union's petition or stay the action. See <u>1199SEIU United
Healthcare Workers E. v. PSC Cmty. Servs.</u>, 520 F. Supp. 3d 588
(S.D.N.Y. 2021) (the "Confirmation Order").

    Two respondents, Family Home Care of Brooklyn and Queens,
Inc. and Care at Home (together, the "Movants"), now seek a
preliminary and/or permanent injunction enjoining two former

1

members of the Union, Maktumma Teshabaeva and Jin Hua Deng, from further prosecuting a putative class action against the Movants in the New York State Supreme Court. See Teshabaeva v. Family Home Care Servs. of Brooklyn and Queens, Inc., No. 158949/2017 (N.Y. Sup. Ct.) (the "State Court Action").

For the following reasons, the Movants' motion for a preliminary and/or permanent injunction is **denied.**

I.

The Court assumes familiarity with the Confirmation Order, which recites the background of this dispute in detail. See generally Confirmation Order, 520 F. Supp. 3d at 594-98. The facts relevant to resolving the Movants' motion are set forth below and constitute the Court's findings of fact.

The Union is a labor union that serves as the sole and exclusive representative for the Movants' home health aide employees, including for purposes of collective bargaining over the terms and conditions of their employment. Id. at 594. The Movants are licensed home care agencies. Id. At all relevant times, the Union was a party to CBAs with all the respondents, including the Movants. Id. at 594-95. In or about 2015, the Union signed a memorandum of agreement (the "2015 MOA") with the respondents that amended the CBAs. Id. at 595. The 2015 MOA laid out an alternative dispute resolution process through which all claims arising under the New York Labor Law (the "NYLL"), the

2

New York Home Care Worker Wage Parity Law (the "Parity Law"), and the Fair Labor Standards Act (the "FLSA") (collectively, the "Covered Statutes") must be resolved. Id. Specifically, the 2015 MOA required that "all claims brought by either the Union or Employees" for violations of any Covered Statute must first go through a grievance procedure or mediation and, if not resolved through the grievance procedure or mediation, must be submitted to "final and binding arbitration." Id. at 595-96.

Teshabaeva and Deng are former employees of the Movants and both ceased their employment before the Union signed the 2015 MOA. On October 6, 2017, Teshabaeva filed the State Court Action as a putative class action and asserted various causes of action against the Movants, including claims for violations of certain Covered Statutes.[1] See ECF No. 176-1. On January 2, 2019, the Union filed a class action grievance against the Movants and the other respondents on behalf of the Union's home care members "concerning violations of the CBAs regarding wage and hour claims arising under the Covered Statutes." Confirmation Order, 520 F. Supp. 3d at 596. Certain parties then participated in a mediation pursuant to the 2015 MOA. On December 24, 2019, the arbitrator declared that the mediation had concluded and directed the parties to submit briefs addressing the issues of

---

[1] The complaint in the State Court Action was amended by stipulation to add Deng as a named plaintiff on October 9, 2018.

(1) whether the claims of former and current Union members were arbitrable; and (2) whether the arbitrator had jurisdiction to adjudicate those claims "irrespective of whether employees' employment terminated prior to the effective date of the" 2015 MOA. Id. at 597.

On January 14, 2020, Teshabaeva and Deng moved the New York State Supreme Court to enjoin arbitration of the claims in the State Court Action. See ECF No. 176-5. On January 24, 2020, the Movants cross-moved to compel arbitration of Teshabaeva's and Deng's claims. See ECF No. 176-4. While these motions were pending, the arbitrator issued the Award on April 17, 2020. In relevant part, the arbitrator determined that the claims of former and current Union members were arbitrable and that the arbitrator had jurisdiction to adjudicate those claims even if former employees had ceased their employment before the Union entered the 2015 MOA. See Confirmation Order, 520 F. Supp. 3d at 597. However, the arbitrator expressly excluded from the Award eight former employees of certain respondents whose employment had ceased before the 2015 MOA was executed because state or federal courts had previously concluded that those former employees could not be compelled to arbitrate their claims.[2] Id.

---

[2] Teshabaeva and Deng were not part of the group of eight former employees that the arbitrator carved out of the scope of the Award.

The Union filed its petition to confirm the Award in this Court on May 8, 2020. ECF No. 1.[3]

In an order dated July 16, 2020, the New York State Supreme Court granted Teshabaeva and Deng's motion, denied the Movants' cross-motion, and permanently enjoined the claims asserted in the State Court Action from being arbitrated. See ECF No. 176-2 (the "Injunction Order"). The court concluded that because Teshabaeva's and Deng's employment with the Movants ended before the Union entered the 2015 MOA, Teshabaeva and Deng were not bound by the arbitration provisions of the 2015 MOA. Id. at 2. The court also rejected the Movants' contention that the question of arbitrability should be decided by the arbitrator. Id. at 3. The Movants then appealed the Injunction Order to the Appellate Division of the New York State Supreme Court. Neither Teshabaeva and Deng nor any party that appeared in this action apprised this Court of the Injunction Order until the Movants filed the present motion.

On February 19, 2021, while the appeal of the Injunction Order before the Appellate Division was pending, this Court issued the Confirmation Order, which confirmed the Award in

---

[3] Unlike numerous other respondents, the Movants never filed a response to the Union's petition. See ECF Nos. 32-40. Although the Movants appeared in this action on June 3, 2020, they did not take a position on any matters in this action until July 24, 2020, when the Movants filed a letter joining other parties' oppositions to the then-pending motions to dismiss, intervene, and stay. See ECF No. 129.

whole over the objections of several former employees of certain
respondents, most of whom appeared in this action as proposed
intervenors.[4] Gail Yan, whose employment with one of the
respondents ceased before the Union signed the 2015 MOA, did not
seek to intervene but filed a motion to dismiss or stay this
action, arguing that former employees of the respondents were
not bound by the 2015 MOA and that the Court lacked subject
matter jurisdiction over the petition. ECF No. 101-16. The Court
considered Yan's arguments and found them to be without merit.
See Confirmation Order, 520 F. Supp. 3d at 601-05. Yan was
represented by counsel from Virginia & Ambinder, LLP ("Virginia
& Ambinder"), which is the same law firm that is representing
Teshabaeva and Deng in this action and in the State Court
Action. Yan and the proposed intervenors filed a notice of
appeal as to the Confirmation Order on March 19, 2021. ECF No.
163. That appeal is currently pending before the Court of
Appeals for the Second Circuit.

The Appellate Division affirmed the Injunction Order in a
decision dated October 14, 2021. See ECF No. 176-3 (the
"Appellate Division Order"). The court rejected the Movants'
argument that the Confirmation Order precluded Teshabaeva and
Deng from prosecuting the State Court Action because that

---

[4] Neither Teshabaeva nor Deng appeared in this action while the petition to
confirm the Award was pending.

6

argument was "improperly raised" by the Movants for the first time on appeal. Id. at 2. The court also determined that the Confirmation Order "does not have the res judicata effect urged by the [Movants]" because it "made no findings that affect the merits of the issues raised by [Teshabaeva and Deng] here, and the federal proceeding and the [State Court Action] do not involve the same parties." Id. Finally, the court affirmed the state trial court's conclusion that the question of arbitrability was one for the court, not the arbitrator. Id.

The Movants then renewed their motion to compel arbitration before the state trial court.[5] The court denied the renewed motion on December 10, 2021. ECF No. 176-8. The court reasoned that factual differences presented by this action and the State Court Action rendered the Confirmation Decision inapposite:

> The Court finds that [the Movants are] not entitled to renewal based on the [Confirmation Order] because the federal court was interpreting the CBA with the 2015 MOU[.] This Court held, and First Department affirmed, that the 2015 MOU did not apply to the plaintiffs here, whose employment ceased prior to 2015. Thus, the federal court's decision or reasoning is not necessarily applicable to the same factual framework as the case here.
> . . .
> [The Movants'] argument concerning preemption is meritless as there is no conflict of state and federal law[.] The simple difference between this case and the federal case is that the facts are different.

---

[5] The Movants also moved for leave to appeal the Appellate Division Order to the New York Court of Appeals, which was denied.

Id. at 2-4; see also id. at 4-5 (rejecting the Movants'
contention that the Confirmation Order had res judicata effect
in the State Court Action as "another meritless argument.").

The Movants now move for a preliminary and/or permanent
injunction enjoining Teshabaeva and Deng from further
prosecuting the State Court Action. Teshabaeva and Deng contend
that an injunction is unwarranted because (1) the Court lacks
subject matter jurisdiction over this motion under the Rooker-
Feldman doctrine; (2) the Anti-Injunction Act ("AIA") and
related doctrines prohibit the Court from issuing an injunction;
and (3) the Movants have otherwise failed to satisfy their
burden of demonstrating that an injunction should issue.

## II.

### A.

A threshold matter is whether this Court has subject matter
jurisdiction over this dispute. The Rooker-Feldman doctrine
deprives federal courts of subject matter jurisdiction to
consider "cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district court
reviews of those judgments." McKithen v. Brown, 626 F.3d 143,
154 (2d Cir. 2010). The doctrine "directs federal courts to
abstain from considering claims when four requirements are met:
(1) the plaintiff lost in state court, (2) the plaintiff

8

complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." Id. Although federal courts are required to effectuate the policies underlying the federal arbitration statutes, "a party cannot invoke the federal policy in favor of arbitration as a means of improperly appealing a state court ruling." See Wanderlust Pictures, Inc. v. Empire Entm't Grp., No. 01-cv-4465, 2001 WL 826095, at *2 (S.D.N.Y. July 19, 2001).[6]

All the requirements for the application of the Rooker-Feldman doctrine are met in this case. First, there can be no reasonable dispute that the Movants lost on the issue of arbitrability before the state courts. Moreover, the Movants are plainly inviting this Court to review and reverse those state court decisions by enjoining the prosecution of claims in the state court that the state courts decided could proceed.

---

[6] Even if a federal suit is not precluded by the res judicata or collateral estoppel effects of a state court decision, "the Rooker-Feldman doctrine may still prevent maintenance of a federal action if the litigant in federal court seeks relief that would effectively void or reverse a related state court ruling." Yonkers Elec. Contracting Corp. v. Local Union No. 3, Int'l Bhd. Elec. Workers' AFL-CIO, 220 F. Supp. 2d 254, 259 (S.D.N.Y. 2002) (citing Wanderlust, 2001 WL 826095, at *3). For these reasons, the Court may lack subject matter jurisdiction under the Rooker-Feldman doctrine irrespective of the parties' disputes surrounding whether the Injunction and Appellate Division Orders are entitled to preclusive effect.

The next question is whether the state court's permanent
injunction enjoining arbitration constitutes a "judgment" for
the purposes of the Rooker-Feldman doctrine. See Hoblock v.
Albany Country Bd. of Elections, 422 F.3d 77, 89 (2d Cir. 2005).
"There is some confusion as to the circumstances under which
Rooker-Feldman applies to interlocutory orders that do not
finally resolve the state litigation." See Ayyad-Ramallo v.
Marine Terrace Assocs. LLC, No. 13-cv-7038, 2014 WL 2993448, at
*3 n.6 (E.D.N.Y. July 2, 2014). The fact that a state court
order does not resolve entirely the state litigation is not
necessarily dispositive. See Alroy v. City of New York L. Dep't,
69 F. Supp. 3d 393, 401 n.14 (S.D.N.Y. 2014) (noting that the
Court of Appeals for the Second Circuit has "recognized that the
Rooker-Feldman doctrine may apply to bar federal suits
challenging interlocutory state judgments"); see also Hoblock,
422 F.3d at 89 (observing that "federal suits challenging
interlocutory state judgments may present difficult questions as
to whether the state proceedings have 'ended' within the meaning
Rooker-Feldman on the federal questions at issue." (citing
Federacion de Maestros de P.R. v. Junta de Relaciones del
Trabajo de P.R., 410 F.3d 17, 25 (1st Cir. 2005))).

Given the nature of the state court decisions, they are
properly categorized as "judgments" within the meaning of the
Rooker-Feldman doctrine because they "ended" the state court

10

proceedings with respect to the issue of arbitrability. The Injunction Order, by its own terms, was a "permanent" resolution of the question of arbitrability and was subsequently affirmed on appeal and reaffirmed by the trial court following a renewed motion by the Movants. Moreover, the fact that decisions such as the Injunction Order are appealable as of right in the New York state court system further supports the conclusion that the Injunction Order constituted a "judgment." See, e.g., Robinson v. Cusack, No. 05-cv-5318, 2007 WL 2028112, at *6 (E.D.N.Y. July 11, 2007) (preliminary injunction entered by the New York State Supreme Court was a "judgment" for Rooker-Feldman purposes because it was "appealable as of right" to the Appellate Division); see also N.Y. C.P.L.R. § 5701.

Furthermore, the injury that the Movants complain of must have been caused by the state court judgment. "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Hoblock, 422 F.3d at 88. In this case, in the absence of the Injunction Order, Teshabaeva and Deng would be bound by the terms of the Confirmation Order and Award and compelled to prosecute their claims solely before the arbitrator. However, because of the Injunction Order, the Movants are being forced to

defend the State Court Action and are deprived of their asserted right to defend against Teshabaeva's and Deng's claims solely before the arbitrator, which is the exact injury about which they complain. Cf. KIPP Acad. Charter Sch. v. United Fed'n of Tchrs., AFT NYSUT, AFL-CIO, 723 F. App'x 26, 29-30 (2d Cir. 2018) (explaining that the state court's denial of a motion to stay arbitration did not cause the movant's injury because, "had no [request to stay arbitration] ever been filed in state court, [the movant] would still have to contend with the same injury"). Accordingly, the first three conditions of the Rooker-Feldman doctrine are met.

Whether the fourth and final condition is satisfied is complicated by the competing timelines of this action and the State Court Action and the roles that the parties have played in each proceeding. Courts in this district have found that the Rooker-Feldman doctrine precludes subject matter jurisdiction where the same party moves to compel arbitration in a state court, loses, and subsequently files a petition in federal court to compel arbitration notwithstanding the state court's decision. See, e.g., Wanderlust, 2001 WL 826095, at *2-5 (finding that the federal court lacked subject matter jurisdiction where a state court denied a party's motion to compel arbitration in February 2001, and that party then filed a federal action seeking the same relief in May 2001). On the

other hand, where a party seeks an injunction from a federal
court in aid of arbitration against state court proceedings or
litigants before the state court has rendered any relevant
decision, federal courts generally have subject matter
jurisdiction and may grant injunctive relief, even if the state
court action was filed first. See, e.g., Nat'l Union Fire Ins.
Co. v. Advanced Micro Devices, Inc., No. 16-cv-5699, 2016 WL
4204066, at *1, 4-5 (S.D.N.Y. Aug. 4, 2016); Reliance Nat'l Ins.
Co. v. Seismic Risk Ins. Servs., Inc., 962 F. Supp. 385, 390-91
(S.D.N.Y. 1997).

This dispute presents a situation comparable to those cases
where a party first seeks relief from a federal court only after
the party was denied that relief from a state court. Teshabaeva
and Deng filed the State Court Action against the Movants in
2017 — well before the Union initiated any relevant proceeding
before the arbitrator in 2019, obtained the Award in April 2020,
and petitioned this Court to confirm the Award in May 2020. No
party in the State Court Action sought relief relating to
arbitration from any court, state or federal, until January
2020, when the State Court Action had already been pending for
over two years. Cf. Wanderlust, 2001 WL 826095, at *3 ("In the
typical case, the petitioner moves in a timely fashion to compel
arbitration in federal court after a state proceeding has
begun.").

13

Critically, the Movants never sought any relief from this Court until December 2021. It was the Union that petitioned for confirmation of the Award in this Court in May 2020, not the Movants, who appeared as respondents in this action. Indeed, unlike other respondents, the Movants never even filed a response to the Union's petition. Instead, the Movants filed a letter in support of other parties' oppositions to the motions to intervene, stay, and dismiss this action in July 2020, only after the state court issued the Injunction Order. And although this Court confirmed the Award in February 2021, the Movants did not seek an injunction from this Court until months later, after the Movants had received multiple adverse rulings from the New York trial and appellate courts. In view of these facts, it is proper to look at the date that the Movants first sought relief in this Court — when they filed the present motion — to determine when the relevant "federal suit commenced," see McKithen, 626 F.3d at 154, not the date on which the Union filed its petition. Accordingly, because the relevant federal dispute between these parties did not commence until after the state courts issued the Injunction and Appellate Orders, the final condition of Rooker-Feldman is satisfied.

The Movants only briefly addressed the Rooker-Feldman doctrine in their papers. They contend primarily that this Court has already rejected any argument relating to the Rooker-Feldman

14

doctrine in the Confirmation Order. This argument is without merit. While the Union's petition was pending, certain parties had moved to dismiss the petition in part on the basis that the Rooker-Feldman doctrine barred the Union from seeking to confirm the Award in view of prior state court decisions in actions involving former employees and certain respondents. This Court rejected that argument because the "Union was not a party in any of the state court suits that the Proposed Intervenors have presented to this Court that the Proposed Intervenors argue barred the arbitration of claims of former union members against their employers." Confirmation Order, 520 F. Supp. 3d at 604-05. The Court also rejected the argument that Rooker-Feldman should apply because the Union was allegedly in privity with the respondents that were parties to those actions. Id. Here, unlike the Union, the Movants were parties to the State Court Action and lost on the issue of compelling arbitration multiple times. Accordingly, the Confirmation Decision's discussion of the Rooker-Feldman doctrine in inapposite.

The Movants also cite Doctor's Associates, Inc. v. Distajo, 107 F.3d 126 (2d Cir. 1997) ("DAI"), in support of the argument that the Rooker-Feldman doctrine should not apply here. In that case, certain plaintiffs filed a state court action against Doctor's Associates, Inc. ("DAI") in December 1994. Id. at 137. DAI failed to appear in the state court action. Id. DAI then

petitioned a federal court to compel arbitration of those claims
in January 1995. Id. The state court entered a default judgment
against DAI on February 7, 1995, and on February 13, 1995, the
federal court granted DAI's petition to compel arbitration and
enjoined the plaintiffs from further prosecuting their state
court suit. Id. After the Court of Appeals for the Second
Circuit vacated the district court's injunction on grounds not
relevant here, the district court entered a temporary
restraining order ("TRO") on December 5, 1995, again enjoining
the plaintiffs from further prosecuting their state suit. Id.
The state court was made aware of the court of appeals' vacatur
of the original injunction but not of the district court's
subsequent TRO. Id. On December 6, 1995, the state court entered
a judgment awarding the plaintiffs damages. Id. The plaintiffs
then argued that the state court judgment stripped the federal
courts of jurisdiction to entertain DAI's petition to compel
arbitration. The court of appeals found that the Rooker-Feldman
doctrine did not apply, reasoning that DAI was not "attempting
to appeal from any of the state court decisions" in part because
"DAI filed its petitions to compel arbitration . . . before the
state courts had made any rulings on the merits in [the state
court actions]." Id. at 138 (emphasis in original). DAI is
therefore inapposite because unlike DAI, the Movants did not

seek relief from this Court until after the state courts issued their adverse rulings.[7]

In sum, this dispute is effectively an appeal from state court decisions that was initiated by the state court losers after they received those adverse rulings and this motion seeks to relieve the Movants of the alleged injuries caused by the state court rulings. This is precisely the sort of situation in which the Rooker-Feldman doctrine applies. Accordingly, the Movants' motion for a preliminary and/or permanent injunction is dismissed for lack of subject matter jurisdiction.

**B.**

Teshabeava and Deng argue alternatively that the motion should be denied under the AIA, the Full Faith and Credit Act ("FFCA"), and related preclusion doctrines.

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "But this power is not boundless."

---

[7] DAI is also distinguishable because unlike DAI, against whom the state court issued a default judgment, the Movants appeared in the State Court Action and had full and fair opportunities to present their arguments to the state courts. The state courts considered and rejected those arguments. Moreover, the state court plaintiffs in DAI admitted that they failed to apprise the state court of the district court's TRO. Here, by contrast, the parties seeking to enjoin the state court proceedings did not inform this Court of the Injunction Order while the Union's petition was pending, and only brought it to this Court's attention after the Award was confirmed and the Movants had received two further adverse rulings from the state trial and appellate courts.

Nix v. Office of Comm'r of Baseball, No. 17-cv-1241, 2020 WL
6482877, at *2 (S.D.N.Y. Nov. 4, 2020). Any federal court
injunction directed to state court proceedings must comply with
the AIA, which generally prohibits the issuance of such
injunctions except in certain narrow circumstances.[8] 28 U.S.C. §
2283; Nix, 2020 WL 6482877, at *2 (citing Chick Kam Choo v.
Exxon Corp., 486 U.S. 140, 146 (1998)). The scope of the
exceptions to the AIA must also be construed consistently with
the FFCA, which provides that state courts judgments "shall have
the same full faith and credit in every court within the United
States . . . as they have by law or usage in the courts of such
State . . . from which they are taken." 28 U.S.C. § 1738;
Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 524
(1986). Furthermore, whether to grant an injunction of state
court proceedings, "even where warranted, is discretionary."
Staffer v. Bouchard Transp. Co., Inc., 878 F.2d 638, 644 (2d
Cir. 1989).

The Movants invoke the so-called "relitigation exception"
to the AIA, which empowers a federal court "to issue an
injunction to protect its judgments from further litigation in
state courts." See Tyco Int'l Ltd v. Walsh, No. 02-cv-4633, 2010

---

[8] "It is well settled that the [AIA] applies to injunctions that prohibit a
person from litigating in a state court, as well as injunctions that directly
stay proceedings in a state court." Smith v. Woosley, 399 F.3d 428, 431 (2d
Cir. 2005). Accordingly, the fact that the Movants seek an injunction
directed to Teshabaeva and Deng does not change the analysis under the AIA.

WL 3447910, at *3 (S.D.N.Y. Sept. 1, 2010). This exception
authorizes an injunction "to protect against relitigation of
claims or issues that actually have been decided by the federal
court," id., and can be invoked when a state court is presented
with issues that a federal court has already resolved in an
interlocutory or final order. See ACLI Gov't Secs., Inc. v.
Rhoades, 963 F.2d 530, 533-34 (2d Cir. 1992); Staffer, 878 F.2d
at 643 (noting that under the relitigation exception, "a federal
court may halt state litigation that might undermine some of the
res judicata or collateral estoppel effects of a federal
judgment"). The Movants contend that the issue of whether
Teshabaeva's and Deng's claims must be arbitrated was finally
resolved by this Court in the Confirmation Order and that the
Movants are therefore entitled to an order enjoining the state
court proceedings in which those exact same issue are being
relitigated. Teshabaeva and Deng dispute that the Confirmation
Order was a final judgment and argue that because the state
trial and appellate courts have already found that the
Confirmation Order is not entitled to preclusive effects in the
State Court Action, any injunction would run afoul of the FFCA
and Parsons Steel and its progeny.

In Parsons Steel, the United States Supreme Court
determined that once a state court has issued a "final judgment"
rejecting a litigant's claim that a state proceeding is barred

19

by the preclusive effect of a prior federal judgment, "the
[FFCA] prevents the federal court from invoking the [AIA] to
protect and effectuate its judgment at the litigant's request."
Golub Corp. v. Curry Rd. Ltd., 99 F.3d 400, 1995 WL 732677, at *3
(2d Cir. 1995)(citing Parsons Steel, 474 U.S. at 522-26); see
also Parsons Steel, 474 U.S. at 524 ("We believe that the [AIA]
and the [FFCA] can be construed consistently, simply by limiting
the relitigation exception of the [AIA] to those situations in
which the state court has not yet" decided the res judicata
effect, if any, of a related federal judgment). The Supreme
Court explained that once a state court has "finally rejected a
claim" that a federal judgment is entitled to res judicata
effect, "then the [FFCA] becomes applicable and federal courts
must turn to state law to determine the preclusive effect of the
state court's decision." Id. However, even if the state court's
ruling determining the res judicata effect of a federal judgment
is not entitled to preclusive effect under state law, district
courts must still "decide the propriety of a federal-court
injunction under the general principles of equity, comity, and
federalism." Id. at 526.

Here, principles of equity, comity, and federalism
strongly counsel against the issuance of an injunction. The New
York trial and appellate courts have expressly and unambiguously
determined that the Confirmation Order is not entitled to

20

preclusive effect in the State Court Action under New York law.
The parties dispute whether the Injunction and Appellate
Division Orders are properly categorized as final or
interlocutory, but the resolution of that question is not
dispositive here. At least two courts of appeal applying Parsons
Steel have found that "the interests in preventing possible
relitigation" are almost always outweighed by "heightened comity
concerns" where, as here, a state court has issued an order,
final or not, determining the preclusive effect of a federal
court judgment. See, e.g., Ramsden v. AgriBank, FCB, 214 F.3d
865, 870-71 (7th Cir. 2000) ("We believe that a rule that
restricts a federal court's discretion to enjoin state court
proceedings once the state court expressly and unambiguously
decides a res judicata defense, whether or not there has been a
final judgment on the entire claim in state court, best
reconciles the conflicting concerns identified in Parsons
Steel."); see also Brother Records, Inc. v. Jardine, 432 F.3d
939, 944 (9th Cir. 2005) ("Even if the [state court decision
determining the preclusive effect of a federal judgment] is not
final and preclusive, we conclude that the district court did
not abuse its discretion in giving it effect . . .. The [state
court's] decision on res judicata was sufficiently definitive
that [equity, comity, and federalism] are satisfied by according
great weight to the state court's ruling.").

21

Because the state trial and appellate courts have already considered the effect of the Confirmation Order and decided unambiguously that it does not preclude the State Court Action, the interests of equity, comity, and federalism would be undermined if this Court were to review those decisions. See Parsons Steel, 474 U.S. at 526. To the extent that "further state court proceedings would undermine" the Confirmation Order, those concerns are best addressed by arguments before other courts. See Ramsden, 214 F.3d at 871 n.1; see also Parsons Steel, 474 U.S. at 525 ("Challenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from [the Supreme Court].").

Accordingly, regardless of whether this Court has subject matter jurisdiction over the motion, the Court declines to enjoin the State Court Action.

## C.

For similar reasons, the Movants have also failed to satisfy their burden of demonstrating that they are entitled to an injunction.

A preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies," Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007), and it "should not be granted unless the movant, by a clear showing,

22

carries the burden of persuasion." Mazurek v. Armstrong, 520
U.S. 968, 972 (1997). "A party seeking a preliminary injunction
must show (1) irreparable harm; (2) either a likelihood of
success on the merits or both serious questions on the merits
and a balance of hardships decidedly favoring the moving party;
and (3) that a preliminary injunction is in the public
interest." N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,
883 F.3d 32, 37 (2d Cir. 2018). A showing of irreparable harm is
"the single most important prerequisite for the issuance of a
preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec
Corp., 559 F.3d 110, 118 (2d Cir. 2009).

The Movants contend that the loss of their right to
arbitrate Teshabaeva's and Deng's claims constitute an
irreparable harm. Although "it is well established that losing
the ability to enforce an arbitration agreement is a form of
irreparable harm," see Nat'l Union Fire Ins., 2016 WL 4204066,
at *5, the Movants' claim of injury is difficult to reconcile
with the way in which they litigated this action and the State
Court Action. The Movants did not seek an order regarding
arbitration from any court until more than two years after the
State Court Action was filed and after Teshabaeva and Deng first
sought an order enjoining arbitration. And even though the
Confirmation Order was issued in February 2021, the Movants did
not seek any injunction from this Court until months after they

continued to litigate and lose before the state courts. That the Movants "failed to seek injunctive relief until after [they] received an unfavorable decision in state court further undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." See Kwik Ticket Inc. by Shamah v. Spiewak, No. 20-cv-1201, 2020 WL 1643485, at *2 (E.D.N.Y. Apr. 2, 2020) (quoting Tough Traveler, Ltd. v. Outbound Prod., 60 F.3d 964, 968 (2d Cir. 1995)).

The Movants also cannot demonstrate a likelihood of success on the merits. The crux of the Movants' argument is that under the Confirmation Order, they are entitled to arbitrate Teshabaeva's and Deng's claims and be free from having to litigate them in state court. The state trial and appellate courts have considered and rejected this argument. This Court declines to revisit those conclusion for the reasons discussed above.

Finally, the requested injunction is not in the public interest. There is a strong public interest, as expressed in the Rooker-Feldman doctrine, AIA, and FFCA, in ensuring that lower federal courts do not preside over appeals lodged by state court losers seeking to overturn adverse state court decisions. See e.g., Tyco, 2010 WL 3447910, at *3 ("Proceedings in state courts should normally be allowed to continue unimpaired by

24

intervention from lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the Supreme] Court.") (quoting Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287 (1970))); Wanderlust, 2001 WL 826095, at *2 ("[A] party cannot invoke the federal policy in favor of arbitration as a means of improperly appealing a state court ruling.").

Accordingly, the Movants have failed to demonstrate their entitlement to a preliminary and/or injunction.

### CONCLUSION

The foregoing constitutes the Court's findings of fact and conclusions of law. The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movant's motion for preliminary and/or permanent injunction is **denied.**

The Clerk is directed to close Docket No. 169.

**SO ORDERED.**

Dated:     **New York, New York**
           **February _16_ , 2022**

                                            _John G. Koeltl_
                                    **United States District Judge**

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

1199SEIU UNITED HEALTHCARE WORKERS
EAST,

       Petitioner,

   - against -

PSC COMMUNITY SERVICES, ET AL.,

       Respondents.
────────────────────────────────

        20-cv-3611 (JGK)

        <u>OPINION AND ORDER</u>

JOHN G. KOELTL, District Judge:

  The Petitioner, 1199SEIU United Healthcare Workers East ("1199SEIU" or the "Union"), seeks to confirm an arbitration award under Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), as amended, 29 U.S.C. § 185. The award, issued on April 17, 2020 (the "Award"), was rendered pursuant to collective bargaining agreements (the "CBAs") between the Union and each of the Respondents,[1] a group of home care agencies, and

─────────────────

[1] The Respondents are: PSC Community Services; New Partners, Inc. d/b/a/ Partners in Care; Stella Orton Home Care Agency; Richmond Home Needs; Sunnyside Home Care Project; Sunnyside Cityside Home Care; Family Home Care of Brooklyn and Queens; Care at Home; Chinese-American Planning Council Home Attendant Program; United Jewish Council of the East Side Home Attendant Service Corporation; The First Chinese Presbyterian Community Affairs Home Attendant Corporation; Azor Home Care; Bushwick Stuyvesant Heights Home Attendants, Inc.; CABS Homecare; River-Spring Licensed Homecare Services Agency, Inc.; St. Nicholas Human Supports Corporation; Wartburg; Alliance for Health, Inc.; Region Care, Inc.; Special Touch Home Care Services, Inc.; Rain Inc.; Prestige Home Care, Inc.; Prestige Home Attendant Inc. d/b/a All Season Home Attendant; Personal Touch Home Care of N.Y., Inc.; Priority Home Services; Premier Home Health; Bronx Jewish Community Council Home Attendant Services; CIDNY Independent Living Services; Home Care Services for Independent Living; New York Foundation for Senior Citizens Home Attendant Services; Cooperative Home Care Associates; RiseBoro Homecare, Inc.; Fegs Home Attendant Services; Home Health Management Services Inc.; School Settlement Home Attendant Corp.; Rockaway Home Attendant; Bronxwood Home for the Aged, Inc.; AccentCare of NY, Inc.; Isabella Visiting Care, Inc.; Social

it potentially affects more than 100,000 current and former home care employees represented by the Union.  Two groups of parties, former employees of respondents Chinese-American Planning Council Home Attendant Program ("CPC") and United Jewish Council of the East Side Human Attendant Service ("UJC") (together, "Proposed Intervenors") have filed motions to intervene and dismiss or stay the petition. Non-party Gail Yan ("Non-Party Yan") has also filed a motion to dismiss the petition for lack of jurisdiction.[2]

For the reasons that follow, the Proposed Intervenors' motion to intervene is **DENIED**, the motions to dismiss or stay are **DENIED**, and the petition to confirm the arbitration award is **GRANTED**.

## I.   Facts

The following facts are taken from the Petition and declarations filed by the parties and are undisputed unless otherwise noted.

1199SEIU is a labor union, that serves as the sole and exclusive representative for the Respondents' home health aide employees, including for purposes of collective bargaining over

---

Concern Community Development Corp.; ABC Health Services Registry; and, Alliance Home Services. Pet. ¶ 3. According to the Petition, "due to scrivener's error" in the Award, "Rain, Inc." was erroneously referred to as "Award Ray, Inc.," "Premier Home Health" was erroneously referred to as "Premiere Home Health," "CIDNY Independent Living Services" was erroneously referred to as "Sydney Independent Living Services," and "RiseBoro Homecare, Inc." was erroneously referred to as "Rise Borough Home Care, Inc." Id. ¶ 3 & nn. 1-4.
[2] Non-Party Gail Yan has not filed a motion to intervene.

the terms and conditions of their employment. <u>See</u> Pet. ¶ 6. The
Respondents are licensed home care agencies. <u>Id.</u> ¶ 3. The Union
is a party to a substantially similar CBA with each of the
Respondents. <u>Id.</u> ¶ 7.

It is uncontested that each of the CBAs included a
grievance and arbitration procedure that provides, in relevant
part:

> 1. A grievance is defined as any dispute between the Union
> (on its behalf and/or on behalf of any Employee) with the
> Employer involving the proper application, interpretation,
> or compliance with the specific written provisions of the
> Agreement based on facts and circumstances occurring during
> the term of this Agreement. A grievance is subject to
> arbitration.
> 2. Grievances will be resolved in accordance with the
> following procedure. . . .
>> Step 4 -- If the grievance is not resolved at Step 3,
>> the Union and/or Employer may within ten (10) days
>> thereafter request that the matter be submitted for
>> final and binding arbitration under the Labor
>> Arbitration Rules of the American Arbitration
>> Association.
> 3. Notwithstanding the foregoing, a grievance that affects
> a substantial number of Employees and is outside the
> authority of the Employer's representatives designated in
> Steps 1 and 2 may be presented initially at Step 3 of the
> grievance procedures. This grievance must be presented in
> writing and within ten (10) days of the occurrence which
> gave rise to the grievance. . . .
> 5. The opinion and award of the arbitrator must be made in
> writing and is final and binding upon all parties. The
> arbitrator has full authority to decide the issue or issues
> in dispute, except that s/he does not have authority to
> amend, alter, modify, add to or subtract from the
> provisions of this Agreement.

<u>Id.</u> ¶ 8; Pet. Ex. B, at 28-29.  Under Rule 3(a) of the Labor
Arbitration Rules of the American Arbitration Association (the

"AAA Rules"), "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Pet. Ex. A, at 13.

In or about 2014, the Union signed a Memorandum of Agreement with each of the Respondents, that provided in relevant part:

> [G]iven changes in federal and state law imposing new obligations on the Employer and exposing Employers to significantly increased level of litigation, it is in the interest of the Union, Employees, and the Employer to develop an expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, between the execution of this Agreement and December 1, 2014, or as otherwise agreed by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such a procedure in the allotted time, the Employer may submit the dispute to Martin F. Scheinman for final and binding arbitration.

Pet. ¶ 9; Pet. Ex. C, at 6-7.

Finally, in or about 2015, the Union signed a further Memorandum of Agreement (the "2015 MOA") with each of the Respondents, that provided for the resolution of claims under the Fair Labor Standards Act, the New York Home Care Worker Wage Parity Law, and New York Labor Laws, pursuant to an alternate dispute resolution process. See Pet. ¶ 10; Pet. Ex. D, t 9. In relevant part, the 2015 MOA provided that a new article be added

to the CBA, entitled "ALTERNATIVE DISPUTE RESOLUTION," which

provided in relevant part:

> The parties agree a goal of this Agreement is to ensure
> compliance with all federal, state and local wage hour
> laws and wage parity statutes. Accordingly, to ensure
> the uniform administration and interpretation of this
> Agreement in connection with federal, state and local
> wage-hour and wage parity statutes, all claims brought
> by either the Union or Employees, asserting violations
> of or arising under the Fair Labor Standards Act
> ("FLSA"), New York Home Care Worker Wage Parity Law, or
> New York Labor Law (collectively, the "Covered
> Statutes"), in any manner, shall be subject exclusively,
> to the grievance and arbitration procedures described in
> this Article. The statute of limitations to file a
> grievance concerning the Covered Statutes shall be
> consistent with the applicable statutory statute of
> limitations. All such claims if not resolved in the
> grievance procedure, including class grievances filed by
> the Union, or mediation as described below shall be
> submitted to final and binding arbitration before Martin
> F. Scheinman, Esq. The Arbitrator shall apply
> appropriate law and shall award all statutory remedies
> and penalties, including attorney['s] fees, consistent
> with the FLSA and New York Labor Law in rendering
> decisions regarding disputes arising under this Article.

Pet. ¶ 10; Pet. Ex. D, at 9.  The 2015 MOA also required that

before parties can proceed to resolve a grievance alleging a

violation of a "Covered Statute" through arbitration, it must

first be submitted for "mandatory mediation." Pet. ¶ 11; Pet.

Ex. D, at 9.[3] It also stated that, "[t]he parties agree not to

---

[3] Specifically, the 2015 MOA provides:
> 2. Whenever the parties are unable to resolve a grievance alleging a
> violation of any of the Covered Statutes, before the matter is
> submitted to arbitration, the dispute shall be submitted to mandatory
> mediation. The parties hereby designate Martin F. Scheinman, Esq., as
> Mediator for such disputes. Such mediation shall be requested no more
> than thirty (30) calendar days following exhaustion of the grievance
> procedure. . . .

contest court confirmation of an arbitration award rendered under this Article." Pet. ¶ 11; Pet. Ex. D, at 10.

On January 2, 2019, the Union filed a class action grievance against the Respondents on behalf of its home care "members concerning violations of the CBAs regarding wage and hour claims arising under the Covered Statutes." Pet. ¶ 12. Pursuant to the 2015 MOA and CBA, the Union and Respondents proceeded to mediation before Martin S. Scheinman (the "Arbitrator"), which concluded on December 24, 2019 without an agreement having been reached. Id. ¶¶ 14, 16. At the time the Union filed the grievance, certain home care workers, including certain employees who had terminated employment prior to the adoption of the 2015 MOA, had initiated putative class action lawsuits in state and federal court to pursue claims under the "Covered Statutes" directly against their employers. Id. ¶ 13. In cases involving eight former home care workers, courts held that the plaintiffs could not be compelled to arbitrate under the 2015 MOA. Id. ¶ 13. With the consent of the Arbitrator, certain attorneys representing individual home care employees,

---

3. No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within four (4) months following the Mediator's declaration that mediation has concluded. . . .
Pet. ¶ 11; Pet. Ex. D, at 9-10.

who were then plaintiffs in pending court cases, also participated in the mediation. Id. ¶ 15.

On December 18, 2019, the Arbitrator held a telephone conference in which the Union and certain Respondents participated. See Fourth Blackstone Decl., ECF No. 153, ¶ 4. Arbitrator Scheinman stated that he was inclined to deem the mediation concluded and proceed to arbitration, and "the parties presented their joint position on the importance of the Arbitrator bifurcating the proceeding and finally deciding the gateway issues of arbitrability and jurisdiction." Id. The Arbitrator agreed to establish a briefing schedule and hearing date on those issues. Id. On December 24, 2019, in addition to declaring the mediation complete, Arbitrator Scheinman gave the parties leave to submit briefs addressing two threshold issues:

> 1. Are the claims encompassed by the wage and hour related grievances involving current and former 1199 bargaining unit members, including those arising under federal, state and local law, arbitrable?
> 2. Does the Arbitrator have jurisdiction to adjudicate the claims asserted in the wage and hour grievances arising under federal, state and local law, filed by the parties to the Collective Bargaining Agreement ("Agreement") which encompass all claims arising under the federal, state and local laws named in the Agreement, as well as any pending litigation or administrative actions on the identical claims, irrespective of whether employees' employment terminated prior to the effective date of the Memorandum of Agreement providing Arbitration Dispute Resolution for exclusive mediation/arbitration procedures for wage and hour disputes pursuant to the Agreement between the parties?

7

Pet. ¶¶ 16-17; Pet. Ex. A, at 7-8.[4] The Arbitrator held a hearing on January 15, 2020, and certain attorneys representing individual home care employees that were plaintiffs in pending court cases and who had participated in the mediation, were given notice of the hearing and appeared. See Pet. ¶¶ 18-19. Following the hearing and submission of briefs, the Arbitrator issued the Award on April 17, 2020. Id. ¶ 20. In relevant part, the Arbitrator determined that the wage and hour related grievances involving current and former Union bargaining unit members, including those under federal, state, and local law, are arbitrable. See Pet. Ex. A, at 47.  In addition, the Arbitrator determined he had "jurisdiction" to adjudicate the claims. Id. However, the Arbitrator expressly excluded from the Award eight employees, who were plaintiffs in pending state cases: Alvaro Ramirez Guzman, Elida Augustina Mejia Herrera, Leticia Panama Rivas, Boris Pustilnik, Maral Agarunova, Epifania Hichez, Carmen Carrasco, and Seferina Acostta. Id. at 48.

At both the oral argument held before Arbitrator Scheinman on January 15, 2020, and in this proceeding, none of the Respondents disputed the Arbitrator's conclusions regarding the jurisdiction and arbitrability. See Fourth Blackstone Decl., ECF No. 153 ¶¶ 6-7.

---

[4]  Arbitrator Schneiderman also gave parties leave to submit briefs on "What is the role, if any, of counsel for the individual Plaintiffs, collective or putative class in this proceeding?" Pet. Ex. A, at 8.

Three of the original seven Proposed Intervenors—Mei Kum Chu, Sau King Chung, Qun Xiang Ling—are former employees of CPC, and have been involved in state and federal court litigation against CPC. Although the parties contest the scope and significance of these prior actions for this petition to confirm the Award, the parties appear to agree that the CPC-related litigation is pending, after it had previously been stayed. See Kirschner Decl., ECF No. 111, ¶ 9; Kirschner Decl. Ex. K; ECF Nos. 141, 146, 158.[5] The parties agree that Mei Kum Chu, Sau King Chung, and Qun Xiang Ling were no longer members of the union when the 2015 MOA took effect. See Second Blackstone Decl., ECF No. 139, ¶ 4. The remaining Proposed Intervenors—Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Dulce Herrera Palma, and an additional "new" Proposed Intervenor, Maria Diaz—are former employees of UJC. See ECF No. 146, at 1. Hichez, Carrasco, and Acosta are named plaintiffs in pending state court litigation against UJC. Id. at 1-2. The New York State Supreme Court denied UJC's motion to compel arbitration, in a decision that was affirmed by the Appellate Division, finding that the plaintiffs raised claims "outside the CBA" and as former members of the Union, were not bound by the 2015 MOA's exclusive alternative dispute provision. Hichez v. United Jewish Council of the E.

---

[5]  In a letter to the Court, the Proposed Intervenors informed the Court that a New York state court reinstated the case on February 9, 2021, and granted Mei Kum Chu, Sau King Chung, and Qun Xiang Ling leave to file an amended complaint. ECF No. 158.

Side, 117 N.Y.S.3d 214, 215 (App. Div. 2020). Out of respect for this decision, the Arbitrator concluded that these three plaintiffs were explicitly carved out of the scope of the Award. See Pet. Ex. A, at 44 & n.18. According to Union records, Proposed Intervenors Acosta, Carrasco, and Dulce Herrera Palma were UJC employees and bargaining unit members through 2016, and thus were both employees and Union bargaining members when the 2015 MOA took effect.[6] See Second Blackstone Decl., ECF No. 139, ¶ 4. In addition, according to the Union records, Diaz worked for various Respondents between 2013 and October of 2020, and was a bargaining unit member at the time the 2015 MOA took effect, when it was executed, and when the Union filed its grievance in January 2019. See Third Blackstone Decl., ECF No. 150, ¶ 6.

## II. Motion to Intervene

The Proposed Intervenors-Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Dulce Herrera Palma-have filed a motion to intervene, and counsel for the Proposed Intervenors subsequently filed a letter seeking to intervene on behalf of Maria Diaz, a "new" intervenor

---

[6] The Proposed Intervenors concede that Palma was an employee and union member when the 2015 MOA took effect, but contest the status of Acosta and Carrasco. However, they have offered no evidence to rebut the Union's records. See Sitzer Decl., ECF No. 113, ¶¶ 2-3; ECF No. 127, at 8 (conceding Palma was still an employee and Union member when the 2015 MOA took effect); ECF No. 146, at 1 & n. 1.

who was a former employee of UJC.[7] The Proposed Intervenors argue that they should be permitted to intervene because they wish to pursue their claims in state court, and the Arbitrator's Award addresses his jurisdiction to adjudicate their claims. Both the Union and Respondents UJC and CPC have opposed these motions, arguing that the Proposed Intervenors lack standing to challenge the Award and do not satisfy the requirements for intervention under Federal Rule of Civil Procedure 24.

### A. Standing

It is well established that "an individual employee represented by a union [in a labor arbitration] generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir. 1994) (per curiam); see, e.g., In re AMR Corp., 598 B.R. 365, 373 (Bankr. S.D.N.Y. 2019); Choudhary v. U.S. Postal Serv., No. 14-cv-4500, 2015 WL 1651076, at *2 (E.D.N.Y. Apr. 14, 2015); Duffy v. Legal Aid Soc'y, No. 12-cv-2152, 2013 WL 541521, at *3 (S.D.N.Y. Feb. 12, 2013); Shait v. The Millennium Broadway Hotel, No. 00-cv-5584, 2001 WL 536996, at *8-9, (S.D.N.Y. May 18, 2001); Johnson v. Am. Arbitration Ass'n, No. 98-cv-6314, 1999 WL 223154, at *2, (S.D.N.Y. Apr. 16, 1999); U.S. Postal Serv. v.

---

[7] To the degree that the Proposed Intervenors argue they are intervening on behalf of a class, they lack standing, because they have not pointed to any class that has been certified.

11

<u>Am. Postal Workers Union</u>, 564 F. Supp. 545, 550 (S.D.N.Y. 1983).[8]
Although employees "may have standing to attack an arbitration
award under section 301 of the [LMRA], upon a showing that the
union breached its statutory duty of fair representation, or
upon a showing of fraud or deceit," or that the union has
"failed to act upon the award," <u>U.S. Postal Serv.</u>, 564 F. Supp.
at 550-51, the Proposed Intervenors have not made such
allegations, nor provided evidence to suggest such conditions
are met here. Thus, the Proposed Intervenors lack standing to
challenge the Award.

## B. Rule 24

The Proposed Intervenors also have failed to demonstrate
that they satisfy the requirements of Rule 24. Rule 24(a)(2)
provides for intervention as of right to any party who can
"(1) file a timely motion; (2) show an interest in the
litigation; (3) show that its interest may be impaired by the
disposition of the action; and (4) show that its interest is not
adequately protected by the parties to the action." <u>D'Amato v.
Deutsche Bank</u>, 236 F.3d 78, 84 (2d Cir. 2001); <u>see</u> <u>also</u> Fed. R.
Civ. P. 24(a)(2). Although permissive intervention is left to
the discretion of the district court, "court[s] consider[ ]
substantially the same factors whether the claim for

---

[8] Unless otherwise noted, this Opinion and Order omits all alterations,
omissions, emphasis, internal quotation marks, and citations in quoted text.

intervention is 'of right' under [Rule 24(a)(2)], or 'permissive' under [Rule 24(b)(1)(B)]." R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006). The Court of Appeals has instructed that "a failure to satisfy any one of these four requirements is a sufficient ground to deny the application." Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam). Because each of the Proposed Intervenors have at minimum failed to demonstrate that their interests would be impaired and are not being adequately represented, their motions to intervene are denied.

First, Maria Diaz's submission requesting to intervene was neither made by a "motion" within the meaning of Rule 24, nor was it timely. See Fed. R. Civ. P. 24(a), (c).[9] Although "timely" is not defined by Rule 24, courts consider: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of

---

[9]  Counsel for Maria Diaz submitted a Declaration from Maria Diaz and a memorandum of law in support of her intervention, but did not file a motion to intervene and instead sought to relate Maria Diaz's request back to the fully briefed motions to intervene filed by Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Dulce Herrera Palma. See ECF Nos. 103, 145, 146. Maria Diaz was not named in the original motions to intervene, and her counsel suggests she should be permitted to intervene because in a Reply Brief for the original motions to intervene, counsel for the Proposed Intervenors' requested to "expeditiously substitute another potential intervenor once he or she is located." ECF No. 127, at 8.  However, motions to intervene are filed on behalf of specific parties, not on behalf of counsel.

unusual circumstances militating for or against a finding of
timeliness." MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n,
Inc., 471 F.3d 377, 390 (2d Cir. 2006). The Union filed the
petition to confirm the Award on May 8, 2020, following months
of the grievance process and years of state court litigation.
Diaz's request to intervene on December 7, 2020, after the
parties had completed multiple rounds of extensive, voluminous
briefing, would prejudice the parties in the current
proceedings, and no compelling or unusual circumstances weigh in
favor of finding her motion timely.

Apart from Maria Diaz, the Proposed Intervenors' motions
are otherwise timely, and because the Union is seeking to pursue
claims for alleged violations of individual intervenors' rights
under Covered Statutes, the Proposed Intervenors can be said to
have an "interest" in the arbitration. However, the only
"interest" of the Proposed Intervenors, cognizable under Rule 24
would be their potential entitlement to compensation for
potential violations of labor laws or the terms of the CBA. By
contrast, the Proposed Intervenors' apparent argument that
confirmation of the Award may impair their ability to assert
their claims in state court is too contingent or remote to be
cognizable under Rule 24. See Floyd, 770 F.3d at 1060 ("[F]or an
interest to be 'cognizable' under Rule 24, it must be direct,
substantial, and legally protectable [such that an] interest

14

that is remote from the subject matter of the proceeding, or
that is contingent upon the occurrence of a sequence of events
before it becomes colorable, will not satisfy the rule."); see
also Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC, 289
F. Supp. 3d 582, 593 (S.D.N.Y. 2018); Sec. Inv'r Prot. Corp. v.
Bernard L. Madoff Inv. Sec. LLC, 550 B.R. 241, 253 (Bankr.
S.D.N.Y. 2016) (noting the "stare decisis effect of an adverse
judgment" alone is not sufficiently cognizable under Rule
24(a)). The possibility that the Award might make it more
difficult for the Proposed Intervenors to pursue their claims in
the manner they may now wish, despite the terms of the CBA or
their Union's efforts to pursue their claims on their behalf, is
not sufficiently direct, substantial, and legally protectable to
be cognizable as an interest under Rule 24.

So understood, the Proposed Intervenors have failed to show
that their interest in the resolution of their claims against
the Respondents is not being adequately represented, or that
their interest would be impaired without their intervention.
While the burden to demonstrate inadequacy of representation is
generally "minimal," Trbovich v. United Mine Workers of Am., 404
U.S. 528, 538 n.10 (1972), a more rigorous showing of inadequacy
has been required in cases "where the putative intervenor and a
named party have the same ultimate objective," Butler,
Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir.

15

2001); <u>see also</u> <u>Washington Elec. Co-op., Inc. v. Massachusetts</u> <u>Mun. Wholesale Elec. Co.</u>, 922 F.2d 92, 98 (2d Cir. 1990) ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured."); <u>Royal Park</u> <u>Investments SA/NV v. U.S. Bank Nat'l Ass'n</u>, 356 F. Supp. 3d 287, 297 (S.D.N.Y. 2018).

Moreover, the Proposed Intervenors' alleged impairment is speculative. The Proposed Intervenors do not represent that they have attempted to pursue the Union's internal grievance procedures and been rebuffed, or that the Union's representation of their claims is inadequate. <u>Cf.</u> <u>Republic Steel Corp. v.</u> <u>Maddox</u>, 379 U.S. 650, 653 (1965) (a former employee "must afford the union the opportunity to act on his behalf"). The Union has acted with diligence, and the Proposed Intervenors have provided no evidence to suggest that the Union would not adequately represent the Proposed Intervenors' claims against the Respondents. And, to the degree that the Union later fails in its duty, the Proposed Intervenors can bring an action alleging the Union has breached its duty of fair representation. <u>See</u> <u>Marquez v. Screen Actors Guild, Inc.</u>, 525 U.S. 33, 44-48 (1998).

Finally, there are additional factual differences for certain Proposed Intervenors that further support their lack of standing and emphasize that their intervention would be inappropriate. First, Epifania Hichez, Seferina Acosta and

16

Carmen Carrasco are expressly excluded from the Award, and thus cannot allege they suffer even the speculative impairment of the Award's potential effect on parallel state court litigation. See Pet. Ex. A, at 44. Further, according to sworn declarations from the Union, Palma, Acosta, and Carrasco were Union members at the time the 2015 MOA was executed and took effect.[10] Further, in addition to being untimely, Maria Diaz's attempt to intervene is similarly improper. Although she did cease to be an employee of UJC, she thereafter worked for two other agencies at which she was represented by 1199SEIU. The Union has presented evidence to establish that Ms. Diaz was a bargaining unit member both at the time the 2015 MOA took effect, and when the grievance was filed in January 2019. See Hocson Decl., ECF No. 149; Third Blackstone Decl., ECF No. 150, ¶ 6.

Thus, even if a distinction were to be drawn between employees who ceased to be Union members before the 2015 MOA was executed or took effect, Palma, Acosta, Carrasco, and Diaz would all be bound by the 2015 MOA's exclusive Alternative Dispute Resolution provision.

---

[10] The Proposed Intervenors have conceded that Palma lacks standing because she was working and a member of the Union after the 2015 MOA took effect. See ECF No. 127, at 8. Although the parties dispute whether Seferina Acosta and Carmen Carrasco were Union members at the time of the 2015 MOA was executed, the Union has provided a sworn declaration, and supporting evidence from its Dues that they were members. The Proposed Intervenors have presented no evidence to support their claim that this is false and have merely stated that "the factual dispute should not affect any of the outstanding motions." ECF No. 146, at 1 & n. 1.

Non-Party Gail Yan never filed a motion to intervene, and, beyond her stated interest that she "want[s]" certain named plaintiffs in a parallel suit "to continue representing" her claims against CPC, Yan Aff., ECF No. 101, Ex. E ¶ 9, she has not articulated any other interests that would be cognizable under Rule 24.

Therefore, the motions to intervene are denied.

### III.  Jurisdiction and Preclusion

This is an action to confirm an arbitration award. "Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998); 29 U.S.C. § 185.

Non-Party Yan has filed a "motion to dismiss the petition pursuant to Rule 12(h)(3)," requesting this Court to find sua sponte that it lacks subject matter jurisdiction. Together with Non-Party Yan, the Proposed Intervenors also argue in their motion to dismiss or stay that the Award is not sufficiently final and ripe for judicial review and that confirmation of the Award is barred by issue and claim preclusion. In addition, Non-Party Yan has argued that this Court lacks jurisdiction under the Rooker-Feldman doctrine. For the reasons that follow, all three arguments are without merit.

18

**A.**

The Proposed Intervenors and Non-Party Yan both argue that the Award at issue here is not ripe for review, because it is not a final award. That argument is without merit.

The Petitioner and the Respondents—the parties-and the Arbitrator agreed that two threshold issues relating to the scope of the arbitration warranted bifurcation and should be submitted for final resolution by the Arbitrator, prior to a determination of the merits.  See Fourth Blackstone Decl., ECF No. 153, ¶ 4.  The Proposed Intervenors argue that because the Award did not cover liability or damages, it cannot be final.[11] However, such a restricted approach to finality is not required. While the bifurcation of liability and damages are common examples where courts have confirmed final, although interim arbitration awards, the general test for finality depends on the arbitration agreement and whether the parties intended to "resolve finally the issues submitted" to the arbitrator. Corp. Printing Co. v. NY Typographical Union No. 6, No. 93-cv-6796,

---

[11] The Proposed Intervenors also argue that the Arbitrator's Award was related to "procedural" questions and thus can only be answered by the arbitrator. Such an assertion is unpersuasive.  The parties' clear intention was to submit the questions addressed by the Award as discrete "issues" put to the Arbitrator to answer conclusively. Thus, the Award is the "final disposition" of the matter put to the Arbitrator, rather than one of a series of "'procedural' questions which grow out of the dispute and bear on its final disposition." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964). Moreover, questions relating to the subject matter jurisdiction of the Arbitrator—such as whether a party can demand or compel arbitration at all—are generally not considered "procedural" questions. See id. at 557-58; CBS, Inc. v. Snyder, 989 F.2d 89, 91-92 (2d Cir. 1993).

1994 WL 376093, at *4 (S.D.N.Y. July 18, 1994) (Sotomayor, J.).
"[W]here the parties agree to submit to arbitration part of
their dispute, with the intent that the arbitrator's decision be
a final determination on the issue submitted, the arbitrator has
the authority and responsibility to issue a final, albeit
'interim' award." Pfizer Inc. v. ICWUC/UFCW Locals 95C, No. 13-
cv-1998, 2014 WL 1275842, at *4 (S.D.N.Y. Mar. 24, 2014)
(quoting Corp. Printing Co., 1994 WL 376093, at *4). By
contrast, where the parties dispute finality, or where the
arbitrator signals it "may still revisit" the ruling, a decision
may not yet be sufficiently final to be ripe for review. Ward v.
Ernst & Young U.S. LLP, 468 F. Supp. 3d 596, 604 (S.D.N.Y.
2020).

Thus, despite the Proposed Intervenors' allegations to the
contrary, the Award is "final" with respect to the issues put to
the Arbitrator. The parties sought a decision by the Arbitrator
on important issues on the scope of the arbitration, namely
whether the arbitration included wage and hour claims for former
union members, and whether the Arbitrator had jurisdiction to
arbitrate those claims. Given the importance of those questions
to the scope of the arbitration, the parties sought a decision
on those issues at the outset of the Arbitration.

The Proposed Intervenors and Non-Party Yan note that the
Arbitrator deferred decision about whether a class "opt-out"

provision was appropriate, and that amendments were made by
consent of the parties to correct errors in the Award. But, a
decision regarding whether an opt-out provision should exist is
different from the jurisdictional and arbitrability questions
decided by the Arbitrator. Similarly, the amendment made by
mutual agreement of the parties to add a party that was
mistakenly left out of a list of excluded former employees
similarly does not undermine the finality of the Award.

The Proposed Intervenors seek to rely on Mason Tenders
Dist. Council of Greater New York & Long Island v. CAC of New
York, Inc., in which Judge Ramos concluded that the interim
award was not actually "final," because the defendant disagreed
regarding the finality of the liability award, and because the
arbitrator appeared to leave undecided key aspects of the
liability determination. 46 F. Supp. 3d 432, 436 (S.D.N.Y.
2014). By contrast, in this case, the Respondents have not
opposed the finality of the Arbitrator's Award, and the Award
does not suggest the Arbitrator intends to revisit questions of
scope and arbitrability in future proceedings.[12] Similarly, the
Proposed Intervenors' reliance on language in Gen. Drivers,
Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.,
stating that an award must be "final and binding under the

---

[12] The plaintiff's reliance on Ward is similarly unpersuasive, because the
arbitration panel in that case also clearly stated it may later revise its
conclusions. 468 F. Supp. 3d at 604.

collective bargaining agreement" to support subject matter jurisdiction to enforce it under Section 301, is misplaced. See 372 U.S. 517, 518 (1963). Gen Drivers instructs that a court looks to the CBA itself to determine whether parties intended matters put to the arbitrator to be final. See id. at 519-20. It is plain the CBA and the 2015 MOA both do so. The CBA provides that the Arbitrator "has full authority to decide the issue or issues in dispute" and that the "opinion and award of the arbitrator . . . is final and binding upon all parties." Pet. ¶ 8; Pet. Ex. B at 29. Because it was the parties' intent for this Award to be final regarding the two questions that were decided, and because it is clear that the CBA allows the parties to submit any "issue or issues in dispute" to the Arbitrator to decide, the Award is sufficiently final to support this Court's jurisdiction.[13]

### B.

The Proposed Intervenors and Non-Party Yan argue that preclusion doctrines bar this Court from confirming the Award. The Proposed Intervenors and Non-Party Yan point to prior litigation where various courts did not require former union

---

[13] This Court has jurisdiction under Section 301 of the LMRA, 29 U.S.C. § 185, to consider the petition to confirm the Award. However, in determining whether to entertain a petition to confirm a labor arbitration award under Section 301, courts look for guidance to cases under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., under which a district court only has the power to confirm or vacate a final arbitration award. See Michaels v. Mariforum Shipping, S. A., 624 F.2d 411, 414 (2d Cir. 1980); Mason Tenders, 46 F. Supp. 3d at 435 n.6.

members to arbitrate their claims against their former
employers. Contrary to the Proposed Intervenors' assertions,
preclusion doctrines are affirmative defenses and not
jurisdictional bars. See McKithen v. Brown, 481 F.3d 89, 104 (2d
Cir. 2007).  In any event, their arguments are without merit.

Federal courts "must give to a state-court judgment the
same preclusive effect as would be given that judgment under the
law of the State in which the judgment was rendered." Migra v.
Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).
Under New York law, collateral estoppel, also known as issue
preclusion, will preclude a federal court from deciding an issue
if "(1) the issue in question was actually and necessarily
decided in a prior proceeding, and (2) the party against whom
the doctrine is asserted had a full and fair opportunity to
litigate the issue in the first proceeding." Vargas v. City of
New York, 377 F.3d 200, 205-06 (2d Cir. 2004).  The Second
Circuit Court of Appeals has "cautioned that '[i]ssue preclusion
will apply only if it is quite clear that these requirements
have been satisfied, lest a party be 'precluded from obtaining
at least one full hearing on his or her claim.'" McKithen, 481
F.3d at 105.

Although under New York law, claim preclusion, or res
judicata, is broader than collateral estoppel, encompassing
issues that could have been raised, even if not actually

23

litigated, claim preclusion only applies to parties and their privies. See Paramount Pictures Corp. v. Allianz Risk Transfer AG, 96 N.E.3d 737, 743 (N.Y. 2018). "For purposes of claim preclusion, the requisite privity must be found in the substantial identity of the incentives of the earlier party with those of the party against whom res judicata is asserted." Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1995); see also Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 96 (2d Cir. 2005) (findings regarding whether parties shared an "identity of interest" and whether one party had "sufficient control" over the other were necessary for determining whether privity existed).

Here, the Union was not a party to the prior litigations and the Proposed Intervenors have failed to demonstrate that the Union was in privity with the Respondents. The Proposed Intervenors' assertion that the Union's interests are identical to those of Respondents is unpersuasive. Nor is there evidence to suggest either the Union or Respondents have control over the other. The Union is pursuing grievance claims against the Respondents, seeking compensation for its members and former members for alleged violations of federal and state law. That both the Union and Respondents agree arbitration is the best mechanism for efficiently and effectively adjudicating these claims may show cooperation, but it does not rise to the level

of interest alignment necessary to demonstrate privity. Indeed, it is not surprising that the Proposed Intervenors have offered no cases in which a union and employer were found to be in privity. Because the Union was neither a party, nor in privity with any party to the prior lawsuits, the Proposed Intervenors' claim and issue preclusion arguments are without merit.[14]

c.

Non-Party Gail Yan argues that this Court lacks jurisdiction under the Rooker-Feldman doctrine. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fide. Tr. Co., 263 U.S. 413, 416 (1923). The Rooker-Feldman doctrine is a "narrow doctrine," that bars the jurisdiction of federal district courts over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Lance v. Dennis, 546 U.S. 459, 464 (2006). This argument is entirely without merit. The Union was not a party in any of the state court suits that the Proposed Intervenors have presented to this Court that the Proposed Intervenors argue barred the arbitration of claims of former union members against their employers. See

---

[14] The parties dispute what, if any, final judgments haven been issued against any of the individual respondents. See ECF No. 142, at 1; ECF No. 143 ¶ 3. For example, Alliance for Health and First Chinese Presbyterian Community Affairs Home Attendant Corporation has asserted that "[n]o final judgment has been issued in either of the underlying [state court] litigations against Alliance of FCP." ECF No. 142, at 1.

25

Third Blackstone Decl., ECF No. 150, ¶ 7. Counsel for Non-Party Yan nevertheless argues that the Union is in privity with the Respondents, and thus Rooker-Feldman should apply.  For the reasons already discussed, the Union cannot reasonably be considered to be in privity with the Respondents.  In any event, clear Supreme Court and Second Circuit precedent instruct that principles of privity are inapplicable to Rooker-Feldman. See Lance, 546 U.S. at 466; Kosachuk v. Selective Advisors Grp., LLC, 827 F. App'x 58, 61 (2d Cir. 2020)("In Lance v. Dennis, the Supreme Court stated emphatically that Rooker-Feldman should not be stretched to cover those in privity with state-court losers because to do so would alchemize the doctrine into preclusion by another name."); UBS AG, Stamford Branch v. HealthSouth Corp., 645 F. Supp. 2d 135, 147 & n. 17 (S.D.N.Y. 2008). The Rooker-Feldman doctrine does not deprive this Court of jurisdiction.

## IV.  Motion to Confirm Arbitration Award

The Petitioner has sought to confirm the Award, and the Respondents have not opposed its confirmation.

The LMRA "establishes a federal policy of promoting industrial stabilization through collective bargaining agreements, with a particular emphasis on private arbitration of grievances," and a "clear preference for the private resolution of labor disputes." Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016).

"Under [the LMRA's] framework of self-government, the collective bargaining agreement is not just a contract, but 'a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate,'" that "are negotiated and refined over time by the parties themselves so as to best reflect their priorities, expectations, and experience." Id.

Accordingly, a federal court's review of an LMRA arbitration award is "narrowly circumscribed and highly deferential." A&A Maint. Enter., Inc. v. Ramnarain, 982 F.3d 864, 868 (2d Cir. 2020). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998) (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987)). Instead, a court's role is "simply to determine whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." New York City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of New York, Inc., 826 F.3d 611, 618 (2d Cir. 2016). "Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties

bargained, . . . [i]t is the arbitrator's construction of the contract and assessment of the facts that are dispositive, 'however good, bad, or ugly.'" Nat'l Football League Mgmt. Council, 820 F.3d at 536 (quoting Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 573 (2013)). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract," or "improvident, even silly" mistakes. Misco, 484 U.S. at 36, 39; see also Nat'l Football League Mgmt. Council, 820 F.3d at 536. Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. United States Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

In this case, the CBA required that grievances be arbitrated. Pet. Ex. B, at 29 (Art. XXVI, ¶ 2). The subsequent 2015 MOA clarified that grievances relating to "Covered Statutes" must be arbitrated. See Pet. Ex. D, at 9. Thus, under both agreements there is plainly an agreement to arbitrate. Second, under the CBA, arbitrations occur pursuant to AAA Rules, including AAA Rule 3(a), which delegates questions of jurisdiction and "arbitrability" to the Arbitrator. Therefore, the Respondents and the Union (on behalf of its employees)

agreed to arbitrate and to delegate questions of arbitrability and jurisdiction to the Arbitrator.

The Proposed Intervenors argue at length that the Arbitrator exceeded his authority because certain Proposed Intervenors were no longer employees at the time the 2015 MOA took effect, and therefore they never consented to arbitrate their claims under the Covered Statutes. In addition, the Proposed Intervenors argue that the 2015 MOA cannot relate back to claims based on violations of the Covered Statutes that occurred prior to the 2015 MOA.

However, the Proposed Intervenors' arguments confuse the question of consent to arbitration (namely, did parties consent to arbitrate) with the question of arbitrability (namely, whether the dispute at issue is within the scope of the arbitration agreement). The searching review that the Proposed Intervenor encourages this Court to undertake is not appropriate, because the parties to the CBA–namely the Union and the Respondents–plainly agreed to arbitrate grievances and to delegate such questions of arbitrability to the Arbitrator.

In the context of the FAA, the Supreme Court has instructed that "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." Henry Schein, Inc. v. Archer & White Sales,

*Inc.*, 139 S. Ct. 524, 530 (2019). Specifically, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue," even if the Court believes that "the argument that the arbitration agreement applies to the particular dispute is wholly groundless." *Id.* at 529-30. Similarly, the Court of Appeals for the Second Circuit consistently has instructed that courts must first decide the question of whether a court or an arbitrator answers questions of arbitrability, before proceeding to the question of whether the dispute is arbitrable. *See* VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P._, 717 F.3d 322, 325-26 (2d Cir. 2013); Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran_, 445 F.3d 121, 122 (2d Cir. 2006). Although "[t]echnically the arbitrations in the labor context are governed by the [LMRA] rather than the FAA," courts in this Circuit have "substantially imported the analysis from the FAA" regarding whether an arbitrator exceeded his authority. A&A Maint. Enter., Inc._, 982 F.3d at 869 n.2. The Proposed Intervenors have made little effort to distinguish these clear instructions from the FAA context. Respecting the parties' decision to delegate questions of arbitrability to an arbitrator in the CBA comports with the well-established, highly

30

deferential review of arbitration awards and the need to preserve industrial peace in the LMRA context.

The CBA plainly was an agreement to arbitrate, to which all of the Proposed Intervenors were bound. The CBA delegated questions of arbitrability to the Arbitrator by reference to the AAA Rules. Although "[t]he question [of] whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability," is presumptively "an issue for judicial determination," the matter may be committed to the arbitrator if "the parties clearly and unmistakably [so] provide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).[15] Courts in this Circuit have recognized that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability," such as the AAA Rules, "the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005); see also Henry Schein Inc., 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."); Citi Connect, LLC v. Local Union No. 3, Int'l Bhd. of Elec. Workers,

---

[15] New York law follows the same, "well settled proposition that the question of arbitrability is an issue generally for judicial determination," but also recognizes an "important legal and practical exception" when parties evince a "clear and unmistakable agreement to arbitrate arbitrability." Smith Barney Shearson Inc. v. Sacharow, 689 N.E.2d 884, 887 (N.Y. 1997); see also Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003).

AFL-CIO, No. 20-cv-5147, 2020 WL 5940143, at *5 (S.D.N.Y. Oct.
7, 2020).[16]

Moreover, the Arbitrator's conclusions are more than his
own brand of "industrial justice." Misco, 484 U.S. at 38.
First, given the absence of temporal limitations in the CBA or
the 2015 MOA, with the appropriate highly deferential review,
this Court cannot say that the Arbitrator's finding that claims
based on violations of the Covered Statutes that occurred prior
to the 2015 MOA's effective date were arbitrable either failed
to draw its essence from the CBA or was outside the scope of his
authority. See, e.g., Smith/Enron Cogeneration Ltd. P'ship, Inc.
v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98-99 (2d Cir.
1999); Rodriguez v. New York Found. for Senior Citizens Home
Attendant Servs., Inc., No. 15-cv-9817, 2016 WL 11707094, at *3
(S.D.N.Y. July 14, 2016); Lai Chan v. Chinese-Am. Planning
Council Home Attendant Program, Inc., 180 F. Supp. 3d 236, 241
(S.D.N.Y. 2016).

The Proposed Intervenors argue that the Union cannot
represent its former employees, either in assenting to the 2015
MOA or in initiating the grievance, and thus—at least—former
employees did not "consent" to arbitration. But this
misconceives the relationship between a Union and its bargaining

---

[16] New York Law similarly recognizes a court's limited authority in the face
of such a clear delegation of questions concerning arbitrability to an
arbitrator. See, e.g., Revis v. Schwartz, No. 2017-07940, 2020 WL 7756565, at
*8 (N.Y. App. Div. Dec. 30, 2020).

unit members and oversimplifies the CBA at issue. As the "exclusive bargaining" agent for home care employees of the Respondents, the Union had authority to enter into CBAs and subsequent agreements, on behalf of its bargaining unit members. See 29 U.S.C. § 159(a). The Proposed Intervenors' arguments that former employees cannot be bound by a CBA or cannot be represented by their Union in arbitration are without merit. To accept that conclusory argument would "essentially allow Union members to opt-out of their obligations under a collective bargaining agreement by simply withdrawing from their union prior to bringing suit." Germosen v. ABM Indus. Corp., No. 13-cv-1978, 2014 WL 4211347, at *6 & n.16 (S.D.N.Y. Aug. 26, 2014). Indeed, courts in this Circuit have compelled former employees to arbitrate claims under CBA alternative dispute provisions, including in instances where supplemental agreements were executed after the plaintiff ceased employment. See e.g., Rodriguez, 2016 WL 11707094, at *3 (finding a former employee who ceased working prior to the date the 2015 MOA took effect was still compelled to arbitrate her wage-hour claims, including statutory claims); Pontier v. U.H.O. Mgmt. Corp., No. 10-cv-8828, 2011 WL 1346801, at *3 (S.D.N.Y. Apr. 1, 2011) (the fact that plaintiff was discharged before the union executed a supplemental agreement requiring arbitration of Title VII claims "d[id] not relieve Plaintiff of his obligation to abide by the

mediation and arbitration provisions" contained therein);
Duraku v. Tishman Speyer Properties, Inc., 714 F. Supp. 2d 470,
474 (S.D.N.Y. 2010) (compelling arbitration of an employees'
Title VII and state law discrimination claims, based on a
supplemental agreement's alternative dispute resolution
provision negotiated after the claims were filed).

The Proposed Intervenors' reliance on the Court of Appeals'
summary affirmance in Agarunova v. Stell Orton Home Care Agency,
Inc., is misplaced. 794 F. App'x 138 (2d Cir. 2020). In
Agarunova, the Court of Appeals affirmed the district court's
determination that a former employee could not be compelled to
arbitrate by the 2015 MOA because she was no longer an employee
or 1199SEIU member when the 2015 MOA took effect. See id. at
140. However, the panel declined to address the employer's
argument that this was a "question of arbitrability" that was
delegated to the arbitrator under the CBA, because that issue
was not properly raised in the district court. Id. Because the
question of whether the Arbitrator's jurisdiction extended to
former employees' statutory claims is a question of
arbitrability, and the CBA delegated such questions to the
Arbitrator, Agarunova does not support the Proposed Intervenors'
argument.[17]

---

[17] The Proposed Intervenors also rely on Chu v. Chinese-American Planning
Council Home Attendant Program, Inc., 194 F. Supp. 3d. 221, 229 (S.D.N.Y.
2016), in which Judge Forrest suggested that former employees could not be

Because the CBA and 2015 MOA evince a clear consent to arbitrate and delegate questions of arbitrability to the Arbitrator, and because the Arbitrator's Award is sufficient to survive the highly deferential review appropriate for confirmation of LMRA arbitration awards, the Award is confirmed.

## CONCLUSION

The Court has considered all of the arguments of the parties, Proposed Intervenors, and Non-Party Yan. To the extent not discussed above, the arguments are either moot or without merit.  For the foregoing reasons, the Proposed Intervenors' motion to intervene is **DENIED,** the motions to dismiss by the Proposed Intervenors and Non-Party Yan are **DENIED,** and the petition to confirm the Award is **GRANTED.** The Clerk is directed to enter judgment accordingly. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:     New York, New York**
**            February 18, 2021**

                              /s/ John G. Koeltl
                                John G. Koeltl
                            United States District Judge

---

bound by the 2015 MOA.  First, Judge Forrest did not consider whether the question was one of arbitrability, or whether the CBA delegated such a question to the arbitrator.  Moreover, as Judge Sullivan recognized in Raymond v. Mid-Bronx Haulage Corp, the passage that Proposed Intervenors cite clearly was dicta, and Judge Sullivan presented compelling reasons not to extend it further. See No. 15-cv-5803, 2017 WL 9882601, at *6 (S.D.N.Y. June 10, 2017). Moreover, Judge Caproni dealt with the merits of a similar claim much more directly in Rodriguez, 2016 WL 11707094, at *3 (finding that former employee was required to arbitrate under CBA and 2015 MOA, even though she ceased employment before 2015 MOA took effect).

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. KATHRYN E. FREED**        PART      IAS MOTION 2EFM

*Justice*

-------------------------------------------------------------------------------X

INDEX NO.      157401/2016

ALVARO RAMIREZ GUZMAN, ELIDA AGUSTINA MEJIA
HERRERA, and LETICIA PANAMA RIVAS, individually and on
behalf of all other persons similarly situated,

                 Plaintiffs,                  MOTION SEQ. NO.      002

         - v -

THE FIRST CHINESE PRESBYTERIAN COMMUNITY AFFAIRS      **DECISION AND ORDER**
HOME ATTENDANT CORPORATION, or any other related entities,

                 Defendants.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 002) 13, 14, 15, 16, 17,
18, 19, 20, 21, 22, 23, 24, 26, 28, 30, 31, 33, 34, 38, 39, 43, 44, 45

were read on this motion to/for               COMPEL ARBITRATION    .

Upon the foregoing documents, it is hereby ordered that the motion is denied.

     Defendant The First Chinese Presbyterian Community Affairs Home Attendant

Corporation ("First Chinese") moves, pursuant to the Federal Arbitration Act (9 USC § 3), as well

as CPLR 2201 and 7503(a), to compel arbitration and to stay this action. Plaintiffs Alvaro Ramirez

Guzman ("Guzman"), Elida Agustina Mejia Herrera ("Herrera"), and Leticia Panama Rivas

("Rivas") oppose the motion. After oral argument, and after a review of the motion papers and

the relevant statutes and case law, the motion is denied.

157401/2016   RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE             Page 1 of 7
Motion No.   001 002

1 of 7

## FACTUAL AND PROCEDURAL BACKGROUND:

Plaintiffs Guzman, Herrera, and Rivas allege that they were employed as home health care aides by First Chinese, a not-for-profit corporation that provides home health care services to elderly and disabled residents in New York City, and that their employment was governed by a collective bargaining agreement ("the CBA") entered into between their employer and their union, 1199 SEIU United Healthcare Workers East ("the union"), in 2001. The CBA was modified and extended by several memoranda of agreement ("MOA"). Effective March 1, 2014, First Chinese and 1199 agreed to the following MOA provision:

> ### ALTERNATIVE DISPUTE RESOLUTION
>
> 24) The Parties agree that given changes in federal and state law imposing new obligations on the Employer and exposing Employers to a significantly increased level of litigation, it is in the interest of the Union, Employees, and the Employer to develop an expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, between the execution of this Agreement and December 1, 2014, or as otherwise agreed to by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such procedure in the allotted time, [First Chinese] may submit the dispute to Martin F. Scheinman for final and binding arbitration.

Doc. 16, Ex. C, at par. 24.

The most recent amendment to the CBA, which occurred as the result of a MOA effective December 1, 2015, and which was to remain in effect until March 31, 2017 ("the 2015 MOA"), provided, in relevant part, as follows:

157401/2016  RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE                  Page 2 of 7
Motion No. 001 002

1. The parties agree a goal of this Agreement is to ensure compliance with all federal, state, and local wage hour law[s] and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour and wage parity statutes, all claims arising in whole or in part prior to or during the term of this Agreement, brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article. The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations. All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration before Martin F. Scheinman, Esq.

2. Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation. The parties hereby designate Martin F. Scheinman, Esq. as Mediator for such disputes.

Ex. A to Doc. 17.

On September 2, 2016, plaintiffs filed the captioned action alleging that First Chinese failed to pay them and the class they represent: 1) the statutory minimum wage, in violation of Labor Law § 652 and 12 NYCRR § 142-2.1 (first cause of action); 2) overtime pay, in violation of Labor Law § 650, *et seq.* and 12 NYCRR § 142-2.2 (second cause of action); 3) "spread of hours" pay pursuant to 12 NYCRR §142-2.4 (third cause of action); 4) failure to pay wages pursuant to Labor Law § 193 (fourth cause of action); 5) breach of contract based on the New York Health Care Worker Wage Parity Act[1] (fifth cause of action); 6) New York City Service Contracts (sixth cause of action); and 7) New York City's Fair Wages for Workers Act (seventh cause of action). In the

---

[1] As defendant notes, plaintiff appears to have been referring to the New York Home Care Worker Wage Parity Act.

**157401/2016   RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE**   **Page 3 of 7**
**Motion No.  001 002**

complaint, Guzman alleged that he was employed by First Chinese from March, 2008 until 2012;[2]

Rivas alleged that she was employed by First Chinese from December 17, 2007 until June 8, 2015;

and Herrera alleged that she was employed by defendant from June 23, 2000 until September 30,

2015. Doc. 1.

On September 29, 2016, First Chinese informed plaintiffs' attorney that plaintiffs' action

was subject to dismissal based on the mandatory alternative dispute resolution ("ADR") provision

of the 2015 MOA. Ex. E to Doc. 17. Plaintiffs refused to withdraw their claims, asserting, in

correspondence dated September 30, 2016, and based on the case of *Chu v Chinese-American*

*Planning Council Home Attendant Program, Inc.*, 194 F Supp 3d 221, 228 (SDNY, 2016), that the

2015 MOA was inapplicable to them because they were not employees of First Chinese at the time

First Chinese and the union agreed to the 2015 MOA. Ex. F to Doc. 17.

On October 31, 2016, counsel for First Chinese again sent the union a letter advising that

the complaint was improperly filed in Supreme Court, New York County since plaintiffs' claims

were subject to mandatory arbitration pursuant to the 2015 MOA. Ex. H to Doc. 17. On November

7, 2016, the union's attorney sent First Chinese a letter objecting to the submission of plaintiff's

claims to Arbitrator Scheinman. Ex. I to Doc. 17. On November 18, 2016, counsel for First

Chinese wrote to Arbitrator Scheinman to request that he resolve plaintiffs' claims pursuant to the

mandatory arbitration provision in the 2015 MOA. Ex. J to Doc. 17.

First Chinese now moves, pursuant to the Federal Arbitration Act (9 USC § 3), as well as

CPLR 2201 and 7503(a), to compel arbitration and to stay this action, arguing that plaintiffs are

---

[2] Although the complaint alleges that Guzman was employed by First Chinese until 2012, the parties agree that she
worked there until August 4, 2014.

**157401/2016 RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE**
**Motion No. 001 002**

Page 4 of 7

bound by the provisions of the 2015 MOA. In support of the motion, First Chinese asserts that the 2015 MOA contains no temporal limitation and does not restrict its applicability to current employees. Additionally, First Chinese asserts that the CBA requires an arbitrator, and not this Court, to determine whether the 2015 MOA applies to plaintiffs' claims. First Chinese also maintains that this action must be stayed pending the arbitration of plaintiffs' claims. Further, First Chinese contends that *Chu* must be disregarded as mere dicta because the federal court in that matter remanded the action to state court for lack of subject matter jurisdiction and that, in any event, this Court is not bound by the decision of a federal court.

In opposition to the motion, plaintiffs primarily rely on *Chu*, in which the court stated that plaintiffs, former home health care workers who were no longer employed by the defendant home care agency, could not be required to arbitrate a claim pursuant to an ADR provision adopted after they left the agency's employ because they "may not be bound by subsequently adopted amendments to a collective bargaining agreement to which they were not parties." *Chu*, 194 F Supp 3d at 228. The court in *Chu* further noted that, "[b]ecause the obligation to arbitrate is created by contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (internal quotation marks and citation omitted).

In reply, First Chinese essentially reiterates its contention that plaintiffs are required to resolve their claims by arbitration in accordance with the 2015 MOA.

**157401/2016   RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE**
**Motion No.  001 002**                                                                 **Page 5 of 7**

5 of 7

Case 22-1587, Document 8, 08/09/2022, 3362149, Page189 of 291

## LEGAL CONSIDERATIONS:

Although the crux of the parties' dispute emanates from the *Chu* decision, this Court

recognized in *Hichez v United Jewish Council of the East Side*, 2018 NY Slip Op 32327(U) (Sup

Ct NY County 2018), a case involving very similar facts, that since *Chu* was decided:

> the question of whether plaintiffs can be compelled to arbitrate pursuant to an agreement entered into between the union and an employer who has ceased employment has been addressed by the Supreme Court, New York County. In a carefully reasoned decision citing both *Chu* (194 F Supp 3d 221) and *Safonova v Home Care Servs. For Independent Living, Inc.*, 2017 N.Y. Misc. LEXIS 5457 (Sup Ct, NY County, January 17, 2017, Rakower, J., Index No. 150642/2016), this Court (Hagler, J.) held in *Konstantynovska v Caring Professionals, Inc.* (2018 NY Slip Op 31475 [U] [Sup Ct, NY County 2018]) that "to the extent that they were not employed with defendant at the time the MOA was ratified, [plaintiffs] are not bound by it." 2018 NY Slip Op 31475 [U] at *7. As in *Konstantynovska*, here "[t]here is no language in the [*6] MOA binding former employees or former union members who left prior to its creation." 2018 NY Slip Op 31475 [U] at *9.

> While recognizing the "strong federal policy favoring arbitration as an alternative means of dispute resolution" (*Ragone v Atlantic Video at Manhattan Ctr.*, 595 F3d 115, 121 [2d Cir 2010] [internal quotation marks and citation omitted]), this Court agrees with the rationale in *Konstantynovska*, and concludes that plaintiffs, who were no longer employed by [defendant] when the MOA was signed, are not bound by its alternate dispute provisions. Moreover, "'whether the parties have entered into a valid [**6] arbitration agreement and, if so, whether the issue sought to be submitted to arbitration falls within the scope of that agreement'" (*Konstantynovska*, 2018 NY Slip Op 31475 [U] at *5, quoting *Edgewater Growth Capital Partners, L.P. v Greenstar N. Am. Holdings, Inc.*, 69 A.D.3d 439, 439 [1st Dept 2010]), is an issue for the court to decide, and is not one to be resolved by the arbitrator, as [defendant] contends.

*Hichez*, 2018 NY Slip Op 32327(U), at **5 - **6.

As noted previously, Guzman worked for First Chinese from March, 2008 until 2012,

Rivas worked for First Chinese from December 17, 2007 until June 8, 2015, and Herrera worked

**157401/2016   RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE**
**Motion No.  001 002**

**Page 6 of 7**

6 of 7

Case 22-1587, Document 8, 08/09/2022, 3362149, Page190 of 291

for First Chinese from June 23, 2000 until September 30, 2015. Doc. 1.  Since each of the plaintiffs left the employ of First Chinese prior to December 1, 2015, the effective date of the 2015 MOA, the mandatory ADR provision of the 2015 MOA was inapplicable to them.  Therefore, that branch of First Chinese's motion seeking to compel arbitration must be denied.   Given this finding, it follows that there is no need to stay this action pending arbitration.  Thus, that branch of the motion seeking to stay the captioned action is denied as well.

Therefore, in light of the foregoing, it is hereby:

ORDERED that the motion by defendant The First Chinese Presbyterian Community Affairs Home Attendant Corporation seeking to compel arbitration and stay the action is denied; and it is further

ORDERED that the parties are to appear for a preliminary conference at 80 Centre Street, Room 280, on June 18, 2019 at 2:15 p.m.; and it is further

ORDERED that this constitutes the decision and order of the court.

| 3/29/2019 | | | | | KATHRYN E. FREED, J.S.C. | |
|-----------|--|--|--|--|-----------|--|
| **DATE** | | | | | | |
| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| | | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

157401/2016   RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE            Page 7 of 7
Motion No.  001 002

Case 22-1587, Document 8, 08/09/2022, 3362149, Page191 of 291

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. KATHRYN E. FREED** | PART | **IAS MOTION 2EFM**
--- | --- | ---
*Justice* | |

------------------------------------------------------------------------X

ALVARO RAMIREZ GUZMAN, ELIDA AGUSTINA MEJIA HERRERA, and LETICIA PANAMA RIVAS,

Plaintiffs,

- v -

THE FIRST CHINESE PRESBYTERIAN COMMUNITY AFFAIRS HOME ATTENDANT CORPORATION, OR ANY OTHER RELATED ENTITIES,

Defendant.

------------------------------------------------------------------------X

**INDEX NO.** 157401/2016

**MOTION SEQ. NO.** 003

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 63, 64, 65, 66, 67, 68, 69, 71, 72, 73, 74

were read on this motion to/for INJUNCTION/RESTRAINING ORDER .

In this putative class action, plaintiff home health care workers Alvaro Ramirez Guzman,

Elida Agustina Mejia Herrera, and Leticia Panama Rivas seek to recover wages and benefits to

which they claim they were statutorily and contractually entitled to receive from their employer,

defendant The First Chinese Presbyterian Community Affairs Home Attendant Corporation ("First

Chinese"), pursuant to the New York Labor Law. Plaintiffs move, by order to show cause

("OSC"), for an order: 1) directing First Chinese to comply with the order of this Court dated

March 29, 2019, which denied First Chinese's motion to compel arbitration on the ground that

plaintiffs' claims were not arbitrable; 2) issuing a preliminary and permanent injunction against

the arbitration of plaintiffs' claims; and 3) granting such other relief as this Court deems just and

proper. After oral argument, and after a review of the motion papers and the relevant statutes and case law, the motion, which is opposed by First Chinese, is decided as follows.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are set forth in detail in the decision and order of this Court dated and entered March 29 and April 5, 2019, respectively ("the 3/29/19 order") (Doc. 55) which denied First Chinese's motion seeking to compel arbitration and to stay this action. Any additional relevant facts are set forth below.

First Chinese neither moved to reargue nor appealed from the 3/29/19 order. After that order was issued, plaintiffs amended their complaint to proceed on behalf of all similarly situated individuals employed by First Chinese prior to April 7, 2016. Doc. 58. First Chinese answered the amended complaint in July 2019 and did not raise arbitration as an affirmative defense. Doc. 59. The parties have since been engaged in pre-class certification discovery. Docs. 60-61; Doc. 64 at par. 10.

On December 24, 2019, plaintiffs' counsel received email correspondence from Martin F. Scheinman, Esq., the contract arbitrator for plaintiffs' union, 1199 SEIU United Healthcare Workers East ("the Union"), who was identified in the 2015 MOA, advising that a global arbitration was scheduled for January 15, 2020 to resolve all unpaid wage and benefit claims filed against various home health care agencies which had CBA's with the Union, including the claims by plaintiffs against First Chinese. Doc. 68. In his email, Scheinman stated, inter alia, that "the Union has determined [that] it represents all of the employees' claims and wishes to pursue those claims promptly in arbitration [and that] the Agencies agree this is now the proper course." Doc.

**157401/2016   RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE**                    **Page 2 of 7**
**Motion No.  003**

2 of 7

Case 22-1587, Document 8, 08/09/2022, 3362149, Page193 of 291

68.    Additionally, Scheinman stated that he would be deciding whether "the claims encompassed by the wage and hour related grievances involving current and former [Union] bargaining unit members, including those arising under federal, state and local law, [are] arbitrable" and whether he "ha[s] jurisdiction to adjudicate the claims asserted in the wage and hour grievances, arising under federal, state and local law, filed by the parties to the [CBA] which encompass all claims arising under the federal, state and local laws named in the [CBA], as well as any pending litigation…irrespective of whether employees' terminated prior to the effective date of the [MOA]." Doc. 68.

On January 6, 2020, plaintiffs filed the instant OSC seeking an order: 1) directing First Chinese to comply with the order of this Court dated March 29, 2019, which denied its motion to compel arbitration on the ground that plaintiffs' claims were not arbitrable; 2) issuing a preliminary and permanent injunction against the arbitration of their claims; and 3) granting such other relief as this Court deemed just and proper.    In support of the motion, plaintiffs argue that they are entitled to injunctive relief since they would suffer irreparable harm if this matter proceeded to arbitration; that they were likely to prevail on the merits of their claim; and that the equities dictated that they be granted injunctive relief.    They further assert that Scheinman cannot determine the issue of arbitrability since that matter was already resolved by this Court in its 3/29/19 order, and that this Court had the authority to make that determination.

In opposition, First Chinese argues that this Court lacks jurisdiction to grant injunctive relief herein since CPLR 6313 precludes a court from issuing a temporary restraining order [TRO] in an action arising from a "labor dispute" as defined by Labor Law § 807(10)(c).    First Chinese further asserts that plaintiffs' motion is premature since Scheinman has heretofore only requested the positions of the Union and First Chinese regarding arbitration and has yet to decide whether

157401/2016   RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE                    Page 3 of 7
Motion No.  003

3 of 7

Case 22-1587, Document 8, 08/09/2022, 3362149, Page194 of 291

he has jurisdiction over plaintiffs' wage and hour claims.   Further, First Chinese maintains that plaintiffs have failed to demonstrate that they would be irreparably harmed if the industry-wide arbitration sought by the Union were to proceed.   Finally, First Chinese argues that this Court cannot grant plaintiffs a TRO because the Union, a necessary party to this action, has not been joined in this litigation.

### LEGAL CONCLUSIONS

"A preliminary injunction substantially limits a defendant's rights and is thus an extraordinary provisional remedy requiring a special showing.   Accordingly, a preliminary injunction will only be granted when the party seeking such relief demonstrates a likelihood of ultimate success on the merits, irreparable injury if the preliminary injunction is withheld, and a balance of the equities tipping in favor of the moving party." *1234 Broadway LLC v West Side SRO Law Project*, 86 AD3d 18, 23 (1st Dept 2011).   "'Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. To prevail, the movant must establish not a mere possibility that it will be irreparably harmed, but that it is likely to suffer irreparable harm if equitable relief is denied' (*Bank of Am., N.A. v. PSW NYC LLC*, 29 Misc 3d 1216[A], 918 NYS2d 396, 2010 NY Slip Op 51848[U], *10 [Sup Ct, NY County 2010])." *Moore Freres & Co., LLC v Mercury Partners GMBH*, 2018 NY Slip Op 31979[U], *5 [Sup Ct, NY County 2018]).

Here, plaintiffs have established that they are likely to succeed on the merits of their claims. Specifically, plaintiffs maintain that their wage and hour claims must be determined by this Court since they left the employ of First Chinese before the 2015 MOA became effective.   Since this Court has denied First Chinese's motion to compel arbitration, and has determined that it, and not

**157401/2016   RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE**                     **Page 4 of 7**
**Motion No.  003**

4 of 7

an arbitrator, will hear and determine plaintiffs' claims, plaintiffs have established the likelihood that they will succeed on their argument regarding the arbitrability of their claims.

Plaintiffs also establish that that they would suffer irreparable harm in the event that they were denied injunctive relief. "[A] party that has not agreed to arbitrate a dispute will suffer irreparable harm if it is forced to submit to arbitration." *Int'l. Trust Co. of Bermuda, Ltd. v Fahnestock & Co., Inc.,* 1995 U.S. Dist. LEXIS 15050, 1995 WL 606275 at *3 (S.D.N.Y. 1995). This Court has already determined that plaintiffs' dispute is not arbitrable and, thus, plaintiffs would be irreparably harmed in the event they were forced to arbitrate. Specifically, if the arbitration is not enjoined and plaintiffs choose to participate, they "will have waived [their] objections to the [a]rbitration." *Int'l. Trust Co. of Bermuda, Ltd. v Fahnestock & Co., Inc.,* citing *Halley Optical Corp. v Jagar Int'l. Marketing Corp.,* 752 F Supp 638, 639-40 (SDNY 1990). "On the other hand, if [plaintiffs refuse] to [arbitrate], the claims against [them] may be adjudicated in [their] absence, and any award would be subject to 'very limited review' by [this] [C]ourt." *Int'l. Trust Co. of Bermuda, Ltd. v Fahnestock & Co., Inc.,* quoting *Folkways Music Publishers, Inc. v Weiss,* 989 F2d 108, 111 (2d Cir 1993).

Since plaintiffs would be prejudiced if they were forced to arbitrate, this Court also finds that the equities weigh in their favor and that they be granted the injunctive relief they request. The equities also warrant this relief because, although the Union, in a letter to First Chinese dated November 7, 2016, advised that it objected to the submission of plaintiffs' claims to arbitration (Doc. 67), Scheinman, in his December 24, 2019 email, has, with virtually no advanced notice, now advised plaintiffs that "the Union has determined [that] it represents all of the employees' claims and wishes to pursue those claims promptly in arbitration" regardless of whether plaintiffs'

**157401/2016 RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE**     **Page 5 of 7**
Motion No. 003

5 of 7

Case 22-1587, Document 8, 08/09/2022, 3362149, Page196 of 291

employment terminated prior to the effective date of the MOA. Doc. 68. Such late notice, especially of the Union's changed position, is prejudicial and cannot be countenanced.

In addition to being entitled to injunctive relief, that branch of plaintiffs' motion seeking to enforce he 3/29/19 order must be granted, since that order, which denied First Chinese's motion to compel arbitration on the ground that plaintiffs' claims were not arbitrable, is law of the case and thus binding on the parties herein. *See Smyczynski v Genesis Mktg. Group, Inc.*, 185 AD2d 58 (4th Dept 1992) (citations omitted).

This Court rejects First Chinese's argument that plaintiffs are not entitled to a preliminary injunction because such relief cannot be granted in connection with a "labor dispute", defined by Labor Law § 807(10)(c) as "any controversy concerning terms or conditions of employment." In discussing section 876-a of the Civil Practice Act (the predecessor of Labor Law § 807 [1]), the Court of Appeals stated that "[t]he effect of that statute is to prevent courts from enjoining peaceful picketing. It was never intended to deprive the Supreme Court of jurisdiction to enjoin dangerous, illegal acts which constituted disorderly conduct and breach of the peace." *Busch Jewelry Co. v United Retail Employees' Union*, 281 NY 150, 156 (1939). Since that statute does not apply to the facts herein, First Chinese's reliance on it is misplaced and plaintiffs are not prevented thereby from moving for injunctive relief.

The parties' remaining arguments are without merit or need not be addressed given the findings above.

Therefore, in light of the foregoing, it is hereby:

ORDERED that the branch of plaintiffs' motion seeking a preliminary injunction is granted, pursuant to CPLR 6301, provided that an undertaking in the fixed sum of $250, in the

**157401/2016   RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE**    **Page 6 of 7**
**Motion No.  003**

6 of 7

Case 22-1587, Document 8, 08/09/2022, 3362149, Page197 of 291

form of a surety bond or a deposit of cash, money order, or bank check be deposited with the County Clerk of the County of New York, and remain in effect until further order of this Court; and it is further

ORDERED that the branch of plaintiffs' motion seeking to enforce the order of this Court dated and entered March 29 and April 5, 2019, respectively, is granted; and it is further

ORDERED that plaintiffs are not required to appear at the arbitration in this matter scheduled for January 15, 2020; and it is further

ORDERED that plaintiffs' counsel is directed to serve this order, with notice of entry, as well as a copy of this Court's order dated and entered March 29 and April 5, 2019 (Doc. 55), respectively, by email, on counsel for defendant, counsel for 1199 SEIU United Healthcare Workers East, and on Arbitrator Martin F. Scheinman, Esq. forthwith; and it is further

ORDERED that this constitutes the decision and order of the court.

|  |  |  |
|---|---|---|
| **1/13/2020** | | 20200113150808KFREEDD11E01EA35C27433794B1E6C31CE560B1 |
| **DATE** | | **KATHRYN E. FREED, J.S.C.** |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

157401/2016  RAMIREZ GUZMAN, ALVARO vs. FIRST CHINESE        Page 7 of 7
Motion No.  003

7 of 7

Lorentti-Herrera v Alliance for Health, Inc., 2019 NY Slip Op 05081

| **Lorentti-Herrera v Alliance for Health, Inc.** |
| --- |
| 2019 NY Slip Op 05081 |
| Decided on June 25, 2019 |
| Appellate Division, First Department |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This opinion is uncorrected and subject to revision before publication in the Official Reports. |

Decided on June 25, 2019
Renwick, J.P., Manzanet-Daniels, Webber, Oing, JJ.

9712N 155417/18

[*1] **Martha Lorentti-Herrera, et al., Plaintiffs-Respondents,**

v

**Alliance for Health, Inc., etc., Defendant-Appellant.**

Jackson Lewis P.C., New York (Felice B. Ekelman of counsel), for appellant.

Virginia & Ambinder, LLP, New York (LaDonna M. Lusher of counsel), for respondents.

Order, Supreme Court, New York County (Melissa A. Crane, J.), entered on or about February 11, 2019, which, to the extent appealed from as limited by the briefs, denied defendant's motion to compel arbitration and stay the action with respect to plaintiff Eugenia Barahona Alvarado and other, similarly situated plaintiffs, unanimously affirmed, without costs.

Plaintiff Alvarado is not bound by the arbitration provision in the collective bargaining agreement (CBA) between defendant and the 1199SEIU United Healthcare Workers East

Union (the Union), because the arbitration provision limits mandatory arbitration to disputes between an employee and employer "concerning the interpretation or application of a specific term" of the CBA, and the complaint asserts claims for violations of the Labor Law and for breach of contracts outside of the CBA (*see Tamburino v Madison Sq. Garden, LP*, 115 AD3d 217, 222-223 [1st Dept 2014]; *Brady v Williams Capital Group, L.P.*, 64 AD3d 127, 131 [1st Dept 2009], *mod on other grounds* 14 NY3d 459 [2010]).

Although defendant and the Union entered into a memorandum of agreement (MOA) in February 2016 that modified the CBA to mandate arbitration for Labor Law claims, plaintiff's employment with defendant ended on approximately August 24, 2015, and neither she nor any other class member who was not employed by defendant when the MOA was entered into is bound by the MOA's arbitration provision *see Konstantynovska v Caring Professionals, Inc.*, __ AD3d __, 2019 NY Slip Op 03676, *1 [1st Dept, May 9, 2019] [class members not bound by MOA "because they were no longer defendant's employees when it was executed, they were not parties to that agreement, and there is no evidence that the Union was authorized to proceed on their behalf"]).

THIS CONSTITUTES THE DECISION AND ORDER

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: JUNE 25, 2019

CLERK

Return to Decision List

Case 22-1587, Document 6, 08/09/2022, 3362149, Page200 of 291

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

------------------------------------------------------------------X

MARTHA LORENTTI-HERRERA and EUGENIA
BARAHONA ALVARADO, individually and on behalf
of all other persons similarly situated who were
employed by ALLIANCE FOR HEALTH, INC., along
with other entities affiliated or controlled by,
ALLIANCE FOR HEALTH, INC,

                                         **Plaintiffs,**

                 -against-

ALLIANCE FOR HEALTH, INC., and/or any other
related entities,

                                         **Defendant.**

------------------------------------------------------------------X

Index No.: 155417/2018

**NOTICE OF ENTRY**

HON. MELISSA A. CRANE

     **PLEASE TAKE NOTICE** that the attached is a true copy of a Decision and Order entered in the office of the Clerk of the Court on February 11, 2019, as well as a true and correct copy of a transcript of the conference held before the Court on February 7, 2019 that includes the bench ruling issued in connection with the Decision and Order.

Dated: New York, New York
       March 5, 2019

                              Respectfully submitted,

                              JACKSON LEWIS P.C.
                              *ATTORNEYS FOR DEFENDANT*
                              666 Third Avenue, 29th Floor
                              New York, New York 10017
                              (212) 545-4000

              **By:**     s/Felice B. Ekelman_____
                         FELICE B. EKELMAN, ESQ.
                         DOUGLAS J. KLEIN, ESQ.
                         RYAN C. CHAPOTEAU, ESQ.

1

Case 22-1587, Document 8, 08/09/2022, 3362149, Page201 of 291

To:    Hon. Milton Tingling
       County Clerk, New York County

       LADONNA M. LUSHER, ESQ.
       MICHELE MORENO, ESQ.
       VIRGINIA & AMBINDER LLP
       40 Broad Street, 7th Floor
       New York, New York  10004

       *ATTORNEYS FOR PLAINTIFFS*

2

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

**HON. MELISSA A. CRANE**
J.S.C.

PRESENT: _____    PART _15_

Index Number : 155417/2018
LORENTTI-HERRERA, MARTHA            INDEX NO. _____

vs

ALLIANCE FOR HEALTH, INC.            MOTION DATE _____

Sequence Number : 001                MOTION SEQ. NO. _____
COMPEL OR STAY ARBITRATION

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____    | No(s)._____

Answering Affidavits — Exhibits _____    | No(s)._____

Replying Affidavits _____    | No(s)._____

Upon the foregoing papers, it is ordered that this motion is

The motion is decided in accordance with the
reasoning on the record of _2/7/2019_

Next court date June 6, 2019 at
10:00 AM

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _2-7-2019_                              _____, J.S.C.
                                               HON. MELISSA CRANE

1. CHECK ONE: .................................................. ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ..........................MOTION IS: ☐ GRANTED   ☐ DENIED   ☐ GRANTED IN PART   ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER   ☐ SUBMIT ORDER

☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK:  CIVIL TERM : PART 15
 2   --------------------------------------------------X
     MARTHA LORENTTI-HERRERA, EUGENIA GARAHONA ALVARADO
 3   AND INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS
     SIMILARLY SITUATED WHO WERE EMPLOYED,
 4
                              Plaintiffs,   Ind. No.
 5            - against -                   155417/2018
                                            Proceedings
 6   ALLIANCE FOR HEALTH, INC.
     AND/OR RELATED ENTITIES,
 7                            Defendants.
     --------------------------------------------------X
 8                            February 7, 2019
                              New York Supreme Court
 9                            71 Thomas Street
                              New York, New York 10007
10
     B E F O R E :  THE HONORABLE MELISSA ANNE CRANE,
11                            Justice, Supreme Court

12   A P P E A R A N C E S :

13

14

15
              Attorneys for the Plaintiffs
16            VIRGINIA & AMBINDER LLP
              40 BROAD STREET, 7TH FLOOR
17            NEW YORK, NEW YORK  10004
              BY:  LADONNA M. LUSHER, ESQ.
18                 MICHELE MORENO, ESQ.

19

20            Attorneys for the Defendants
              JACKSON LEWIS P.C.
21            666 THIRD AVENUE
              NEW YORK, NEW YORK  10017
22            BY:  RYAN C. CHAPOTEAU, ESQ.
                   FELICE B. EKELMAN, ESQ.

23

24                            Sheila Robinson
                              Official Court Reporter
25
```

PROCEEDINGS

1          THE COURT:  Now you're which side?

2          MS. LUSHER:  We're plaintiff's counsel.

3          THE COURT:  Okay.  Now this is defense motion,

4    right?

5          MR. CHAPOTEAU:  Yes, your Honor.

6          THE COURT:  All right.  Okay and don't worry

7    about standing.  I'm sitting so everyone else can sit.  You

8    will be more comfortable that way.

9          This is a motion to compel arbitration and I'll

10   hear from the movant first, the defense, but I really do

11   want to know why I shouldn't follow Judge Freed's decision

12   in Hichez, I guess, H-I-C-H-E-Z, and it's -- the cite is

13   2018 WL-4466257 and it's from September 18 of last year so

14   that's where I'd like you to start.

15         MR. CHAPOTEAU:  Sure, your Honor.  Good

16   afternoon.  We submitted this motion to compel arbitration

17   mainly because collective bargaining and especially

18   arbitration has been a fundamental bedrock of labor

19   relations management in the country and especially in New

20   York Court --

21         THE COURT:  Yeah, that's nice.

22         MR. CHAPOTEAU:  Yes.

23         THE COURT:  But these particular plaintiffs left

24   their employment, unless I'm wrong and please correct me if

25   I am, before arbitration became part of the collective

Case 22-1587, Document 8, 08/09/2022, 3362149, Page205 of 291

PROCEEDINGS

1  bargaining agreement; is that correct?

2           MR. CHAPOTEAU:  That is not correct.

3           THE COURT:  Okay.

4           MR. CHAPOTEAU:  We have two plaintiffs.  The

5  first one, Ms. Lorentti-Herrera, was continuously employed

6  at the time the memorandum of agreement was signed and

7  placed into effect.  It is true that plaintiff Alvarado

8  left her employment on August in 2015.  There is case law

9  out there in New York that does state that if there's no

10  temporal period placed on an arbitration agreement that it

11  could include retroactive and prior agreements.  There's no

12  Court of Appeals case out there that's determinative in the

13  State of New York on this but what we do have is the United

14  States Supreme Court ruling on this in Pyett.  And there

15  have been multiple cases out there, even in New York, that

16  do state that Pyett should be followed as collective

17  bargaining is something where the parties come together and

18  make a resolution and it's mainly for, besides the legal

19  implications, there's also a practicality element to it.

20           If you follow what the plaintiffs request,

21  especially with Ms. Alvarado, then what you'll have here is

22  basically two different venues ruling on the same issues

23  and could lead to different outcomes which is really not

24  helpful for any of the parties here and that's essentially

25  what the element of collective bargaining does.  They have

PROCEEDINGS

1    a union representative that will -- that has them come

2    together and reach an agreement.  Whereas here the union

3    decided to arbitrate the claims.  This has been part of a

4    collective bargaining agreement in place since 2002 well

5    before each of the individuals were employed and its been

6    an ongoing agreement that the four wage claims in the

7    collective bargaining agreement would be subject to

8    arbitration.  The February 2016 memorandum agreement was a

9    continuation of that collective bargaining agreement and

10   really what it did was set out the guidelines of how

11   arbitration would be commenced.

12            THE COURT:  Okay.  I'm just reading.  I'm not

13   really sure.  Am I bound by the Supreme Court or is that

14   just for the federal courts?

15            MR. CHAPOTEAU:  We would argue -- I mean, there's

16   cases in New York that have employed the Pyett standard

17   including -- I mean, we cited --

18            THE COURT:  Well why didn't Judge Freed?

19            MR. CHAPOTEAU:  It's our opinion --

20            THE COURT:  Or Judge Rakower and Judge Hagler?

21            MR. CHAPOTEAU:  Correct.  But a lot of those

22   cases, one, really do discuss indicia their interpretation

23   of collective bargaining agreement.  I believe in our reply

24   we did differentiate all of the cases cited in opposition,

25   especially with respect to -- they were different

Case 22-1587, Document 8, 08/09/2022, 3362149, Page207 of 291

5

PROCEEDINGS

1    arbitration clauses.  Where, for example, in the

2    Abdullayeva a case, A-B-D-U-L-L-A-Y-E-V-A, the arbitration

3    provision there was deemed to be permissive because it said

4    that an employee may pursue arbitration.  Versus the

5    arbitration agreement here is mandatory.  It says that

6    arbitration is the only permissive way to bring a claim

7    against the parties.  So there are distinctions between

8    those cases and we respectfully request that you follow --

9         THE COURT:  But whether it's mandatory or

10   permissive, who cares if the particular individual was not

11   employed at the time the MOA was entered into.

12        MR. EKELMAN:  May I interject, your Honor?

13        THE COURT:  Sure.

14        MR. EKELMAN:  The collective bargaining agreement

15   has an arbitration clause, the underlining collective

16   bargaining agreement has an arbitration clause which says

17   that all disputes under the agreement are subject to

18   arbitration.  That includes disputes where someone's paid

19   the wrong rate, not paid any rate for wages.  The

20   memorandum of agreement came about in a situation where

21   there's increased litigation in this state regarding wage

22   an hour issues.  And as Ryan -- as Mr. Chapoteau explained,

23   this agreement in 2016 didn't set forth that arbitration of

24   wage claims was for the first time required by the

25   collective bargaining agreement.  It was a modification to

PROCEEDINGS

1     make clear what the process would be because --

2                THE COURT:  Well was there an arbitration

3     provision in the --

4                MR. EKELMAN:  Underlining collective bargaining?

5                THE COURT:  In the -- at the time that the

6     plaintiff -- the named plaintiff was employed?

7                MR. EKELMAN:  Oh, yeah, there's a general

8     arbitration agreement.  Is that in our -- our collective

9     bargaining agreement was appended as --

10               MR. CHAPOTEAU:  To the first affidavit.

11               MR. EKELMAN:  To the first affidavit.

12               THE COURT:  Okay.

13               MR. EKELMAN:  The arbitration provision is on

14    Page 16.

15               THE COURT:  Okay, that's Exhibit A, right?

16               MR. CHAPOTEAU:  Yes.

17               MR. EKELMAN:  Yes.

18               THE COURT:  And this was enforced at the time?

19               MR. EKELMAN:  Yes.

20               MR. CHAPOTEAU:  This was in 2002.

21               MR. EKELMAN:  Yes.  Agreement shall be defined as

22    a dispute arising between employees and the employer

23    concerning the interpretation or application of a specific

24    term of this agreement.  So wages are set forth in the

25    agreement on Page eight.

Case 22-1587, Document 8, 08/09/2022, 3362149, Page209 of 291

PROCEEDINGS

1          THE COURT:  Wait, what paragraph are you in?

2          MR. EKELMAN:  I am at Article 23 on Page 16.

3          THE COURT:  Oh, I see what happened.  Okay,

4    sorry.  The pages on efiling are different than the page.

5          MR. EKELMAN:  Okay.

6          THE COURT:  Okay, hold on one second.  I'm going

7    to skip there.  All right, Page 16 of the collective

8    bargaining agreement and you were at 23, right?

9          MR. EKELMAN:  Yep.

10         THE COURT:  Got it.

11         MR. EKELMAN:  So it's defined to grievance quite

12   broadly which is typical in a collective bargaining

13   agreement.  It's a dispute arising between employees and

14   the employer concerning the interpretation or application

15   of a specific term of this agreement.  So wages are

16   provided for in this agreement.  If you look at Article 10,

17   which is on Page eight of the agreement, I'm not sure what

18   page in the filing it is.

19         THE COURT:  That's fine.  I know what you're

20   looking at now.  Page eight.  I'm there.  Okay, wages.

21         MR. EKELMAN:  And there is a lengthy provision

22   about wages.  I don't think --

23         THE COURT:  Yes, I see it.

24         MR. EKELMAN:  There's a dispute that this claim

25   is about wages.  And so under the original collective

PROCEEDINGS

```
 1        bargaining agreement, to which both plaintiffs would have

 2        been subject, there was an obligation to arbitrate disputes

 3        that involve a violation or an alleged violation of the

 4        contract.  And the amendment in 2016 simply provides a

 5        special specific resolution process for disputes involving

 6        the FLSA Wage Parity for New York law that might be

 7        incorporated.

 8               THE COURT:  And how does that differ from the one

 9        in the CBA?

10               MR. EKELMAN:  The original CBA provides for

11        different time periods, a methodology that's different, it

12        provides for the process or concept of potentially a class

13        claim in greater detail.  It's a very extensive provision

14        which talks about what needs to be exchanged between the

15        parties, as well as specific terms and conditions in terms

16        of the process.  So this was not a new arbitration

17        agreement.  It was an amendment to an existing arbitration

18        agreement.  And both plaintiffs were in questionably employ

19        at the time the original contract came into play in 2002.

20               THE COURT:  Okay so just so you understand why I

21        was concerned is if somebody leaves their employment and

22        then it's changed they really have no notice, right.  So

23        that's why I think the judges, my colleagues, have gone the

24        way they have is because what if it's so bad that you would

25        have quit, right.  So how can you retroactively like the
```

PROCEEDINGS

1    procedure was so bad.  Like, you know, we're going to toss

2    a coin, right, but that's our procedure now, right.

3             MR. EKELMAN:  The constructive labor relations is

4    that these employees are represented by a union.

5             THE COURT:  Understood.

6             MR. EKELMAN:  And the thought would be that they

7    would --

8             THE COURT:  But applying it retroactively is

9    troublesome sitting here so that's why I asked.  But it may

10   not be if it's already in the CBA.

11            MR. EKELMAN:  It is --

12            MS. LUSHER:  It's not.

13            MR. EKELMAN:  We think it's already in the CBA.

14            MS. LUSHER:  It's not.

15            THE COURT:  Okay, how is it not?

16            MS. LUSHER:  It's not in the CBA.  And by the

17   way, the courts in Safonova, Hichez, Konstantyovska and in

18   Chu versus Chinese-American Planning, which is a Federal

19   Court case, that also did not qualify the theory of Pyett

20   that they were putting forth.  It's all the same agreement.

21   These are all 1199 workers.  They're all the same union.

22   It's all the same agreement.

23            THE COURT:  Were any of your clients employed at

24   the time the MOA?

25            MS. LUSHER:  Yes.  Ms. Herrera I would concede is

PROCEEDINGS

1     bound but Alvarado is not.  Alvarado was employed from

2     February 2013 until August of 2015.  And the agreement was

3     not entered into -- the MOA was not entered into until

4     February 2016.  So Alvarado's employment ended prior to

5     that agreement being entered into.

6          Also, Alvarado was not employed by Alliance For

7     Health in 2002 when this agreement was entered into.  But

8     this agreement is also -- the original collective

9     bargaining agreement is also different because the

10    provision that they're talking about on Page 16 is simply a

11    grievance procedure.  The arbitration provisions that had

12    been applicable in any type of MOA prior to the 2016

13    agreement were always between the union and the employer.

14    If the union has a problem with the employer because they

15    were the two parties to the agreement then we agree we're

16    going to work it out in arbitration.

17          In 2016 the reason that this is so significant,

18    and Judge Rakower pointed it out in Safonova and also Judge

19    Hagler in Konstantyovska, is that it starts to require then

20    at that point the arbitration becomes applicable to the

21    employees.  Now the employee is subject to do individual

22    arbitration with class action waivers in that agreement and

23    it's a new article.  It's even identified as a new article

24    in the 2016 agreement.  So it says it right there.  It

25    hasn't been in there before.  This is brand-new.  We're now

PROCEEDINGS

1 applying this to employees. And actually, Judge Weinstein

2 in the Abdullayeva -- I'm not going to say that correctly.

3 THE COURT: Do you want to spell it for the

4 record?

5 MS. LUSHER: Yes. It is A-B-D-U-L-L-A-Y-E-V-A.

6 Also pointed out how it's applicable to employees.

7 Although he found that the arbitration provision was

8 actually not clear and unmistakable and wouldn't even

9 enforce it because it said that an employee may choose to

10 file a grievance and then proceed to arbitration. And so

11 he wouldn't even enforce that agreement because of that.

12 So while I'll concede that Herrera is bound to

13 the agreement, Alvarado is not and the case should proceed

14 with Alvarado leading as the representative. But I'll also

15 concede --

16 THE COURT: Herrera is not bound?

17 MS. LUSHER: Herrera is bound, Alvarado is not.

18 I'm sorry.

19 THE COURT: Oh.

20 MR. EKELMAN: No, just the opposite I think.

21 Herrera was employed until '16, Alvarado left in '15.

22 MS. LUSHER: Yes. I'm sorry. Sorry about that.

23 THE COURT: Okay.

24 MS. LUSHER: And I'll concede that anyone that

25 was employed at the time that the agreement was entered

FILED: NEW YORK COUNTY CLERK 03/05/2019 03:42 PM INDEX NO. 155417/2018
NYSCEF DOC. NO. 30    Case 22-1587, Document 8, 08/09/2022, 3362149, Page214 of 291    RECEIVED NYSCEF: 03/05/2019

12

PROCEEDINGS

1    into would be bound.  So from February 2016 on those

2    individuals would be bound by that arbitration provision.

3    However, anyone that was not -- that their employment

4    ceased prior to that time is not bound.

5          THE COURT:  Okay.

6          MR. EKELMAN:  These are really interesting cases

7    and we're not, you know, the case law is the case law and I

8    don't think -- I don't, you know, we can't dispute where

9    its gone in the last year or so as these cases have been

10   brought.  But it doesn't make sense from a labor relations

11   standpoint that we are nixing the obligation to arbitrate

12   just because a supplemental arbitration provision was added

13   to a collective bargaining agreement.

14         THE COURT:  But this seems to have been a

15   material change.

16         MR. EKELMAN:  There's still an obligation to

17   arbitrate which is what Pyett is all about.  Pyett is all

18   about reinforcing labor, you know, labor peace and labor

19   relations through arbitration.  And if you look at the

20   original grievance and arbitration clause it's a dispute

21   between the employee and the employer regarding a term of

22   this agreement.  Wages are a term of this agreement.

23         THE COURT:  But a class action waiver?  I mean,

24   that's getting pretty onerous.

25         MS. LUSHER:  Can I respond to that, your Honor?

Case 22-1587, Document 8, 08/09/2022, 3362149, Page215 of 291

PROCEEDINGS

1        THE COURT:  Sure.

2        MS. LUSHER:  Yeah, I was going to point that out.

3    I mean, you know, up until the union started to put in --

4    1199 started to put in these class action waivers and these

5    arbitration provisions that were applicable to the

6    individual employees, prior to that there were always --

7    there have always been cases brought on behalf of

8    employees.  And in fact, there are several cases

9    specifically on point.  There's Lai Chan versus

10   Chinese-American Planning Council by Judge Edmead where she

11   points out that individuals still have the right to sue

12   under the statute.  We're not suing under the collective

13   bargaining agreement.  We're suing under the labor laws.

14        So even though these individuals had a union

15   representing them they were still entitled to bring unpaid

16   wage claims.  It's just that once 1199 started to implement

17   these class action arbitration provisions, suddenly the

18   employees were stopped from having that right because of

19   these arbitration provisions.  That's the only difference.

20   But there's no reason or there's no justification for

21   saying, oh, well you can't be in two different forums, you

22   know.  I mean, employees have always had the right to

23   either file a grievance with their union or go to Court

24   unless there was a class action arbitration provision,

25   which now 2016 I'll concede is effective.

Case 22-1587, Document 8, 08/09/2022, 3362149, Page216 of 291

PROCEEDINGS

1    And the other thing I wanted to point out is

2    that, you know, the defendants try to make this argument

3    that there's no temporal limitation on this agreement.

4    Well the agreement itself says that it's effective from

5    January 1st 2016 through March 31st, 2017.  I mean, that's

6    a temporal limitation right there and that's in Exhibit C.

7    So it's not one of these open ended agreements that says it

8    applies.  And quite frankly, if you're not a party to it,

9    you're not employed it shouldn't apply to you anyway.  I

10   mean, you can't bind former employees going back, you know,

11   years and years and years to some agreement that you've

12   entered into the present day.

13         MR. EKELMAN:  If I may?

14         THE COURT:  Sure.

15         MR. EKELMAN:  This agreement does not -- has an

16   expiration date but its terms and conditions live on.

17         THE COURT:  One second.  I'm going to have my

18   Court attorney do this conference.

19         MR. EKELMAN:  Okay.

20         THE COURT:  Off the record.

21         (Brief recess taken at this time.)

22         THE COURT:  Back on the record.  Okay, All good.

23         MR. EKELMAN:  I'm just responding to this

24   concept.

25         THE COURT:  Yeah, I know.

Case 22-1587, Document 8, 08/09/2022, 3362149, Page217 of 291

PROCEEDINGS

1    MR. EKELMAN:  What makes collective bargaining

2    agreements unlike any other contract in law under U.S.

3    Jurisprudence is that there cannot be changes between the

4    parties absent an agreement to make a change.  So while the

5    collective bargaining agreement has an expiration date it's

6    so that the parties can meet and confer any amendments.

7         THE COURT:  Right and keep going.

8         MR. EKELMAN:  And it just keeps going.  It never

9    stops.  And, you know, terminated employees who worked

10   under the terms and conditions of a collective bargaining

11   agreement are obligated to litigate their disputes with

12   their former employers under the collective bargaining

13   agreement.  I mean, you know, I probably handled hundreds

14   of arbitrations involving terminated employees who were

15   seeking to get their jobs back.

16        THE COURT:  All right, let me ask this question

17   then.  This is a little bit of a twist and this is more

18   directed at the plaintiff.  If you don't get class

19   certification, let's just put that out there for argument,

20   let's just say you don't for whatever reason, the class rep

21   is not a good rep or something.

22        MS. LUSHER:  Sure.  Unless there's 24-hours

23   claims.

24        THE COURT:  Because there's, you know, I'm

25   concerned about a class action waiver that I guess it's --

PROCEEDINGS

1    I'm getting confused who was who.

2            MS. LUSHER:  Alvarado.

3            THE COURT:  Alvarado would have not known about,

4    right, but it's not a class action anymore let's say.

5            MS. LUSHER:  Okay.

6            THE COURT:  Then what happens to her claim?  Is

7    it still here or is it in arbitration?

8            MS. LUSHER:  Well the one that is I'm saying is

9    not bound or the one that is bound?

10           THE COURT:  The one that is not bound.

11           MS. LUSHER:  Oh, the one that is not bound would

12   still be here.

13           THE COURT:  Okay.

14           MS. LUSHER:  Because the arbitration agreement

15   doesn't apply to her in any respect, whether it's a class,

16   whether it's not a class.

17           THE COURT:  But didn't they have arbitration of

18   these claims way back when she was employed.

19           MS. LUSHER:  No.

20           THE COURT:  Or just not a class action waiver?

21           MS. LUSHER:  No, they did not.  She was not

22   bound.  There's no arbitration provision that applies to

23   her.  She had a grievance procedure that she could have

24   followed but she's not mandatorily bound.

25           THE COURT:  Oh, it wasn't mandatory before.

PROCEEDINGS

1          MS. LUSHER:  Yes.  There was no mandatory

2    arbitration provision to bind her prior.

3          THE COURT:  This one though is mandatory.  It

4    looked like it.

5          MS. LUSHER:  Correct.

6          THE COURT:  Okay.

7          MS. LUSHER:  I mean, Judge Weinstein found that

8    it's not.  He found that it's permissive.  He also found

9    it's clear and unmistakable.  I know the defendant's going

10   to say that decision is on appeal.  It's true it is but

11   that was his finding.  And obviously it's a Federal Court

12   decision that this Court isn't bound by.

13         THE COURT:  But you're conceding that it's

14   mandatory arbitration for the current arbitration

15   provision?

16         MS. LUSHER:  I mean, if this Court felt like they

17   wanted to adopt -- if your Honor felt like you wanted to

18   adopt Judge Weinstein's decision I couldn't be more

19   thrilled.  Do I think realistically that's probably going

20   to happen?  Probable not.

21         THE COURT:  Okay well -- no but I am very taken

22   with my colleague's, Judge Freed, decision.

23         MS. LUSHER:  Yes and it's the same --

24         THE COURT:  So it seems like the same case.

25         MS. LUSHER:  It is.  It's the exact same case.

PROCEEDINGS

1    It's the same provision.  They've been examined by all of

2    these judges and, you know, there was an arbitration

3    provision in a prior agreement that applied to the union

4    and the employer.

5             THE COURT:  But not the individual's labor law

6    claims?

7             MS. LUSHER:  Particularly.  And I think that

8    that's where Judge Rakower really zeroed in on that by

9    noting that it was a new article in the new agreement.

10            And, also, the one that was -- the provision

11   that's been in the prior agreement talks about how the

12   employer and the union are going to meet and confer on

13   developing an alternative dispute resolution.  And I

14   believe it was Judge Edmead, I think, who said that that

15   was just an agreement to agree in the future.  And then in

16   the 2016 agreement, that's their Exhibit C, then I'll

17   concede that, yes, they at that point had a new article

18   that then applied to employees that would have been

19   employed as of February '16.  I mean, I'm sorry, February

20   2016.

21            MR. EKELMAN:  If I -- you could stop me if you've

22   heard enough.

23            THE COURT:  No, keep going.

24            MR. EKELMAN:  This grievance is mandatory as a

25   first step in arbitration.  That's very -- I think the

PROCEEDINGS

1    contract, the 2002 contract, which still lives is very

2    clear.  The employee will present the grievance, okay.

3    Thereafter --

4            THE COURT:  Do you agree though that the prior

5    arbitration provisions did not include labor law claims?

6            MR. EKELMAN:  No, it includes wage claims.  Any

7    wage claim.  I think it's broader because it's any wage

8    claim, because it's any provision of this agreement and

9    clearly wages are part of the collective bargaining.  Some

10   people might say it's the most important part of the

11   collective bargaining agreement.  And if you look at step

12   three, if the grievance is not resolved the union and

13   employer may request arbitration.  In labor relations many,

14   many grievances don't go to arbitration for whatever

15   strategic reason the parties might have in mind.  And I do

16   think that the grievance procedure does involve the

17   underlining agreement.  Arguably involves group grievances

18   because if you look at Paragraph three it says, "a

19   grievance which effects a substantial number of employees

20   and is outside the authority of the employer

21   representatives designated at step one can be presented at

22   step two."  So step one is basically you tell your

23   supervisor you have a beef.  Step two is you go to the

24   administrator or designee which is more or less the person

25   in charge.  So what this contemplates is that there could

Case 22-1587, Document 8, 08/09/2022, 3362149, Page222 of 291

                              PROCEEDINGS

1    be a group gripe so to speak.  And so I'm not -- I just

2    couldn't let the comments go without addressing them

3    because I do think this contemplates issues that could

4    effect more than one person.

5            MS. LUSHER:  But I think that even goes more to

6    the point that the labor agreement you can't have a group

7    gripe, right.  I mean, it's a mandatory arbitration

8    provision you can only bring on your own.  You're not even

9    allowed to have a group gripe at that point.  And this in

10   the collective bargaining agreement, this is just laying

11   out a grievance procedure.  And I acknowledge, sure,

12   sometimes union employees file grievances and sometimes

13   those grievances may go to arbitration but that's just if

14   you want to do it in that route.  There is nothing stopping

15   an individual from saying I don't want to file a grievance.

16   I want to bring my labor law claims in-Court.  Not until

17   2016 when the mandatory arbitration provision was put in

18   and they said that you can't bring it as a group gripe and

19   actually --

20           THE COURT:  Why couldn't anyone have chosen

21   arbitration as an employee before?  Is it cheaper?

22           MS. LUSHER:  That's a whole -- we could probably

23   go on and on.

24           MR. EKELMAN:  We can go on and on about that.

25   But, you know, I could see the Court ruling that the former

PROCEEDINGS

1    employee who wasn't employed at the time the 2016 MOA

2    became effective might not be subject to that MOA for the

3    reasons that those other, you know, your colleagues have

4    decided.

5         THE COURT:  Right.

6         MR. EKELMAN:  But I don't think that she's not

7    covered by the collective bargaining agreement.  That's the

8    point I want to make.

9         MS. LUSHER:  I could respond to that.  First of

10   all, like I said, Alvarado wasn't even employed at the time

11   the collective bargaining agreement was entered into.

12   Secondly, there's no denying that a union employee like I

13   said can choose to go through the grievance procedure under

14   a collective bargaining agreement.  However, up and until

15   2016 it isn't a mandatory arbitration provision.  That's

16   just an option.  And many courts have said there was

17   nothing preventing union employees from bringing private

18   rights of action in-Court instead of going through the

19   grievance procedure, unless their collective bargaining

20   agreement has a mandatory arbitration provision in it,

21   which it never did until 2016.  And my firm does a lot of

22   prevailing wage cases that involve a lot of union employees

23   and those union employees we wouldn't even have those cases

24   if they were bound to bring their claims through a

25   grievance process through a collective bargaining

PROCEEDINGS

1    agreement.  They have the right to bring them in-court and

2    there's many decisions that have said that.

3              THE COURT:  Anything else?

4              MR. EKELMAN:  Unless the Court had any other

5    questions?

6              THE COURT:  No, I think that I'm going to rule

7    from the bench actually.

8              So I appreciate the policy behind the collective

9    bargaining agreement, I do.  But I don't -- I really think

10   the reasoning in -- it's the same as what I would apply

11   here.  I don't see a distinction.  And particularly with a

12   class action waiver I don't see how we can find Alvarado.

13   So now that the plaintiffs conceded that those who were

14   employed at the time the MOA, which was February 2016, was

15   entered into I think that's right.  So this case will

16   continue as to those plaintiffs who were not employed at

17   the time the MOA was entered into but everyone else needs

18   to go to arbitration.  So we can talk about effectuating

19   that.

20             What I'd like to do is a PC today if we could.

21             MS. LUSHER:  Sure.

22             THE COURT:  And get this case moving.  All right

23   so I think -- can we go off the record?

24             MR. EKELMAN:  Sure.

25             MS. LUSHER:  Yes.

PROCEEDINGS

1          THE COURT:  Does anyone want to say anything

2     else?  Okay, great.  Off the record.

3                    REPORTER'S CERTIFICATION

4          I hereby certify that the foregoing is a

5     true and accurate transcript of the original

6     stenographic minutes in this case.

7

8     _____

      Sheila Robinson

9     Official Court Reporter.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 22-1587, Document 8, 08/09/2022, 3362149, Page226 of 291

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:  **HON. MELISSA ANNE CRANE**

*Justice*

| | PART | IAS MOTION 15EFM |

-------------------------------------------------------------------X

Alvarado ,

INDEX NO. _____155417/2018_____

Plaintiff,

MOTION DATE _____

- v -

MOTION SEQ. NO. _____002_____

Alliance for Health,

Defendant.

**DECISION + ORDER ON MOTION**

-------------------------------------------------------------------X

MELISSA ANNE CRANE, JSC

Alliance agreed on the record to send a letter tomorrow to the arbitrator, the union and to cc plaintiff's counsel in this case regarding the inability of those employees, who ceased employment prior to the MDA's effective date, from having their claims adjudicated in the arbitration. Plaintiff's request for a TRO is otherwise denied.

_____1/13/2020_____
DATE

_____
MELISSA ANNE CRANE, J.S.C.

CHECK ONE:
- [ ] CASE DISPOSED
- [ ] GRANTED  [X] DENIED
- [ ] SETTLE ORDER
- [ ] INCLUDES TRANSFER/REASSIGN

- [X] NON-FINAL DISPOSITION
- [ ] GRANTED IN PART  [ ] OTHER
- [ ] SUBMIT ORDER
- [ ] FIDUCIARY APPOINTMENT  [ ] REFERENCE

APPLICATION:

CHECK IF APPROPRIATE:

**HON. MELISSA A. CRANE**
**J.S.C.**

FILED: NEW YORK COUNTY CLERK 07/16/2020 04:33 PM
NYSCEF DOC. NO. 99

Case 22-1587, Document 8, 08/09/2022, 3362149, Page227 of 291

INDEX NO. 158949/2017
RECEIVED NYSCEF: 07/16/2020

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| | | | |
|---|---|---|---|
| PRESENT: | HON. ALEXANDER M. TISCH | PART | IAS MOTION 18EFM |

*Justice*

-------------------------------------------------------------------X

MAKTUMMA TESHABAEVA, AND JIAN HUA DENG INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY FAMILY HOME CARE SERVICES OF BROOKLYN AND QUEENS, INC.,

Plaintiff,

- v -

FAMILY HOME CARE SERVICES OF BROOKLYN AND QUEENS, INC., CARE AT HOME - DIOCESE OF BROOKLYN, INC.,

Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 158949/2017 |
| MOTION DATE | 04/26/2020 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 87, 88, 89, 90, 91, 92, 93, 95, 96, 97 were read on this motion to/for            INJUNCTION/RESTRAINING ORDER            .

Upon the foregoing papers, it is ORDERED that the plaintiffs' motion by order to show cause is granted and the defendant's cross-motion is denied.

Named plaintiffs, home health attendants, brought this putative class action seeking to recover wages and damages arising from defendant's alleged violations of state and local labor laws (see NYSCEF Doc. No. 25 [second amended complaint]). Specifically, the complaint asserts that defendants failed to pay minimum wages, overtime, "spread of hours" compensation, and that defendants breached contracts with government agencies (see id.).

At all relevant times, plaintiffs were members of 1199SEIU United Healthcare Workers East (Union), which filed a class-wide grievance in January 2019 to submit wage and hour claims, including those asserted here, to arbitration. Plaintiffs now move to permanently enjoin the arbitration and defendant's cross-moves to compel arbitration.

158949/2017  TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF
Motion No.  003

Page 1 of 4

Case 22-1587, Document 8, 08/09/2022, 3362149, Page228 of 291

It is undisputed that the employment of the named plaintiffs Teshabaeva and Deng ceased in June 2012 and May 2014, respectively, prior to the execution of a 2015 memoranda of agreement (MOA). As such, this Court is constrained by recent case law of the First Department to hold that the mandatory arbitration provisions in the MOA (which undoubtedly compel the arbitration of the statutory claims in the complaint) are not binding on the named plaintiffs[1] (see Hichez v United Jewish Council of the E. Side, 179 AD3d 576, 577 [1st Dept 2020], citing Konstantynovska v Caring Professionals, Inc., 172 AD3d 486, 487 [1st Dept 2019]; see Lorentti-Herrera v Alliance for Health, Inc., 173 AD3d 596, 596 [1st Dept 2019]; Chu v Chinese-American Planning Council Home Attendant Program, Inc., 194 F Supp 3d 221, 228 [SD NY 2016]).

It is undisputed that the underlying 2012 Collective Bargaining Agreement (CBA) is applicable to the named plaintiffs. The relevant provisions from the CBA concerning arbitration are found in Article XXV, entitled "Grievance and Arbitration Procedure":

1. A grievance is defined as any dispute between the Union (on its behalf and/or on behalf of any Employee) with the Employer involving the proper application, interpretation, or compliance with the specific written provisions of the Agreement based on facts and circumstances occurring during the term of this Agreement. A grievance is subject to arbitration.

2. Grievances will be resolved in accordance with the following procedure:

   * * * If the grievance is not resolved at Step 3, the Union may within ten (10) days thereafter request that the matter be submitted for final and binding arbitration under the Labor Arbitration Rules of the American Arbitration Association (NYSCEF Doc. No. 60).[2]

---

[1] Or those plaintiffs whose employment similarly ceased prior to the execution of the MOA, as this is a putative class action.

[2] The 2000 CBA (NYSCEF Doc. No. 80) contains substantially similar arbitration language to that in the 2012 CBA.

**158949/2017  TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF**
**Motion No.  003**

**Page 2 of 4**

2 of 4

Again, this Court is bound by recent First Department case law, which held that the exact same language did not prohibit plaintiffs from bringing this type of action in state court (see Hichez, 179 AD3d 576, 576-77 [1st Dept 2020]). In Hichez, the appellate court reasoned that the arbitration provision in the CBA limited mandatory arbitration to disputes "concerning the interpretation or application of [a specific] term of the CBA" and that plaintiffs' statutory claims, like those asserted in this case, fall outside of the CBA (see id., quoting Lorentti-Herrera, 173 AD3d at 596). Indeed, defendant concedes the same (see NYSCEF Doc. No. 85 [defendant's memorandum of law in opposition to plaintiffs' motion and in support of its cross motion] [that "the 2012 CBA's grievance and arbitration agreement itself does not compel arbitration of Plaintiff's statutory wage and hour claims" is "a point not disputed by Defendants"]).

The Court rejects defendant's argument that the threshold issue of whether the claims are arbitrable is for the arbitrator to decide, as that, too, has been upheld by the appellate courts as an issue for the trial court (see Zachariou v Manios, 68 AD3d 539 [1st Dept 2009] ["Whether a dispute is arbitrable is generally an issue for the court to decide unless the parties clearly and unmistakably provide otherwise"]; Konstantynovska v Caring Professionals, Inc., 2018 NY Slip Op 31475[U], 10 [Sup Ct, New York County 2018], affd Konstantynovska, 172 AD3d 486). Additionally, here, the CBA does not clearly and unambiguously delegate the question of arbitrability to an arbitrator (see Zachariou, 68 AD3d 539). Given the findings above, the Court need not address the plaintiffs remaining contentions.

Accordingly, it is hereby ORDERED that the motion by plaintiffs for a permanent injunction against arbitration is granted; and it is further

158949/2017  TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF
Motion No.  003

Page 3 of 4

3 of 4

ORDERED that the cross-motion by defendants to compel arbitration is denied. This

constitutes the decision and order of the Court.

| 7/16/2020 | | ALEXANDER M. TISCH, J.S.C. |
|-----------|---|---------------------------|
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|------------|---|----------------|---|---|------------------------|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

158949/2017   TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF
Motion No.  003

Page 4 of 4

4 of 4

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. ALEXANDER TISCH** | **PART** 18 |
| | *Justice* | |

-------------------------------------------------------------------------------X

| | |
|---|---|
| MAKTUMMA TESHABAEVA, AND JIAN HUA DENG INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY FAMILY HOME CARE SERVICES OF BROOKLYN AND QUEENS, INC., | **INDEX NO.** 158949/2017 |
| | **MOTION DATE** 05/28/2021 |
| | **MOTION SEQ. NO.** 005 |

Plaintiffs,

- v -

**DECISION + ORDER ON MOTION**

FAMILY HOME CARE SERVICES OF BROOKLYN AND QUEENS, INC., CARE AT HOME - DIOCESE OF BROOKLYN, INC.,

Defendants.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 005) 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 197[1]

were read on this motion to/for                                    RENEWAL                    .

Upon the foregoing documents, defendant moves for leave to renew motion sequence no.

3, which was plaintiffs' motion to permanently enjoin arbitration and defendant's cross-motion

to compel arbitration. The Court's July 16, 2020 decision and order granted plaintiffs' motion

and denied defendant's cross-motion (NYSCEF Doc No. 99 [Order]), and was recently affirmed

in a October 14, 2021 Appellate Division, First Department decision and order (NYSCEF Doc

No. 193 [hereinafter App Div Order]).

Defendant's motion for leave to renew is premised upon a February 18, 2021 decision

and order from the U.S. District Court for the Southern District of New York, 1199SEIU United

---

[1] Defendant's letter dated October 19, 2021, plaintiff's letter dated October 25, 2021, and defendant's letter responding to plaintiff's letter, also dated October 25, 2021 (NYSCEF Doc Nos. 194, 195, 197) are improper and will not be considered. The letters discuss the recent affirmance by the First Department Appellate Division of this Court's decision and order, but the remittitur is readily available on NYSCEF and the decision and order speaks for itself.

**158949/2017  TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF**          **Page 1 of 6**
**Motion No.  005**

_Healthcare Workers E. v PSC Community Services_ (520 F Supp 3d 588 [SD NY 2021]), wherein the federal court allegedly "held that the parties had clearly and unmistakenably [*sic*] delegated the gateway question of arbitrability to the arbitrator and the arbitrator was correct to assume jurisdiction" (NYSCEF Doc No. 131, defendant's mem at 2-3). Defendant contends that this Court is divested of jurisdiction and the claims in this action are exclusively before the arbitrator (id.). Defendant also claims that "[t]he First Department decisions on which this Court relied in denying Defendants' cross-motion are a house of cards which have been decimated by the district court's decision confirming the arbitral award which held that the gateway question of arbitrability was clearly and unmistakably delegated to Arbitrator Scheinman" (id. at 5-6).

A motion for leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination" (CPLR 2221 [e] [2]). A change in the law may include "a new statute taking effect or a definitive ruling on a relevant point of law issued by an appellate court that is entitled to stare decisis" (Vincent Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, C2221:9). A lower federal court decision is not entitled to such stare decisis consideration (see generally _People v Garvin_, 30 NY3d 174, 221, n 6 [2017] [noting that a lower federal court decision might be useful and serve as persuasive authority; but "we do not abandon our jurisprudence in response to every new lower federal court decision"]). Additionally, "an intervening ruling that merely clarifies existing law does not afford a basis for renewal attributed to a change in the law" (_D'Alessandro v Carro_, 123 AD3d 1, 7 [1st Dept 2014]).

The Court finds that defendant is not entitled to renewal based on the 1199SEIU decision because the federal court was interpreting the CBA with the 2015 MOU (see _1199SEIU_, 520 F

**158949/2017 TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF**
**Motion No. 005**

**Page 2 of 6**

2 of 6

Case 22-1587, Document 8, 08/09/2022, 3362149, Page233 of 291

Supp 3d at 595-596). This Court held, and the First Department affirmed, that the 2015 MOU did not apply to the plaintiffs here, whose employment ceased prior to 2015. Thus, the federal court's decision or reasoning is not necessarily applicable to the same factual framework as the case here.

In any event, there is nothing "new" about the 1199SEIU decision. Both this Court's order and the federal court's order referenced the *same* legal principles (compare 1199SEIU United Healthcare Workers E. v PSC Community Services, 520 F Supp 3d 588, 606-07 [SDNY 2021] ["Although 'the question of whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability,' is presumptively 'an issue for judicial determination,' the matter may be committed to the arbitrator if 'the parties clearly and unmistakably so provide.'"] [alterations omitted], quoting Howsam v Dean Witter Reynolds, Inc., 537 US 79, 83 [2002] with Order at 3, citing Zachariou v Manios, 68 AD3d 539 [1st Dept 2009] ["Whether a dispute is arbitrable is generally an issue for the court to decide unless the parties clearly and unmistakably provide otherwise"]).

Additionally, the interim arbitration award was already known to the Court and was pending when the prior motion was decided; the fact that the interim award was confirmed adds nothing new (see Troshin v Stella Orton Home Care Agency, Inc., 70 Misc 3d 1223 [A], 2021 NY Slip Op 50196 [U], *5 [Sup Ct, NY County Mar. 12 2021] [Lebovits, J.] ["Nor does [defendant] explain why (either as a matter of law or common sense) this court should withdraw an order that rejected an arbitrator's arbitrability determination . . .merely because a federal district court later agreed with the arbitrator."]).

158949/2017  TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF
Motion No.  005

Page 3 of 6

3  of  6

"Because the law in this Department remains what it was when the original order was issued, the predicate for a motion to renew is lacking" (D'Alessandro, 123 AD3d at 3).[2] To this Court's knowledge, nothing has changed the holdings of the appellate division decisions that were cited in issuing the Order (to wit, the cases that defendant improvidently labeled as a "house of cards"), all of which this Court is obligated to follow (see D'Alessandro, 123 AD3d at 6).

Defendant's argument concerning preemption is meritless as there is no conflict of state and federal law (see supra).[3] The simple difference between this case and the federal case is that the facts are different.[4]

Defendant also argues, albeit tersely, that the federal court's decision should have the effect of res judicata. However, defendant failed to make the requisite showing to invoke that doctrine (see generally Kaufman v Eli Lilly and Co., 65 NY2d 449, 455-56 [1985]; Gomez v Brill Sec., Inc., 95 AD3d 32, 35-36 [1st Dept 2012]).[5] In any event, it is another meritless

---

[2] The motion is, then, essentially one to reargue but it was not identified as such, nor would such motion have been timely (CPLR 2221 [d] [3]).

[3] The Court will not consider any new arguments improperly raised on a purported motion to renew such as LMRA.

[4] It appears that the law was applied in a consistent manner with respect to the distinguishing fact here, namely that if a plaintiff was not bound by the 2015 MOU, then s/he is similarly not bound by the broad, mandatory and exclusive arbitration provision contained therein (see 1199SEIU, 520 F Supp 3d at 598 [noting that Arbitrator Scheinman "carved out" plaintiffs Hichez, Carrasco, and Acosta from the scope of the Award based on the First Department's decision and order in Hichez v United Jewish Council of the E. Side, 179 AD3d 576, 577 (1st Dept 2020)]).

[5] Gomez appears to be the only case in this jurisdiction cited in support of defendant's res judicata argument (see NYSCEF Doc No. 131, defendant's mem at 10-11). Aside from defendant's failure to cite the standard of law on the doctrine, defendant cited the case with the explanatory parenthesis stating "where federal District Court makes determination on the merits as to the state law claims, it has *res judicata* effect on state court action" (id. at 10). However, that is **not** what Gomez held. Rather, the First Department held that "since the order issued by the District Court did not make any determination on the merits as to the state law claims, it has no res judicata effect on this action" (95 AD3d at 35). It further held "the District Court's order cannot have a preclusive effect in this action insofar as the issue decided

**158949/2017 TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF**                    **Page 4 of 6**
**Motion No. 005**

4 of 6

argument (see App Div Order at 2 [stating in dicta that "the decision in [1199SEIU], which confirmed an interim arbitration award does not have the res judicata effect urged by defendants. The court made no findings that affect the merits of the issues raised by plaintiffs here, and the federal proceeding and the present state court action do not involve the same parties"], citing City of New York v Welsbach Elec. Corp., 9 NY3d 124, 127 [2007]).

Defendant's alternative relief to stay proceedings pending the disposition of the appeal before the First Department is denied as moot in light of the App Div Order.

Plaintiffs' request for legal fees for opposing this motion pursuant to 22 NYCRR 130-1.1 is granted. Pursuant to 22 NYCRR Rule 130-1.1 (c), "conduct is frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false." The Court finds that this motion for leave to renew is meritless. Given defendant's persistent course of conduct in flagrant disrespect for this Court's decisions, as well as for those of the First Department, as well as attempting to mislead the Court with the ruling of at least one case (see supra, n 5), sanctions are warranted. Defendant failed to oppose the request in its reply memorandum. The determination of the exact amount of the sanction shall be set forth upon further order as indicated below.

Accordingly, it is hereby ORDERED that defendant's motion for leave to renew is denied; and it is further

---

there—that plaintiffs must arbitrate their claims pursuant to the FLSA because under federal law those claims could not be brought by class action and were therefore not exempt from arbitration by the agreement—has no applicability here since nothing bars plaintiffs from bringing their *state* claims" (id. at 36).

**158949/2017  TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF**          **Page 5 of 6**
**Motion No.  005**

ORDERED that plaintiffs' request for sanctions is granted without opposition, and plaintiffs' counsel shall e-file an attorneys' affirmation and provide supporting proof of "actual expenses reasonably incurred and reasonable attorney's fees" (22 NYCRR 130-1.1 [a]) for opposing this motion within 45 days, and e-mail SFC-Part18-Clerk@nycourts.gov to notify the Court when the same has been e-filed on NYSCEF.

This constitutes the decision and order of the Court.

| 12/10/2021 | | | | ALEXANDER TISCH, J.S.C. | |
|---|---|---|---|---|---|
| **DATE** | | | | | |
| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | | GRANTED | X DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

158949/2017  TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF
Motion No.  005                                                    Page 6 of 6

6 of 6

# Supreme Court of the State of New York
# Appellate Division, First Judicial Department

Kapnick, J.P., Singh, Shulman, Pitt, Higgitt, JJ.

14395  MAKTUMMA TESHABAEVA et al.,    Index No. 158949/17
     Plaintiffs-Respondents,    Case No. 2020-03620

       -against-

    FAMILY HOME CARE SERVICES OF BROOKLYN AND
    QUEENS, INC., et al.,
     Defendants-Appellants.

Ford Harrison LLP, New York (Philip K. Davidoff of counsel), for appellants.

Virginia & Ambinder, LLP, New York (LaDonna M. Lusher of counsel), for respondents.

    Order, Supreme Court, New York County (Alexander M. Tisch, J.), entered on or about July 16, 2020, which granted plaintiffs' motion for a permanent injunction against arbitration and denied defendants' cross motion to compel arbitration, unanimously affirmed, with costs.

    Based on this Court's decisions in similar cases arising from agreements between SEIU 1199 and various home health care providers to create alternative dispute resolution mechanisms for labor law claims like those asserted by plaintiffs herein, the court properly found that plaintiffs are not bound by the alternative dispute resolution provisions of the 2015 memorandum of agreement (2015 MOA) because they ceased their employment with defendant agencies before the 2015 MOA took effect (*see Hichez v United Jewish Council of the E. Side, Home Attendant Serv. Corp.*, 179 AD3d 576, 577 [1st Dept 2020], *lv denied*  NY3d  , 2021 NY Slip Op 71554 [2021]; *Konstantynovska v Caring Professionals, Inc.*, 172 AD3d 486, 487 [1st Dept 2019]). Contrary to defendants'

assertion, the collective bargaining agreements predating the 2015 MOA do not compel arbitration of labor law claims under their grievance provisions (*see Lorentti-Herrera v Alliance for Health, Inc.*, 173 AD3d 596 [1st Dept 2019]). Accordingly, plaintiffs were not required to submit their New York Labor Law claims, which allege that they were wrongly denied overtime, hourly and spread-of-hours compensation, to binding arbitration.

Defendants' argument that the opinion and order of the federal District Court in *1199SEIU United Healthcare Workers E. v PSC Community Servs.* (520 F Supp 3d 588 [SD NY 2021]) bars plaintiffs' action under res judicata was improperly raised for the first time on appeal (*see Matter of Twania B. v James A.B.*, 172 AD3d 643 [1st Dept 2019]). In any event, the decision in *PSC Community Servs.*, which confirmed an interim arbitration award-does not have the res judicata effect urged by defendants. The court made no findings that affect the merits of the issues raised by plaintiffs here, and the federal proceeding and the present state court action do not involve the same parties (*see e.g. City of New York v Welsbach Elec. Corp.*, 9 NY3d 124, 127 [2007]).

Furthermore, "[w]hether a dispute is arbitrable is generally an issue for the court to decide unless the parties clearly and unmistakably provide otherwise" (*Zachariou v Manios*, 68 AD3d 539, 539 [1st Dept 2009]; *see Matter of Steyn v CRTV, LLC*, 175 AD3d 1, 10 [1st Dept 2019]). As the court correctly found, the 2000 and 2012 collective bargaining agreements, which mandated arbitration for grievances arising from disputes over the interpretation of the terms of the agreements, did not contain express provisions to submit to arbitration labor law violations that had nothing to do with interpretation of the terms of the CBA. Accordingly, there is no clear and unmistakable evidence that the parties agreed to arbitrate the arbitrability of their labor law claims

2

Case 22-1587, Document 8, 08/09/2022, 3362149, Page239 of 291

(*Zachariou*, 68 AD3d at 539-540).

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: October 14, 2021

Susanna Molina Rojas
Clerk of the Court

3

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **HON. ALEXANDER TISCH**          PART          18

*Justice*

-------------------------------------------------------------------------X

MAKTUMMA TESHABAEVA, AND JIAN HUA DENG
INDIVIDUALLY AND ON BEHALF OF ALL OTHER
PERSONS SIMILARLY SITUATED WHO WERE
EMPLOYED BY FAMILY HOME CARE SERVICES OF
BROOKLYN AND QUEENS, INC.,

|  |  |
|---|---|
| INDEX NO. | 158949/2017 |
| MOTION DATE | 12/13/2021 |
| MOTION SEQ. NO. | 007 |

Plaintiffs,

- v -

FAMILY HOME CARE SERVICES OF BROOKLYN AND
QUEENS, INC., CARE AT HOME - DIOCESE OF
BROOKLYN, INC.,

**DECISION + ORDER ON MOTION**

Defendant.

-------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 007) 170, 171, 172, 173,
174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 196, 198,
200, 203, 204, 205, 206

were read on this motion to/for                    MISCELLANEOUS                    .

Upon the foregoing documents, plaintiffs move for class certification pursuant to New

York Civil Practice Laws and Rules (CPLR) article 9 and related relief.

Named plaintiffs commenced the instant action to recover unpaid minimum wages,

overtime compensation, spread of hours compensation, and unpaid prevailing wages and benefits

under the New York Labor Law and related administrative codes. The complaint also alleges that

defendants failed to maintain adequate records of the hours plaintiffs actually worked, the breaks

plaintiffs were entitled to receive, and the sleeping facilities provided to plaintiffs. The putative

class is comprised of home health aides (HHAs) and/or personal care assistants that were

formerly employed by the defendant prior to December 22, 2015.

## CPLR 901 (a)

CPLR 901 (a) provides that a class action may be maintained where:

158949/2017  TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF          Page 1 of 5
Motion No.  007

1 of 5

1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

4. the representative parties will fairly and adequately protect the interests of the class; and

5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Plaintiffs bear the burden of establishing that the criteria in CPLR 901 (a) have been met (*Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d 481 [1st Dept 2009]). "Whether a particular lawsuit qualifies as a class action rests within the sound discretion of the trial court. In exercising this discretion, a court must be mindful of our holding that the class certification statute should be liberally construed" (*Kudinov*, 65 AD3d at 481, citing *Englade v HarperCollins Publs., Inc.*, 289 AD2d 159 [1st Dept 2001]).

Initially, the Court notes that its inquiry as to whether the claims have merit is a very limited inquiry; rather, the minimal demonstration to proceed as a class is a showing that "there appears to be a cause of action which is not a sham" (*Pludeman v N. Leasing Sys., Inc.*, 74 AD3d 420, 422 [1st Dept 2010]). Thus, the Court disregards any arguments in opposition that tends to raise issues of fact on the merits of the claims, as the inquiry sub judice "is not intended to be a substitute for summary judgment or trial" (*id.*).

Additionally, the Court rejects defendant's arguments as if federal caselaw should be controlling or pursuasive with respect to home health aides in general (as all the cases cited were pre-*Andreyeyeva*, discussed *infra*) and/or as to class certification in general, as this Court is "not required to apply the 'rigorous analysis' standard utilized by the federal courts in addressing

**158949/2017 TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF** Motion No. 007      **Page 2 of 5**

class certification motions under rule 23 (b) of the Federal Rules of Civil Procedure" (*Stecko v RLI Ins. Co.*, 121 AD3d 542, 543-544 [1st Dept 2014]).

The Court finds that plaintiff's evidence in support of the motion clearly demonstrate that all requirements of CPLR 901 (a) are met.

In opposition, defendant argues that the motion should be denied because, inter alia, the plaintiffs' submissions fall short of the evidentiary showing required to meet class certification, citing *Moreno v Future Health Care Services, Inc.* (186 AD3d 594, 594-97 [2d Dept 2020]). This case is distinguishable from *Moreno* in that the plaintiffs clearly alleged and submitted evidence that they did not receive the prescribed sleep and meal breaks (*see, e.g.*, *Lavrenyuk v Life Care Services, Inc.*, 198 AD3d 569, 570 [1st Dept 2021], *lv to appeal dismissed* 38 NY3d 1021 [2022] ["plaintiff submitted evidence that she worked with at least 40 other home health aides, and also submitted her paystubs and those of other employees" meeting class certification prerequisites on similar claims related to HHAs]).

Further, if there were any deficiency in evidence, it cannot serve to benefit defendant, whose answer was stricken for failing to provide pre-class certification discovery (see NYSCEF Doc Nos 202, 128).[1]

Additionally, the evidence submitted by plaintiffs show that the named plaintiffs and other former health aides were not given the requisite meal and sleep breaks and may not have been compensated appropriately for 24-hour shifts, and that defendant failed to maintain adequate records related to the same. This evidence supports the contention that the claims relate

---

[1] Defendant did not submit any evidence in opposition. The only paper submitted was a memorandum of law. Accordingly, any reference in the memorandum of law to defendant's putative "policies and practices" (NYSCEF Doc No 200 at 6) and/or an "Isakov" affidavit (*id.* at 10) is ignored.

**158949/2017  TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF
Motion No. 007**                                                                 Page 3 of 5

to "uniform systemwide violations" which are "particularly appropriate for class certification" (*Andryeyeva v New York Health Care, Inc.*, 33 NY3d 152, 184 [2019]).

Defendants also argue that class certification should not be granted because the claims involve an individualized assessment and/or proof as to *liability*. The Court cannot see how the arguments relate to liability as opposed to an individualized assessment of damages — which is not a bar to class certification (*see id.* at 185; *see, e.g.*, *Lavrenyuk*, 198 AD3d at 570). Indeed, as the Appellate Division, First Department recently held "any factual issues relating to whether individual employees took breaks is related to damages, and individualized damages assessments in wage-and-hour actions based on systematic policies do not undermine commonality or weigh substantially against class certification" (*Brown v Mahdessian*, — AD3d —, 2022 NY Slip Op 03985, 168 NYS3d 684 [1st Dept 2022]).

The Court has considered the defendant's remaining arguments and finds them unavailing.

## **CPLR 902**

Once the criteria of CPLR 901 (a) are met, "the court, in deciding whether to grant class action certification should then consider the additional factors promulgated by CPLR 902" (*Pludeman*, 74 AD3d at 422; *see* Vincent C. Alexander, Practice Commentaries, McKinneys Cons Laws of NY, Book 7B, C902:2 [noting that application of these additional factors tends to be "largely a matter of judicial discretion"]). These factors include:

1. The interest of members of the class in individually controlling the prosecution or defense of separate actions;

2. The impracticability or inefficiency of prosecuting or defending separate actions;

3. The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

4. The desirability or undesirability of concentrating the litigation of the claim in the particular forum;

5. The difficulties likely to be encountered in the management of a class action (CPLR 902).

The Court finds that the subdivisions (1), (2), (4) and (5) "may, under the circumstances of this case, be subsumed under the prerequisite of superiority" set forth in CPLR 901 (a) (5) (*Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129, 136 [2d Dept 2008]; *see Smith v The Donna Karan Co. Store, LLC*, Sup Ct, NY County, Jan. 18, 2017, Bannon, J., index No. 157912/2013, 2013 WL 395249, at *2). Additionally, as to subdivision (4) of CPLR 902, New York County Supreme Court is an appropriate forum given the nature of the claims and allegations, some of the parties' residency in the county, and the absence of any forum selection clause (*see Globe Surgical Supply*, 59 AD3d at 136).

Accordingly, it is hereby ORDERED that the plaintiffs' motion to certify this action as a class action, appoint Virginia & Ambinder LLP as class counsel, and approve the class notice and proposed publication order is granted; and it is further

ORDERED that plaintiffs' counsel shall submit the proposed publication order separately by email to SFC-Part18-Clerk@nycourts.gov for signature, so as to not write over any previously filed NYSCEF-filing notation as seen on NYSCEF Doc No 191.

This constitutes the decision and order of the Court.

| | |
|---|---|
| 7/15/2022 | |
| **DATE** | **ALEXANDER TISCH, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

158949/2017   TESHABAEVA, MAKTUMMA vs. FAMILY HOME CARE SERVICES OF
Motion No.  007

Page 5 of 5

Case 22-1587, Document 8, 08/09/2022, 3362149, Page245 of 291

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. GERALD LEBOVITS**

*Justice*

PART **IAS MOTION 7EFM**

-------------------------------------------------------------------------------X

IHOR TROSHIN, and ALL OTHER PERSONS SIMILARLY
SITUATED WHO WERE EMPLOYED BY THE STELLA
ORTON HOME CARE AGENCY, INC.,

Plaintiffs,

- v -

THE STELLA ORTON HOME CARE AGENCY, INC.,

Defendant.

-------------------------------------------------------------------------------X

INDEX NO. 159312/2016

MOTION SEQ. NO. 004 005

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 004) 63, 64, 65, 66, 67, 68, 69, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 147, 161, 162

were read on this motion to _____ COMPEL ARBITRATION _____.

The following e-filed documents, listed by NYSCEF document number (Motion 005) 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 143, 144, 145, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159

were read on this motion for _____ INJUNCTION _____.

*Virginia & Ambinder LLP* (LaDonna Lusher, Michele A. Moreno, and Joel L. Goldenberg of counsel), for plaintiffs.
FordHarrison LLP (Philip K. Davidoff and Jeffrey A. Shooman of counsel), for defendant.

Gerald Lebovits, J.:

This is a wage-and-hour action—one of many currently pending wage-and-hour disputes involving home-care agencies. In motion sequence 005, named plaintiff Ihor Troshin moves here for preliminary and permanent injunctive relief precluding arbitration of his claims (and those of the prospective class) against defendant Stella Orton Home Care Agency, Inc. In motion sequence 004, Stella Orton moves to compel Troshin and the prospective class to arbitrate.

With respect to motion sequence 005, this court previously denied Troshin's request for a TRO barring arbitration of his claims; and a global home-care-agency arbitration that encompasses the claims of Troshin and the prospective class is pending before arbitrator Martin F. Scheinman, Esq. On fuller briefing and further consideration, however, this court concludes that Troshin's motion for injunctive relief should be granted, at least as to Troshin and those prospective class members who left Stella Orton employment before execution of the 2015 Memorandum of Agreement underlying the arbitration proceeding before Arbitrator Scheinman. Stella Orton's motion to compel arbitration is denied as academic.

# BACKGROUND

## A. The Relevant Employment Agreements

Named plaintiff Troshin is a home health aide. Defendant, Stella Orton Home Care Agency, provides residential nursing and home health aide services. Troshin worked for Stella Orton from some time in 2004 until January 2015. (*See* NYSCEF No. 1, at ¶ 16.) Troshin's employment with Stella Orton was governed by a collective bargaining agreement between Stella Orton and plaintiff's union, 1199SEIU United Healthcare Workers East. The most recent CBA was executed in 2012. (*See* 2012 CBA, NYSCEF No. 116.) That agreement contained detailed provisions governing wages, hours, and paid time off. (*See id.* at arts. X, XI, XII, XVII.)

The CBA also contained an arbitration clause (article XXVI). Article XXVI provides that the CBA governs "any dispute between the Union (on its behalf and/or on behalf of any employee) with the Employer involving the proper application, interpretation, or compliance with the specific written provisions of the Agreement based on facts and circumstances occurring during the term of this Agreement." (*Id.* at art. XXVI, § 1.) The arbitration provision creates a multi-step process for resolving these disputes. In the fourth and final step of this process, should a dispute remain unresolved, "the Union and/or Employer may within ten (10) days thereafter request that the matter be submitted for final and binding arbitration under the Labor Arbitration Rules of the American Arbitration Association." (*Id.* at art XXVI, § 2.)

In December 2015—*i.e.*, after Troshin left his employment with Stella Orton—1199SEIU and Stella Orton executed a Memorandum of Agreement (MOA), which among other things created a new "Alternative Dispute Resolution" article of the existing CBA. This new CBA article provides that all union or employee claims asserting violations of the federal Fair Labor Standards Act, the New York Home Care Worker Wage Parity Law, or the New York Labor Law, would "be subject *exclusively*[] to the grievance and arbitration procedures described in this article." (NYSCEF No. 115 at 8 [emphasis added].) All such claims are subject to mandatory mediation before Martin Scheinman. (*See id.* at 9.) Should the mandatory mediation process prove unsuccessful, the new CBA article provides that 1199SEIU has four months in which to demand arbitration; that arbitration proceeding would be final and binding, and held before Scheinman as well. (*See id.* at 8, 9.)

## B. The Wage-and-Hour Disputes

In November 2016, Troshin brought this action on behalf of himself and a prospective class of more than 100 other individuals who were employed by Stella Orton at the time of filing or who previously had been so employed during the class period. (NYSCEF No. 1, at ¶¶ 1, 10.) The complaint alleges, in brief, that beginning in 2010, and continuing through the time of filing, class members had been repeatedly forced to work extremely long hours without receiving wages and benefits to which they were statutorily and contractually entitled. (*See id.* at ¶¶ 2-4.) It asserted (i) claims for violations of various wage and overtime provisions of the Labor Law and implementing regulations, and (ii) third-party-beneficiary claims for breach of the contract(s) between Stella Orton and various New York State and New York City agencies to pay wages

consistent with the terms of the Health Care Worker Wage Parity Law and certain City ordinances. (*See id.* at ¶¶ 57-101.)

The record reflects that Troshin (as named plaintiff) and Stella Orton then litigated this matter in the ordinary course—including production of discovery and conferences and motion practice before this court—for approximately three years. (*See e.g.* NYSCEF Nos. 22, 23, 32, 46, 50, 55, 57 [conference orders]; No. 57 [decision & order resolving motion to compel discovery].)

In January 2019, 1199SEIU brought a class grievance, by letter to Mediator Scheinman, pursuant to the terms of the new ADR article of the CBA. The letter stated that 1199SEIU asserted this grievance "on behalf of all its home care bargaining unit members employed by various agencies" (including Stella Orton). The grievance stated that it applied to, among other things, "any . . . outstanding wage and hour claims" by its members "arising under the Covered Statues" (*i.e.*, FLSA, the Labor Law, and the Home Care Worker Wage Parity Law). (NYSCEF No. 68, at 1, 3.)

In November 2019, Stella Orton moved in this action to compel arbitration under the Federal Arbitration Act (motion sequence 004).[1] (*See* NYSCEF No. 63.) Stella Orton argued that article XXVI of the 2012 CBA requires mandatory arbitration of Troshin's wage-and-hour claims and that any question relating to arbitrability was for the arbitrator—not a court—to decide in the first instance. (*See* Mem. of Law in Supp. of Mot., NYSCEF No. 69, at 10-12.)

## C. Judicial and Arbitral Rulings on Arbitrability of These Disputes

On December 24, 2019, Mediator Scheinman wrote to numerous attorneys representing parties involved in pending wage-and-hour cases against home health agencies (including counsel for both parties here) to notify them that mediation of the claims asserted by 1199SEIU had proven unsuccessful. (*See* NYSCEF No. 118.) He noted in particular that a number of counsel representing wage-and-hour plaintiffs had indicated that they were unwilling to follow the mediation process that he had hammered out with 1199SEIU and the agencies; he explained that those counsel "represented former employees that had left employment prior to the signing of the ADR protocol" governing the mediation process and therefore took the position that their clients "were not bound to follow the ADR protocol." (*Id.* at 1-2.)

Scheinman stated that 1199SEIU "has determined it represents *all* of the employees' claims and wishes to pursue those claims promptly in arbitration," and that the agencies "agree this is now the proper course." (*Id.* at 2 [emphasis added].) He therefore scheduled a global arbitration hearing regarding these claims, to begin on January 15, 2020.

Scheinman also stated that "on the first day of the hearing," he would hear argument on two threshold questions relevant here: (i) whether the claims involving former 1199 bargaining unit members were arbitrable; and (ii) whether he had jurisdiction to adjudicate these claims where the employees raising them had left their jobs prior to the effective date of the

---

[1] Stella Orton had first indicated that it intended to move to compel at a status conference held by this court on February 27, 2019. (*See* NYSCEF No. 55.)

Case 22-1587, Document 8, 08/09/2022, 3362149, Page248 of 291

Memorandum of Agreement imposing the mediation/arbitration procedure under which he was operating. (*Id.*)

On January 13, 2020, Troshin brought on by order to show cause a motion for injunctive relief prohibiting arbitration of his claims and those of members of the prospective class (motion sequence 005). (*See* NYSCEF No. 113 [proposed OSC]; No. 114 [Aff. of LaDonna M. Lusher in Supp. of Mot.], at ¶¶ 3, 16.) The OSC included a request for a TRO barring arbitration of the claims of Troshin and prospective class members pending adjudication of the requests for injunctive relief—and, in particular, barring Arbitrator Scheinman from considering those claims during the scheduled January 15 global arbitration hearing. (*See* NYSCEF No. 113, at 2.)

Also on January 13, this court heard oral argument from the parties on Troshin's TRO request. Later that day, upon considering the parties' submissions at argument, Troshin's opening motion papers, and the opening and response papers on Stella Orton's motion to compel arbitration, this court notified the parties that it was going to deny the TRO request but sign the OSC and set a briefing schedule for the motion. The next day, January 14, this court issued a decision and order to explain more fully the reasoning underlying its ruling. (*See Troshin v Stella Orton Home Care Agency, Inc.*, 2020 NY Slip Op 50036[U] [Sup Ct, NY County Jan. 14, 2020].)

In denying the TRO, this court declined to reach the merits of Troshin's arguments that (i) the arbitration clause in article XXVI of the CBA did not cover the statutory wage, hour, and overtime claims asserted in this action; and (ii) the arbitration clause in the ADR article added to the CBA by the 2015 MOA did not bind Troshin (or many other members of the proposed class) due to the fact that he had left Stella Orton before the MOA was executed. (*See id.* at *4-*5.)

This court held instead that article XXVI of the CBA was a broad arbitration provision that delegated threshold questions of arbitrability to the arbitrator, not the courts, to determine. The court distinguished two decisions of the Appellate Division, First Department, that had reached the arbitrability question themselves, on the ground that the rulings in those cases had been based solely on the terms of the new CBA ADR article, which did not delegate arbitrability to the arbitrator. (*See id.* at *6-*7.) And the court declined to find that Stella Orton's litigation conduct had waived the right of *1199SEIU* to require its members to arbitrate their wage, hour, and overtime claims. (*See id.* at *7-*8.)

In April 2020, Arbitrator Scheinman issued his ruling on the arbitrability issues raised by various parties with an interest in the arbitration proceeding. (*See* NYSCEF No. 161 at Ex. A.) He concluded that under article XXVI of the CBA, he had jurisdiction to decide the threshold question of arbitrability, and that under the CBA's new ADR article, the various statutory claims at issue in the proceeding were arbitrable. (*See id.* at Ex. A 32-36.) Arbitrator Scheinman further concluded that the arbitration clause of the new ADR article bound *all* Stella Orton employees, past and present—whether or not they were still employed by Stella Orton when the 2015 MOA was executed. (*See id.* at Ex. A 37-39.) In reaching that conclusion, Scheinman did not address the First Department decisions (and a similar ruling of the U.S. Court of Appeals for the Second

4

Circuit)[2] that had held the new ADR article to apply only to individuals who were employed by Stella Orton after the 2015 MOA's execution.

Troshin has continued to press his argument that neither he nor the prospective class is properly subject to having their claims against Stella Orton arbitrated in the proceeding before Arbitrator Scheinman. Stella Orton maintains that Troshin and the prospective class can and should be compelled to arbitrate.

Now before the court are Troshin's motion for an injunction against arbitration of his claims (motion sequence 005) and Stella Orton's motion to compel arbitration (motion sequence 004). Motion Sequences 004 and 005 are consolidated for disposition.[3]

## DISCUSSION

### I.    Troshin's Motion for an Injunction (Motion Sequence 005)

Troshin moves for an injunction barring Stella Orton from arbitrating his claims and those of prospective class members.

The parties' motion papers focus their arguments on the merits questions of whether this court may properly determine arbitrability and whether the claims of Troshin and the prospective class are arbitrable. This court concludes that the threshold arbitrability issue is for this court, not Arbitrator Scheinman, to determine. On the merits of the arbitrability issue, this court concludes that the claims of Troshin, and members of the prospective class who left Stella Orton's employment before the execution date of the 2015 MOA, are not arbitrable. This court therefore grants to that extent the motion for an injunction barring arbitration. This court denies injunctive relief, however, with respect to members of the prospective class who are currently employed by Stella Orton, or who left Stella Orton's employment after execution of the 2015 MOA.

### A.    The Claims of Troshin and Prospective Class Members Who Left Stella Orton Before the 2015 MOA Was Executed

In opposing Troshin's request for an injunction, Stella Orton relies heavily on the prior denial of Troshin's request for a temporary restraining order, and in particular this court's conclusion in its TRO ruling that article XXVI of the CBA delegates to the arbitrator the threshold question of arbitrability. (*See* NYSCEF No. 149 at 6-7.) And Stella Orton maintains that CBA article XXVI and the CBA's new ADR article created by the 2015 MOA must be treated together for delegation purposes: "The issue here is not, and cannot be, whether the ADR Provisions of the 2015 MOA clearly and unmistakably delegate to the Arbitrator the

---

[2] *See Hichez v United Jewish Counsel of the E. Side, Home Attendant Serv. Corp.*, 179 AD3d 576, 577 [1st Dept 2020]; *Lorentti-Herrera v Alliance for Health, Inc.*, 173 AD3d 596 [1st Dept 2019]; *Konstantynovska v Caring Professionals, Inc.*, 172 AD3d 486 [1st Dept 2019]; *Agarunova v Stella Orton Home Care Agency, Inc.*, 794 F Appx 138 [2d Cir 2020].)

[3] Troshin has also moved to certify the prospective class (motion sequence 003). That motion will be addressed by separate order in due course.

5

Case 22-1587, Document 8, 08/09/2022, 3362149, Page250 of 291

determination of gateway arbitrability questions, but rather whether the Collective Bargaining Agreement of which that 'new article' is a part—the 2012 CBA—does so." (*Id.* at 9 [emphasis and internal quotation marks omitted].) Upon considering this interpretive question anew upon full briefing, this court is not so sure that Stella Orton is correct.

Troshin's reply papers in support of the motion for injunctive relief raise a telling point this court did not fully appreciate when issuing its TRO ruling (*see* NYSCEF No. 159 at 6-7): the terms of the new CBA article governing arbitration provide that wage, hour, and overtime claims "shall be subject *exclusively* to the grievance and arbitration procedures described" by that article.[4] (NYSCEF No. 115 at 8.) As a result, this court concludes, it is this new article—not, as Stella Orton suggests, existing article XXVI—that governs the arbitrability of the wage, hour, and overtime claims brought in this action.

As the First Department has already held in an action raising this issue, the terms of the new CBA ADR article does not delegate the arbitrability issue to the arbitrator. (*See Hichez v United Jewish Counsel of the E. Side, Home Attendant Serv. Corp.*, 179 AD3d 576, 577 [1st Dept 2020].) The text of the new CBA article does not incorporate the procedures of existing article XXVI. It does not itself expressly delegate arbitrability to the arbitrator. And—unlike article XXVI—it does not incorporate by reference the rules of any arbitration body (like the AAA) that place arbitrability questions in the hands of an arbitrator rather than the courts.[5] (*See id.* at 8-10.) Nothing in the 2015 MOA's arbitration provision, therefore, serves to contract around the default rule that threshold arbitrability questions are for the courts to decide.[6] (*See Smith Barney Shearson Inc. v Sacharow*, 91 NY2d 39, 45 [1997].)

To be sure, as Stella Orton emphasizes (*see* NYSCEF No. 149 at 7), Troshin is contending that he is "bound only by the CBA existing during his employment"—and thus, seemingly, by article XXVI of the CBA rather than the ADR provision added by the 2015 MOA. And as this court concluded in its TRO ruling and as Stella Orton points out now (*see id.* at 8), Stella Orton's motion to compel arbitration draws on article XXVI, as well as on the CBA's 2015 ADR article.

The arbitration at issue on Troshin's request for an injunction, however, has proceeded under the rules laid down in the 2015 ADR article, rather than article XXVI. The arbitration at issue was preceded by a class grievance filed by 1199SEIU with Arbitrator Scheinman, as

---

[4] Although Troshin did not make this point in his initial motion papers, this court exercises its discretion to consider it here. The argument is based on the express terms of the 2015 ADR article, and is closely related to the parties' interpretive claims in Troshin's initial motion papers and Stella Orton's opposition papers. Moreover, Stella Orton has neither objected to Troshin's having first made this argument in his reply nor sought leave to file a responsive surreply.

[5] This court is thus not persuaded by Stella Orton's insistence that the First Department's "notion that the 2015 MOA does not incorporate the AAA Rules" fails to "pass even the 'red-face test.'" (NYSCEF No. 149 at 9 n 4 [internal quotation marks omitted], citing *Hichez*, 179 AD3d at 577.)

[6] Arbitrator Scheinman's contrary holding relies on CBA article XXVI. He does not address the exclusivity language of the 2015 ADR article of the CBA—or the absence of any delegation language in that article. (*See* NYSCEF No. 161 Ex. A at 32-36.)

6

"named mediator and arbitrator" throughout the "home care industry" for various statutory wage, hour, and overtime claims. (NYSCEF No. 119 at 1.) Arbitrator Scheinman is designated as the parties' chosen mediator and arbitrator by §§ 1 and 2 of the 2015 ADR article. (*See* NYSCEF No. 115 at 8-9.) The parties sought to mediate their dispute before Arbitrator Scheinman; when that mediation proved unsuccessful, the parties proceeded to binding arbitration before him. (*See* NYSCEF No. 161 Ex. A at 7.) Each of these steps follows the procedures of the new ADR article—not existing article XXVI. (*Compare* NYSCEF No. 116 at 28-29 [article XXVI], *with* NYSCEF No. 115 at 8-9 [2015 ADR article].)

Moreover, even if one were to conclude that the who-decides-arbitrability question must take into account the terms of both article XXVI and the new ADR article, these two provisions point in opposite directions—one delegates arbitrability to the arbitrator and the other does not. On further consideration, therefore, this court is thus hard-pressed to conclude that the parties to the CBA *clearly and unmistakably* agreed to delegate arbitrability to the arbitrator, as the caselaw requires. (*See Sacharow*, 91 NY2d at 46.)

This court therefore holds that in this case, whether Troshin (and similarly situated prospective class members) can be compelled to participate in the arbitration before Arbitrator Scheinman is a question for the court and not for the arbitrator. And under consistent First Department precedent, neither Troshin, nor any member of the prospective class who ceased working for Stella Orton before execution of the 2015 MOA, is bound by the arbitration clause in the CBA ADR article added in 2015.[7] (*See Hichez*, 179 AD3d at 577; *Lorentti-Herrera v Alliance for Health, Inc.*, 173 AD3d 596 [1st Dept 2019]; *Konstantynovska v Caring Professionals, Inc.*, 172 AD3d 486 [1st Dept 2019]; *accord Agarunova v Stella Orton Home Care Agency, Inc.*, 794 F Appx 138, 140 [2d Cir 2020].)

This court does not agree with Stella Orton's contention that the conclusion of those cases is inconsistent with the decision of the U.S. Supreme Court in *Henry Schein Inc. v Archer & White Sales, Inc.* (139 S Ct 524 [2019]). (*See* NYSCEF No. 149 at 7-8.) *Henry Schein* holds only that where contracting parties have agreed to delegate arbitrability to the arbitrator, a court must respect that delegation even where the merits of the arbitrability issue seem to the court to be entirely one-sided. (*See* 139 S Ct at 529-530.) Here, the appellate decisions to which Stella Orton objects concluded simply that the parties did *not* delegate arbitrability determinations to

---

[7] This court notes that Arbitrator Scheinman's conclusion in his April 2020 decision that *all* past and present Stella Orton employees are bound by the terms of the new CBA ADR article does not address, let alone distinguish, the holdings or reasoning of *Hichez*, *Lorentti-Herrera*, and *Konstantynovska*. Additionally, he does not explain why he could properly rely on a decision of the U.S. District Court for the Southern District of New York, holding that the 2015 MOA applied retroactively to require arbitration of pre-MOA claims, over the later *Second Circuit* decision in *Agarunova* holding that it did not. (*See* NYSCEF No. 161 Ex. A at 38-39, quoting *Chan v Chinese-Am. Planning Council Home Attendant Program, Inc.*, 180 F Supp 3d 236, 241 [SD NY 2016].) As to *Agarunova*, Arbitrator Scheinman says only that the delegation-of-arbitrability argument was not before the court in that case. (*See* NYSCEF No. 161 Ex. A at 39 n 16.) That point is true (*see* 794 F Appx at 140), but irrelevant: the delegation argument addresses *who* decides arbitrability, not whether the claims are arbitrable.

the arbitrator. That Stella Orton disagrees with that conclusion does not make it contrary to U.S. Supreme Court precedent.[8]

### B. The Claims of Prospective Class Members Who Were Employed at Stella Orton After the 2015 MOA Was Executed

This court's conclusion that employees who ceased working for Stella Orton before execution of the 2015 MOA may not be required to arbitrate their claims still leaves the question of how to treat employees who were employed by Stella Orton in December 2015 (or after).

The new ADR article added to the CBA by the 2015 MOA provides for mandatory, binding arbitration of wage, hour, and overtime claims. Troshin does not dispute that this agreement would govern the claims of plaintiffs in the prospective class who were employed by Stella Orton after execution of the MOA. Troshin argues that this court should nonetheless issue an injunction prohibiting arbitration of these plaintiffs' claims because Stella Orton assertedly waived its right to arbitrate. This court disagrees.

As this court noted in its TRO ruling, the arbitration that Troshin is now seeking to block was sought by 1199SEIU. (*See Troshin*, 2020 NY Slip Op 50036[U], at *7.) And 1199SEIU's right to arbitrate on behalf of its members (assuming their agreement to the arbitration in the applicable CBA) does not depend on whether the employer could separately force the employees to arbitrate. That is, this court does not see why a waiver by Stella Orton of the right to compel arbitration should oust the non-party union's right to decide to arbitrate on behalf of its members pursuant to the CBA. Relatedly, Troshin asserts that if "this Court finds waiver, an injunction prohibiting Defendant from arbitrating claims for Plaintiffs who continued working for Defendant after the 2015 MOA was executed is also proper." (NYSCEF No. 159 at 19-20.) But that conclusion does not follow. Even if Stella Orton were found to have waived its right to compel arbitration in lieu of litigating this action, Troshin does not explain why that waiver would also encompass Stella Orton's right to *participate* in arbitration sought by a third party (*i.e.*, 1199SEIU).

This court therefore declines to enjoin Stella Orton from arbitrating the claims of prospective class members employed at Stella Orton after execution of the 2015 MOA.[9]

### II.   Stella Orton's Motion to Compel (Motion Sequence 004)

---

[8] Regardless, even if this court were to think that the conclusion of those decisions was inconsistent with *Henry Schein*, that would not change the outcome here. This court is unpersuaded, to say the least, by Stella Orton's assertion that a trial court can simply disregard on-point Appellate Division precedent if the trial court believes that precedent to be contrary to a decision of the U.S. Supreme Court. (*See* NYSCEF No. 149 at 9-10.)

[9] Although as noted above this court has not yet adjudicated Troshin's pending motion for class certification, at a minimum any prospective class may only include employees who left employment at Stella Orton before execution of the 2015 MOA. (*See* NYSCEF No. 159 at 20 n 9 [acknowledging this point].)

Stella Orton also moves to compel arbitration of Troshin's claims against it. Troshin opposes on waiver grounds. The motion to compel is denied as academic.

With respect to prospective class members who left employment at Stella Orton before the 2015 MOA was executed, this court has already held above that those individuals cannot be required to arbitrate their wage, hour, and overtime claims in the proceeding before Arbitrator Scheinman. With respect to prospective class members who were employed at Stella Orton after the 2015 MOA was executed, this court has already held above that those individuals can be required by 1199SEIU to arbitrate their claims—even if *Stella Orton* were deemed to have waived its own right to compel arbitration by actively litigating this action for more than two years before it first raised the possibility of moving to compel.

Given the court's resolution of these issues on motion sequence 005, Stella Orton's motion on motion sequence 004 is denied as academic.

Accordingly, for the foregoing reasons it is hereby

ORDERED that the branch of Troshin's motion (motion sequence 005) seeking to enjoin arbitration of the claims of Troshin and prospective class members who ceased working for Stella Orton before December 16, 2015, is granted; and it is further

ORDERED that the branch of Troshin's motion (motion sequence 005) seeking to enjoin arbitration of the claims of Troshin and prospective class members who ceased working for Stella Orton on or after December 16, 2015, is denied; and it is further

ORDERED that Stella Orton's motion to compel arbitration (motion sequence 004) is denied as academic; and it is further

ORDERED that Troshin shall serve a copy of this order with notice of its entry on Stella Orton, 1199SEIU, and Arbitrator Martin F. Scheinman, Esq.

HON. GERALD LEBOVITS
J.S.C.

| 9/11/2020 | |
|---|---|
| **DATE** | |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

9

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| PRESENT: | **HON. GERALD LEBOVITS** | PART | **IAS MOTION 7EFM** |
| | *Justice* | | |

-------------------------------------------------------------------X

IHOR TROSHIN and OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY THE STELLA ORTON HOME CARE AGENCY, INC.,

Plaintiffs,

- v -

THE STELLA ORTON HOME CARE AGENCY, INC.,

Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 159312/2016 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 146, 148, 174, 175, 176, 177, 178

were read on this motion for _____CLASS CERTIFICATION_____.

*Virginia & Ambinder LLP*, New York, NY (LaDonna Lusher, Michele A. Moreno, and Joel L. Goldenberg of counsel), for plaintiffs.
*FordHarrison LLP*, New York, NY (Philip K. Davidoff and Jeffrey A. Shooman of counsel), for defendant.

Gerald Lebovits, J.:

This is a wage-and-hour action brought by a former home health aide, plaintiff Ihor Troshin (on behalf of himself and a prospective class), against Troshin's former employer, defendant Stella Orton Home Care Agency, Inc. Troshin now moves for class certification. Stella Orton opposes the motion; and it requests by letter dated February 19, 2021, that this court grant renewal of the court's prior decision and order denying Stella Orton's motion to compel arbitration. Troshin's motion for class certification is granted (albeit of a class that is somewhat narrower in scope than that sought in the motion). Stella Orton's letter application to renew is denied.

## BACKGROUND

### A. Troshin's Class-Wide Allegations

Named plaintiff Troshin is a home health aide. Defendant, Stella Orton Home Care Agency, provides residential nursing and home health aide services. Troshin worked for Stella Orton from some time in 2004 until January 2015. (*See* NYSCEF No. 1, at ¶ 16.)

In November 2016, Troshin brought this action on behalf of himself and a prospective class of other home health care employees who were employed by Stella Orton at the time of filing or who previously had been so employed during the class period. (*See* NYSCEF No. 1, at ¶¶ 1, 10.) The complaint alleges, in brief, that beginning in 2010, and continuing through the time of filing, class members had been repeatedly forced to work extremely long hours without receiving wages and benefits to which they were statutorily and contractually entitled. (*See id.* at ¶¶ 2-4.) It asserted (i) claims for violations of various wage and overtime provisions of the Labor Law and its implementing regulations, and (ii) third-party-beneficiary claims for breach of the contract(s) between Stella Orton and various New York State and New York City agencies to pay wages consistent with the terms of the Health Care Worker Wage Parity Law and certain City ordinances. (*See id.* at ¶¶ 57-101.)

Troshin's motion papers in support of class certification amplify these allegations. The State Department of Labor (DOL) sets minimum wages in various fields of employment in New York State by regulations (or Wage Orders). The Department has interpreted its Wage Order in the home health-care field to impose what is known as the 13-Hour Rule. Under this rule, home health aides assigned to 24-hour live-in shifts may be paid for only 13 hours of the 24—*if, and only if*, the aides are (i) afforded eight hours for sleeping, including (ii) five hours of uninterrupted sleep; and if they are (iii) afforded three hours for meal breaks. (*See Andryeyeva v New York Health Care, Inc.*, 33 NY3d 152, 165-166 [2019].) If any of these three conditions are *not* met, however, the employer must pay for all 24 hours of the shift. (*See id.* at 166, 177 n 5.)

Troshin asserts in a sworn affidavit that he and his coworkers were "instructed not to leave the clients by themselves." (NYSCEF No. 72 at ¶ 10.) As a result, given Stella Orton's "clients' mental and medical conditions, and their constant need for supervision," he and the members of the prospective class working 24-hour shifts routinely failed to receive either five hours of uninterrupted sleep or three one-hour meal breaks. (*See* NYSCEF No. 72 at ¶¶ 9-15; *see also* NYSCEF No. 73 at ¶ 11.) Troshin has also submitted an affidavit from another former Stella Orton home health aide representing that Stella Orton took no action when she repeatedly complained to her supervisor about not receiving sleep breaks during 24-hour shifts. (*See* NYSCEF No. 73 at ¶ 19.) Nor, Troshin alleges, did Stella Orton inform him or his coworkers that they were entitled to additional pay if they did not receive sleep and meal breaks during 24-hour shifts. (*See* NYSCEF No. 72 at ¶ 17.)

In fact, Troshin alleges that Stella Orton lacked any procedures or methods in place for tracking whether its home health aides on 24-hour shifts *were* receiving sleep and meal breaks, or for keeping records of the hours that such aides were working. (*See id.* at ¶¶ 16, 22.) To the contrary, Troshin asserts, Stella Orton's time-management system for home health aides called for aides only to "punch in" and "punch out" (through dialing an automated telephone system) at the beginning and end of the shift—without a comparable means of punching in and out at the beginning and end of a sleep or meal break. (*See id.* at ¶ 23.) And Stella Orton did not ask aides for the hours they had in fact worked. (*See id.*; *see also* NYSCEF No. 73 at ¶¶ 17-20, 22-23.)

Relatedly, Troshin asserts that Stella Orton paid Troshin and other class members a flat per diem rate for each 24-hour shift (as provided for under the governing collective bargaining agreement), regardless whether they were entitled to payment for 13 hours of work or payment

2

for 24 hours of work under the DOL Wage Order—and this per-diem rate in fact only represented *12* hours of work. (*See* NYSCEF No. 72 at ¶¶ 18-19.) Thus, Troshin alleges, Stella Orton systematically failed to pay its home health aides the minimum hourly wage required by DOL's Wage Order and the 13-Hour Rule.

In addition, Troshin alleges that Stella Orton systematically failed to pay its home health aides overtime when they worked more than 40 hours in a given week, a "spread of hours" premium when they worked 10 or more hours in a given week, or equivalent compensation in benefits, in violation of State and City ordinances and regulations. (*See* NYSCEF No. 72 at ¶¶ 24-26; NYSCEF No. 73 at ¶¶ 24-27.) Stella Orton allegedly also failed to pay aides for the time incurred in traveling between different clients during a given shift, in violation of the Labor Law. (*See* NYSCEF No. 72 at ¶¶ 18-21.)

### B. This Motion for Class Certification

Troshin now moves to certify this action as a class action under CPLR article 9 (mot seq 002). (*See* NYSCEF No. 70.) The proposed class is to consist of "[a]ll individuals who performed work on behalf of [Stella Orton] as non-residential home health aides and/or personal care assistants in the State of New York from November 4, 2010." (NYSCEF No. 83 at 1 [internal pagination] [defining proposed class]; NYSCEF No. 159 at 20 n 9 [internal pagination] [limiting scope of proposed class].) The motion also seeks designation of Troshin's counsel, the law firm of Virginia & Ambinder, LLP, as class counsel; and approval for publication of a proposed class notice submitted by Troshin. (*See* NYSCEF No. 70 at 1.)

Separately, Stella Orton has filed a letter requesting renewal of this court's prior denial of Stella Orton's motion to compel arbitration, in light of a recent, related decision of the U.S. District Court for the Southern District of New York.

### DISCUSSION

### I.    Stella Orton's Threshold Challenges to Class Certification

A motion for class certification will be granted only if the movant satisfies the criteria of CPLR 901 and 902. Before considering whether Troshin's submissions in support of class certification meet this burden, this court must consider two threshold objections raised by Stella Orton: that (i) Troshin's claims (and thus class certification) fail because the claims are subject to mandatory arbitration rather than litigation[1]; and (ii) the claims fail to state a cause of action and thus should not be afforded class-action status. This court concludes that these threshold objections are without merit.

---

[1] In addressing this objection, this court also considers Stella Orton's application to renew this court's prior denial of Stella Orton's motion to compel arbitration. (*See* NYSCEF No. 176.)

### A. Stella Orton's Arbitration-Related Objection to Class Certification

#### 1. Stella Orton's argument that the class claims must be arbitrated

Stella Orton argues that under the CBA between Stella Orton and 1199SEIU (the union representing home health aides employed by Stella Orton), Troshin's claims and those of the prospective class are required to be individually arbitrated. This court largely disagrees.

Stella Orton and 1199SEIU entered into a Memorandum of Agreement on December 16, 2015, that amended the CBA to include a mandatory arbitration provision. After the motion for class certification was filed, Stella Orton moved to compel arbitration of Troshin's claims (and the claims of the prospective class); Troshin moved in turn to enjoin arbitration.

In a prior order resolving those two motions, this court held that (i) arbitrability of the claims of Troshin and the prospective class was for the court, not an arbitrator to determine; and (ii) the arbitration provision added by the 2015 MOA does not apply to or bind Stella Orton employees who—like Troshin—left employment *before* Stella Orton and 1199SEIU executed the MOA. (*See Troshin v Stella Orton Home Care Agency, Inc.*, 2020 NY Slip Op 51042[U] [Sup Ct, NY County 2020].) In so holding, this court expressly declined to follow the contrary determinations on these two points of Arbitrator Martin Scheinman, which he rendered as part of a global wage-and-hour arbitration between 1199SEIU labor union and home health agencies. (*See id.* at *5 & nn 6-7.) This court granted Troshin's motion to enjoin arbitration of his claims and of prospective class members who left Stella Orton's employment on or before December 15, 2015, and it denied Stella Orton's motion to compel arbitration.

Given this court's holding on the parties' respective motions relating to arbitration, the court rejects Stella Orton's argument on this motion that class certification should be denied because the prospective class's claims must be individually arbitrated instead. To be sure, Troshin has conceded, and this court has held, that the claims of home health aides or personal care assistants who were employed by Stella Orton on or after December 16, 2015, *are* subject to mandatory arbitration. (*See Troshin*, 2020 NY Slip Op 51042[U], at *7 & n 9, citing NYSCEF No. 159 at 20 n 9.) The scope of the prospective class must therefore be limited to individuals who worked for Stella Orton on or after the starting date of the proposed class period (November 4, 2010), and who *stopped* working for Stella Orton on or before December 15, 2015. But the 2015 MOA's arbitration provision does not otherwise foreclose the current class-certification motion.

#### 2. Stella Orton's application to renew its prior unsuccessful motion to compel arbitration of the class claims

Stella Orton now requests renewal of its motion to compel arbitration. (*See* NYSCEF No. 176.) The request to renew is denied.

This court issued its decision on the parties' arbitration motions during the pendency of a petition to confirm Arbitrator Scheinman's arbitrability determination. As noted above, this court had rejected Arbitrator Scheinman's determination in reaching its own decision. The petition was

brought in the U.S. District Court for the Southern District of New York (Koeltl, J.). The district court held oral argument on that petition in December 2020—*i.e.*, after this court had issued its decision. In February 2021, the district court granted the petition to confirm. (*See 1199SEIU United Healthcare Workers East v PSC Community Servs.*, 2021 WL 708584 [SD NY Feb. 19, 2021].) Stella Orton now contends that the district court's confirmation of Arbitrator Scheinman's arbitrability determination warrants this court's revisiting of the denial of Stella Orton's motion to compel. This court is not persuaded.

As an initial matter, Stella Orton's request for renewal is procedurally improper: it has been brought as a two-page letter application, rather than as an actual motion. Although the court recognizes Stella Orton's desire for expedition, the appropriate means of serving that goal would have been to bring on a motion by order to show cause, rather than raise a request to renew in a letter. Nonetheless, the letter clearly lays out the basis for Stella Orton's renewal request. (*See* NYSCEF No. 176). And Troshin has had an opportunity meaningfully to respond in kind. (*See* NYSCEF No. 177.) The court is disinclined in these circumstances to deny renewal solely on that procedural ground.

Considering the request to renew on its merits, this court concludes that renewal is unwarranted. Stella Orton suggests that this court is required heed the district court's confirmation of Arbitrator Scheinman's arbitrability determination; and that this confirmation "effectively divests this Court of jurisdiction over this Action."[2] (NYSCEF No. 176 at 2.) But Stella Orton does not identify any support for either of those propositions. Stella Orton does not identify the legal authority that it is relying upon, or even whether that authority sounds in state or in federal law. Nor does Stella Orton explain why (either as a matter of law or common sense) this court should withdraw an order that rejected an arbitrator's arbitrability determination—and enforced that rejection by injunctive relief barring arbitration—merely because a federal district court later agreed with the arbitrator.[3] This court is unpersuaded that it should grant renewal based only on Stella Orton's unsupported assertion.

---

[2] Stella Orton also suggests that given the district court's decision confirming Arbitrator Scheinman's determination, this court "is no longer constrained to follow the Appellate Division cases" that drove this court's arbitrability conclusions in its prior order. (*See* NYSCEF No. 176 at 2 n 2.) The court declines to accept this remarkable suggestion.

[3] The district court's decision confirming in full the arbitrator's decision is open to question in any event. The district court credited Arbitrator Scheinman's analysis of why the governing collective-bargaining agreement delegated the determination of arbitrability to the arbitrator, rather than the court. (*See PSC Community Services*, 2021 WL 708584, at *12.) In so doing, though, the district court did not address the fundamental flaw in that analysis: the arbitrator relied on a delegation made in Article XXVI of the CBA, notwithstanding that (i) the 2015 MOA amending the CBA stated that the new arbitration provision was the *exclusive* means of resolving Labor Law wage-and-hour claims like those asserted here (thus superseding Article XXVI), and (ii) the new arbitration provision lacked the delegation language found in Article XXVI. (*See Troshin*, 2020 NY Slip Op 51042[U], at *5-*6 & n 6.)

Moreover, the district court held that the arbitrator had reasonably concluded that home health-care workers who left employment *before* the execution of the 2015 MOA could still be compelled to arbitrate their claims. (*See PSC Community Services*, 2021 WL 708584, at *13.)

5

That Stella Orton is, in substance, asking this court to vacate its prior order in favor of an order compelling arbitration highlights a more fundamental problem with the application. As noted above, this court enjoined arbitration of the claims of Troshin (and of a subset of the proposed class) not only before the district court's decision confirming Arbitrator Scheinman's arbitrability determination, but before oral argument on the petition to confirm. The fact that Stella Orton continued to seek a district-court ruling confirming arbitrability of those claims is thus in some tension with the requirements of this court's injunction. And to the extent the district court's decision requires arbitration of the claims (as Stella Orton now contends), that decision conflicts squarely with this court's injunction.[4] This court declines to grant Stella Orton's request for renewal, and thereby vacate this court's injunction, in light of a district-court decision that Stella Orton sought and obtained months *after* the injunction had been entered.

### B.  Stella Orton's CPLR 3211 (a) (7) Objection to Class Certification

In addition to its arbitration-related challenge, Stella Orton argues that the motion to certify should be denied because the claims both of Troshin and the prospective class fail for a variety of reasons to state a cause of action. This court disagrees. In "determining whether an action should proceed as a class action," the court is not to conduct a full-scale inquiry into the merits akin to a dispositive motion or trial. (*Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d 420, 422 [1st Dept 2010].) Rather, any merits inquiry is "limited to a determination as to whether on the surface there appears to be a cause of action for relief which is neither spurious nor sham." (*Bloom v Cunard Line, Ltd.*, 75 AD2d 237, 240 [1st Dept 1980].)

In this case, Stella Orton vigorously attacks (and Troshin vigorously defends) the potential merits of the wage-and-hour claims asserted by Troshin, and potentially asserted by the class that Troshin seeks to represent. This court need not, and does not, decide which side's merits-related arguments should ultimately prevail. At a minimum, Stella Orton has not persuaded this court that Troshin's claims (and those of the prospective class) are so insubstantial as to be a sham warranting denial of Troshin's motion to certify a class.

### II.    Stella Orton's CPLR Article 9 Challenge to Class Certification

Beyond the threshold challenges discussed above, Stella Orton also contends that this action fails to satisfy the requisites of CPLR article 9, governing class actions.

Under CPLR 901, an action may be maintained on a class basis if (i) "the class is so numerous that joinder of all members is impracticable (numerosity)"; (ii) "questions of law or fact common to the class predominate over questions of law or fact affecting individual class

---

But the district court—like the arbitrator—did not even acknowledge, much less distinguish, the multiple decisions of the Appellate Division—and the Second Circuit—holding to the contrary. (*See Troshin*, 2020 NY Slip Op 51042[U], at *5 [collecting cases].)

[4] It is not clear from the information now available to this court whether Stella Orton informed the district court that this court had enjoined arbitration of the claims of Troshin and other Stella Orton employees who had left employment before the execution of the 2015 MOA.

members (commonality)"; (iii) "the claims or defenses of the class representatives are typical of those in the class (typicality)"; (iv) "the class representatives will fairly and adequately protect the interests of the class"; and (v) "a class action represents the superior method of adjudicating the controversy (superiority)." (*Pludeman*, 74 AD3d at 421-422, citing CPLR 901 [a].) If movant has satisfied these prerequisites, the court should then consider "additional factors promulgated by CPLR 902 such as the interest of individual class members in maintaining separate actions and the feasibility thereof; the existence of pending litigation regarding the same controversy; the desirability of the proposed class forum; and the difficulties likely to be encountered in managing the class action." (*Id.* at 422.)

The party seeking class certification bears the burden to establish through proof in admissible form that the criteria of CPLR 901 (a) have been satisfied. (*Kudinov v Kel-Tech Constr., Inc.*, 65 AD3d 481 481 [1st Dept 2009].) Deciding whether movant has met this burden "is within the sound discretion of the trial court." (*Pludeman*, 74 AD3d at 422.) In exercising that discretion, the court must be mindful that CPLR article 9 must be liberally construed in favor of permitting class actions to proceed. (*See Andryeyeva*, 33 NY3d at 183-184; *City of N.Y. v Maul*, 14 NY3d 499, 508-509 [2010].)

Here, Troshin has alleged that Stella Orton employed hundreds of home health aides during the class period (*see* NYSCEF No. 72 at ¶ 3). That allegation amply satisfies CPLR article 9's numerosity requirement. (*See Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129, 137-138 [2d Dept 2008] [collecting cases].) And Stella Orton does not dispute numerosity. Nor does Stella Orton meaningfully contest the issue of typicality, Troshin's contention that he will fairly and adequately protect the interests of class members, or that the proposed class action would satisfy the CPLR 902 factors.

The dispute between the parties focuses instead on whether there exist common questions of law and fact that predominate over individual issues, such that proceeding as a class action is the superior method of adjudicating this controversy. This court concludes that common questions do predominate and that this controversy should be adjudicated on a class basis.

As discussed in Background Section A, *supra*, Troshin alleges that Stella Orton systematically failed to track the hours that its home health aides worked during assigned 24-hour shifts or whether aides assigned 24-hour shifts received the sleep and meal breaks to which they were entitled under DOL's 13-Hour Rule. He also alleges that he and other aides routinely failed to receive those sleep and meal breaks, given the needs of their clients—even after they repeatedly complained about the lack of a break in which to sleep—but were never told that as a result they were entitled to additional compensation. As a result, Troshin alleges, Stella Orton's flat per-shift compensation for 24-hour shifts routinely fell below the minimum wage. Additionally, Troshin alleges that Stella Orton systematically failed to pay required overtime and spread-of-hours compensation.

In addition to submitting sworn affidavits to this effect (*see generally* NYSCEF Nos. 72, 73), Troshin has submitted supporting evidence in the form of Stella Orton's own policy manual and time and hour records. The policy manual, for example, directs aides never to leave certain types of clients alone (*see* NYSCEF No. 74 at 22), and instructs aides that sleeping on duty is

prohibited (*see id.* at 10). The manual sets out a procedure only for aides to clock in and out at the beginning and end of shifts (*see id.* at 19), without providing any procedure for aides (or Stella Orton) to track the hours that they worked (and that they used for sleep and meals) *during* shifts. Nor does the manual even mention the subject of sleep or meals during 24-hour shifts at all. (*See id.*) Troshin also has submitted examples of anonymized payroll records for other class members that reflect per-shift compensation for 24-hour shifts, with no indication of whether the payments represented payment for 13 or for 24 hours of work; and that also reflect an absence of overtime or spread-of-hours pay. (*See* NYSCEF No. 75, at 1-7.) And Troshin has submitted samples of his own payroll records that indicate that Stella Orton was treating him as having worked only 12 hours during each 24-hour shift (not 13). (*See id.* at 8-10.)

In short, Troshin has submitted proof in admissible form supporting a claim that *at best* Stella Orton paid its home health aides working 24-hour shifts as if they were receiving sleep and meal breaks—despite the fact that Stella Orton had reason to believe that was the case, and despite the fact that Stella Orton had no way to tell one way or the other. And Troshin has similarly submitted proof in admissible form supporting a claim that Stella Orton failed to pay its aides overtime and spread-of-hours compensation (whether in the form of cash or benefits). Two other judges of this court have recently certified home-health-aide class actions on very similar allegations. (*See Kurovskaya v Project O.H.R. (Office for Homecare Referral), Inc.*, 2020 NY Slip Op 33977[U] [Sup Ct, NY County Dec. 1, 2020] [Kotler, J.]; *Bernardez v Alternate Staffing, Inc.*, 2020 NY Slip Op 33067[U] [Sup Ct, NY County Sept. 17, 2020] [Goetz, J.].) This court concludes that Troshin's allegations, too, warrant certification of his suit as a class action.

Stella Orton argues in opposition that this action is not suitable for class treatment because Troshin has not offered class-wide proof to show that his allegations about not receiving sleep and meal breaks apply across the membership of the proposed class; as a result, Stella Orton argues determining the wage claims of the class necessarily requires an individualized, plaintiff-by-plaintiff analysis that would make class adjudication inappropriate. (*See* NYSCEF No. 95 at 19-22.) This court is not persuaded.

As an initial matter, Stella Orton's argument implicitly assumes that many of its home health aides *did* receive the sleep and meal breaks required under the 13-Hour Rule (thus entailing individualized proof to determine which aides did not). This court is somewhat skeptical, given Troshin's allegations that he and his coworkers were never told that they were entitled to more pay absent sleep and meal breaks, and Stella Orton's failure to in procedures for tracking breaks or hours actually worked during a 24-hour shift.

Be that as it may, the First Department also has emphasized that the commonality issue should focus on "whether the use of a class action would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" (*Pludeman*, 74 AD3d at 423, quoting *Friar v Vanguard Holding Corp.*, 78 AD2d 83, 97 [2d Dept 1980].) Here, absent class treatment, the same evidence and proof of Stella Orton's systematic policies with respect to tracking, recording, and compensating hours worked by health aides on 24-hour shifts would need to be assembled and submitted in hundreds or even thousands of wage-and-hour actions—assuming it would be cost-effective for such actions to be brought at all. In these circumstances, this court concludes that it would be more efficient and more equitable to have

8

these key class-wide questions resolved on a class-wide basis. That is particularly true since, on Troshin's allegations, Stella Orton's *own* (lack of) record-keeping policies led to the absence of class-wide evidence on whether Stella Orton's home health aides working 24-hour shifts received sleep and meal breaks.

Additionally, the home health agencies in *Andryeyeva*, like Stella Orton, raised the argument that the claims there would entail individualized proof that should preclude class certification. (*See* 33 NY3d at 183.) The Court of Appeals refrained from definitively deciding the certification issue given the procedural posture of the appeal. But the Court went out of its way to cast doubt on the defendants' individualized-proof argument. (*See id.* at 183-185.) Indeed, after summarizing the plaintiffs' allegations—which are strikingly similar to those made by Troshin here—the Court of Appeals noted that these "claims of uniform systemwide violations are particularly appropriate for class certification," and "suggest a policy or practice of unlawful action of the type our courts have previously found ripe for class treatment."[5] (*Andryeyeva*, 33 NY3d at 184.)

This court concludes that Troshin's request for class certification should be granted. That conclusion does not entirely resolve this motion, however. Troshin also seeks approval of a proposed class-action notice to be mailed to members of the class. Certain aspects of the proposed notice (particularly the scope of the class) are no longer accurate given this court's decision here and on the motion to enjoin arbitration. More significantly, Stella Orton has notified the court that it objects to several (unspecified) aspects of the proposed notice. (*See* NYSCEF No. 95 at 26.) Those objections should be fully heard and addressed (either between the parties or by this court) before any notice is approved or mailed.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the branch of Troshin's motion seeking certification of this action as a class action is granted, but the scope of the class is limited as set forth above; and it is further

ORDERED that Stella Orton's letter application to renew its motion to compel arbitration is denied; and it is further

ORDERED that the branch of Troshin's motion seeking designation of Virginia & Ambinder, LLP as class counsel is granted; and it is further

---

[5] Notably, Stella Orton's individualized-proof argument relies heavily on federal district court decisions denying class certification of similar home-health-aide actions under Federal Rule of Civil Procedure 23. But the First Department has held expressly that New York trial courts are not required to apply the federal Rule 23 standard in deciding class-certification motions, "given this Court's recognition that CPLR 901(a) 'should be broadly construed' and that 'the Legislature intended article 9 to be a liberal substitute for the narrow class action legislation which preceded it.'" (*Stecko v RLI Ins. Co.*, 121 AD3d 542, 543-544 [1st Dept 2014] [quoting *Maul*, 14 NY3d at 509] [affirming grant of class certification].)

9

Case 22-1587, Document 8, 08/09/2022, 3362149, Page263 of 291

ORDERED that the branch of Troshin's motion seeking approval for publication of the proposed class-action notice and publication order is granted only to the extent that the parties are directed to meet and confer on the contents of the class-action notice and publication order; and the parties are directed to submit to this court within 30 days (by e-filing and email to mhshawha@nycourts.gov) either an agreed-upon joint proposed notice and publication order (if possible), or alternative proposed notices and publication orders for this court's selection. If the parties submit alternative proposed notices/orders, they should provide both clean and redline versions of their submissions to facilitate this court's review of their proposals.

| 3/12/2021 | | HON. GERALD LEBOVITS |
|-----------|--|----------------------|
| **DATE** | | **J.S.C.** |

| CHECK ONE: | | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|------------|--|-----------------|--|-------------------------|--|
| | | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

10

FILED: NEW YORK COUNTY CLERK 12/27/2017 11:39 AM
NYSCEF DOC. NO. 29    Case 22-1587, Document 8, 08/09/2022, 3362149, Page264 of 291    RECEIVED NYSCEF: 12/27/2017

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

### HON. DAVID B. COHEN
#### J.S.C.

PRESENT: _____    PART _58_

_Justice_

Index Number : 155081/2016
GETTS, MARINA

vs.

PREMIER HOME HEALTH CARE SERVICES, INC.

SEQUENCE NUMBER : 001

DISMISS ACTION

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

The following papers, numbered 1 to _____, were read on this motion to/for _DISMISS_

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is _DENIED. SEE ANNEXED DECISION & ORDER._

Dated: _12-18-2017_    _____, J.S.C.

### HON. DAVID B. COHEN

1. CHECK ONE: ........................................ ☐ CASE DISPOSED    ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: .......................MOTION IS: ☐ GRANTED ☒ DENIED ☐ GRANTED IN PART ☐ OTHER

3. CHECK IF APPROPRIATE: ........................ ☐ SETTLE ORDER    ☐ SUBMIT ORDER

☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY:   PART 58
_____

MARINA GETTS, individually and on
behalf of all other persons similarly
situated who were employed by
PREMIER HOME HEALTH CARE SERVICES, INC.,

                                    Index No.: 155081/16

                    Plaintiffs,


          - against -                     DECISION/ORDER

PREMIER HOME HEALTH CARE SERVICES, INC.,
                    Defendant.
_____

**COHEN, DAVID B., J.:**

    Plaintiff Marina Getts (Getts), a home health care worker
employed by defendant Premier Home Health Care Services, Inc.
(Premier), commenced this action on behalf of herself and a
proposed class of similarly situated employees, to recover unpaid
wages and benefits allegedly owed under New York's Labor Laws.
Defendant makes this pre-answer motion to dismiss the complaint,
pursuant to CPLR 3211 (a) (1) and (7), based on documentary
evidence and for failure to state a claim.

Background

    Defendant is a New York corporation providing nursing and
home health aide services at the residences of its clients
(clients).  Complaint, ¶ 6.  Plaintiff has been employed by
defendant as a home health care aide since approximately July
2014, and provides personal care services to clients, such as
assistance with dressing, bathing and personal grooming; cooking
and serving food; cleaning, laundry and taking out garbage;

making appointments for clients, taking them to medical appointments, and making transportation arrangements. *Id.*, ¶¶ 15-17. Plaintiff and other Home Attendants, Home Health Aides and Personal Care Workers employed by defendant are represented by 1199SEIU United Healthcare Workers East (union), and the terms and conditions of their employment are governed by a collective bargaining agreement (CBA) between defendant and the union. *See* CBA and Memoranda of Agreement (MOA), Exs. A-D to Affidavit of Alice Lousberg in Support of Defendant's Motion (Lousberg Aff.).

Plaintiff works 24-hour shifts, staying overnight at clients' residences. *Id.*, ¶¶ 18, 19. Because, plaintiff alleges, the clients are often elderly or ill, they require constant care, and she needs to be ready and available to assist the clients at all times. *Id.*, ¶¶ 19, 25. Generally, plaintiff claims, she is not permitted to leave the client's residence during her shift and does not get an opportunity to sleep without interruption. *Id.*, ¶ 24, 25. She also does not get a one-hour break for meals, as the clients' need for constant care requires her to eat when they eat. *Id.*, ¶ 27.

Plaintiff also alleges that she maintains her own residence and does not "live in" the homes of the clients. *Id.*, ¶ 20. According to plaintiff, she generally works more than 40 hours per week, working about four 24-hour shifts for a total of approximately 96 hours per week. *Id.*, ¶ 19, 21. Plaintiff is

-2-

paid for approximately 13 hours of her 24-hour shifts. *Id.,* ¶ 22. She is paid an hourly rate of $10 per hour during the weekdays, $11.02 per hour for weekends, and $13.12 per hour for some of her hours worked above 40 per week. *Id.,* ¶ 23, 24. Plaintiff thus alleges that she has wrongfully been denied payment for 11 hours of her 24-hour shift, and has wrongfully been denied overtime pay at one and one-half times her base rate of pay for hours worked in excess of 40 per week.

The complaint alleges that defendant, beginning in June 2010 and continuing, has maintained a policy and practice of requiring plaintiff and the proposed class of employees to work more than ten hours per day, without properly compensating them. *Id.,* ¶ 3. The proposed class members include home health care workers employed by defendant within New York State during an approximately seven year period, who did the same or similar work as plaintiff under similar conditions, working more than 40 hours per week, without being properly compensated for all hours worked, for overtime hours worked, and for "spread of hours" pay. *Id.,* ¶¶ 9, 28-32.

Plaintiff commenced this action in July 2016. The complaint asserts six causes of action for: failure to pay the statutory minimum wage in violation of Labor Law § 652 and 12 NYCRR § 142-2.1 (first); failure to pay overtime in violation of Labor Law § 650 et seq. and 12 NYCRR § 142-2.2 (second); failure to pay

-3-

the spread of hours premium as required by 12 NYCRR § 142-2.4

(third); failure to pay wages in violation of Labor Law §§ 191

and 193 (fourth); and a third party beneficiary claim for breach

of contracts requiring defendant to pay prevailing rate and

living wages under Public Health Law § 3614-c and Section 6-109

of the Administrative Code of the City of New York (fifth and

sixth).

Discussion

On a motion to dismiss pursuant to CPLR 3211, "[t]he scope

of a court's inquiry . . . is narrowly circumscribed." *P.T. Bank*

*Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 375

(1st Dept 2003); *see DeMicco Bros. v Consolidated Edison Co. of*

*N.Y., Inc.*, 8 AD3d 99, 99 (1st Dept 2004). The court must

"accept the facts as alleged in the complaint as true, accord

plaintiffs the benefit of every possible favorable inference, and

determine only whether the facts as alleged fit within any

cognizable legal theory." *Leon v Martinez*, 84 NY2d 83, 87-88

(1994)); *see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98

NY2d 144, 152 (2002). The pleadings are to be liberally

construed (*see* CPLR 3026; *Leon*, 84 NY2d at 87), and "[t]he motion

must be denied if from the pleadings' four corners 'factual

allegations are discerned which taken together manifest any cause

of action cognizable at law.'" *511 W. 232nd Owners Corp.*, 98

NY2d at 152, quoting *Polonetsky v Better Homes Depot, Inc.*, 97

-4-

NY2d 46, 54 (2001), quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 (1977).

"A court is further obligated to 'sustain the pleading when a cause of action may be discerned, even if inartfully stated.'" *DeMicco Bros., Inc.*, 8 AD3d at 99-100 (citation omitted). "In other words, '[w]here the allegations are ambiguous, we resolve the ambiguities in plaintiff's favor.'" *JF Capital Advisors, LLC v Lightstone Group, LLC*, 25 NY3d 759, 764 (2015), quoting *Snyder v Bronfman*, 13 NY3d 504, 506 (2009). The court, however, is not required to accept as true, or accord favorable inferences to, "bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence." *Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81 (1st Dept 1999)(internal quotation marks and citation omitted), *affd* 94 NY2d 659 (2000); *see Bishop v Maurer*, 33 AD3d 497, 497 (1st Dept 2006), *affd* 9 NY3d 910 (2007).

Where a defendant offers evidentiary material in support of a CPLR 3211 (a) (7) motion, "'the standard morphs from whether the plaintiff has stated a cause of action to whether it has one.'" *Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 AD3d 128, 135 (1st Dept 2014) (citation omitted); *see Leon*, 84 NY2d at 88; *Guggenheimer*, 43 NY2d at 275; *IIG Capital LLC v Archipelago, L.L.C.*, 36 AD3d 401, 402 (1st Dept 2007). Affidavits may be considered, primarily "to remedy pleading

-5-

defects and not to offer evidentiary support for properly pleaded claims." *Nonnon v City of New York*, 9 NY3d 825, 827 (2007), citing *Rovello v Orfino Realty, Co.*, 40 NY2d 633, 635-636 (1979). Thus, affidavits submitted by a defendant "will almost never warrant dismissal under CPLR 3211, *unless* they 'establish conclusively that plaintiff has no cause of action.'" *Lawrence v Graubard Miller*, 11 NY3d 588, 595 (2008) (emphasis in original), quoting *Rovello*, 40 NY2d at 636; *see Sokol v Leader*, 74 AD3d 1180, 1182 (2d Dept 2010). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss." *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 (2005); *see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 591 (2005).

Under CPLR 3211 (a) (1), dismissal is warranted "only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law." *Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 (2002); *see Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner,* 96 NY2d 300, 303 (2001); *Leon*, 84 NY2d at 88. "The documents submitted must be explicit and unambiguous." *Dixon v 105 W. 75th St., LLC*, 148 AD3d 623, 626 (1st Dept 2017); *see Rabos v R & R Bagels & Bakery, Inc.*, 100 AD3d 849 (2d Dept 2012). "Factual affidavits . . . do not constitute documentary evidence within the meaning of the

-6-

statute." *Art & Fashion Group Corp. v Cyclops Prod., Inc.,* 120
AD3d 436, 438 (1st Dept 2014); *see Lowenstern v Sherman Sq.
Realty Corp.,* 143 AD3d 562, 562 (1st Dept 2016); *Fontanetta v
John Doe 1,* 73 AD3d 78, 85-86 (2d Dept 2010); *see also Moreno v
Future Health Care Servs., Inc.,* 43 Misc 3d 1202(A), 992 NYS2d
159, 2014 NY Slip Op 50449(U), ***6 (Sup Ct, Kings County 2014)
("movant may not rely on affidavits or depositions to support a
motion to dismiss pursuant to CPLR 3211 [a] [1]").

Application

Defendant moves to dismiss plaintiff's causes of action for
unpaid minimum wages, overtime and other wages and benefits, on
the grounds that the allegations are legally without merit and
otherwise too vague to state a claim. Relying chiefly on an
advisory opinion of the New York State Department of Labor (DOL),
set forth in a letter dated March 11, 2010 (NY St Dept of Labor,
Op No. RO-09-0169, Ex. E to McGrath Affirmation in Support of
Defendant's Motion), defendant argues that plaintiff and other
similarly situated employees are "live-in" employees, entitled
only to payment for thirteen hours of a 24-hour shift. In
opposition, plaintiff argues that she is not a "live-in" employee
and maintains her own residence; and the DOL opinion letter
therefore is not applicable, and she is entitled to receive at
least minimum wage for all hours worked during a 24-hour shift,
as well as overtime and spread of hours pay.

-7-

New York's Minimum Wage Act (Labor Law § 650 et seq.) provides minimum wage and overtime pay requirements for covered employees, and was enacted to ameliorate financial hardships experienced by "persons employed in occupations . . . at wages insufficient to provide adequate maintenance for themselves and their families." Labor Law § 650; *see Settlement Home Care v Industrial Bd. of Appeals of Dept. of Labor of State of New York*, 151 AD2d 580, 581 (2d Dept 1989). As remedial legislation, "it is to be liberally construed so as to permit as many individuals as possible to take advantage of the benefits it offers. . . . [and] exceptions to this remedial legislation are to be narrowly construed." *Id.*

Labor Law § 652 requires that employers pay their employees a minimum wage "for each hour worked." New York Department of Labor regulations (12 NYCRR § 142-2) set out basic minimum wage and overtime requirements and provide, as pertinent here:

> "The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer . . . . However, a residential employee—one who lives on the premises of the employer—shall not be deemed to be permitted to work or required to be available for work:
> (1) during his or her normal sleeping hours solely because he is required to be on call during such hours; or
> (2) at any other time when he or she is free to leave the place of employment."

12 NYCRR § 142-2.1 (b).

-8-

In its March 2010 opinion letter, the DOL, interpreting 12 NYCRR 142-2.1 (b) in response to an inquiry about the application of New York law to employees providing "companionship services" within the meaning of the federal Fair Labor Standards Act (FLSA), advised that

> "live-in employees must be paid not less
> than for thirteen hours per twenty-four
> hour period provided that they are
> afforded at least eight hours for sleep
> and actually receive five hours of
> uninterrupted sleep, and that they are
> afforded three hours for meals. If an
> aide does not receive five hours of
> uninterrupted sleep, the eight-hour
> sleep period exclusion is not applicable
> and the employee must be paid for all
> eight hours. Similarly, if the aide is
> not actually afforded three work-free
> hours for meals, the three-hour meal
> period exclusion is not applicable."

NY St Dept of Labor, Op No. RO-09-0169 at 4 (March 11, 2010).

In support of its position that the DOL opinion letter requires dismissal of plaintiff's claims, defendant cites several federal and state lower court decisions deferring to the DOL opinion and finding that defendants were not required to pay plaintiffs working 24-hour shifts "for the entire 24 hours of each live in shift as a matter of law," without regard to whether employees were residential or non-residential live-in employees. *Moreno v Future Care Health Servs., Inc.*, 2015 WL 1969753, 2015 NY Misc LEXIS 2271, *13 (Sup Ct, Kings County 2015) (motion for class certification denied after earlier motion to dismiss

-9-

denied; noting different standards for different procedural postures0; *see Severin v Project Ohr, Inc.*, 2012 WL 2357410, 2012 US Dist LEXIS 85705 (SD NY 2012) (deferring to and applying DOL opinion that "sleep-in" or "live-in" home health aide only "available for work" under 12 NYCRR § 142.2.1 (b) for thirteen hours of 24-hour shift, and denying class certification, but finding individual plaintiffs may establish violation if not provided sleep or meal time); *Cowell v Utopia Home Care, Inc.*, 2016 WL 4186976, 2016 US Dist LEXIS 104495 (ED NY 2016) (denying motion for class certification of home health aide claims under FLSA, without addressing state law issues or DOL opinion).

As defendant acknowledges, other trial court decisions, including those cited by plaintiff, have held to the contrary. *See Tokhtaman v Human Care, LLC*, 2016 WL 4439990, 2016 NY Misc LEXIS 3086 (Sup Ct, NY County 2016) (in case involving allegations similar to allegations in this case, where plaintiff alleged she maintained her own residence and did not "live in" clients' homes, DOL opinion not a basis for dismissal); *Lai Chan v Chinese-American Planning Council Home Attendant Program, Inc.*, 50 Misc 3d 201, 213-214, 21 NYS3d 814, 827 (Sup Ct, NY County 2015) (where plaintiffs alleged they were not "live-ins," DOL opinion letter did not provide defense to claims for unpaid wages, overtime, breach of contract); *Andryeyeva v New York Health Care, Inc.*, 45 Misc 3d 820, 994 NYS2d 278 (Sup Ct, Kings

-10-

County 2013) (finding reasoning of DOL opinion does not apply where "plaintiff do not reside or 'live' in the homes of their clients, but maintain their own homes and merely serve their clients' needs sporadically overnight"); *Kodirov v Community Home Care Referral Serv., Inc.*, 35 Misc 3d 1221[A], 951 NYS2d 86 (Sup Ct, Kings County 2012) (DOL opinion letter is "ambiguous, at best" as to its coverage of non-residential home health aides working 24-hour shifts). Defendant asserts that these cases were both wrongly decided and do not constitute binding authority; and the court, therefore, should defer to the DOL opinion.

Recently, however, subsequent to the submission of this motion, the First Department affirmed the trial court's decision in *Tokhtaman*, which denied defendant's CPLR 3211 motion to dismiss, in a case involving allegations strikingly similar to the allegations in this case. *See Tokhtaman v Human Care, LLC*, 149 AD3d 476 (1st Dept April 11, 2017). Notwithstanding that "an agency's interpretation of its own regulation generally is entitled to deference" (*Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health*, 5 NY3d 499, 506 [2005]), the Appellate Division, recognizing that "courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language" (*id.*), held "that the [March 11, 2010] DOL opinion conflicts with 12 NYCRR 142-2.1 (b) insofar as the opinion fails to distinguish between

-11-

'residential' and 'nonresidential' employees, and thus should not be followed in this respect." *Tokhtaman*, 149 AD3d at 477, citing *Lai Chan*, 50 Misc 3d at 213-216; *Andryeyeva*, 45 Misc 3d at 826-833; *Kodirov*, 2012 NY Slip Op 50808[U], at *2.

The Court continued: "As such, if plaintiff can demonstrate that she is a nonresidential employee, she may recover unpaid wages for the hours worked in excess of 13 hours a day." *Tokhtaman*, 149 AD3d at 477. The Court further found that, as plaintiff alleged "that she 'maintained her own residence and did not live in the homes of Defendant's clients' . . . , it cannot be said at this early stage, prior to any discovery, that she lived on her employers' premises as a matter of law." *Id.* In addition, the Court found that plaintiff's "spread of hours" claim survived the motion to dismiss because it "likewise turns on whether plaintiff is entitled to be paid for the full 24 hours worked or only 13 of those hours." *Id.*

Here, plaintiff similarly has alleged that she, as an employee of defendant, provides services to clients in their homes, works 24-hour shifts, sometimes back to back, does not live with the clients but maintains her own residence, does not have an opportunity to get uninterrupted sleep or to take meal breaks, and is paid for thirteen hours of her 24-hour shift but is not paid for the additional hours that she works. These allegations, that she, and other employees of defendant like her,

-12-

worked compensable time for which they were not properly paid,
thus are adequate to state a claim for Labor Law violations. *See
Markasevic v 241 E. 76 Tenants Corp.*, 2017 WL 1032542, *6, 2017
NY Misc LEXIS 895, *18-19, 2017 NY Slip Op 30493(U) (Sup Ct, NY
County 2017); *see also Ackerman v New York Hosp. Med. Ctr. of
Queens*, 127 AD3d 794, 795 (2d Dept 2015) (allegations that
hospital employee was not properly paid for all time worked
adequately stated claim for violation of Labor Law § 193); *Wai
Kam Wong v Zhiqing Activity Ctr. Inc.*, 2016 WL , 2016 NY Misc
LEXIS , 2016 NY Slip Op 32062(U) (Sup Ct, Queens County 2016)
(allegations that employer failed to pay minimum wage, overtime
and spread of hours pay sufficiently set forth cause of action
under Labor Law § 191).

The breach of contract claims, based on plaintiff's
allegations that she is a third-party beneficiary of contracts
requiring defendant to pay wages pursuant to Public Health Law §
3614-c and Administrative Code § 6-109, likewise are sufficiently
pled. *See Tokhtaman*, 149 AD3d at 478. "Although the complaint
does not specifically identify the contracts or government
agencies at issue, its citation to Public Health Law § 3614-c
makes clear that the contracts referenced are those required for
every company providing health care services that seek
reimbursement from Medicaid or Medicare." *Id.*

As to defendant's argument that the CBA requires arbitration

-13-

of plaintiff's statutory claims, the court finds that argument to be without merit. Contrary to defendant's contention, neither the CBA nor any of the memoranda of agreement (MOA) amending or modifying the CBA, including the MOA dated June 23, 2014 (Ex. C to Lousberg Affidavit), requires arbitration of statutory claims. The June 2014 MOA provides only that the parties will "meet in good faith to negotiate" alternative dispute resolution procedures. *Id.*, ¶ 22. *See Lai Chan*, 50 Misc 3d at 213-216 (MOA language obligated parties to meet in good faith to negotiate alternative dispute resolution procedures but did not clearly indicate an agreement to arbitrate statutory claims). Defendant submits no evidence with the moving or reply papers that a specific agreement to arbitrate statutory claims was reached. *Compare Lai Chan v Chinese-American Planning Council Home Attendant Program, Inc.*, 180 F Supp 3d 236 (SD NY 2016) (motion to compel arbitration granted where agreement expressly stated that statutory wage and hours claims were subject to grievance and arbitration procedures of CBA). Plaintiff's statutory wage claims also are independent of rights under the CBA and not subject to the grievance procedures of the CBA. *See Lai Chan*, 50 Misc 3d at 208-209. Nor are plaintiff's claims preempted by Section 301 of the federal Labor Relations Management Act or ERISA. *Id.* at 209, 224.

Notably, in response to plaintiff's submission of the First

-14-

Department decision in *Tokhtaman*, defendant does not argue that the decision is not binding on this court.  Instead, defendant seeks to distinguish *Tokhtaman* by arguing that the case did not address the issue of mandatory arbitration.  Defendant's letter, dated April 18, 2017, amounts to an unauthorized sur-reply, and serves solely to reiterate and supplement its argument that plaintiff should be compelled to arbitrate her claims.  The court declines to accept defendant's sur-reply, submitted without requesting permission from the court, as required by Rule 14 of the Rules of the Justices of the Supreme Court, and the additional materials presented by defendant, including an affidavit and an agreement dated May 17, 2016, purporting to show that there was a specific agreement to arbitrate statutory claims, will not be considered.  Defendant, moreover, offers no explanation for why it is only now attempting to submit the May 17, 2016 document, and why it was not or could not have been submitted with its original moving papers.

The court has considered defendant's remaining arguments and finds them unavailing.  Accordingly, it is

ORDERED that defendant's motion to dismiss is denied.

Dated:    *12-18-2017*

ENTER:

_____
HON. DAVID B. COHEN, J.S.C.

-15-        **HON. DAVID B. COHEN
J.S.C.**

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| PRESENT: | **HON. DAVID BENJAMIN COHEN** | PART | **IAS MOTION 58EFM** |
| | *Justice* | | |

---------------------------------------------------------------------X

MARINA GETTS

               Plaintiff,

         - v -

PREMIER HOME HEALTH CARE SERVICES, INC.,

             Defendant.

---------------------------------------------------------------------X

| INDEX NO. | 155081/2016 |
|---|---|
| MOTION DATE | 01/13/2020, 02/18/2020 |
| MOTION SEQ. NO. | 003 004 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 147, 148, 149, 150, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 238, 239, 249, 250, 251, 252, 253, 254, 255, 256, 257, 293

were read on this motion to/for                INJUNCTION/RESTRAINING ORDER    .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 235, 236, 237, 240, 241, 242, 243, 244, 245, 246, 247, 248, 290, 291

were read on this motion to/for                COMPEL ARBITRATION    .

      Plaintiff's motion to preliminarily and permanently enjoin arbitration is granted and defendants motion to compel arbitration is denied. Plaintiffs are home health care workers who brought this class action seeking to recover wages and other benefits arising from defendant's claimed violations of state and local labor laws. Plaintiffs' union filed a class-wide grievance to submit wage and hour claims, including those asserted here, to arbitration.

      On January 14, 2020, this Court granted a temporary restraining order prohibiting the arbitration of this action. Thereafter, in identical circumstances, the Appellate Division, First Department ruled in *Hichez v United Jewish Council of the E. Side*, 179 AD3d 576 (1st Dept 2020) that (1) the parties dispute is outside of the scope of the collective bargaining agreements' ("CBA") mandatory arbitration provision; (2) that although the memorandum of agreement

155081/2016  PUSTILNIK, BORIS vs. PREMIER HOME HEALTH CARE         Page 1 of 2
Motion No.  003 004

1 of 2

("MOA") requires arbitration of the statutory claims, since plaintiff's were no longer employed when the MOA was executed they were not parties to the agreement and the union was authorized to proceed on their behalf (Id., at 576 - 577). Accordingly, it is hereby

ORDERED that plaintiffs are granted a permanent injunction enjoining the arbitration of the claims asserted in this action; and it is further

ORDERED that defendants motion to compel arbitration is denied.

| 7/16/2020 | DAVID BENJAMIN COHEN, J.S.C. |
| DATE | |

CHECK ONE:
☐ CASE DISPOSED   ☒ NON-FINAL DISPOSITION
☐ GRANTED   ☐ DENIED   ☒ GRANTED IN PART   ☐ OTHER

APPLICATION:   ☐ SETTLE ORDER   ☐ SUBMIT ORDER

CHECK IF APPROPRIATE:   ☐ INCLUDES TRANSFER/REASSIGN   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

155081/2016   PUSTILNIK, BORIS vs. PREMIER HOME HEALTH CARE
Motion No.  003 004

Page 2 of 2

2 of 2

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. DAVID BENJAMIN COHEN**          PART          **IAS MOTION 58EFM**

*Justice*

-------------------------------------------------------------------X          **INDEX NO.**          155081/2016

BORIS PUSTILNIK,

Plaintiff,

**MOTION SEQ. NO.**          006

- v -

PREMIER HOME HEALTH CARE SERVICES, INC.,          **DECISION + ORDER ON**
                                                  **MOTION**

Defendant.

-------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 006) 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 323, 324, 325, 326, 327, 328, 329

were read on this motion to/for          RENEW/REARGUE/RESETTLE/RECONSIDER.

In this putative class action commenced pursuant to the New York Labor Law, plaintiff Boris Pustilnik and similarly situated individuals seek to recover wages and benefits which, they allege, they were contractually entitled to receive from their employer, defendant Premier Home Health Care Services, Inc.   Defendant now moves: 1) pursuant to CPLR 2221(e), for an order granting renewal of plaintiff's motion to preliminarily and permanently enjoin arbitration (Motion Sequence 003) and defendant's motion to compel arbitration (Motion Sequence 004); 2) pursuant to CPLR 2221(d), for an order granting reargument of the same motions; and 3) for such other relief as this Court deems just and proper.   Plaintiff opposes the motion and cross-moves against defendant for sanctions.  After consideration of the parties' contentions, as well as a review of the relevant statutes and case law, the motion and cross motion are decided as follows.

**FACTUAL AND PROCEDURAL BACKGROUND:**

The facts of this case are set forth in the orders of this Court entered December 27, 2017 (Doc. 29) and July 22, 2020 (Docs. 299-300).  Any additional relevant facts are set forth below.

By order entered December 27, 2017, this Court denied defendant's motion to dismiss holding, inter alia, that plaintiff's collective bargaining agreement ("CBA") did not require arbitration of the claims asserted herein. Doc. 29. On January 14, 2020, this Court granted plaintiff a temporary restraining order prohibiting arbitration of this action. Doc. 150. By arbitration award dated April 17, 2020 ("the 4/17/20 award"), arbitrator Martin Scheinman determined, inter alia, that the claims alleged herein were arbitrable. Doc. 298 at 47. By order entered July 22, 2020, this Court granted plaintiff's motion seeking to preliminarily and permanently enjoin arbitration (Motion Sequence 003) and denied defendant's motion seeking, inter alia, to compel arbitration. Motion Sequence 004. Docs. 299-300. Defendant now moves for the relief set forth above.

**LEGAL CONCLUSIONS:**

**Defendant's Motion for Reargument and Renewal**

"On [its] motion to renew, [defendant fails] to submit new facts (CPLR 2221[e][2]), *i.e.*, facts that existed but were unknown to [it] at the time defendant[ ] made [its initial motion]. *see Matter of Naomi S. v Steven E.*, 147 AD3d 568 (1st Dept 2017)." *Mehler v Jones*, 181 AD3d 535, 535 (1st Dept 2020). Indeed, defendant concedes that it "was unable to present these additional facts and law in its prior motion [including the 4/17/20 award] because [such information was] not available until after [its prior] motion had been submitted to this Court." Doc. 310 at 8.

In any event, as plaintiff asserts, defendant is barred from seeking to compel arbitration given that the order of this Court entered December 27, 2017, which held that the CBA did not require plaintiff to arbitrate, is law of the case. *Guzman v. First Chinese Presbyterian Cmty*, 2020

NYLJ LEXIS 147, *9 (Sup Ct New York County 2020 [Freed, J.]) citing *Smyczynski v. Genesis Mktg. Group, Inc*., 185 AD2d 58 (4th Dept 1992).

Additionally, defendant's contention that it is entitled to reargument because this Court "overlooked and/or misapprehended the [4/17/20 award]" (Doc. 310 at 8) is without merit. As noted above, defendant argued in support of its renewal motion that it could not have presented any information about the 4/17/20 award at the time its prior motion was submitted since it had not yet been issued. Since this Court was not even aware of the arbitration award at the time defendant's prior motion was submitted, it obviously could not have overlooked and/or misapprehended any issues relating to the same in connection with that application.

**Cross Motion For Sanctions**

This Court finds, in its discretion, that although defendant's motion was of questionable merit, defendant's conduct does not rise to the level of frivolous conduct which would warrant the imposition of costs and sanctions pursuant to 22 NYCRR 130-1.1.

The parties' remaining contentions are either without merit or need not be addressed in light of the findings above. Therefore, it is hereby:

ORDERED that defendant's motion is denied in all respects; and it is further

ORDERED that plaintiff's cross motion is denied; and it is further

ORDERED that this constitutes the decision and order of the court.

| | |
|---|---|
| **11/13/2020** | |
| **DATE** | **DAVID BENJAMIN COHEN, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**155081/2016  PUSTILNIK, BORIS vs. PREMIER HOME HEALTH CARE**
Motion No. 006

**Page 3 of 3**

3 of 3

## Supreme Court of the State of New York
## Appellate Division, First Judicial Department

Renwick, J.P., Friedman, Moulton, Mendez, Pitt, JJ.

| | | |
|---|---|---|
| 15701- | Boris Pustilnik et al., | Index No. 155081/16 |
| 15701A | Plaintiffs-Respondents, | Case No. 2020-04767 |
| | | 2020-04769 |

-against-

Premier Home Health Care
Services, Inc.,
Defendant-Appellant.

Bond, Schoeneck & King PLLC, New York (Rebecca K. Kimura of counsel), for appellant.

Virginia & Ambinder, LLP, New York (LaDonna M. Lusher of counsel), for respondents.

Order, Supreme Court, New York County (David Benjamin Cohen, J.), entered on or about July 22, 2020, which denied defendant's motion to compel arbitration and dismiss the second amended complaint and granted plaintiffs' motion to permanently enjoin arbitration, unanimously modified, on the law, to dismiss the fourth cause of action, for Labor Law § 193 claims, and otherwise affirmed, without costs. Order, same court and Justice, entered November 13, 2020, which, to the extent appealable, denied defendant's motion to renew, unanimously affirmed, without costs.

Article XXVI of the 2009 collective bargaining agreement (CBA) between plaintiffs' union and defendant employer mandated arbitration for a "grievance," defined as "a dispute arising . . . concerning an alleged breach of a specific term of this agreement." Statutory wage claims such as those asserted by plaintiffs here arise independently of any collective bargaining agreement and are therefore not "grievances" as defined by the CBA, and thus are not subject to arbitration pursuant to the CBA (see

*Teshabaeva v Family Home Care Servs. of Brooklyn & Queens, Inc.*, 198 AD3d 500 [1st Dept 2021]; *Hichez v United Jewish Council of the E. Side, Home Attendant Serv. Corp.*, 179 AD3d 576 [1st Dept 2020], *lv denied* 37 NY3d 909 [2021]; *Lorentti-Herrera v Alliance for Health, Inc.*, 173 AD3d 596 [1st Dept 2019]; *Agarunova v Stella Orton Home Care Agency, Inc.*, 794 Fed Appx 138, 139 [2d Cir 2020]). The subsequent 2016 memorandum of agreement (MOA), modifying the 2009 CBA, does contain a broader provision that would potentially require arbitration of the claims, but was entered into after plaintiffs' employment with defendant ceased. Supreme Court correctly found that plaintiffs, as pre-2016 MOA employees, were not parties to any agreement to arbitrate their statutory wage claims (*see Konstantynovska v Caring Professionals, Inc.*, 172 AD3d 486, 487 [1st Dept 2019]).

Since plaintiffs agreed in their opposition to defendant's second motion to compel to withdraw any claim pursuant to Labor Law § 193 for unlawful deductions, the fourth cause of action should have been dismissed.

We have considered the remaining arguments and find them unavailing.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: April 12, 2022

Susanna Molina Rojas
Clerk of the Court

2

Gische, J.P., Mazzarelli, Webber, Gesmer, JJ.

10871N     Epifania Hichez, et al.,              Index 653250/17
                Plaintiffs-Respondents,

                -against-

          United Jewish Council of the East Side,
          Home Attendant Service Corp.,
                Defendant-Appellant.
          _____

Hogan Lovells US LLP, New York (Kenneth Kirschner of counsel),
for appellant.

Fisher Taubenfeld LLP, New York (Michael Taubenfeld of counsel),
for respondents.
          _____

     Order, Supreme Court, New York County (Kathryn E. Freed,

J.), entered September 30, 2018, which denied defendant's motion

to compel arbitration and stay this class action, unanimously

affirmed, without costs.

     Plaintiffs assert wage-hour and wage-parity claims under the

Labor Law, and breaches of contracts requiring defendant's

compliance with the Home Care Worker Wage Parity Act (Public

Health Law § 3614-c), and the New York City Fair Wages for

Workers Act (Administrative Code of City of NY § 6-109).

Defendant moved to compel arbitration under the terms of a

memorandum of agreement (MOA) between defendant and 1199 SEIU

United Healthcare Workers East (Union), which became effective

December 1, 2015.

94

Case 22-1587, Document 8, 08/09/2022, 3362149, Page288 of 291

Plaintiffs are not prohibited from bringing this action by
the arbitration provision in article XXVI of the collective
bargaining agreement (CBA) between defendant and the Union, which
"limits mandatory arbitration to disputes between an employee and
employer concerning the interpretation or application of [a
specific] term of the CBA" (*Lorentti-Herrera v Alliance for
Health, Inc.*, 173 AD3d 596, 596 [1st Dept 2019] [internal
quotation marks omitted])).  Here, plaintiffs assert claims
outside of the CBA.

Nor are plaintiffs bound by the new article "hereby created"
by the MOA that was intended to govern wage-hour and wage-parity
disputes "exclusively."  Although the MOA requires arbitration of
the statutory claims asserted in the complaint (see *Tamburino v
Madison Sq. Garden, LP*, 115 AD3d 217, 223 [1st Dept 2014]; *see
Abdullayeva v Attending Homecare Servs., LLC*, 928 F3d 218, 222
[2d Cir 2019]), plaintiffs "were no longer defendant's employees
when it was executed, they were not parties to that agreement,
and there is no evidence that the Union was authorized to proceed
on their behalf" (*Konstantynovska v Caring Professionals, Inc.*,
172 AD3d 486, 487 [1st Dept 2019]; *see Lorentti-Herrera*, 173 AD3d
at 596; *Chu v Chinese-American Planning Council Home Attendant
Program, Inc.*, 194 F Supp 3d 221, 228 [SD NY 2016]).  As former
employees or retirees "whose work has ceased with no expectation

95

of return," plaintiffs were not members of the bargaining unit

represented by the Union (*Allied Chem. & Alkali Workers of Am.,*

*Local Union No. 1 v Pittsburgh Plate Glass Co., Chem. Div.*, 404

US 157, 172 [1971]).

Contrary to defendant's contention, the new article in the

MOA does not "clearly and unmistakably" delegate the

determination of arbitrability to the arbitrator.  It neither

incorporates the arbitration procedures of CBA article XXVI nor

adopts the procedural rules of the American Arbitration

Association.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED:   JANUARY 23, 2020

_____
CLERK

**ADDENDUM "B" TO APPELLANTS' FORM C PRE-ARGUMENT STATEMENT**

**(1) Issues Proposed to be Raised on Appeal**

The issue on appeal is whether the District Court erred in granting Petitioner 1199SEIU United Healthcare Workers East's Petition to Confirm an Arbitration Award and denying the Proposed Intervenors' Motion to Intervene and Motion to Partially Vacate the Arbitration Award.

**(2) Applicable Appellate Standard of Review for Each Proposed Issue**

The standard for review of a decision to confirm an arbitration award is de novo on questions of law and for clear error on findings of fact. Landau v. Eisenberg, 922 F.3d 495, 498 (2d Cir. 2019) ("This Court reviews a district court's decision to confirm an arbitration award de novo on questions of law and for clear error on findings of fact") (citing Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016)); Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir. 2007) ("'[w]e review a district court's decision to confirm an arbitration award de novo to the extent it turns on legal questions, and we review any findings of fact for clear error.'") (quoting Duferco International Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003)).

The standard of review of the denial of a motion to intervene is abuse of discretion. "R" Best Produce, Inc. v. Shulman-Rabin Mktg., Corp., 467 F.3d 238, 240 (2d Cir. 2006) ("The standard of review of the denial of a motion to intervene is abuse of discretion. We review a district court's denial of a motion to intervene for abuse of discretion.") (citing Patricia Hayes Assocs., Inc. v. Cammell Laird Holdings U.K., 339 F.3d 76, 80 (2d Cir. 2003)).

The standard of review on the denial of a motion to partially vacate an arbitration award is de novo on questions of law and for clear error on findings of fact. Kolel Beth Yechiel Mechil of Tartikov, Inc. v YLL Irrevocable Trust, 729 F3d 99, 103 (2d Cir 2013) ("This Court reviews a district court's decision to confirm *or vacate* an arbitration award *de novo* for questions of law . . . We review findings of fact for clear error.") (citing Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012)) (emphasis added).

1

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

1199SEIU United Healthcare Wo.

**CERTIFICATE OF SERVICE***

Docket Number: 22-1587

v.

PSC Community Servs. et al.

I, Michele A. Moreno , hereby certify under penalty of perjury that
(print name)

on August 9, 2022 , I served a copy of Form C
(date)

(list all documents)

by (select all applicable)**

\_\_\_ Personal Delivery          \_\_\_ United States Mail          \_\_\_ Federal Express or other Overnight Courier

\_\_\_ Commercial Carrier          X E-Mail (on consent)

on the following parties:

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Laureve Blackstone | 80 Eighth Ave, 8th Fl | NY | NY | 10011 |
| James M. Reif | 39 Broadway, Suite 2430 | NY | NY | 10006 |
| Kenneth H. Kirschner | 390 Madison Ave | NY | NY | 10017 |
| David J. Baron | 390 Madison Ave | NY | NY | 10017 |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

8/9/2022

Today's Date

*Michele Moreno*

Signature

Certificate of Service Form (Last Revised 12/2015)