# 21-631-CV

## 21-633-CV(CON), 22-1587-CV(CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



1199 SEIU UNITED HEALTHCARE WORKERS EAST,

*Petitioner-Appellee,*

*v.*

CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM,
UNITED JEWISH COUNCIL OF THE EAST SIDE HOME ATTENDANT SERVICE CORP.,

*Respondents-Appellees,*

*(Caption Continued on the Reverse)*

_____

*On Appeal from the United States District Court
for the Southern District of New York*

## JOINT BRIEF AND SPECIAL APPENDIX FOR APPELLANTS AND INTERVENORS-APPELLANTS

Michael Taubenfeld
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
212-571-0700

*Attorneys for Intervenors-Appellants*

LaDonna M. Lusher
Kara Sue Miller
Michele A. Moreno
Alanna Sakovits
VIRGINIA & AMBINDER, LLP
40 Broad Street, 7th Floor
New York, New York 10004
212-943-9080

*Attorneys for Appellants*

*v.*

GAIL YAN, ALVARO RAMIREZ GUZMAN, ELIDA AUGUSTINA MEJIA HERRERA, LETICIA PANAMA RIVAS, EUGENIA BARAHONA ALVARADO, RAFAELA CRUCETA, VIRTUDES DURAN, WAI KAM LOU, YUE MING WU and CUI YING MAI,

*Appellants,*

MEI KUM CHU, SAU KING CHUNG, QUN XIANG LING, EPIFANIA HICHEZ, CARMEN CARRASCO, SEFERINA ACOSTA, MARIA DIAZ,

*Intervenors-Appellants,*

PSC COMMUNITY SERVICES, NEW PARTNERS, INC., DBA PARTNERS IN CARE, STELLA ORTON HOME CARE AGENCY, INC., RICHMOND HOME NEEDS, SUNNYSIDE HOME CARE PROJECT, SUNNYSIDE CITYWIDE HOME CARE, FAMILY HOME CARE OF BROOKLYN AND QUEENS, CARE AT HOME, THE FIRST CHINESE PRESBYTERIAN COMMUNITY AFFAIRS HOME ATTENDANT CORP., AZOR HOME CARE, BUSHWICK STUYVESANT HEIGHTS HOME ATTENDANT, INC., CABS HOMECARE, RIVERSPRING LICENSED HOMECARE SERVICES AGENCY, INC, ST. NICHOLAS HUMAN SUPPORTS CORP., WARTBURG, ALLIANCE FOR HEALTH, INC., REGION CARE, INC., SPECIAL TOUCH HOME CARE SERVICE, INC., RAIN, INC., PRESTIGE HOME CARE, INC., PRESTIGE HOME ATTENDANT, INC., DBA ALL SEASON HOME ATTENDANT, PERSONAL TOUCH HOME CARE OF N.Y., INC., PRIORITY HOME SERVICES, PREMIER HOME HEALTH CARE, INC., BRONX JEWISH COMMUNITY COUNCIL HOME ATTENDANT SERVICES, CIDNY INDEPENDENT LIVING SERVICES, HOME CARE SERVICES FOR INDEPENDENT LIVING, NEW YORK FOUNDATION FOR SENIOR CITIZENS HOME ATTENDANT SERVICES, INC., COOPERATIVE HOME CARE ASSOCIATES, RISEBORO HOME CARE, INC., FEGS HOME ATTENDANT SERVICES, HOME HEALTH MANAGEMENT SERVICES, INC., SCHOOL SETTLEMENT HOME ATTENDANT CORP., ROCKAWAY HOME ATTENDANT, BRONXWOOD HOME FOR THE AGED, INC., ACCENTCARE OF NY, INC., ISABELLA VISITING CARE, INC., SOCIAL CONCERN COMMUNITY DEVELOPMENT CORP., ABC HEALTH SERVICES REGISTRY, ALLIANCE HOME SERVICES, INC., COLLECTIVELY IDENTIFIED BY THE ARBITRATOR AS HOME HEALTH CARE AGENCIES,

*Respondents,*

*and*

RAMONA DE LA CRUZ, DULCE HERRERA PALMA,

*Intervenors.*

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ....................................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED FOR REVIEW ...................................................3

STATEMENT OF FACTS ......................................................................4

I.      Appellants And Their Pending Class Action Lawsuits ...................................4

II.     The First Award Appeal ......................................................................8

III.    Since the First Award Appeal, Additional Decisions Have Been Rendered By New York Courts Reiterating That Pre-2015 MOA Employees' Statutory Wage Claims Are Not Arbitrable And That Arbitrability Determinations Were For The Court And Not The Arbitrator ...........................................................9

IV.     The Second Award  ..........................................................................12

V.      Confirmation of the Second Award and Appellants' Motions to Intervene and Partially Vacate...........................................................14

SUMMARY OF ARGUMENT .............................................................16

LEGAL STANDARD ON APPEAL....................................................20

ARGUMENT ........................................................................................21

I.      The Second Award Must Be Vacated With Respect To Appellants and All Other Pre-2015 MOA Employees Formerly Employed By Alliance, FCP And CPC Because The Arbitrator Exceeded His Power ......................................21

        A.    Appellants And All Other Pre-2015 MOA Employees Have Not Contractually Agreed to Arbitrate Claims Seeking Statutory Unpaid Wages From Their Respective Former Employers.................................22

        B.    The Arbitrator Did Not Have Authority To Determine Arbitrability .....26

i

C.  Threshold Arbitrability Determinations Are Made Pursuant To New York Contract Law And Thus This Court Must Follow The Decisions Rendered By New York State Courts .................................................................... 29

II.  The Arbitration Award Must Be Vacated Because The District Court Lacked Jurisdiction Due To The First Award Appeal ............................................... 34

III.  The District Court Erred By Refusing To Follow The New York Appellate Division's Rulings That None Of the Labor Agreements Clearly And Unmistakably Delegated Arbitrability Determinations to the Arbitrator ..... 35

IV.  The District Court Erred By Applying the Extremely Deferential Standard of Review To Arbitrability Determinations Rather Than The *De Novo* Standard That Was Legally Required .......................................................................... 36

V.  Issue Preclusion Bars FCP, Alliance, and CPC From Having The Same Arbitrability Determinations Made By The Arbitrator .................................. 37

VI.  The District Court Erred In Denying Appellants' Motion to Intervene ....... 39

A.  Appellants Have Requisite Standing To Intervene ................................. 39

B.  Appellants Should Be Allowed To Intervene As of Right For The Limited Purpose Of Moving To Partially Vacate The Second Award ................ 43

C.  Alternatively, Permissive Intervention Should Be Permitted ............... 50

D.  Appellants Have Standing To Partially Vacate The Second Award On Behalf of Putative Class members In the Guzman, Alvarado, and Chu Actions ............................................................................................ 51

E.  Appellants Also Have Standing To Intervene Under Fed. Rule 71 ....... 52

CONCLUSION ....................................................................................................... 56

ii

# TABLE OF AUTHORITIES

CASES                                                                          PAGE


1199 SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park,
2018 WL 9651077, (S.D.N.Y. Sept. 4, 2018), aff'd, 786 F. App'x 298 (2d Cir.
2019) (quoting Fed. R. Civ. P. 24(b)(1)(B)).............................................................50

1199 SEIU United Healthcare Wo v. PSC Community Services,
21-cv-631 (2d Cir.) ..............................................................................................4, 9

1199 SEIU United Healthcare Wo v. PSC Cmty. Servs.,
20-cv-3611 (JGK), 2022 U.S. Dist. LEXIS 29186 (S.D.N.Y. Feb. 16, 2022)..11, 14

1199SEIU United Healthcare Workers E. v. PSC Community Servs.,
520 F. Supp. 3d 588 (S.D.N.Y. 2021) ........................................................... 6-7, 24

A&A Maint. Enter., Inc. v. Ramnarain,
982 F.3d 864 (2d Cir. 2020) ....................................................................................21

Agarunova v. Stella Orton Home Care Agency, Inc.,
794 F. App'x 138 (2d Cir. 2020) ................................................................... passim

Alvarado v. Alliance for Health, Inc.,
Index No. 155417/2018 (Sup. Ct. N.Y. Co.),
removed to 20-cv-03930-JGK (S.D.N.Y.)...................................................... passim

Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate
Glass Co., Chem. Div.
404 U.S. 157, 172, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971).....................................55

Am. Postal Workers Union v. United States Postal Serv.,
754 F.3d 109 (2d Cir. 2014)......................................................................................21

AmeriCredit Fin. Servs., Inc. v. Oxford Mgmt. Servs.,
627 F. Supp. 2d 85 (E.D.N.Y. 2008) ........................................................................33

Ass'n of Contracting Plumbers of City of New York, Inc. v. Loc. Union No. 2
United Ass'n of Journeymen
841 F.2d 461 (2d Cir. 1988) .....................................................................................39

Bais Yaakov of Spring Valley v. Educ. Testing Serv.,
251 F. Supp. 3d 724 (S.D.N.Y. 2017) .............................................. 40-41

Badgerow v. Walters,
141 S. Ct. 2620, 596 U. S. ____ (2022)...................................................29

Bank of N.Y. v. First Millennium, Inc.,
607 F.3d 905 (2d Cir. 2010) ...................................................................38

Barry's Cut Rate Stores Inc. v Visa, Inc.,
2021 U.S. Dist LEXIS 120302 (E.D.N.Y. June 28, 2021) ......................51

Bell v. Cendant Corp.,
293 F.3d 563 (2d Cir. 2002) ............................................................20, 29

Benjamin v. Stemple,
2018 U.S. Dist. LEXIS 103584 (E.D. Mich. June 21, 2018) .................51

Berger v. Heckler,
771 F.2d 1556 (2d Cir. 1985)...........................................................52, 56

Bruscianelli v. Triemstra,
2000 U.S. Dist. LEXIS 11155, No. 99-C-6446,
2000 WL 1100439 (N.D. Ill. Aug. 4, 2000) ..........................................40

Calderon v. Wambua,
2012 U.S. Dist. LEXIS 46193 (S.D.N.Y. Mar. 28, 2012) ......................56

Cohen v. Brown Univ.,
21-1032, 2021 U.S. App. LEXIS 32209 (1st Cir. Oct. 27, 2021) ..........48

Contec Corp. v. Remote Sol. Co.,
398 F.3d 205 (2d Cir. 2005) ...................................................................20

Chan v. Chinese-American Planning Council Home Attendant Program,
2015 N.Y. Misc. LEXIS 3278 (Sup. Ct. N.Y. Cnty. Sept. 9, 2015).......................49

Chartier v. Marlin Mgmt., LLC,
202 F.3d 89 (2d Cir. 2000) .....................................................................38

Chu v. Chinese-American Planning Council Home Attendant Program, Inc.,
Index No: 651947/2016 (N.Y. Sup. Ct. N.Y. Co.),
removed to 16-cv-3569-KBF (S.D.N.Y.) ..........................................................*passim*

Chu v. Chinese-American Planning Council Home Attendant Program. Inc.
194 F. Supp. 3d 221 (S.D.N.Y. 2016) ..............................................................*passim*

Deposit Guar. Nat'l Bank v. Roper,
445 U.S. 326 (1980) ....................................................................................40

DiBella v. Hopkins,
403 F.3d 102 (2d Cir. 2005) ......................................................................30

Donohue v. Cuomo
980 F.3d 53 (2d Cir. 2020).........................................................................30

Epps v. Poole,
687 F.3d 46 (2d Cir. 2012).........................................................................31

Exxon Mobil v. Saudi Basic Indus. Corp.,
544 U.S. 280 (2005) ....................................................................................38

Fen Yong Chen v. Bureau of Citizenship & Immigration Servs.,
470 F.3d 509 (2d Cir. 2006) ......................................................................37

Ferring B.V. v. Serenity Pharm., LLC,
391 F. Supp. 3d 265 (S.D.N.Y. 2019) .....................................................37

First Options of Chicago, Inc. v, Kaplan,
514 U.S. 938 (1995)...............................................................18, 20, 26, 36

Folkways Music Publishers, Inc. v Weiss,
989 F2d 108 (2d Cir 1993).........................................................................54

Fulton v. Woods,
07-cv-01052, 2010 U.S. Dist. LEXIS 58137 (N.D.N.Y. June 11, 2010) ...............32

Frere v. Orthofix Inc.,
2002 U.S. Dist. LEXIS 12738 (S.D.N.Y. July 12, 2002) ........................................39

Freeman v. Local Union No. 135,
746 F.2d 1316 (7th Cir. 1984) .................................................................42

Guzman et al v. The First Chinese Presb. Comm. Affairs Home Attendant Corp.,
Index No. 157401/2016 (Sup. Ct. N.Y. Co.),
removed to 20-cv-03929-JGK (S.D.N.Y.)....................................................... *passim*

Guzman et al v. The First Chinese Presb. Comm. Affairs Home Attendant Corp.,
Index No. 157401/2016, 2019 NY Slip Op 30895[U]
(Sup. Ct. N.Y. Cnty. Mar. 29, 2019).................................................................... *passim*

Guzman et al v. The First Chinese Presb. Comm. Affairs Home Attendant Corp.,
Index No. 157401/2016, 2020 NY Slip Op 30096(U)
(Sup. Ct. N.Y. Cty. January 13, 2020)................................................................. 8, 10

Greenberg v. Greenberg,
646 F. App'x 31 (2d Cir. 2016) ................................................................30

Greenhouse Holdings, LLC v. Int'l Union & Allied Trades Dist. Council 91,
2021 U.S. Dist. LEXIS 223850 (W.D. Ky. Nov. 18, 2021) ...............................22, 33

Halley Optical Corp. v Jagar Int'l. Marketing Corp.,
752 F Supp 638 (SDNY 1990).................................................................54

Hichez v. United Jewish Council of the E. Side,
2021 NY Slip Op 71554 (2021) ...............................................................10, 26, 53

Hichez v United Jewish Council of the E. Side,
179 AD3d 576 (1st Dept 2020), lv denied 37 NY3d 909 (2021) .................... *passim*

Hichez v. United Jewish Council of the E. Side,
2018 NY Slip Op 32327(U) (Sup. Ct. N.Y. Cty. 2018) .........................................27

Holborn Oil Trading Ltd. v. Interpetrol Bermuda Ltd.,
658 F. Supp. 1205 (S.D.N.Y. 1987) .......................................................39

Howsam v. Dean Witter Reynolds, Inc.,
537 U.S. 79 (2002) .................................................................26

vi

Irvin v. Harris,
944 F.3d 63 (2d Cir. 2019) ...................................................................44

In re Am. Exp. Fin. Advisors Sec. Litig.,
672 F.3d 113 (2d Cir. 2011)................................................................33

In re Bank of New York Derivative Litig.,
320 F.3d 291 (2d Cir. 2003). ..............................................................43

In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,
827 F.3d 223 (2d Cir. 2016);  .......................................................... 47-48

Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42 v.
Absolute Envtl. Servs., Inc.,
814 F. Supp. 392 (U.S. Dist. Del. 1993)...............................................33

Int'l. Trust Co. of Bermuda, Ltd. v Fahnestock & Co., Inc.,
1995 U.S. Dist. LEXIS 15050, 1995 WL 606275 (S.D.N.Y. 1995) .................53, 54

Int'l Union v. Vought Aircraft Indus.,
No. 09-11210, 2010 U.S. App. LEXIS 24398 (5th Cir. Nov. 29, 2010)................42

iPayment, Inc. v. 1st Americard, Inc.,
15 Civ. 1904 (AT), 2016 U.S. Dist. LEXIS 51058,
2016 WL 1544736 (S.D.N.Y. Mar. 25, 2016)........................................55

Jianmin Jin v. Shanghai Original, Inc.,
990 F.3d 251 (2d Cir. 2021)................................................................40

Joseph Martin Jr., Delicatessen, Inc. v. Schumacher,
52 N.Y.2d 105, N.E.2d 541, N.Y.S.2d 247 (N.Y. 1981)................................. 23-24

JPMorgan Chase Bank, Nat. Ass'n v. Nell,
2012 U.S. Dist. LEXIS 42173 (E.D.N.Y. Mar. 27, 2012).......................43

Kline v. Wolf,
702 F.2d 400 (2d Cir. 1983)................................................................40

Konstantynovska v. Caring Professionals, Inc.,
172 A.D.3d 486 (1st Dept. 2019) ....................................................24, 32

Landau v. Eisenberg,
922 F.3d 495 (2d Cir. 2019) ...................................................................20

Langan v. Johnson & Johnson Consumer Cos.,
897 F.3d 88 (2d Cir. 2018).......................................................................52

Lasky v. Quinlan,
558 F.2d 1133 (2d Cir. 1977)...................................................................52

Leonhard v. U.S.,
633 F.2d 599 (2d Cir. 1980).....................................................................34

Lorentti-Herrera v. Alliance for Health, Inc.,
173 A.D.3d 596 (1st Dept. 2019) ......................................................*passim*

Matter of Steyn v CRTV, LLC,
175 A.D.3d 1, N.Y.S.3d 415 [1st Dept 2019]) ........................................26

McKithen v. Brown,
481 F.3d 89 (2d Cir. 2007) ......................................................................37

Merrill Lynch Inv. Managers v. Optibase, Ltd.,
337 F.3d 125 (2d Cir. 2003) ....................................................................42

MetLife Inv'rs USA Ins. Co. v. Pratt,
442 F. App'x 589, (2d Cir. 2011) ...............................................17, 30, 35

Meza v. Gen. Battery Corp.,
908 F.2d 1262 (5th Cir. 1990) .................................................................55

Montana v. United States,
440 U.S. 147 (1979) ................................................................................36

Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,
820 F.3d 527 (2d Cir. 2016) ....................................................................20

New York v. United States Dep't of Homeland Sec.,
974 F.3d 210 (2d Cir. 2020) ..............................................................18, 34

Nicosia v. Amazon.com, Inc.,
834 F.3d 220 (2d Cir. 2016) ......................................................26, 29, 36

NML Cap., Ltd. v. Republic of Argentina,
727 F.3d 230 (2d Cir. 2013) ...........................................................41

Oxford Health Plans LLC v. Sutter,
569 U.S. 564 (2013)..........................................................................21

Orion Shipping & Trading Co. v. E. States Petroleum Corp.,
 312 F.2d 299 (2d Cir. 1963)...........................................................21

Pineman v. Oechslin,
637 F.2d 601 (2d Cir. 1981)............................................................31

Pustilnik v. Premier Home Health Care Services, Inc.,
Index No. 155081/2016 (Sup. Ct. N.Y. Cty, December 18, 2017) ....................9, 10

Pustilnik v Premier Home Health Care Servs., Inc.,
204 A.D.3d 479 (1st Dep't 2022) .................................................. *passim*

Phillips Petroleum Co. v. Shutts
472 U.S. 797 (1985)..........................................................................44

"R" Best Produce, Inc. v. Shulman-Rabin Mktg., Corp.,
467 F.3d 238 (2d Cir. 2006).............................................................20

Rodriguez v. It's Just Lunch, Int'l,
2013 U.S. Dist. LEXIS 58652, (S.D.N.Y. Apr. 23, 2013) ............................... 43-44

Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.,
682 F. App'x 42, (2d Cir. 2017)) .......................................................21

Sacchi v. Verizon Online LLC,
2015 U.S. Dist. LEXIS 21349 (S.D.N.Y. Feb. 23, 2015) .......................................29

Senter v. Gen. Motors Corp.,
532 F.2d 511 (6th Cir. 1976) .............................................................52

Sierra Club v. Glickman,
82 F.3d 106 (5th Cir. 1996) ....................................................................48

Statharos v. New York City Taxi & Limousine Comm'n,
198 F.3d 317 (2d Cir. 1999)....................................................................30

Streamlined Consultants, Inc. v. Forward Fin. LLC,
2022 U.S. Dist. LEXIS 45012 (S.D.N.Y. Mar. 14, 2022) .......................33

Techcapital Corp. v. Amoco Corp.,
2001 U.S. Dist. LEXIS 2822 (S.D.N.Y. Mar. 19, 2001) .........................51

Teshabaeva v. Family Home Care Servs. of Brooklyn& Queens, Inc. ,
2020 NY Slip Op 32327[U] (Sup Ct. N.Y. Cty. July 16, 2020) ......................10, 12

Teshabaeva v. Family Home Care Servs. of Brooklyn& Queens, Inc.,
198 A.D.3d 500 (1st Dept. 2021), lv denied 38 N.Y3d 902 (2022) ................*passim*

Teshabaeva v. Family Home Care Servs. of Brooklyn& Queens, Inc.,
Index No. 158949/2017 (Sup. Ct. N.Y. Co. July 21, 2022) ....................11

Tokhtaman v. Human Care,
2016 N.Y. Misc. LEXIS 3086 (Sup. Ct. N.Y. Cnty. Aug. 22, 2016) ....................49

Turkmen v. Ashcroft,
2010 U.S. Dist. LEXIS 97415, (E.D.N.Y. June 30, 2010),
report and recommendation adopted, 2010 U.S. Dist. LEXIS 146219
(E.D.N.Y. Aug. 26, 2010) .......................................................................44

Trbovich v. UMW,
404 U.S. 528, (1972) ........................................................................45, 48

Troshin v. Stella Orton Home Care Agency,
Index No. 159312/2016 (Sup. Ct. N.Y. Co., September 11, 2020) .......................10

Troshin v. Stella Orton Home Care Agency, Inc.,
141 N.Y.S.3d 297 (Sup. Ct. N.Y. Cnty. March 12, 2021) ......................49

United States v. Alcan Aluminum Corp.,
990 F.2d 711 (2d Cir. 1993) ...................................................................38

United States v. Hooker Chems. & Plastics Corp.,
749 F.2d 968 (2d Cir. 1984) ......................................................................45

United States Parole Comm'n v. Geraghty,
445 U.S. 388 (1980).................................................................................40

United States SEC v. Citigroup Glob. Mkts.,
 752 F.3d 285 (2d Cir. 2014) ...................................................................37

United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,
363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) ...................55

V.S. v. Muhammad,
595 F.3d 426 (2d Cir. 2010)..........................................................17, 30, 35

Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.,
661 F.3d 164 (2d Cir. 2011) ....................................................................26

West v. Am. Tel. & Tel. Co.,
311 U.S. 223 (1940).................................................................................30

Westra Constr., Inc. v. United State Fid. & Guar. Co.,
2006 U.S. Dist. LEXIS 27887 (M.D. Pa. Apr. 28, 2006)........................39

Williams v. Teamsters Local Union No. 727,
2003 U.S. Dist. LEXIS 18906 (N.D. Ill. Oct. 22, 2003) ........................42

Windsor v. United States, 797 F. Supp. 2d 320 (S.D.N.Y. 2011) .........................51

Zachariou v. Manios,
68 AD3d 539, N.Y.S.2d 54 [1st Dept 2009]......................................26, 27

Zakulski v. Bethlehem Steel Corp.,
1989 U.S. Dist. LEXIS 19317 (W.D.N.Y. Oct. 4, 1989) ........................42

## <u>STATUTES</u>

9 U.S.C. § 10(a) ..................................................................................21

9 U.S.C. § 10(a)(4) ...........................................................................33

28 U.S.C. § 1291 .................................................................................2

Federal Arbitration Act ...................................................................21

Fed. R. Civ. Pro. 24(a)(2) ..............................................................43

Fed. R. Civ. Pro 71 ................................................................ 20, 52-56

Rule 23 ...............................................................................................40

Restatement (Second) of Agency § 1 (1958) ...........................42

Labor Management Relations Act, Section 301 ............................21, 41

## JURISDICTIONAL STATEMENT

Appellants Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Gail Yan, Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Rafaela Cruceta, Virtudes Duran, and Wai Kam Lou (collectively "Appellants") seek partial vacatur of an opinion and order of the United States District Court for the Southern District of New York (the "District Court") entered on June 24, 2022, and the corresponding judgment entered on June 28, 2022 (the order and judgment referred to together as the "June 24, 2022 Order"). The June 24, 2022 Order granted a Petition to Confirm an Arbitration Award issued on February 25, 2022 (the "Second Award") in an arbitration commenced by 1199SEIU United Healthcare Workers East (the "Union" or "1199") and various home health agency employers (the "Agency-Employers).[1]  The June 24, 2022 Order also denied Appellants' Motion to Intervene and Motion to Partially Vacate the Second Award as it pertains to them and other former home health aide employees ("HHAs") of Alliance for Health, Inc. ("Alliance"), The First Chinese Presbyterian Community Affairs Home Attendant Corporation, Inc. ("FCP"), and Chinese-American Planning Council Home Attendant Program ("CPC"), who left the employ of those Agency-Employers prior to execution of a memorandum of agreement ("MOA") with 1199

---

[1] The arbitration initiated between 1199 and the Agency-Employers is hereinafter referred to as the "1199 Arbitration."

requiring arbitration of statutory unpaid wage claims (the "Pre-2015 MOA Employees").

This Court has jurisdiction to hear this matter under 28 U.S.C. § 1291, in that Appellants appeal from a final judgment of the District Court, the Honorable John G. Koeltl, U.S.D.J. presiding. Appellants' appeal is also timely, as the District Court entered judgment on June 28, 2022, and Appellants filed their notice of appeal on July 22, 2022. [A776; A777-779.]

Additionally, as further demonstrated below, Appellants have standing to bring the instant appeal because they moved to intervene and because they have interests that are affected by the June 24, 2022 Order. The Second Award that the June 24, 2022 Order confirms purports to fully resolve and release the statutory wage claims of Appellants Gail Yan, Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Rafaela Cruceta, Virtudes Duran and Wai Kam Lou, as well as for all class members represented by Appellants Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Eugenia Barahona Alvarado, and Mei Kum Chu in pending class action lawsuits that were filed long before the Second Award was issued, and where it has already been determined that Appellants' claims are not arbitrable. Accordingly, Appellants' appeal must be granted, and the District Court's June 24, Order reversed.

## ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred in granting the Petition to Confirm the Second Award with respect to Pre-2015 MOA Employees?

   This question should be answered in the affirmative.

2. Whether the District Court erred in denying Appellants' Motion to Intervene for the limited purpose of seeking partial vacatur of the Second Award?

   This question should be answered in the affirmative.

3. Whether the District Court erred in denying Appellants' Motion to Partially Vacate the Second Award as it pertains to Appellants and other Pre-2015 MOA Employees?

   This question should be answered in the affirmative.

## STATEMENT OF FACTS

This appeal has been consolidated with a related appeal arising from the same underlying action where Appellants are seeking review of a final judgment of a petition to confirm an Arbitration Award issued on April 17, 2020 (the "First Award") (the initial appeal hereinafter referred to as the "First Award Appeal"). See 1199 SEIU United Healthcare Wo. v. PSC Community Services, Case No. 21-cv-631 (2d Cir.). In the interest of efficiency and conserving judicial resources, Appellants do not reiterate in full the procedural and factual history already stated in the First Award Appeal which is incorporated herein.[2] The facts below contain a brief summary, along with additional information since the First Award Appeal was filed.

## I. Appellants And Their Pending Class Action Lawsuits

Appellants are Pre-2015 MOA Employees who were formerly employed by FCP, Alliance, and CPC—three Agency-Employers that participated in the 1199 Arbitration in which the First Award and Second Award were issued [A582-630.] Appellants have been litigating claims to recover unpaid statutory wages for years in still pending class action lawsuits against their respective former employers. See Guzman et al v. The First Chinese Presbyterian Community Affairs Home Attendant Corp., Index No. 157401/2016 (Sup. Ct. N.Y. Co.), removed to 20-cv-03929-JGK

---

[2] [Id. at Doc. No. 83, pp.3-19.]

4

(S.D.N.Y.) (the "Guzman Action"); Alvarado v. Alliance for Health, Inc., Index No. 155417/2018 (Sup. Ct. N.Y. Co.), removed to 20-cv-03930-JGK (S.D.N.Y.) (the "Alvarado Action"[3]); Chu v. Chinese-American Planning Council Home Attendant Program. Inc., Index No: 651947/2016 (N.Y. Sup. Ct. N.Y. Co.), removed to 16-cv-3569-KBF (S.D.N.Y.), remanded back to state court for lack of subject matter jurisdiction (Chu, 194 F. Supp. 3d 221 (S.D.N.Y. 2016)), removed again to 16-cv-3569-KBF (S.D.N.Y.) (the "Chu Action"). FCP, Alliance, and CPC have utilized every possible delay tactic to stall these actions while they arbitrated the claims covered by these actions in direct violation of numerous court orders and injunctions. The actions are currently stayed pending the various related appeals before this Court.[4]

Appellants Mei Kum Chu, Sau King Chung, Qun Xiang Ling, individually and on behalf of all similarly situated former employees, are named plaintiffs in the Chu Action—a pending class action lawsuit originally filed in New York County Supreme Court on April 12, 2016. Appellants Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, and Leticia Panama Rivas, individually and on behalf of all

---

[3] The Alvarado Action is sometimes referred to as Lorentti-Herrera v. Alliance for Health, Inc.

[4] See case Nos. 21-2106 and 21-2107, which are appeals of the District Court's denial of motions to remand filed in the Guzman and Alvarado Actions, and have also been consolidated with this appeal.

similarly situated former employees, are named plaintiffs in the <u>Guzman</u> Action—a pending class action lawsuit originally filed in New York County Supreme Court on September 2, 2016. Appellants Gail Yan, Rafaela Cruceta, Virtudes Duran, and Wai Kam Lou are putative class members in the <u>Guzman</u> Action. Appellant Eugenia Barahona Alvarado, individually and on behalf of all similarly situated former employees, is a named plaintiff in the <u>Alvarado</u> Action—a pending class action lawsuit originally filed in New York County Supreme Court on June 8, 2018.

FCP, Alliance, and CPC, like every other Agency-Employer in the 1199 Arbitration, each entered into a collective bargaining agreement ("CBA") and subsequent memorandums of agreement ("MOAs") with 1199 on behalf of their respective employees. <u>1199SEIU United Healthcare Workers E. v. PSC Community Servs.</u>, 520 F. Supp. 3d 588, 594-595 (S.D.N.Y. 2021). While the exact date each Agency-Employer executed their CBAs and MOAs varied, most executed an MOA with the Union sometime in 2014 (this agreement hereinafter referred to as the "2014 MOA") and another MOA in either 2015 or 2016 (this agreement hereinafter referred to as the "2015 MOA"). [<u>Id.</u> at 594-596; A148; A187; A195; <u>see</u> <u>also</u> <u>Guzman</u>, Index No. 157401/2016, NYSCEF Doc. No. 16, Ex. B (CBA), Ex. C (2014 MOA), and Doc. No. 17, Ex. D (2015 MOA); <u>Alvarado</u>, Index No. 155417/2018, NYSCEF Doc. No. 8, Ex. A (CBA), Doc. No. 9, B (2014 MOA), and Doc. No. 10, Ex. C (2015 MOA).] While the terms of each Agency-Employer's agreements vary

somewhat, all parties acknowledge that the grievance and alternative dispute resolution procedures ("ADR Provisions") in each Agency-Employer's CBA, 2014 MOA, and 2015 MOA were substantively similar. [1199SEIU United Healthcare Workers E., 520 F. Supp. 3d at 594-596.]

Appellants and the putative classes in the Guzman, Alvarado, and Chu Actions ceased working for their respective employers prior to execution of the 2015 MOAs that FCP, Alliance, and CPC entered into with the Union.  [A547, at ¶ 1; A565; Guzman, 157401/2016, 2019 NY Slip Op 30895[U], at *6-7 (Sup. Ct. N.Y. Cnty. Mar. 29, 2019]); Alvarado, 155417/2018, at Doc. No. 30, p.6 (Sup. Ct. N.Y. Cnty.).] This is significant as, unlike the CBA and the 2014 MOA, the 2015 MOA required arbitration of claims brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Accordingly, Appellants, along with other HHAs whose employment with their Agency-Employer ceased prior to execution of that Agency-Employer's 2015 MOA, are referred to as "Pre-2015 MOA Employees."

In each of the Guzman, Alvarado, and Chu Actions, courts have already held that FCP's Pre-2015 MOA Employees, Alliance's Pre-2015 MOA Employees, and CPC's Pre-2015 MOA Employees are not bound to arbitrate their statutory wage claims since their employment ceased prior to the execution of the 2015 MOA, and that this determination was for the court to decide. Lorentti-Herrera v. Alliance for

Health, Inc., 173 A.D.3d 596 (1st Dept 2019) (affirming trial court order denying motion to compel arbitration because "neither [named plaintiff Alvarado] nor any other class member who was not employed by defendant when the MOA was entered into is bound by the [2015] MOA's arbitration provision"); Chu v. Chinese-American Planning Council Home Attendant Program, Inc., 194 F.Supp.3d 221, 228 (S.D.N.Y. 2016) ("plaintiffs may not be bound by subsequently adopted amendments to a collective bargaining agreement to which they were not parties"); Guzman, 2019 NY Slip Op 30895(U) (Sup. Ct. N.Y. Cty. March 29, 2019) (denying FCP's motion to compel arbitration for the same reasons); Guzman, 2020 NY Slip Op 30096(U) (Sup. Ct. N.Y. Cty. January 13, 2020) (granting injunction prohibiting FCP from arbitrating Pre-2015 MOA Employees' claims in the 1199 Arbitration because "this Court has denied First Chinese's motion to compel arbitration, and has determined that it, and not an arbitrator, will hear and determine plaintiffs' claims" and that irreputable harm will occur if they were forced to arbitrate their claims when despite never agreeing to do so).

## II. The First Award Appeal

On April 17, 2020 – after the above-cited decisions were rendered – the Arbitrator presiding over the 1199 Arbitration issued the First Award finding that he had authority to determine threshold issues of arbitrability, and that all employees' claims, even claims for Pre-MOA Employees, were arbitrable before him. On May

8, 2020, the Union filed a Petition to Confirm the First Award in the District Court. On February 19, 2021, the District Court issued an order confirming the First Award, issued a final judgment, and closed the action. An appeal of the confirmation of the First Award was timely filed and has been fully briefed and submitted as of February 15, 2022. See 1199 SEIU United Healthcare Wo., Case No. 21-cv-631 (2d Cir.).

III.     **Since the First Award Appeal, Additional Decisions Have Been Rendered By New York Courts Reiterating That Pre-2015 MOA Employees' Statutory Wage Claims Are Not Arbitrable And That Arbitrability Determinations Were For The Court And Not The Arbitrator**

As set forth in the First Award Appeal, numerous class action lawsuits are being litigated by Pre-2015 MOA Employees of various Agency-Employers seeking unpaid statutory wages, and where courts have repeatedly held that these claims are not arbitrable and that arbitrability was for the court, and not the Arbitrator. See e.g., Lorentti-Herrera, 173 A.D.3d 596; Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576 (1st Dep't 2020) *lv denied* 37 N.Y.3d 909 (2021); Teshabaeva v. Family Home Care Servs. Of Brooklyn & Queens, Inc., 198 A.D.3d 500 (1st Dept. 2021) *lv denied* 38 N.Y.3d 902 (2022); Chu v. Chinese-American Planning Council Home Attendant Program, Inc., 194 F.Supp.3d 221, 228 (S.D.N.Y. 2016); Guzman, 2019 NY Slip Op 30895(U) (Sup. Ct. N.Y. Cty. March 29, 2019); Pustilnik v. Premier Home Health Care Services, Inc., Index No. 155081/2016 (Sup. Ct. N.Y. Cty, December 18, 2017).

Many of these courts have issued injunctions prohibiting arbitration of these claims in the 1199 Arbitration. See e.g. Guzman, 2020 NY Slip Op 30096(U) (Sup. Ct. N.Y. Cty. January 13, 2020); Pustilnik, Index No. 155081/2016 (Sup. Ct. N.Y. Cty, December 18, 2017) (Sup. Ct. N.Y. Cty. January 14, 2020); Troshin v. Stella Orton Home Care Agency, Index No. 159312/2016 (Sup. Ct. N.Y. Co., September 11, 2020) (A556); Teshabaeva v. Family Home Care Servs. of Brooklyn& Queens, Inc, 2020 NY Slip Op 32327(U) (Sup Ct. N.Y. Cty. July 16, 2020). Since the First Award Appeal was fully briefed, additional decisions have been rendered on arbitrability that support this appeal.

In Teshabaeva, the New York Appellate Division unanimously affirmed the trial court's denial of Agency-Employer Family Home Care's motion to compel arbitration and affirmed the trial court's issuance of a permanent injunction prohibiting arbitration of statutory wage claims for Pre-2015 MOA Employees. 198 A.D.3d 500 (1st Dept. 2021) (affirming Teshabaeva, 2020 NY Slip Op 32327(U)). Following its prior decisions, the appellate court reiterated that arbitrability was for the court to decide and not the arbitrator because none of 1199's labor agreements clearly and unmistakably delegated threshold arbitrability issues to the Arbitrator. Id (citing Hichez, 179 AD3d 576, lv denied 37 NY3d 909 (2021); Lorentti-Herrera, 173 AD3d 596). Family Home Care attempted to appeal the Appellate Division's decision to the New York Court of Appeals, however, that application was denied

on March 17, 2022, and costs awarded to the plaintiffs-respondents. <u>Teshabaeva v. Family Home Care Servs. of Brook. & Queens, Inc.</u>, 38 N.Y.3d 902 (2022).[5]

Frustrated with their losses in state court, and in a flagrant display of egregious forum shopping, Agency-Employer Family Home Care moved in the District Court in the underlying action for a preliminary and permanent injunction enjoining the <u>Teshabaeva</u> named plaintiffs from further prosecuting their class action lawsuit in New York State court. The District Court denied the request, holding that "there can be no reasonable dispute that the Movants lost on the issue of arbitrability before the state courts. Moreover, the Movants are plainly inviting this Court to review and reverse those state court decisions by enjoining the prosecution of claims in the state court that the state courts decided could proceed." <u>1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.</u>, No. 20-cv-3611 (JGK), 2022 U.S. Dist. LEXIS 29186 (S.D.N.Y. Feb. 16, 2022). This pretense of federal comity however was short lived. As set forth below, the District Court subsequently ignored the same New York Appellate Division decisions and the permanent injunction prohibiting arbitration when it decided to confirm the Second Award which purports to release all claims of class members in the <u>Teshabaeva</u> action. These are the same claims

---

[5] Also in <u>Teshabaeva</u>, on July 21, 2022, the trial court certified a class of all Pre-2015 MOA Employees. See <u>Teshabaeva</u>, Index No. 158949/2017 (Sup. Ct. N.Y. Co. July 21, 2022) (certifying class of all HHA's "formerly employed by the defendant prior to December 22, 2015.") (NYSCEF Doc. No. 223).

that the District Court previously held had the right to continue to be prosecuted in state court.

In Pustilnik, another class action lawsuit seeking statutory unpaid wages for Pre-2015 MOA Employees, the New York Appellate Division issued another unanimous decision affirming (1) the trial court's issuance of a permanent injunction enjoining arbitration of Pre-2015 MOA Employees' statutory wage claims in the 1199 Arbitration; and (2) the trial court's denial of the motion to compel arbitration. 204 A.D.3d 479, 479-480 (1st Dep't 2022) (affirming Teshabaeva, 2020 NY Slip Op 32327(U) (Sup. Ct. N.Y. Cty. July 16, 2020)). Again, the Appellate Division relied on its prior decisions holding that Pre-2015 MOA Employees were not parties to any labor agreement requiring arbitration of their statutory wage claims and that none of the labor agreements clearly and unmistakably delegated threshold arbitrability issues to the arbitrator. Id. (citing Teshabaeva, 198 A.D.3d 500, lv denied 38 N.Y.3d 902 (2022); Hichez, 179 A.D.3d 576, lv denied 37 N.Y.3d 909 (2021); Lorentti-Herrera, 173 A.D.3d 596).

## IV. The Second Award

On February 25, 2022, the Arbitrator issued the Second Award, which purports to resolve and fully release statutory wage claims for all HHAs employed by the Agency-Employers, including Appellants-named-plaintiffs Chu, Chung, and Ling, Appellants-class-members Yan, Cruceta, Duran, Lou, Wu and Mai, and all

other Pre-2015 MOA putative class members in the <u>Guzman</u>, <u>Alliance</u>, and <u>Chu</u> Actions.[6] [See A133-134 (listing coverage periods for Respondents FCP, Alliance, and CPC amongst others).]

Pursuant to the Second Award, the maximum liability for each Agency-Employer is $250.00 per HHA. [A121-122, 128.] The total arbitration fund of approximately $30 million dollars is the total combined contributions of the forty-two (42) Agency-Employers participating in the 1199 Arbitration. Putting the fund in perspective, in 2019, the Union calculated that these Agency-Employers owed HHAs over $6 billion in unpaid wages.[7] Accordingly, the Second Award explicitly acknowledges that the fund is not only "discounted from what the Employers might otherwise have to pay if the claims were individually litigated," but that "a two hundred fifty ($250) dollars per capita contribution is a significant discount from potential liability." [A122-123; see also A117.]

Moreover, the Second Award's purported release of claims is exceptionally broad, applies universally to all HHAs employed by the Agency-Employers, and includes all statutory wage claims for Pre-2015 MOA Employees. [A141-147.] Tellingly, the purported release includes "any claim that was or could have been

---

[6] Appellants-named-plaintiffs Guzman, Herrera, Rivas, and Alvarado were carved out from the First and Second Awards. [A79, n.4.]

[7] AIN'T I A WOMAN?!, "1199SEIU Tells Home Attendants Industry Will Collapse If They're Paid Owed Wages," https://www.aintiawoman.org/1199-6b-industry-will-collapse (accessed Nov. 8, 2022).

13

asserted by me, <u>or</u> by the 1199 Union on my behalf….” [A145 (emphasis added).] This is a clear admission that the Second Award seeks to resolve claims that the Union lacked authority to assert on behalf of former members in the first place – i.e. statutory wage claims for Pre-2015 MOA Employees. The purported release applies regardless of whether an HHA receives a distribution from the fund (<u>id.</u>), and fails to provide HHAs with any opt-out mechanism to utilize if they want to retain their claims. Clearly, this is a disingenuous attempt to quash the existing class action litigations, and extinguish the rights of Appellants and other Pre-2015 MOA Employee class members. [<u>Id.</u>] [8]

## V. Confirmation of the Second Award and Appellants' Motions to Intervene and Partially Vacate

On March 1, 2022, the Union filed the Petition to Confirm the Second Award. [<u>See</u> <u>1199SEIU United Healthcare Workers E. v. PSA Cmty. Servs.</u>, No. 20-cv-3611 (JGK) (S.D.N.Y.), Dkt. No. 183.] On March 11, 2022, Appellants moved by order to show cause to dismiss the Union's petition, and for a temporary restraining order

---

[8] The notice set forth in the Second Award, which was distributed to all Pre-2015 MOA Employees including those in the <u>Guzman</u>, <u>Alvarado</u>, and <u>Chu</u> Actions, does not mention these pending class actions, does not mention any of the other class action lawsuits proceeding on behalf of Pre-2015 MOA Employees, does not mention the permanent injunctions prohibiting arbitration issued by several state courts, does not mention the determinations by numerous courts including the New York Appellate Division that the claims of Pre-2015 MOA Employees are not subject to arbitration and that the arbitrator has no authority over their statutory wage claims, nor does it mention the pending First Award Appeal. [A141-147]

("TRO") and preliminary injunction of the enforcement of the Second Award to prevent notice from being distributed as set forth in the Second Award. [A385-413.] The District Court denied the TRO request on March 15, 2022 and the preliminary injunction and motion to dismiss on April 7, 2022. [A36 (Doc. No. 197); A413.] In the same order, the District Court directed the Union and Appellants to establish a briefing schedule for the motion to vacate and to intervene, which was approved by the District Court on April 9, 2022. [A412.]

On April 26, 2022 Appellants moved to intervene pursuant to Fed. R. Civ. Pro 71 and 42 for the limited purposes of seeking to partially vacate the Second Award as it pertains to themselves and other Pre-2015 MOA Employees that were formerly employed by Agency-Employers Alliance, FCP and CPC and are named plaintiffs and putative class members in the Guzman, Alvarado, and Chu Actions. Appellants also moved to partially vacate the Second Award on behalf of the same.

On June 24, 2022 the District Court issued an Order granting the Union's Petition to Confirm the Second Award, denying Appellants' motion to intervene and denying Appellants' motion to partially vacate, issued a new final judgment, and closed the case for the second time. It is from this June 24, 2022 Order and subsequent judgment that Appellants take the instant appeal.

## SUMMARY OF ARGUMENT

The District Court's June 24, 2022 Order should be reversed with respect to Appellants and all other Pre-2015 MOA Employees formerly employed by FCP, Alliance, and CPC, and their motions to partially vacate and to intervene should be granted. Partial vacatur of the Second Award is warranted because the Arbitrator exceeded his powers by determining the rights and obligations of those not bound to the 2015 MOA and arbitrating their statutory wage claims which are not subject to arbitration. It has already been conclusively determined that Appellants, and the Pre-2015 MOA Employees they represent, are not parties to any labor agreement compelling arbitration of their statutory wage claims. See Agarunova v. Stella Orton Home Care Agency, Inc., 794 F. App'x 138 (2d Cir. 2020); Lorentti-Herrera, 173 A.D.3d 596; Hichez, 179 A.D.3d 576, lv denied 37 NY3d 909 (2021); Teshabaeva, 198 A.D.3d 500, lv denied 38 N.Y.3d 902 (2022); Pustilnik, 204 A.D.3d 479-480 ; Guzman, 2019 NY Slip Op 30895[U] (Sup. Ct. NY Co. March 29, 2019); Guzman Injunction Order issued on January 13, 2020 [A568-574] (same); Chu, 194 F. Supp. 3d 221 (S.D.N.Y. 2016).

The Arbitrator also lacked authority to determine arbitrability because none of the labor agreements clearly and unmistakably delegated threshold arbitrability issues to the arbitrator. In no fewer than four unanimous decisions, the New York Appellate Division has affirmed that the court, and not the arbitrator, had authority

to make threshold arbitrability determinations. See <u>Hichez</u>, 179 A.D.3d 576; <u>Teshabaeva</u>, 198 A.D.3d 500; <u>Pustilnik</u>, 204 A.D.3d 479-480; <u>Lorentti-Herrera</u>, 173 AD3d 596; <u>see also</u> <u>Guzman</u>, 2019 NY Slip Op 30895[U] (trial court holding same). Requests for leave to appeal two of these decisions were filed with the New York Court of Appeals, and both requests were summarily denied. <u>Teshabaeva</u>, 38 N.Y.3d 902 (2022); <u>Hichez,</u> 37 NY3d 909 (2021).

Since these arbitrability determinations are matters of New York state contract law, and not federal law (<u>Agarunova</u> 794 F. App'x at 139), this Court is bound to follow the legal holdings of the New York Appellate Division "unless there is persuasive evidence that the state's highest court would reach a different conclusion." <u>MetLife Inv'rs USA Ins. Co. v. Pratt</u>, 442 F. App'x 589, 591 (2d Cir. 2011) (citing <u>V.S. v. Muhammad</u>, 595 F.3d 426, 432 (2d Cir. 2010)). No such evidence exists here. Rather, the New York Court of Appeals' decisions denying leave to appeal in <u>Teshabaeva</u> and <u>Hichez</u> are clear evidence that the state's highest court would *not* reach a different conclusion than set forth by the Appellate Division. Following the clear legal holdings rendered by the New York Appellate Division leads to only one conclusion – that the Arbitrator exceeded his power with respect to Appellants and other Pre-2015 MOA Employees, thus, partial vacatur is required.

The District Court also erred by refusing to apply the New York Appellate Division's holdings on arbitrability in granting the Petition to Confirm the Second

Award. In fact, the District Court's exact holding, that the Arbitrator had authority to determine arbitrability of Pre-2015 MOA Employees' statutory wage claims based on the ADR Provision in the CBA, was expressly rejected by the New York Appellate Division in <u>Teshabaeva</u> and <u>Hichez</u>. <u>See</u> <u>Teshabaeva</u> 198 A.D.3d 500, <u>lv denied</u> 38 N.Y.3d 902 (2022); <u>Hichez</u>, 179 A.D.3d 576, <u>lv</u> <u>denied</u> 37 NY3d 909 (2021).

The District Court also erred by applying a deferential standard of review to the Second Award on the question of arbitrability instead of the *de novo* review that is required. As held by the United States Supreme Court, the normal deference given to arbitrator awards does not apply to threshold questions of whether the parties agreed to arbitrate in the first place and who has the authority to make that determination. See <u>First Options of Chicago, Inc. v, Kaplan</u>, 514 U.S. 938, 949 (1995).

Vacatur is also warranted because the District Court lacked jurisdiction to render the June 24, 2022 Order due to the First Award Appeal which is still pending. See e.g. <u>New York v. United States Dep't of Homeland Sec.</u>, 974 F.3d 210, 215 (2d Cir. 2020) (divesture of jurisdiction is wide and includes "any matters involved in the appeal"). The First Award Appeal seeks this Court's review of arbitrability determinations for Pre-2015 MOA Employees, and the Petition to Confirm the

Second Award necessarily involved those same issues. Accordingly, the District Court was divested of jurisdiction to confirm the Second Award.

Furthermore, the decisions on arbitrability which were rendered by the Courts in the Guzman, Alvarado, and Chu Actions prior to confirmation of the Second Award constitute law of the case and should be upheld. Agency-Employers FCP, Alliance, and CPC should be precluded from seeking a different result in the arbitration.

The District Court likewise erred in denying Appellants' Motion to Intervene as Appellants satisfy all the necessary factors for intervention: (1) their application was timely; (2) they have an interest in litigating their statutory wage claims in their respective class action litigations; (3) their interests in litigating their wage claims may be impaired by confirmation of the Second Award which purports to fully resolve and release those very same wage claims (both for many of the Appellants and all putative class members the named-plaintiff-Appellants represent); and (4) their interests are not protected by the Agency-Employers from whom they seek to recover their wages, nor by the Union whose objective is to confirm the award and who filed the arbitration in order to limit recovery of unpaid wages based on unfounded and hypothetical fear of harm to "the industry." The District Court erred by denying permissive intervention for these same reasons.

Alternatively, Appellants have standing to intervene pursuant to Fed. Rule Civ. Pro 71 in order to enforce the court orders and injunctions in the Chu, Guzman, and Alvarado Actions. These decisions have already held that the claims of Pre-2015 MOA Employees in the FCP, Alliance, and CPC actions are not arbitrable.

## LEGAL STANDARD ON APPEAL

On appeal, the District Court's confirmation of the Second Award and denial of Appellants' Motion to Partially Vacate is reviewed under a *de novo* standard on questions of law and for clear error on findings of fact. See e.g. Landau v. Eisenberg, 922 F.3d 495, 498 (2d Cir. 2019) (citing Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016)). Arbitrability determinations, which are questions of law, are thus reviewed by this Court *de novo*. See First Options of Chicago, Inc., 514 U.S. 938, 943 (1995); Contec Corp. v. Remote Sol. Co., 398 F.3d 205, 208 (2d Cir. 2005) ("Our review of 'whether the issue of arbitrability is for the court or for the arbitrator' is *de novo*.") (quoting Bell v. Cendant Corp., 293 F.3d 563, 565-66 (2d Cir. 2002)). The standard of review of the denial of Appellants' Motion to Intervene is abuse of discretion. "R" Best Produce, Inc. v. Shulman-Rabin Mktg., Corp., 467 F.3d 238, 240 (2d Cir. 2006)

## **ARGUMENT**

I. **The Second Award Must Be Vacated With Respect To Appellants and All Other Pre-2015 MOA Employees Formerly Employed By Alliance, FCP And CPC Because The Arbitrator Exceeded His Power**

The "standard for vacating an arbitration award is materially the same under the [Federal Arbitration Act ("FAA")], [and the] Labor Management Relations Act ("LMRA")…." Am. Postal Workers Union v. United States Postal Serv., 754 F.3d 109, 114 (2d Cir. 2014) (citing Oxford Health Plans LLC v. Sutter, 569 U.S. 564 (2013)) (additional citations omitted). An arbitration award shall be vacated "where the arbitrator exceeded his power." Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc., 682 F. App'x 42, 44 (2d Cir. 2017) (citing 9 U.S.C. § 10(a)) (applying FAA's grounds for vacating arbitration awards to arbitrations conducted pursuant to the LMRA).

An arbitrator exceeds his power when an arbitrator attempts to determine the rights or obligations of parties who are not bound to an arbitration agreement or seeks to arbitrate claims that are not subject to arbitration. See e.g. A&A Maint. Enter. v. Ramnarain, 982 F.3d 864, 868-69 (2d Cir. 2020) (arbitrator exceeds his power when he lacks the authority based on the arbitration agreement to reach a certain issue); Orion Shipping & Trading Co. v. E. States Petroleum Corp., 312 F.2d 299, 300 (2d Cir. 1963) (affirming vacatur of arbitration award because "the arbitrator exceeded his powers in determining the obligations of a corporation which

was clearly not a party to the arbitration proceeding."); <u>Greenhouse Holdings, LLC</u> <u>v. Int'l Union & Allied Trades Dist. Council 91</u>, 2021 U.S. Dist. LEXIS 223850, at *2-3 (W.D. Ky. Nov. 18, 2021) (arbitrator exceeds his authority "when the collective bargaining agreement does not commit the dispute to arbitration" and when "an arbitrator determines the 'rights or obligations of a non-party to the arbitration.'") (internal citations omitted).

Here, partial vacatur of the Second Award with respect to Appellants and all other Pre-2015 MOA Employees formerly employed by FCP, Alliance, and CPC is proper because they never agreed to arbitrate their statutory wage claims and none of the labor agreements clearly and unmistakably delegated arbitrability determinations to the arbitrator. Thus, the Arbitrator exceeded his power by purporting to arbitrate and resolve their claims, thereby warranting partial vacatur of the Second Award.

### A. Appellants And All Other Pre-2015 MOA Employees Have Not Contractually Agreed to Arbitrate Claims Seeking Statutory Unpaid Wages From Their Respective Former Employers

In <u>Agarunova v. Stella Orton Home Care Agency, Inc.</u>, 794 F. App'x 138 (2d Cir. 2020), this Court conclusively determined that the 2015 MOA is the first agreement between the Union and the Agency-Employers requiring arbitration of

statutory wage disputes.[9] This Court examined the ADR Provisions in the CBA, the

2014 MOA, and the 2015 MOA and stated that:

> The 2012 CBA included an arbitration clause that required arbitration of disputes about the interpretation and application of the CBA, but that (the parties agree) did not require arbitration of disputes arising under federal and state laws. In June 2014, as relevant here, Stella Orton and the union entered into a memorandum of agreement (the "2014 MOA") reflecting their intention, "given changes in federal and state law imposing new obligations on the Employer," to continue negotiations in order to implement an alternative dispute resolution provision that would cover claims under such laws. Stella Orton and 1199SEIU eventually agreed to an alternative dispute resolution provision in December 2015 ("2015 MOA"). . . . Clearly, the provision in the 2014 MOA referencing continuing negotiations is not itself an arbitration clause; by its plain language, it merely binds the parties to continued negotiations toward developing an unspecified "alternative dispute resolution procedure" for the resolution of statutory claims. Under New York law, 'a mere agreement to agree, in which a material term is left open for future negotiations, is unenforceable." *Joseph Martin Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 417 N.E.2d 541, 436 N.Y.S.2d 247 (N.Y. 1981). The 2015 MOA does include an arbitration clause, which resulted from those negotiations.

Id. at 140.

The Agarunova decision, that the 2015 MOA was the first and only agreement

requiring arbitration of statutory wage claims, accords with numerous decisions

rendered by New York State courts that examined the same ADR Provisions in

agreements executed by other Agency-Employers and reached the same conclusion.

See e.g. Lorentti-Herrera, 173 A.D.3d 596 (1st Dep't 2019); Hichez, 179 A.D.3d

---

[9] Stella Orton Home Care Agency, Inc. ("Stella Orton") is one of the Agency-Employers in the underlying action.

576 (1st Dep't 2020) <u>lv denied</u> N.Y.3d, 2021 NY Slip Op 71554 (2021); <u>Teshabaeva</u>, 198 A.D.3d 500 (1st Dep't 2021) <u>lv denied</u> 38 N.Y.3d 902 (2022); <u>Pustilnik</u>, 204 A.D.3d 479 (1st Dep't 2022).

While this Court recognized the validity of the arbitration provision in the 2015 MOA, it went on to affirm the district court's finding that the plaintiff in <u>Agarunova</u> was not bound to arbitrate her statutory wage claims pursuant to the 2015 MOA because she was no longer Stella Orton's employee "as of December 16, 2015, the date of the signing of the 2015 MOA." <u>Id</u>. (citing <u>Konstantynovska v. Caring Professionals, Inc.</u>, 172 A.D.3d 486 (1st Dep't 2019) (holding, unanimously, that "[n]either [Plaintiff] nor the class members may be bound by the MOA because they were no longer defendant's employees when it was executed, they were not parties to that agreement, and there is no evidence that the Union was authorized to proceed on their behalf.")).

Appellants and all other Pre-2015 MOA Employees are just like Agarunova in that they too ceased working for their respective former employer prior to its execution of the 2015 MOA.  It is undisputed that the ADR Provisions in each of the Agency-Employer's CBAs, 2014 MOAs, and 2015 MOAs are substantively the same. [<u>1199SEIU United Healthcare Workers E.</u>, 520 F. Supp. 3d at 594-596.] Thus, in accordance with this Court's holding in <u>Agarunova</u>, none of them are subject to

any agreement requiring them to arbitrate their statutory wage claims. 794 F. App'x 138.

That Appellants and other Pre-2015 MOA Employees of FCP, Alliance, and CPC were not bound to any agreement requiring them to arbitrate their statutory wage claims was long ago determined in the <u>Guzman</u>, <u>Alvarado</u>, and <u>Chu</u> Actions. See <u>Lorentti-Herrera</u>, 173 A.D.3d 596 (1st Dep't 2019) ("neither she [named plaintiff Alvarado] nor any other class member who was not employed by defendant when the MOA was entered into is bound by the [2015] MOA's arbitration provision"); <u>Guzman</u>, 2019 N.Y. Misc. LEXIS 1652, *7-8 (Sup. Ct. N.Y. Cty. 2019) ("[s]ince each of the plaintiffs left the employ of First Chinese prior to December 1, 2015, the effective date of the 2015 MOA, the mandatory ADR provision of the 2015 MOA was inapplicable to them."); <u>Guzman</u> Injunction Order (A568-574) (January 13, 2020 Order granting preliminary injunction prohibiting arbitration of plaintiffs' claims in the 1199 Arbitration); <u>Chu v. Chinese-American Planning</u>, 194 F.Supp.3d 221, 228 (S.D.N.Y. 2016) ("Regardless of the purported retroactivity of the 2015 MOA, and 1199's authority to bargain on behalf of then-current employees, plaintiffs may not be bound by subsequently adopted amendments to a collective bargaining agreement to which they were not parties"). The Arbitrator therefore exceeded his power by purporting to resolve the statutory wage claims of Alliance,

FCP, and CPC's Pre-2015 MOA Employees, warranting partial vacatur of the Second Award with respect to their claims.

### B. The Arbitrator Did Not Have Authority To Determine Arbitrability

The Arbitrator also exceeded his power by making arbitrability determinations because none of the labor agreements clearly and unmistakably delegate threshold issues of arbitrability to the arbitrator. This has already been conclusively determined by two unanimous New York Appellate Division rulings. Moreover, the New York Court of Appeals has denied leave to appeal both of these decisions, clear evidence that the highest court of New York saw no need to revise the rulings and agrees with the appellate court's determinations. Arbitrability determinations are matters of New York State contract law, thus, this Court must follow these decisions, warranting partial vacatur.

"The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). "This principle 'flow[s] inexorably from the fact that arbitration is simply a matter of contract between the parties.'" Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171 (2d Cir. 2011) (quoting First Options of Chi., Inc., 514 U.S. at 943).

In <u>Agarunova</u>, this Court abstained from deciding whether threshold questions of arbitrability were for the court to decide, and not the arbitrator, because it was not raised with the district court. <u>See</u> <u>Id</u>. This issue however has now been conclusively determined by multiple New York State courts.

In <u>Hichez</u>, the New York Appellate Division unanimously held that the Arbitrator in the 1199 Arbitration lacked authority to decide arbitrability issues because none of the agreements, including the 2015 MOA, clearly and unmistakably delegated such authority:

> Contrary to defendant's contention, the new article in the [2015] MOA does not "clearly and unmistakably" delegate the determination of arbitrability to the arbitrator. It neither incorporates the arbitration procedures of CBA article XXVI nor adopts the procedural rules of the American Arbitration Association.

<u>Id.</u> at 576-77 (affirming <u>Hichez v. United Jewish Council of the E. Side</u>, 2018 NY Slip Op 32327(U) (Sup. Ct. N.Y. Cty. 2018) (arbitrability determinations were "for the court to decide and is not one to be resolved by the arbitrator, as defendant contends.").

In <u>Teshabaeva</u>, another unanimous decision by the New York Appellate Division, the court reiterated its holding in <u>Hichez</u> and further elaborated on why arbitrability was for the court, and not the arbitrator, to decide:

> Furthermore, "[w]hether a dispute is arbitrable is generally an issue for the court to decide unless the parties clearly and unmistakably provide otherwise" (Zachariou v Manios, 68 AD3d 539, 539, 891 N.Y.S.2d 54 [1st Dept 2009]; *see* Matter of Steyn v CRTV, LLC, 175 AD3d 1, 10,

103 N.Y.S.3d 415 [1st Dept 2019]). As the [trial] court correctly found, the 2000 and 2012 collective bargaining agreements, which mandated arbitration for grievances arising from disputes over the interpretation of the terms of the agreements, did not contain express provisions to submit to arbitration labor law violations that had nothing to do with interpretation of the terms of the CBA. Accordingly, there is no clear and unmistakable evidence that the parties agreed to arbitrate the arbitrability of their labor law claims *(Zachariou, 68 AD3d at 539-540).*

Teshabaeva,198 A.D.3d 500.

As set forth in <u>Hichez</u> and <u>Teshabaeva</u>, pursuant to the terms of the 2015 MOA, arbitration of statutory wage claims is subject "exclusively" to the provisions in the 2015 MOA, and the 2015 MOA does not clearly delegate arbitrability determinations to the Arbitrator. As these courts further recognized, although the CBA's ADR Provision adopted AAA rules, those AAA rules only apply to the grievances actually covered by the CBA's ADR Provision. Statutory wage claims are not covered by the CBA's ADR Provision, thus, there is no clear and unmistakable evidence that arbitrability decision are to be decided by an arbitrator.

The decisions rendered in <u>Hichez</u> and <u>Teshabaeva</u> accord with numerous other New York State court decisions, including in the <u>Guzman</u> Action pending against FCP and the <u>Alvarado</u> Action against Alliance. <u>See</u> <u>Guzman</u>, 2019 NY Slip Op 30895[U] ("'whether the parties have entered into a valid arbitration agreement and, if so, whether the issue sought to be submitted to arbitration falls within the scope of that agreement is an issue for the court to decide, and is not one to be resolved by the arbitrator, as [defendant] contends.'"); <u>Alvarado</u>, Index No.

155417/2018 (Sup. Ct. N.Y. Co. Feb. 7, 2019) (holding the court had authority to determine threshold issues related to arbitrability) *aff'd* 173 A.D.3d 596 (1st Dept. 2019); <u>Pustilnik</u>, 204 AD3d 479 (1st Dept. 2022) (affirming permanent injunction prohibiting arbitration of Pre-2015 MOA Employees' statutory wage claims in the 1199 Arbitration and relying on prior decisions in <u>Hichez</u> and <u>Teshabaeva</u>).

## C. Threshold Arbitrability Determinations Are Made Pursuant To New York Contract Law And Thus This Court Must Follow The Decisions Rendered By New York State Courts

Arbitrability determinations are matters of state contract law, not federal law. <u>Agarunova</u> 794 F. App'x at 139 (threshold arbitrability determinations are "determined by state contract law principles.") (citing <u>Nicosia</u>, 834 F.3d 220, 229 (2d Cir. 2016)); <u>Sacchi v. Verizon Online LLC</u>, 2015 U.S. Dist. LEXIS 21349, at *10-11 (S.D.N.Y. Feb. 23, 2015) ("Because an agreement to arbitrate is a 'creature of contract…the...question of whether the parties agreed to arbitrate is determined by state law.'") (quoting <u>Bell v. Cendant Corp.</u>, 293 F.3d 563, 566 (2d Cir. 2002)); see also <u>Badgerow v. Walters</u>, 141 S. Ct. 2620, 596 U. S. _____ (2022) ("the application concerns the contractual rights provided in the arbitration agreement, generally governed by state law. And adjudication of such state-law contractual rights…typically belongs in state courts.").

When federal courts apply state law, they are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive

evidence that the state's highest court would reach a different conclusion." MetLife Inv'rs USA Ins. Co. v. Pratt, 442 F. App'x 589, 591 (2d Cir. 2011) (citing V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010) ("This Court is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion. There is no such evidence here."); see also Greenberg v. Greenberg, 646 F. App'x 31, 32 (2d Cir. 2016) (same); DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005) ("Principally, we consider the language of the state intermediate appellate courts to be helpful indicators of how the state's highest court would rule…rulings from such courts are a basis for 'ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'") (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940); Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 321 (2d Cir. 1999)).

This Court reiterated this legal principle in Donohue v. Cuomo, where it stated that CBA's are "contracts created under and governed by New York law", that "[c]ontract law is a general area of law traditionally regulated by the states" and therefore it was bound to apply contract law as interpreted by the state courts. 980 F.3d 53 (2d Cir. 2020). This Court cautioned that "[s]tate autonomy and the relationship between state and federal authority would be impaired were the federal

courts to set state policy independently and follow their own instincts as to state contract law.'" Id. at 64-65 (quoting Pineman v. Oechslin, 637 F.2d 601, 606 (2d Cir. 1981)).

Here, the arbitrability issues have collectively been ruled upon by the New York Appellate Division in no fewer than four unanimous decisions. See Lorentti-Herrera (Alliance), Hichez, Teshabaeva, Pustilnik, *supra*. While all four affirmed the lower court's authority to make arbitrability determinations, in Hichez and Teshabaeva the New York Appellate Division expressly explained why none of the labor agreements clearly and unmistakably delegated arbitrability determinations to the arbitrator for Pre-2015 MOA's statutory wage claims.

There is no evidence that the New York Court of Appeals would reach a different conclusion. To the contrary, it denied requests to review the Appellate Division's holdings in Hichez and Teshabeava. See Hichez, 37 NY3d 909 (2021) (Court of Appeals denying leave to appeal Appellate Division's decision); Teshabaeva, 38 N.Y.3d 902 (2022) (Court of Appeals Order denying leave to appeal Appellate Division's decision and awarding costs to plaintiffs-respondents).

This Court has held that denying leave to appeal is a clear sign the Court of Appeals would not reach a different conclusion. See Epps v. Poole, 687 F.3d 46, 55 (2d Cir. 2012) ("It appears, moreover, that the *Baptiste* decision [by the Appellate Division] did not meet with the disapproval of the Court of Appeals, which denied

Baptiste's application for leave to appeal. Because we do not believe that the Court of Appeals would reach a different conclusion than that reached in *Baptiste*, we defer to the determination of the Appellate Division….") (internal citations omitted); see also Fulton v. Woods, No. 9:07-cv-01052-JKS, 2010 U.S. Dist. LEXIS 58137, at *11 (N.D.N.Y. June 11, 2010) (holding that a determination of state law by a state intermediate appellate court is binding, especially where "the highest court in the state has denied review of the lower court's decision.").

This Court's determination in Agarunova cited the New York Appellate Division's decision in Konstantynovska v. Caring Professionals, Inc., 172 A.D.3d 486 (1st Dep't 2019) which similarly held that HHA's were not bound to arbitration agreements executed after their employment ended. See Agarunova, 794 F. App'x 138, 140 (citing Konstantynovska). Here too, this Court must follow the New York Appellate Division decisions in Hichez and Teshabaeva, along with Lorentti-Herrera (Alliance) and Pustilnik, and determine that the Arbitrator was not clearly and unmistakably delegated authority to determine arbitrability.

The law on the relevant issues is clear: (1) the arbitrator had no authority to decide arbitrability issues as determined by New York courts; (2) Pre-2015 MOA Employees, such as Appellants, never agreed to arbitrate their statutory wage claims and (3) their statutory wage claims cannot be arbitrated. The Second Award improperly purports to resolve the statutory wage claims of Pre-2015 MOA

32

Employees despite not being parties to the arbitration and the Arbitrator having no authority to arbitrate their claims. Accordingly, the Arbitrator exceeded his authority and partial vacatur of the Second Award as it pertains to Appellants and other Pre-2015 MOA Employees formerly employed by Alliance, FCP and CPC must be granted. See e.g. Streamlined Consultants, Inc. v. Forward Fin. LLC, 2022 U.S. Dist. LEXIS 45012, at *6-7 (S.D.N.Y. Mar. 14, 2022) (holding arbitrator would exceed power under 9 U.S.C. § 10(a)(4) "should Plaintiffs succeed in their yet-to-be-briefed motion to stay (that is, by showing that they did not consent to arbitration)") (citing AmeriCredit Fin. Servs., Inc. v. Oxford Mgmt. Servs., 627 F. Supp. 2d 85, 95 (E.D.N.Y. 2008) and In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 141 (2d Cir. 2011) ("Arbitration…is a matter of consent, not coercion.")); Greenhouse Holdings, LLC, 2021 U.S. Dist. LEXIS 223850, at *2-3 (arbitrator exceeds his authority "when the collective bargaining agreement does not commit the dispute to arbitration" and when "an arbitrator determines the 'rights or obligations of a non-party to the arbitration.'"); Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc., 814 F. Supp. 392, 398 (U.S. Dist. Del. 1993) ("if an arbitration award purports to bind a litigant who is not a party to the collective bargaining agreement, the district court must vacate the arbitration award….").

**II.     The Arbitration Award Must Be Vacated Because The District Court Lacked Jurisdiction Due To The First Award Appeal**

The filing of a valid notice of appeal divests a district court of jurisdiction over the matters involved in the appeal.  See New York v. United States Dep't of Homeland Sec., 974 F.3d 210, 215 (2d Cir. 2020) ("[t]he filing of a 'timely and sufficient notice of appeal' divests the district court of jurisdiction 'as to any matters involved in the appeal' or 'as to the matters covered by the notice.'") (quoting Leonhard v. U.S., 633 F.2d 599, 609-10 (2d Cir. 1980).

Here, the First Award Appeal addresses threshold issues of arbitrability - that the Arbitrator lacked authority to arbitrate the claims of Pre-2015 MOA Employees and that the Arbitrator lacked the authority to make threshold arbitrability decisions. The Petition to Confirm the Second Award necessarily implicated these same arbitrability issues for Pre-2015 MOA Employees. [A75-76 (restating holdings from 2020 Arbitration Award).]

Despite the pending appeal, the District Court again determined arbitrability (incorrectly) in rendering the June 24, 2022 Order which confirmed the Second Award. [A740-775.] Indeed, the Union concedes that the District Court made threshold arbitrability issues anew when rendering the June 24, 2022 Order. [See 1199 SEIU United Healthcare Wo. v. PSC Community Services, Case No. 21-cv-631 (2d Cir.), at Doc. No. 185, pp. 3-4.] It is axiomatic that the purported determination of the merits for claims of Pre-2015 MOA Employees, including

Appellants, would be rendered moot if the Arbitrator lacked authority to arbitrate their claims. The District Court thus lacked jurisdiction to confirm the Second Award and make any determination with respect to the claims of Appellants and other Pre-2015 MOA Employees, warranting partial vacatur.

**III.    The District Court Erred By Refusing To Follow The New York Appellate Division's Rulings That None Of the Labor Agreements Clearly And Unmistakably Delegated Arbitrability Determinations to the Arbitrator**

As set forth above, threshold arbitrability determinations are matters of New York contract law and on matters of New York law, federal courts must abide by decisions issued by New York appellate courts. See e.g. MetLife Inv'rs USA Ins. Co. v. Pratt, 442 F. App'x 589, 591 (2d Cir. 2011) (citing V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010)). The District Court refused to apply the holdings issued by the New York Appellate Division in Hichez and Teshabaeva, instead making its own determination that the parties submitted arbitrability determinations to the arbitrator. [See order p. 31.] The District Court's holding, that the Arbitrator had authority to make threshold arbitrability determinations based on the CBA's incorporation of the AAA rules, was expressly rejected by the New York Appellate Division in Teshabaeva. See Teshabaeva, 198 A.D.3d 500 (holding that because the CBA's arbitration provisions only "mandated arbitration for grievances arising from disputes over the interpretation of the terms of the agreements" they "did not contain

express provisions to submit to arbitration labor law violations that had nothing to do with interpretation of the terms of the CBA" and thus "there is no clear and unmistakable evidence that the parties agreed to arbitrate the arbitrability *of their labor law claims*") (emphasis added). The New York Court of Appeal's denial of leave to appeal in <u>Teshabaeva</u> is clear evidence that New York's highest court agreed with the holding. <u>Teshabaeva</u>, 38 N.Y.3d 902 (2022) (denying leave to appeal). The District Court erred by refusing to apply New York law as interpreted by New York's appellate courts providing yet another reason for vacatur.

## IV. The District Court Erred By Applying the Extremely Deferential Standard of Review To Arbitrability Determinations Rather Than The *De Novo* Standard That Was Legally Required

When presented with confirmation of an arbitrator's award, a district court is required to review threshold questions of arbitrability under a *de novo* standard. See <u>First Options of Chicago, Inc.</u>, 514 U.S. 938, 949 (1995) (affirming vacatur of arbitration award and explaining that the normal deference given to arbitrator awards does not apply to threshold questions of whether the parties agreed to arbitrate in the first place and who has the authority to make that determination); <u>Nicosia</u>, 834 F.3d 220, 229, 231 (2d Cir. 2016) (threshold arbitration questions are subject to de novo review).

Here, the District Court openly admitted that it applied the highly deferential standard of review that applies to arbitration awards generally and never assessed

arbitrability under the *de novo* standard that was legally required. [A769-770.] The District Court's improper review standard was based on its incorrect determination that the Arbitrator had authority to make threshold arbitrability determinations. As set forth above, the District Court was bound to hold otherwise in accordance with decisions rendered by New York appellate courts. This failure to apply the correct standard also warrants vacatur. See e.g. United States SEC v. Citigroup Glob. Mkts., 752 F.3d 285, 288 (2d Cir. 2014) ("We find the district court abused its discretion by applying an incorrect legal standard in its review…"); Fen Yong Chen v. Bureau of Citizenship & Immigration Servs., 470 F.3d 509, 515 (2d Cir. 2006) (using the wrong legal standard "constitutes legal error" warranting vacatur).

## V. Issue Preclusion Bars FCP, Alliance, and CPC From Having The Same Arbitrability Determinations Made By The Arbitrator

"Collateral estoppel (*i.e.*, issue preclusion) prevents a party from re-litigating certain factual issues, even in the context of different legal claims. 'Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" Ferring B.V. v. Serenity Pharm., LLC, 391 F. Supp. 3d 265, 283-84 (S.D.N.Y. 2019) (quoting Montana v. United States, 440 U.S. 147, 153 (1979) (emphasis in original omitted)). A federal court is bound to recognize and accord full faith and credit to orders issued by state courts for preclusion purposes. See e.g. McKithen v. Brown, 481 F.3d 89,

(2d Cir. 2007) (citing <u>Exxon Mobil</u> v. Saudi Basic Indus. Corp., 544 US 280, 293 (2005)).  Principles of claim and issue preclusion are reviewed *de novo*. <u>Bank of N.Y. v. First Millennium, Inc.</u>, 607 F.3d 905, 919 (2d Cir. 2010) (citing <u>Chartier v. Marlin Mgmt., LLC</u>, 202 F.3d 89, 93 (2d Cir. 2000)).

FCP, Alliance, and CPC have all lost motions to compel arbitration of Pre-2015 MOA Employees' claims, and FCP is bound by an injunction prohibiting arbitration of those claims in the 1199 Arbitration.[10] These orders are law of the case and these Agency-Employers are estopped from having the same arbitrability determinations decided by the arbitrator.

Precluding these Agency-Employers from relitigating arbitrability supports the sound policies underlying collateral estoppel, which is to "save[] parties and the courts from the waste and burden of relitigating stale issues, and, by discouraging inconsistent results, [and] forwards public policy favoring the establishment of certainty in legal relations." <u>United States v. Alcan Aluminum Corp.</u>, 990 F.2d 711, 719 (2d Cir. 1993) (citation omitted). Accordingly, the District Court erred in confirming the Second Award on issues that had already been litigated and decided in prior court orders.

---

[10] See *supra*, Statement of Facts, pp. 4-15.

## VI.    The District Court Erred In Denying Appellants' Motion to Intervene

### A. Appellants Have Requisite Standing To Intervene

Appellants have standing to intervene for the limited purpose of partially vacating the Second Award. The law is well-settled that nonparties to an arbitration may intervene as of right to oppose confirmation and vacate arbitration awards if they have a "substantial interest in the arbitrations." Ass'n of Contracting Plumbers of City of New York, Inc. v. Local Union No. 2 United Ass'n of Journeymen, 841 F.2d 461, 467 (2d Cir. 1988) (granting intervention as of right to non-party and holding that nonparties to arbitration may attack the award where the award "affects the [nonparties] in a sufficiently substantial and concrete manner"); Holborn Oil Trading Ltd. v. Interpetrol Bermuda Ltd., 658 F. Supp. 1205, 1209 (S.D.N.Y. 1987) (same); Frere v. Orthofix Inc., 2002 U.S. Dist. LEXIS 12738, at *13 (S.D.N.Y. July 12, 2002) (citing Ass'n of Contracting Plumbers for same and holding that "for the purpose of this motion, that Petitioners' have standing because their contractual rights to E&B Payments are substantially affected by the Arbitration.").

Here, the Second Award purports to resolve most of Appellants' statutory wage claims in arbitration. See e.g. Westra Constr., Inc. v. United State Fid. & Guar. Co., 2006 U.S. Dist. LEXIS 27887, at *5 (M.D. Pa. Apr. 28, 2006) (summarizing precedent where non-parties are allowed to intervene and challenge an arbitration award that purports to affect the non-party's rights) (citing Ass'n of Contracting

Plumbers, 841 F.2d at 466-67; Bruscianelli v. Triemstra, 2000 U.S. Dist. LEXIS 11155, No. 99-C-6446, 2000 WL 1100439 (N.D. Ill. Aug. 4, 2000) (holding that where arbitrator issued ruling purporting to bind nonparty, nonparty may intervene to challenge the award). The Second Award also purports to resolve the statutory wage claims of all putative class members in the Guzman, Alvarado, and Chu Actions, potentially impacting the rights of the Appellants-class-representatives from moving to certify classes in those actions. See e.g. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 336 (1980) (named plaintiffs retain an "economic interest in class certification," due to "their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails."); United States Parole Comm'n v. Geraghty, 445 U.S. 388, 404 (1980) ("The proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined."); Jianmin Jin v. Shanghai Original, Inc., 990 F.3d 251, 259 (2d Cir. 2021) (representative plaintiff has a "right to have a class certified if the requirements of Rule 23 are met" to pursue her role as "private attorney general") (citing Roper and Geraghty supra); Kline v. Wolf, 702 F.2d 400, 404 (2d Cir. 1983) (noting that named plaintiffs have significant economic interest in class certification because "if they succeeded in obtaining…certification as class representatives, the plaintiffs could eventually spread their litigation expenses across a class of victorious plaintiffs."); Bais Yaakov of Spring Valley v. Educ. Testing

Serv., 251 F. Supp. 3d 724, 742 (S.D.N.Y. 2017) (representative plaintiff has a substantial interest in seeking certification of the class and must be afforded an opportunity to seek certification even if offered a judgment to resolve her individual claim). The Appellants clearly have the requisite interest in the Second Award to have standing to vacate.[11]

Additionally, the Appellants need not assert that the Union breached its duty of fair representation in order to have standing, because the Union had no authority to represent Appellants in the 1199 Arbitration. As explained above, it has already been legally determined that Pre-2015 MOA Employees are not bound to arbitrate their statutory wage claims under the 2015 MOA and pursuant to which the arbitration was brought, and that none of the prior agreements permitted the Union to arbitrate statutory wage claims for Pre-2015 MOA Employees such as Appellants. It has further been determined that the Union was not authorized to submit arbitrability determinations to the arbitrator for disputes involving statutory wage

---

[11] Relatedly, in connection with the First Award Appeal, on September 1, 2021, this Court denied the Union's motion to dismiss and held that the minimal standing requirements were satisfied because "one or more of the Appellants…have made a threshold showing that they have interests plausibly affected by the judgment." [See 1199 SEIU United Healthcare Wo. v. PSC Community Services, Case No. 21-cv-631 (2d Cir.), at Doc. No. 74, p.2 (citing NML Cap., Ltd. v. Republic of Argentina, 727 F.3d 230, 239 (2d Cir. 2013).] To avoid repetition, Appellants' opposition to that motion, setting forth the numerous grounds for standing, is incorporated herein. [Id. at Doc. No. 57.]

claims of Pre-2015 MOA Employees.[12] The Union's duty of fair representation, therefore, did not extend to Appellants at the arbitration. <u>See</u> <u>Agarunova v. Stella Orton Home Care Agency, Inc.</u>, 794 F. App'x 138 (2d Cir. 2020) (acknowledging the Union did not represent plaintiff at the time it entered into the 2015 MOA and therefore she was not bound to its terms); <u>Merrill Lynch Inv. Managers v. Optibase, Ltd.</u>, 337 F.3d 125, 130 (2d Cir. 2003) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.") (citing Restatement (Second) of Agency § 1 (1958)); <u>Williams v. Teamsters Local Union No. 727</u>, 2003 U.S. Dist. LEXIS 18906, at *5-6 (N.D. Ill. Oct. 22, 2003) ("The union's duty to fairly represent those employees extends only to those matters for which the union serves as the employee's exclusive bargaining agent.") (citing <u>Freeman v. Local Union No. 135</u>, 746 F.2d 1316, 1320-21 (7th Cir. 1984)); <u>Int'l Union v. Vought Aircraft Indus.</u>, No. 09-11210, 2010 U.S. App. LEXIS 24398, at *10 (5th Cir. Nov. 29, 2010) ("The Union may represent former employees, but only with their consent."). Appellants thus have standing to directly object to the Second Award. <u>See</u> <u>Zakulski v. Bethlehem Steel Corp.</u>, 1989 U.S. Dist. LEXIS 19317, at *12-13 (W.D.N.Y. Oct. 4, 1989) (holding that union owed no duty to plaintiff who

---

[12] <u>See</u> *supra* Section I.

ceased working for the employer and plaintiff could therefore assert a direct claim pursuant to Section 301 without needing to exhaust administrative remedies).

### B. Appellants Should Be Allowed To Intervene As of Right For The Limited Purpose Of Moving To Partially Vacate The Second Award

"In order to intervene as a matter of right under Fed. R. Civ. Pro. 24(a)(2), an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." In re Bank of New York Derivative Litig., 320 F.3d 291, 300 (2d Cir. 2003). "In considering a motion to intervene, a district court must accept as true all non-conclusory allegations of the movant." JPMorgan Chase Bank, Nat. Ass'n v. Nell, 2012 U.S. Dist. LEXIS 42173, at *1, n.1 (E.D.N.Y. Mar. 27, 2012). All four factors are satisfied here.

The motion to intervene was timely filed. The petition to confirm the Second Award was filed by the Union on March 1, 2022. [A34, 48-207.] The District Court directed that a briefing schedule be established with respect to the motions to partially vacate and for intervention, and this briefing schedule was subsequently approved by the District Court. [A39, Docket No. 240 (approving joint briefing schedule with filing date for motions of April 26, 2022.)] This element has thus been satisfied. See e.g. Rodriguez v. It's Just Lunch, Int'l, 2013 U.S. Dist. LEXIS 58652,

at *8 (S.D.N.Y. Apr. 23, 2013) (finding timely motion to intervene because the intervenor had moved "less than five months" after learning of the need to intervene); <u>Turkmen v. Ashcroft</u>, 2010 U.S. Dist. LEXIS 97415, at *4 (E.D.N.Y. June 30, 2010), <u>report and recommendation adopted</u>, 2010 U.S. Dist. LEXIS 146219 (E.D.N.Y. Aug. 26, 2010) (measuring the timeliness of a motion to intervene for class members from the time their claims were settled).

Appellants also have an interest in the action and can demonstrate that their interests may be impaired because the Second Award purports to finally resolve their statutory wage claims for a sum certain that is far less than full satisfaction of their claims, or for nothing if they do not timely file a claim form requesting a distribution from the arbitration wage fund. Appellants who are class representatives whose claims are not included have an interest in moving for class certification in their pending litigations which may be impaired because the Second Award purports to resolve the claims of all class members in the <u>Guzman</u>, <u>Chu</u>, and <u>Alvarado</u> Actions. [<u>See</u> <u>supra</u> Section VI (A).] <u>See</u> <u>also</u> <u>Irvin v. Harris</u>, 944 F.3d 63 (2d Cir. 2019) ("Due process 'requires that the named plaintiff *at all times* adequately represent the interests of the absent class members.'") (quoting <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 812 (1985) (emphasis added)). The second and third factors are thus also satisfied.

The final factor, inadequate representation, only requires a minimal showing. See e.g. Trbovich v. UMW, 404 U.S. 528, 530 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."). Moreover, where the interest factors are strong as they are here, the showing required for this factor is even lower. See e.g. United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984) ("A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation.").

Appellants' interests are certainly not protected by the Agency-Employers Alliance, FCP, and CPC from whom they seek to recover statutory unpaid wages. Appellants' interests are also not adequately represented by the Union, as they seek different objectives - Appellants seek to partially vacate the Second Award, while the Union seeks to confirm it. Moreover, Appellants' interests have always been to maximize recovery of their unpaid wages. In contrast, the Union filed the arbitration in order to *limit* recovery of unpaid wages, allegedly based on a fear that the damages from lawsuits filed by Pre-2015 MOA Employees would be so great that it would impact their unionized sector. As explained by the Union in a January 9, 2020 letter submitted in the Guzman Action:

> The Union understands that Plaintiffs have taken the position that the
> Union "agrees that Plaintiffs are not bound to arbitrate their claims

under [the CBA]." While, in 2016 when there was only a handful of wage and hour suits, the Union took the position that the Plaintiffs could pursue their claims in court, as previously noted, that position changed in 2019, when the proliferation of private suits threatens the viability of this entire industry sector.

[A559-564; compare with A565-566 ("[W]e write to object to the submission of the claims of…the Guzman plaintiffs[] to Arbitrator Martin Scheinman…1199 has confirmed that none of the Guzman plaintiffs were employed by FCP as of December 1, 2015, and therefore, cannot be bound by the 2015 MOA, including the ADR provision.").]

The Union further explained that it filed its grievance for the global arbitration because:

> numerous cases were begun concerning the proper payment to such workers…against home care employers…it became clear that without additional funding beyond the minimum wage funding already provided by New York state, employers would not be financially able to sustain many of these claims…the Union…filed a grievance on an industry-wide basis…to ensure that the proliferation of wage and hour lawsuits…did not result in the fragmentation and destabilization of the unionized home care sector.

[A560.]

The Union's representation in the arbitration was thus specifically designed to suppress the proliferation of wage and hour lawsuits and damages they would likely recover to prevent a speculative future harm that they feared would lead to

46

destabilization of their unionized home care sector.[13] The Union's representation was thus clearly designed to favor and protect its own preservation and power and its current members at the expense of Appellants, who ceased working for FCP, Alliance, and CPC more than seven years ago and only want to maximize their recovery of unpaid wages.

In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., this Court addressed similar competing interests, held they were antagonistic, and that the representative of the group trying to maximize equitable relief was inadequate to represent the interests of the group trying to maximize monetary relief:

> The conflict is clear between merchants of the (b)(3) class, which are pursuing solely monetary relief, and merchants in the (b)(2) class, defined as those seeking only injunctive relief. The former would want to maximize cash compensation for past harm, and the latter would want to maximize restraints on network rules to prevent harm in the future. Amchem [Prods. V. Windsor, 521 U.S. 591 (1997)] tells us that such divergent interests require separate counsel ….The class counsel and class representatives who negotiated and entered into the Settlement Agreement were in the position to trade diminution of (b)(2) relief for increase of (b)(3) relief…. Moreover, many members of the (b)(3) class have little to no interest in the efficacy of the injunctive relief because they no longer operate, or no longer accept Visa or MasterCard, or have declining credit card sales. By the same token, many members of the (b)(2) class have little to no interest in the size of the damages award because they did not operate or accept Visa or MasterCard before November 28, 2012, or have growing credit card

---

[13] Notably, the Union's concerns are completely unfounded. The Union only has labor agreements with a small percentage of home care agencies. Moreover, despite overall greater compliance with statutory wage laws since these lawsuits have been filed (see Second Award), and numerous class action settlements in other similar lawsuits, the industry remains alive and well.

sales. Unitary representation of separate classes that claim distinct, competing, and conflicting relief create unacceptable incentives for counsel to trade benefits to one class for benefits to the other in order somehow to reach a settlement.

827 F.3d 223, 234 (2d Cir. 2016); see also Trbovich, 404 U.S. at 530 (permitting union members to intervene and noting that the Secretary of Labor's two distinct interests, representing the individual union members on the one hand and protecting the public interest on the other, may diverge); Sierra Club v. Glickman, 82 F.3d 106, 110 (5th Cir. 1996) (district court erred in concluding that the federal agency would adequately represent the State's interest because the federal government "is legally obliged to represent the interests of all U.S. citizens," whereas the State of Texas has a narrower interest unique to its state and citizens); Cohen v. Brown Univ., No. 21-1032, 2021 U.S. App. LEXIS 32209, at *26 (1st Cir. Oct. 27, 2021) ("intra-class conflict is unacceptable when it presents an actual and substantial risk of skewing available relief in favor of some subset of class members").

That the Union did not adequately represent the Appellants' interests in the 1199 Arbitration is further demonstrated by the Union's failure to prosecute clear statutory wage violations possessed by Appellants and asserted in their respective litigations.[14] For example, the Union failed to pursue any claim for spread of hours compensation on behalf of Pre-2015 MOA Employees allegedly because it agreed

---

[14] See e.g. A422-546, Complaints in Guzman, Alvarado, and Chu.

the base hourly rates in the various CBAs were sufficient to cover this payment. [See A82 ("No claims are made by the Union of any violation of spread of hours requirements prior to January 1, 2017.").] Yet the Union's position makes absolutely no sense because the hourly rate would only be sufficient if workers were actually paid for all hours worked, something the Union agrees did not happen "due to interruptions of 24-hour shifts" resulting in workers not receiving even the "*minimum* wage" for all hours worked once all working hours were accounted for. [A86 (emphasis added).] Numerous courts have held that workers are entitled to spread of hours pay because their effective hourly pay was less than the minimum wage rate when all hours worked during a 24-hour shift were factored in. See e.g. Chan v. Chinese-American Planning Council Home Attendant Program, 2015 N.Y. Misc. LEXIS 3278, *27 (Sup. Ct. N.Y. Cnty. Sept. 9, 2015) (rejecting motion to dismiss claim for spread of hours because when all hours worked in a 24-hour shift were accounted for the equivalent hourly rate of pay was below the minimum required by law); Tokhtaman v. Human Care, 2016 N.Y. Misc. LEXIS 3086, *3 (Sup. Ct. N.Y. Cnty. Aug. 22, 2016) ("plaintiff sufficiently alleges a spread of hours wage claim. Defendants fail to acknowledge that plaintiff alleges that all 24 hours of her shift are compensable work time" and thus she was paid less than the minimum wage rate per hour of work); see also Troshin v. Stella Orton Home Care Agency, Inc., 141 N.Y.S.3d 297 (Sup. Ct. N.Y. Cnty. March 12, 2021) (certifying

class of Pre-2015 MOA Employees against Agency-Employer Stella Orton on numerous claims, including failure to pay spread of hours payments). The Union's capitulations for not pursuing these claims are another clear example of the Union forfeiting monetary damages to pursue its stated goal of preventing alleged future harm to their unionized sector and is at odds with the goals of Appellants to maximize their wage damages, including by seeking recovery of spread of hour payments in the <u>Guzman</u>, <u>Alvarado</u>, and <u>Chu</u> Actions. The fourth factor's minimal burden has thus also been satisfied.  As such, Appellants satisfy all elements and should be permitted to intervene as of right for the limited purpose of moving to partially vacate the Second Award.

## C. Alternatively, Permissive Intervention Should Be Permitted

Under Rule 24(b) a court may allow a timely applicant to intervene permissively if the applicant has a claim or defense that shares with the main action a common question of law or fact." <u>1199 SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park</u>, 2018 WL 9651077, at *3 (S.D.N.Y. Sept. 4, 2018), <u>aff'd</u>, 786 F. App'x 298 (2d Cir. 2019) (quoting Fed. R. Civ. P. 24(b)(1)(B)). For the same reasons set forth above, permission intervention should be granted.

Additionally, intervention will not cause any prejudice to parties of the arbitration. The Union acknowledged to the District Court that the Second Award was being carried out irrespective of confirmation, which has continued despite this

appeal. See <u>Techcapital Corp. v. Amoco Corp.</u>, 2001 U.S. Dist. LEXIS 2822, at *8 (S.D.N.Y. Mar. 19, 2001) (permitting permissive intervention to challenge confirmation of an arbitration award because "the Award purports to adjudicate certain rights between them and [their former employers].").[15]

### D. Appellants Have Standing To Partially Vacate The Second Award On Behalf of Putative Class members In the <u>Guzman</u>, <u>Alvarado</u>, and <u>Chu</u> Actions

Appellants, upon being granted intervention status, would be akin to a party for the limited purpose of moving to vacate. Since they have the requisite standing to seek partial vacatur for themselves, they may similarly move to vacate for the putative classes in the <u>Guzman</u>, <u>Alliance</u>, and <u>Chu</u> Actions. See <u>Benjamin v. Stemple</u>, 2018 U.S. Dist. LEXIS 103584, at *7 (E.D. Mich. June 21, 2018) ("Plaintiff's counsel has filed a motion to intervene by putative class members who are presently subject to ongoing enforcement efforts by Defendants. If the intervention is permitted, these proposed intervenors would possess standing to seek

---

[15] To the extent that the District Court denied Appellants' application to intervene because it was not accompanied by a pleading that set out the claim or defense for which intervention was sought, this was also erroneous. [A760-761, n.6.] Courts within the Second Circuit have held that Fed. R. Civ. Pro. 24(c) "have dispensed with the pleading requirement when the proposed intervenors position is 'clearly articulated' in its motion papers." <u>Barry's Cut Rate Stores Inc. v Visa, Inc.</u>, 2021 U.S. Dist LEXIS 120302, at *142-144 (E.D.N.Y. June 28, 2021) (court waived pleading requirement for proposed intervenors because they sought to intervene for the limited purpose of opposing class certification and their position was clearly articulated in their motion papers); <u>Windsor v. United States</u>, 797 F. Supp. 2d 320, 325-326 (S.D.N.Y. 2011).

the preliminary injunction on behalf of the putative class") aff'd 915 F.3d 1066 (6th Cir. 2019) (citing Senter v. Gen. Motors Corp., 532 F.2d 511, 517 (6th Cir. 1976) ("[O]nce an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants."); Langan v. Johnson & Johnson Consumer Cos., 897 F.3d 88 (2d Cir. 2018) (class representatives are not required to have individual standing to press claims belonging to unnamed class members).

### E. Appellants Also Have Standing To Intervene Under Fed. Rule 71

Fed. Rule Civ. Pro 71 states: "When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." "Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action." Lasky v. Quinlan, 558 F.2d 1133, 1137 (2d Cir. 1977) (quoting 7 J. MOORE, Federal Practice, P 71.02 (1975)). "[W]hen an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party." Berger v. Heckler, 771 F.2d 1556, 1565-66 (2d Cir. 1985). There are no additional requirements needed to become a party for the limited purpose of enforcing a court order pursuant to Rule 71. [See Fed. Rule Civ. Pro. 71.] Appellants should also be

permitted to intervene as a party pursuant to Rule 71 in order to enforce the orders set forth below.

In the <u>Alvarado</u> Action, the New York Appellate Division has already held that Appellant Alvarado *and all members of the putative class* who are similarly Pre-2015 MOA Employees are not bound to the 2015 MOA and thus their claims cannot be arbitrated. <u>Lorentti-Herrera</u>, 173 A.D.3d 596 ("plaintiff's employment with defendant ended on approximately August 24, 2015, and neither she nor any other class member who was not employed by defendant when the MOA was entered into is bound by the MOA's arbitration provision); see also A567, January 13, 2020 Order ("Alliance agreed on the record to send a letter tomorrow to the arbitrator, the union and to cc plaintiff's counsel in this case regarding the inability of those employees, who ceased employment prior to the [sic] MDA's effective date, from having their claims adjudicated in the arbitration.").]

In the <u>Guzman</u> Action, there are two orders to be enforced. The first denied FCP's motion to compel arbitration where the Court held that "since each of the plaintiffs left the employ of [FCP] prior to December 1, 2015, the effective date of the 2015 MOA, the mandatory ADR provision of the 2015 MOA was inapplicable to them…." 2019 NY Slip Op 30895[U] (Sup. Ct. NY Co. March 29, 2019). As part of its motion to compel arbitration, FCP argued that the arbitrator, and not the court, had authority to make threshold arbitrability decisions. <u>Id</u>. This argument was

53

rejected by the court. Id. ("'whether the parties have entered into a valid arbitration agreement and, if so, whether the issue sought to be submitted to arbitration falls within the scope of that agreement is an issue for the court to decide, and is not one to be resolved by the arbitrator, as [defendant] contents.'") (internal citations omitted) (quoting Hichez, 2018 NY Slip Op 32327(U) (Sup. Ct. N.Y. Co., Sept. 17, 2018) aff'd 179 A.D.3d 576 (1st Dept. 2020)).

The second order was an injunction against arbitration issued on January 13, 2020 ("Injunction Order")[16] stating:

> Here, plaintiffs have established that they are likely to succeed on the merits of their claims. Specifically, plaintiffs maintain that their wage and hour claims must be determined by this Court since they left the employ of First Chinese before the 2015 MOA became effective. Since this Court has denied First Chinese's motion to compel arbitration, and has determined that it, and not an arbitrator, will hear and determine plaintiffs' claims, plaintiffs have established the likelihood that they will succeed on their argument regarding the arbitrability of their claims.
>
> Plaintiffs also establish that that they would suffer irreparable harm in the event that they were denied injunctive relief. "[A] party that has not agreed to arbitrate a dispute will suffer irreparable harm if it is forced to submit to arbitration." *Int'l. Trust Co. of Bermuda, Ltd. v Fahnestock & Co., Inc.,* 1995 U.S. Dist. LEXIS 15050, 1995 WL 606275 at *3 (S.D.N.Y. 1995). This Court has already determined that plaintiffs' dispute is not arbitrable and, thus, plaintiffs would be irreparably harmed in the event they were forced to arbitrate. Specifically, if the arbitration is not enjoined and plaintiffs choose to participate, they "will have waived [their] objections to the [a]rbitration." *Int'l. Trust Co. of Bermuda, Ltd. v Fahnestock & Co., Inc.,* citing *Halley Optical Corp. v Jagar Int'l. Marketing Corp*., 752 F Supp 638, 639-40 (SDNY 1990).

---

[16] A568-574.

"On the other hand, if [plaintiffs refuse] to [arbitrate], the claims against [them] may be adjudicated in [their] absence, and any award would be subject to 'very limited review' by [this] [C]ourt." *Int'l. Trust Co. of Bermuda, Ltd. v Fahnestock & Co., Inc.,* quoting *Folkways Music Publishers, Inc. v Weiss*, 989 F2d 108, 111 (2d Cir 1993).

Since plaintiffs would be prejudiced if they were forced to arbitrate, this Court also finds that the equities weigh in their favor and that they be granted the injunctive relief they request. The equities also warrant this relief because, although the Union, in a letter to First Chinese dated November 7, 2016, advised that it objected to the submission of plaintiffs' claims to arbitration (Doc. 67), Scheinman, in his December 24, 2019 email, has, with virtually no advanced notice, now advised plaintiffs that "the Union has determined [that] it represents all of the employees' claims and wishes to pursue those claims promptly in arbitration" regardless of whether plaintiffs' employment terminated prior to the effective date of the MOA. Doc. 68. Such late notice, especially of the Union's changed position, is prejudicial and cannot be countenanced.

[A572.]

In the <u>Chu</u> Action, the order to be enforced was issued by the Honorable

Katherine B. Forrest, who held that:

CPC contends that the 2015 MOA, made effective December 1, 2015, governs CPC's employment relationship with plaintiffs—who each ceased working at CPC prior to that date—on the ground that the 2015 MOA was made retroactive. This argument lacks merit. Regardless of the purported retroactivity of the 2015 MOA, and 1199's authority to bargain on behalf of then-current employees, plaintiffs may not be bound by subsequently adopted amendments to a collective bargaining agreement to which they were not parties. *iPayment, Inc. v. 1st Americard, Inc.*, No. 15 Civ. 1904 (AT), 2016 U.S. Dist. LEXIS 51058, 2016 WL 1544736, at *3 (S.D.N.Y. Mar. 25, 2016) ("Because the obligation to arbitrate is created by contract, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409

(1960))); see also *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.,* 404 U.S. 157, 172, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971); *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1271 (5th Cir. 1990) ("Absent some evidence that past members expressly or impliedly authorized the union to proceed in their behalf, there can be no presumption that the Union had authority to act in a representative capacity.")

194 F. Supp. 3d 221, 228 (S.D.N.Y. 2016).

The Injunction Order against FCP is still in place and thus valid and enforceable, and the time to appeal the other orders have long since passed. Appellants are the beneficiaries of these orders, whose clear purpose was to keep their claims, and the claims of the putative class members they represent, in court and out of arbitration. Appellants seek to enforce these orders and thus pursuant to Rule 71 should also be conferred standing as a party for this limited purpose. See e.g. Calderon v. Wambua, 2012 U.S. Dist. LEXIS 46193, at *20-21 (S.D.N.Y. Mar. 28, 2012) (holding that a proposed intervenor was an "an intended beneficiary despite not being an original named Plaintiff" of the order and thus could invoke Rule 71 to have standing as a party to enforce the provisions of the order) (citing Berger v. Heckler, 771 F.2d 1556 (2d Cir. 1985) (holding that non-parties could use Rule 71 to enforce provisions of an order that was intended to benefit them).

## CONCLUSION

For the reasons set forth above, the District Court's June 24, 2022 Order that granted the Petition to Confirm the Second Award should be vacated, Appellants'

Motion to Intervene should be granted for the limited purpose of moving to partially

vacate the Second Award, and Appellants' Motion to Vacate the Second Award with

respect to themselves and all Pre-MOA Employees should be granted.

Dated:   New York, New York
           November 8, 2022

VIRGINIA & AMBINDER, LLP

By: /s/ LaDonna M. Lusher
LaDonna M. Lusher, Esq.
Kara S. Miller, Esq.
Michele Moreno, Esq.
Alanna Sakovits, Esq.
40 Broad Street, 7th Floor 19
New York, New York 10004
llusher@vandallp.com
Tel:   (212) 943-9080
Fax:   (212) 943-9080

*Attorneys for Appellants/Movants Alvaro
Ramirez Guzman, Elida Agustina Mejia
Herrera, Leticia Panama Rivas, Gail Yan,
Eugenia Barahona Alvarado, Rafaela
Cruceta, Virtudes Duran, Wai Kam Lou,
Yue Ming Wu and Cui Ying Mai*

FISHER TAUBENFELD LLP
Michael Taubenfeld
225 Broadway, Suite 1700
New York, New York 10007
Tel: (212) 571-0700
Fax: (212) 505-2001
michael@fishertaubenfeld.com

*Attorneys for Appellants/Movants Mei
Kum Chu, Sau King Chung, and Qun
Xiang Ling*

## <u>CERTIFICATE OF COMPLIANCE</u>

I herby certify pursuant to Fed. R. App. P. 32(a)(7)(C) that the foregoing brief was prepared on a computer using Microsoft Word.

A proportionally spaced typeface was used, as follows:

Name of typeface: Times New Roman

Point size: 14

Line spacing: Double

This brief contains 13,951 words (excluding, as permitted by Fed. R. App. P. 32(a)(7)(B), the table of contents, table of authorities, and certificate of compliance), as counted by the Microsoft Word processing system used to produce this brief.

Dated:   New York, New York
November 8, 2022

                          /s/

LaDonna M. Lusher, Esq.
VIRGINIA & AMBINDER, LLP
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080

SPECIAL APPENDIX

**<u>Table of Contents</u>**

**<u>Page</u>**

Opinion and Order of the Honorable John G. Koeltl,
    dated June 24, 2022, Appealed From ............................................. SPA1

Judgment of the United States District Court, Southern District of
    New York, entered June 28, 2022, Appealed From ...................... SPA37

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

1199SEIU UNITED HEALTHCARE WORKERS            20-cv-3611 (JGK)
EAST,

                          Petitioner,        OPINION AND ORDER

        - against -

PSC COMMUNITY SERVICES, ET AL.,

                          Respondents.

————————————————————————————

JOHN G. KOELTL, District Judge:

     The present motions concern an award rendered in an
arbitration pursuant to Section 301 of the Labor Management
Relations Act of 1947 (the "LMRA") involving the petitioner,
1199SEIU United Healthcare Workers East (the "Union") and the
respondents, a group of home care agencies (the "Award," ECF No.
183-1). In the Award, the arbitrator determined that the
respondents had committed various wage and hour laws violations
with respect to over 100,000 of the respondents' current and
former Union member-employees. Among other things, the
arbitrator ordered the respondents to create and contribute to a
compensation fund of approximately $30 million (the "Fund") and
to disburse the funds to eligible claimants. The Union
petitioned this Court to confirm the Award on March 1, 2022. See
ECF No. 183 (the "Amended Petition").

On March 11, 2022, twelve former employees of certain respondents moved for a preliminary injunction enjoining the parties from creating the Fund and otherwise implementing the Award. These movants also moved to dismiss the Amended Petition for lack of subject matter jurisdiction. The Court denied these motions in an Opinion and Order dated April 7, 2022. See 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs., No. 20-cv-3611, 2022 WL 1046464 (S.D.N.Y. Apr. 7, 2022) (the "Preliminary Injunction Order").

On April 26, 2022, thirteen former employees of three respondents, Employers Alliance for Health ("Alliance"), the First Chinese Presbyterian Community Affairs Home Attendant Corporation, Inc. ("FCP"), and the Chinese-American Planning Council Home Attendant Program ("CPC") (the "Movants") moved to intervene in this action for the purpose of seeking partial vacatur of the Award. The Movants also moved to vacate the aspects of the Award that pertain to themselves and certain former employees of those respondents.

For the following reasons, the Movant's motion to intervene for the purpose of seeking partial vacatur of the Award is **denied**. The Movant's motion to vacate the Award in part is **denied**. The Union's Amended Petition to confirm the Award is **granted**.

# I

## A

The Court assumes familiarity with the Preliminary Injunction Order and its Opinion and Order dated February 19, 2021, in which the Court confirmed an earlier jurisdictional award of the arbitrator and denied motions of former employees of certain respondents to intervene and to dismiss the Union's petition to confirm that award or to stay confirmation of that award. See 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs., 520 F. Supp. 3d 588 (S.D.N.Y. 2021) (the "First Confirmation Order"). The facts relevant to resolving the current motions are set forth below.

By way of brief background, in the jurisdictional award issued on April 17, 2020, the arbitrator determined that pursuant to the collective bargaining agreements ("CBAs") between the Union and the respondents, the arbitrator had arbitral jurisdiction to adjudicate the wage and hours claims of former and current Union members irrespective of whether their employment terminated prior to the effective date of a 2015 memorandum of agreement between the Union and the respondents (the "Pre-2015 MOA Employees"). First Confirmation Order, 520 F. Supp. 3d at 597. The Union petitioned this Court to confirm that award, which the Court granted in the First Confirmation Order.

Several former employees of certain respondents had moved to intervene in this action and moved to dismiss that petition. The Court found these former employees' arguments against confirmation of the first jurisdictional award to be without merit and denied their motion to intervene, finding that they lacked standing to challenge the award and that any purported interest that they had in opposing confirmation of the award was "too contingent or remote to be cognizable under Rule 24."[1] First Confirmation Order, 520 F. Supp. 3d at 600. These former employees filed a non-expedited appeal of the First Confirmation Order with the Court of Appeals for the Second Circuit, which is currently pending. Following the First Confirmation Order, the Union and the respondents proceeded to litigate the merits of the Union's grievance before the arbitrator.

The arbitrator then issued the Award on February 25, 2022.[2] The Award is discussed in the Preliminary Injunction Order in detail and that discussion is incorporated here by reference. See Preliminary Injunction Order, 2022 WL 1046464, at *2-3. In sum, the arbitrator determined that the respondents violated wage and hour laws during the relevant time period and ordered

---

[1] Unless otherwise noted, this Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

[2] The arbitrator issued a supplement to the Award on March 16, 2022, that corrected certain minor errors in the Award. See ECF No. 212-2. For the purposes of this Opinion and Order, references to the "Award" include the arbitrator's March 16, 2022, supplement.

the respondents to contribute to the Fund on a per capita basis. The arbitrator arrived at the per capita contribution remedy after weighing several competing considerations, including the financial stability of the home care industry. The arbitrator ultimately concluded that a "per capita contribution greater than two hundred fifty ($250) dollars is not sustainable and will, inevitably, lead to deserving employees failing to recover upon their meritorious claims," and ordered the creation and financing of the Fund accordingly. Amended Petition ¶ 31. Once fully financed, the Fund will exceed $30 million.

## B

In the Preliminary Injunction Order, the Court denied the motion by twelve non-party movants for a preliminary injunction enjoining the parties' compliance with the Award. In that Order, the Court also denied these movants' motion to dismiss the Amended Petition for lack of subject matter jurisdiction. Eight of the twelve movants who filed those motions are now in the group of Movants presently before the Court.[3]

In the Preliminary Injunction Order, the Court found that the movants lacked standing to seek the requested preliminary

---

[3] The twelve Movants who filed the motions for a preliminary injunction and to dismiss were Alvaro Ramirez Guzman, Elida Agustina Mejia Herrera, Leticia Panama Rivas, Gail Yan, Eugenia Barahona Alvarado, Mei Kum Chu, Sau King Chung, Qun Xiang Ling, Epifania Hichez, Carmen Carrasco, Seferina Acosta, and Maria Diaz. Guzman, Herrrea, Rivas, Yan, Alvarado, Chu, Chung, and Ling are now part of the current group of Movants, along with Rafaela Cruceta, Virtudes Duran, Wai Kam Lou, Yue Ming Wu, and Cui Ying Mai.

injunction and dismissal of the Amended Petition. See
Preliminary Injunction Order, 2022 WL 1046464, at *3-6. The
Court also found the movants' argument that the pending appeal
of the First Confirmation Order stripped this Court of subject
matter jurisdiction over the Amended Petition to be without
merit. Id. at *8-9. In so holding, the Court reasoned that
questions relating to the confirmation of the Award are not
"involved in" the pending appeal of the First Confirmation
Order. Id.

Finally, in the Preliminary Injunction Order, the Court
afforded the movants an opportunity to file a motion to vacate
the Award in part and directed the movants to explain in that
motion why they have standing to challenge the Award
notwithstanding the Preliminary Injunction Order and the First
Confirmation Order. Id. at *10. The Court also directed the
movants to "either file a motion to intervene for the purposes
of challenging the [Amended] Petition or explain why they should
be permitted to seek partial vacatur of the [Award] as
non-parties and non-intervenors." Id.

c

On April 26, 2022, the thirteen Movants filed a motion to
vacate the Award in part and a motion to intervene for the
purpose of seeking partial vacatur of the Award. The Union
opposed both motions and CPC filed a brief in opposition to the

6

request to intervene by Chu, Chung, and Ling (the "CPC Movants").

The thirteen Movants are former employees of either CPC, FCP, or Alliance. The CPC Movants are former employees of CPC who ceased to be CPC employees before CPC entered the 2015 MOA. All three CPC Movants are named plaintiffs in an action against CPC alleging wage and hour violations that was filed in the New York State Supreme Court on April 12, 2016. See Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc., No. 651947/2016 (N.Y. Sup. Ct., filed April 12, 2016) (the "Chu Action"). After CPC removed the Chu Action to federal court, Judge Forrest granted the CPC Movants' motion to remand and the case was remanded back to the state court. See Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc., 194 F. Supp. 3d 221 (S.D.N.Y. 2016). On April 17, 2017, the state court stayed the Chu Action pending resolution of a putative class action against CPC that was also pending in this district before Judge Forrest, Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc., No. 15-cv-9605 (S.D.N.Y., filed Dec. 8. 2015) (the "Chan Action"). The CPC Movants are members of the proposed class in the Chan Action.

In the Chan Action, Judge Forrest concluded that the Pre-2015 MOA Employees of CPC were bound by the arbitration provisions of the 2015 MOA and granted CPC's motion to compel

arbitration. <u>Chan v. Chinese-Am. Plan. Council Home Attendant</u>
<u>Program, Inc.</u>, 180 F. Supp. 3d 236, 241-42 (S.D.N.Y. 2016).
After the state court lifted the stay in the <u>Chu</u> Action in 2021,
CPC again removed the case to federal court. <u>See</u> <u>Chu v. Chinese-</u>
<u>Am. Planning Council Home Attendant Program, Inc.</u>, No. 21-cv-
2115 (S.D.N.Y., filed Mar. 11, 2021). Judge Torres then stayed
the <u>Chu</u> Action pending resolution of the appeal of this Court's
order denying a motion to remand in <u>Guzman v. First Chinese</u>
<u>Presbyterian Community Affairs Home Attendant Corporation</u>, No.
20-cv-3929 (S.D.N.Y., filed May 20, 2020) (the "<u>Guzman</u> Action").
No class has been certified in the <u>Chu</u> Action.

    Guzman, Herrera, Rivas, and Alvarado comprise a second set
of Movants (the "Carved-Out Movants"). <u>See</u> Preliminary
Injunction Order, 2022 WL 1046464, at *3 & n.3. These Movants
are former employees of either FCP or Alliance and are the named
plaintiffs in either the <u>Guzman</u> Action or a related case,
<u>Alvarado v. Alliance for Health, Inc.</u>, No. 20-cv-3930 (S.D.N.Y.
filed May 20, 2020) (the "<u>Alvarado</u> Action"). These Movants were
expressly carved out of the arbitrator's awards because courts
had previously enjoined arbitration of their claims.
Consequently, the Carved-Out Movants are not bound by the
arbitrator's awards.

    The <u>Guzman</u> and <u>Alvarado</u> Actions concern alleged wage and
hour violations and were both filed in state court and then

removed to this Court. The plaintiffs filed motions to remand in both actions, which this Court denied in an Opinion and Order dated February 18, 2021. See Guzman v. First Chinese Presbyterian Community Affairs Home Attendant Corp., 520 F. Supp. 3d 353 (S.D.N.Y. 2021). This Court then certified an interlocutory appeal of that Opinion and Order. That appeal is pending and has been consolidated with the appeal of the First Confirmation Order before the Court of Appeals for the Second Circuit. See Guzman Action, ECF No. 42; Alvarado Action, ECF No. 41. No motions for class certification were filed and no classes were certified in the Guzman or Alvardo Actions.

With respect to Wu and Mai, in their brief in support of their motion to intervene, the Movants represented that "signed declarations" from Wu and Mai were "forthcoming, and will be filed as soon as they are executed." Mot. to Intervene at 2 n.5. In their opposition brief, the Union correctly noted that Wu and Mai had not, at that point, submitted any facts in support of their request to intervene. The Movants then appended documents from the New York State Home Care Registry to their reply brief which appear to show that (1) Wu is a former employee of CPC; (2) Mai is a former employee of FCP; and (3) both Wu's and Mai's respective terms of employment ended before their former employers entered the 2015 MOA. See ECF No. 254-2. The Movants never filed signed declarations from Wu or Mai with the Court.

9

Yan did not submit any evidence relating to her relationship to this dispute in connection with the pending motions. However, in a declaration filed in support of her motion to dismiss the petition to confirm the first jurisdictional award, Yan declared that she worked for FCP from approximately June 2010 to June 2014. See ECF No. 101-6.

Cruceta, Duran, and Lou each submitted declarations in which they declared that they are former employees of FCP and that they each ceased their respective terms of employment before FCP entered the 2015 MOA. See ECF Nos. 242-5, 242-6, 242-7. The Union submitted a declaration by Bobby Hocson, the Union's director of management information systems, who declared that the Union keeps records containing their members' dates of employment. ECF No. 249 ¶¶ 1-2. Mr. Hocson declared that the Union's records indicate that Lou's employment did not end until approximately August 2016 and that Duran's employment ended in approximately August 2010. Id. ¶¶ 3-4.

In sum, the CPC Movants are named plaintiffs in the Chu Action and the Carved-Out Movants are named plaintiffs in either the Guzman or Alvarado Actions. No classes have been certified in any of those actions. The Movants submit that Yan, Curceta, Duran, Lou, Wu, and Mai are each class members of at least one of the proposed classes in the Guzman, Alvarado, or Chu Actions. See Mot. to Intervene at 3. The Union contends that Lou and

10

Duran are not Pre-2015 Employees because Lou's employment continued after the 2015 MOA was executed and because Duran's last day of employment pre-dated the time period covered by the Award.

### III

The Movants contend that they have standing to seek partial vacatur of the Award and that they satisfy the requirements to intervene permissively and of right for the purpose of challenging parts of the Award. The Union argues that the Movants' motion to intervene should be denied because all the Movants lack standing to seek partial vacatur of the Award and have otherwise failed to demonstrate that they meet the requirements of Federal Rule of Civil Procedure 24.

Rule 24(a)(2) provides for intervention as of right to any party who can "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." First Confirmation Order, 520 F. Supp. 3d at 599. Although permissive intervention is left to the discretion of the district court, courts consider substantially the same factors whether the claim for intervention is of right under Rule 24(a)(2) or permissive under Rule 24(b)(1)(B). Id. The court of appeals has instructed that a "failure to satisfy any one of these four requirements is

11

a sufficient ground to deny the application." <u>Floyd v. City of New York</u>, 770 F.3d 1051, 1057 (2d Cir. 2014). Additionally, a request to intervene as of right or permissively must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

Moreover, if proposed intervenors seek different relief from that which the parties to an action are seeking, then the proposed intervenors must demonstrate that they have Article III standing to pursue that relief. Preliminary Injunction Order, 2022 WL 1046464, at *4 (citing <u>Chester v. Laroe Estates, Inc.</u>, 137 S. Ct. 1645, 1651 (2017)). Although the Supreme Court in <u>Chester</u> determined only that a proposed intervenor as of right must demonstrate Article III standing in this context, lower courts analyzing <u>Chester</u> have explained persuasively that the reasoning employed by the Supreme Court applies equally in the context of permissive intervention. <u>See, e.g.</u>, <u>Cross Sound Cable Co., LLC v. Long Island Lighting Co.</u>, No. 21-cv-2771, 2022 WL 247996, at *9-10 (E.D.N.Y. Jan. 27, 2022) (collecting cases).

### A

There is no dispute that the Movants are seeking to intervene for the purpose of pursuing different relief from the Union, which seeks confirmation of the Award, and the respondents, who do not oppose confirmation. <u>See, e.g.</u>, Mot. to Intervene at 8. Accordingly, each Movant's request to intervene

12

SPA13

must be denied unless that Movant can demonstrate the Movant's
standing to seek partial vacatur of the Award.

In the First Confirmation Order and the Preliminary
Injunction Order, the Court found that various former employees
of the respondents (including some of the current Movants)
lacked standing to oppose confirmation of the first
jurisdictional award and to seek dismissal of the Amended
Petition and a preliminary injunction enjoining enforcement of
the Award. The Court explained in both Opinions that in the
context of labor arbitrations, "an individual employee
represented by a union generally does not have standing to
challenge an arbitration proceeding to which the union and the
employer were the only parties." First Confirmation Order, 520
F. Supp. 3d at 598 (quoting Katir v. Columbia Univ., 15 F.3d 23,
24-25 (2d Cir. 1994)). In order to have standing "to attack an
arbitration award under section 301 of the [LMRA]," an employee
must make a "showing of fraud or deceit" or demonstrate that
"the union breached its statutory duty of fair representation"
or "failed to act upon the award." First Confirmation Order, 520
F. Supp. 3d at 599.

These Movants, like the movants who opposed confirmation of
the first jurisdictional award and the movants who sought
dismissal of the Amended Petition and a preliminary injunction
enjoining enforcement of the Award, were not parties to the

13

arbitration. Moreover, as before, there is no dispute that the Movants have failed to make a showing of fraud or deceit or demonstrate that the Union breached a duty of fair representation or failed to act upon the Award.[4] Accordingly, Katir compels the conclusion that the Movants lack standing to challenge the Award, as it did in the contexts of the First Confirmation Order and the Preliminary Injunction Order.

The Movants advance several unpersuasive arguments in support of their alleged standing to seek partial vacatur of the Award notwithstanding Katir. The Movants first point to Ass'n of Contracting Plumbers of City of N.Y., Inc. v. Local Union No. 2 United Ass'n of Journeymen, 841 F.2d 461 (2d Cir. 1988), and its progeny. In Contracting Plumbers, the court of appeals determined that a national union that was not party to an arbitration involving its local union and several workers' associations had standing to seek vacatur of the resulting arbitration award. Id. at 463. The court of appeals reasoned

_____

[4] On April 27, 2022, the Court received a letter from Sarah Ahn of the Flushing Workers Center, a non-party, in which Ms. Ahn wrote that Chan and Chu had "filed charges" against the Union with the National Labor Relations Board ("NLRB") and requested that this Court not confirm the Award until the NLRB rendered a final decision. See ECF No. 247. On June 9, 2022, Region 29 of the NLRB dismissed the charges filed by Chu and Chan, concluding that "there is insufficient evidence to establish that the Union violated the [National Labor Relations Act] as alleged or in any other manner encompassed [in the] charge." ECF No. 261 at 3. In any event, in their motion, the Movants did not argue that the Union violated any duties. To the contrary, the Movants argued that the Union did not owe the Movants any such duties. See Mot. to Intervene at 5-6. Accordingly, there is no basis on which to conclude that the Union breached any duty of fair representation.

14

that because the arbitration award prevented the national union

from "exercising its constitutional authority to establish work

jurisdiction among its local unions," the national union had "a

sufficient stake in the outcome" of the proceedings and

consequently had standing to seek vacatur of the arbitration

award. Id. at 466-67. In making that determination, the court of

appeals explained:

> We are not persuaded by those cases which have held that
> an individual union member, who was not a party to the
> arbitration, lacked standing under § 10 [of the Federal
> Arbitration Act] to challenge the results of an
> arbitration between his union and his employer, absent
> a showing that the union breached its duty of fair
> representation. These courts have reasoned that allowing
> an individual employee to challenge the arbitration
> award would undermine the union's ability to pursue
> grievances on behalf of all its members and would destroy
> the employer's confidence in the union's authority. The
> situation here is quite the opposite. Refusing to
> recognize the [national union's] standing to challenge
> the arbitration awards and injunctions would undermine
> one of the primary reasons for the [national union's]
> existence: to avoid trade line jurisdiction disputes
> between the local unions.

Id. at 467.

The Contracting Plumbers court therefore recognized the

general rule that non-party individual union members may not

challenge awards rendered in arbitrations between their union

and employer and made clear that its holding regarding a non-

party national union's standing to challenge an award did not

disturb that rule. The conclusion that Contracting Plumbers does

not remedy the Movants' lack of standing is underscored by the

15

court of appeals' decision in <u>Katir</u>, which post-dated

<u>Contracting Plumbers</u> and is squarely on point.

The Movants next argue that they need not contend that the
Union breached its duty of fair representation to have standing
to seek partial vacatur of the Award because the Union was not
authorized to represent any Pre-2015 MOA Employees when the
Union entered into the 2015 MOA and then later prosecuted the
arbitration. In support of this theory, the Movants rely on
various state court decisions that found that certain Pre-2015
MOA Employees were not bound by the arbitration provisions of
the 2015 MOA. Therefore, according to the Movants, the Union
cannot have breached a duty of fair representation to the Pre-
2015 MOA Employees because the Union owed this group of former
employees no such duty. <u>See</u> Mot. to Intervene at 6 (citing cases
including <u>Williams v. Teamsters Local Union No. 727</u>, No. 03-cv-
2122, 2003 WL 22424726, at *2 (N.D. Ill. Oct. 22, 2003)
(concluding that a union did not owe a plaintiff a duty of fair
representation in connection with a dispute between the
plaintiff and the union that arose after the plaintiff became an
employer and ceased to be a member of the collective bargaining
unit that was represented by the union)).

The movants who sought to intervene for the purpose of
challenging the first jurisdictional award made a similar

argument, which the Court found to be without merit. As
explained in the First Confirmation Order:

> The [movants] argue that the Union cannot represent its
> former employees, either in assenting to the 2015 MOA or
> in initiating the grievance, and thus — at least — former
> employees did not "consent" to arbitration. But this
> misconceives the relationship between a Union and its
> bargaining unit members and oversimplifies the CBA at
> issue. As the "exclusive bargaining" agent for home care
> employees of the Respondents, the Union had authority to
> enter into CBAs and subsequent agreements, on behalf of
> its bargaining unit members. The [movants'] arguments
> that former employees cannot be bound by a CBA or cannot
> be represented by their Union in arbitration are without
> merit. To accept that conclusory argument would
> essentially allow Union members to opt-out of their
> obligations under a collective bargaining agreement by
> simply withdrawing from their union prior to bringing
> suit. Indeed, courts in this Circuit have compelled
> former employees to arbitrate claims under CBA
> alternative dispute provisions, including in instances
> where supplemental agreements were executed after the
> plaintiff ceased employment.

First Confirmation Order, 520 F. Supp. 3d at 607-08.

The Movants' argument is therefore irreconcilable with the
First Confirmation Order and the first jurisdictional award, in
which the arbitrator determined that the claims of Pre-2015 MOA
Employees were arbitrable. Accordingly, because the Union had
the authority to enter the 2015 MOA and prosecute the
arbitration on behalf of the Pre-2015 MOA Employees, under
Katir, the Movants' failure to allege a breach of the Union's
duty of fair representation in connection with these activities
is dispositive on the issue of the Movants' standing.

17

**B**

The Movants advance several additional unpersuasive arguments in support of their alleged standing. To satisfy the requirements of Article III standing, a party must show that (1) the party has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107, 2015 WL 9462083, at *3 (S.D.N.Y. Dec. 23, 2015). The Movants generally contend that they have standing to challenge the Award because the Award (1) purports to resolve their wage and hour claims for a sum that is less than "full satisfaction" of those claims; and (2) "potentially impact[s]" the ability of certain Movants from moving to certify classes in the Guzman, Alvarado, and Chu Actions. See Mot. to Intervene at 4, 7. These arguments are without merit as to all the Movants.

First, the Carved-Out Movants lack standing to seek partial vacatur of the Award for substantially the same reasons that they lacked standing to seek a preliminary injunction enjoining enforcement of the Award. As explained in the Preliminary

18

Injunction Order, the Carved-Out Movants are not bound by the
Award and the Award did not resolve any claims that they may
have against their former employers. Consequently, the Carved-
Out Movants' "active, ongoing efforts to prosecute their claims
in other forums will not be impeded by the [Award] in any way."
Preliminary Injunction Order, 2022 WL 1046464, at *5. The
Carved-Out Movants dispute this, arguing that confirmation of
the Award potentially impacts their ability to seek
certification of the putative classes in the Guzman and Alvarado
Actions, in which the Carved-Out Movants are the named
plaintiffs. But the Carved-Out Movants have pointed to no legal
authority that supports the proposition that confirmation of an
arbitration award that could have a speculative impact on a
potential forthcoming motion for class certification in a
separate action is a legally cognizable injury in fact.[5] See,

---

[5] The Movants rely on inapposite cases including Deposit Guaranty Nat'l Bank
v. Roper, 445 U.S. 326 (1980), United States Parole Comm'n v. Geraghty, 445
U.S. 388 (1980), and their progeny. These cases generally stand for the
proposition that named plaintiffs in putative class actions have standing to
appeal adverse rulings on class certification even if the named plaintiffs'
individual claims have been mooted or fully satisfied by the defendants. See
Bais Yaakov of Spring Valley v. Educ. Testing Serv., 251 F. Supp. 3d 724,
739-40 (S.D.N.Y. 2017) (discussing and summarizing Roper and Geraghty).
Specifically, in Roper, the Supreme Court reasoned that the satisfaction of a
named plaintiff's individual claim did not moot the entire action "so long as
the [named plaintiff] retained an economic interest in class certification."
445 U.S. at 333. Accordingly, if named plaintiffs in this context were not
permitted to appeal denials of class certification, then their ability to
protect this economic interest would be completely extinguished. This total
impairment to seek review of a denial of class certification is not
comparable to the claimed purported injury here – the abstract risk of a
potential impediment to class certification caused remotely, if at all, by
confirmation of an arbitration award in a separate proceeding to which the
named plaintiffs are not parties. Significantly, the claims of the Carved-Out

e.g., <u>Eddystone Rail Co., LLC v. Jamex Transfer Servs. LLC</u>, 289 F. Supp. 3d 582, 590-91 (S.D.N.Y. 2018) (proposed intervenors lacked standing to seek vacatur of an arbitration award where their alleged injury in fact was that confirmation of the award would adversely affect their defenses in a separate action to which the proposed intervenors were parties).

Moreover, appeals of interlocutory orders in the <u>Guzman</u> and <u>Alvarado</u> Actions are currently pending before the court of appeals. Motions for class certification have not yet been filed in either action. Any such motions could only be filed at some indeterminate time after the appeals in those cased are resolved. Accordingly, any admittedly "potential[]" impact of the Award on the Carved-Out Movants' purported ability to seek class certification is remote, speculative, and insufficient to constitute an injury in fact. <u>See</u> Mot. to Intervene at 4.

For similar reasons, the CPC Movants do not have standing based on their alleged interest in class certification in the <u>Chu</u> Action. No motion for class certification has been filed yet and the action is stayed pending resolution of the appeals in the <u>Guzman</u> and <u>Alvarado</u> Actions. Accordingly, any alleged injury

---

Movants have not been resolved by the Award, much less denied, and the Carved-Out Movants are therefore not comparable to the plaintiffs in the cases cited by the Movants.

20

to the CPC Movants based on a potential impediment to class certification is speculative and not cognizable.

Next, all the Movants that were not carved out from the Award do not have standing based on their dissatisfaction with how their claims were resolved in the arbitration. Katir is on point and dispositive. In Katir, the petitioner's union initiated an arbitration with Columbia University, the employee's former employer, after the petitioner was fired. 15 F.3d at 24. The arbitrator determined that Columbia had "just cause" to fire the petitioner and the petitioner's union did not seek to vacate the resulting award. Id. The petitioner then filed an action seeking vacatur of that award. Id.

The court of appeals determined that the petitioner's dissatisfaction with the resolution of arbitration did not confer standing upon the petitioner in the absence of an allegation that the union breached a duty of fair representation. Id. at 24-25. Likewise, the Movants here may be dissatisfied with the damages awarded by the arbitrator, but under Katir this dissatisfaction with the resolution of the arbitration cannot be a legally cognizable injury without an allegation that the Union breached its duties.[6]

---

[6] The Union also contends that Duran and Lou lack standing for the additional reason that they are not Pre-2015 MOA Employees because their terms of employment ended too early and too late, respectively. The Movants dispute this and submit that Duran's and Lou's correct dates of employment show that they are properly classified as Pre-2015 MOA Employees. The Movants further

Finally, the Movants argue that they have standing pursuant to Federal Rule of Civil Procedure 71 to intervene for the purposes of enforcing various state and federal court orders. Rule 71 provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." The Movants contend that they obtained orders in the <u>Alvarado</u>, <u>Guzman</u>, and <u>Chu</u> Actions that in substance provide that their claims are not arbitrable and that they have standing under Rule 71 to enforce those orders in this action.

The order from the <u>Alvarado</u> Action on which the Movants rely concluded that "Alvarado is not bound by the arbitration provision" of the CBA and 2015 MOA. <u>Lorentti-Herrara v. Alliance for Health, Inc.</u>, 104 N.Y.S.3d 103, 104 (App. Div. 2019). The Movants cite two orders from the <u>Guzman</u> Action, in which the state courts found that the claims of Guzman, Herrera, and Rivas could not be arbitrated. <u>Guzman v. The First Chinese Presbyterian Community Affairs Home Attendant Corp.</u>, No.

---

argue that the Court may not resolve these factual disputes in favor of the Union at this stage of the proceedings. Although it is accurate that all well-pleaded allegations in a proposed intervenor's pleading are accepted as true when resolving a motion to intervene, <u>see, e.g.</u>, <u>Avaras v. Clarkstown Cent. Sch. Dist.</u>, No. 15-cv-2042, 2021 WL 5180832, at *1 (S.D.N.Y. Nov. 8, 2021), the Movants' motion to intervene here was not accompanied by any pleading. <u>Cf.</u> Fed. R. Civ. P. 24(c) (motion to intervene "<u>must</u> state the grounds for intervention <u>and be accompanied by a pleading that sets out the claim or defense for which intervention is sought</u>.") (emphasis added). In any event, irrespective of whether Duran and Lou are in fact pre-2015 MOA employees, they lack standing for the same reasons that the other Movants lack standing.

157401/2016, 2019 WL 1502944, at *3 (N.Y. Sup. Ct. Apr. 5, 2019) ("Since [Guzman, Herrara, and Rivas] left the employ of [FCP] prior to December 1, 2015, the effective date of the 2015 MOA, the mandatory ADR provision of the 2015 MOA was inapplicable to them."); ECF No. 245-11 (enjoining arbitration of Guzman's, Herrara's, and Rivas's claims).

These orders do not support the Alvarado, Guzman, Herrara, and Rivas's standing pursuant to Rule 71 to seek partial vacatur of the Award. There can be no reasonable dispute that these orders have been implemented and fully complied with given that all four of these Movants were expressly carved out of the Award. Accordingly, confirmation of the Award does not affect these Movants' ability to prosecute their claims in other forums or infringe on any rights conferred by these state court orders.

The CPC Movants rely on the order from the Chu Action in which Judge Forrest granted the CPC Movants' motion to remand and denied CPC's motion to compel arbitration as moot for lack of subject matter jurisdiction. See Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc., 194 F. Supp. 3d 221 (S.D.N.Y. 2016). In the course of rendering that decision, Judge Forrest suggested that the CPC Movants were not bound by the 2015 MOA. See id. at 228-29. The CPC Movants contend that this constituted a holding of Judge Forrest's order and can be enforced here pursuant to Rule 71.

23

This argument is without merit. The "relief" that Judge
Forrest ordered in her decision was remanding the Chu Action and
denying CPC's motion to compel for lack of subject matter
jurisdiction. There is no dispute that the CPC Movants obtained
that relief. There is therefore no basis for using Rule 71 to
enforce Judge Forrest's order here. Judge Forrest's observations
about the 2015 MOA were dicta and did not constitute an aspect
of the relief afforded to the CPC Movants. See also First
Confirmation Order, 520 F. Supp. 3d at 608 n.17 (explaining that
the passage from the Chu Action on which the Movants now rely
"clearly was dicta").

For these reasons, all the Movants lack standing to seek
partial vacatur of the Award. Accordingly, the Movants' motion
to intervene for the purposes of seeking partial vacatur of the
Award is denied.

**C**

For largely the same reasons that the Movants lack
standing, the motion to intervene should also be denied because
the Movants lack a sufficient interest in this litigation under
Rule 24. The Carved-Out Movants lack an interest in this dispute
because they are not bound by the Award and confirmation of the
Award will not impede their ability to prosecute their claims in
other forums. All the Movants that claim an interest in the
confirmation of the Award based on the Award's potential impact

24

on their ability to seek class certification in other actions
should not be permitted to intervene because any such interest
is speculative, remote, and contingent. See, e.g., Eddystone,
289 F. Supp. 3d at 592-93 ("The Proposed Intervenors' apparent
interest, as best this Court can discern, is the right to
challenge the Arbitration Award because confirmation of such
award will adversely affect their ability to mount a defense in
[a separate action]. . . . But that winding articulation of the
Proposed Intervenors' interest merely underscores its contingent
and remote nature.").

Finally, the Movants that claim an interest in this
proceeding because the Award resolves their wage and hour claims
for an unsatisfactory amount should not be permitted to
intervene for the purpose of challenging the Award. Because the
Union was authorized under the LMRA, CBAs, and 2015 MOA to
prosecute the arbitration on behalf of the Movants and to
resolve their claims, the Movants do not have a cognizable
interest in this action absent a showing that the Union breached
its duties. See F. W. Woolworth Co. v. Miscellaneous
Warehousemen's Union, Loc. No. 781, 629 F.2d 1204, 1210 (7th
Cir. 1980) ("[I]ndividual employees may not intervene in or
maintain suits under the collective bargaining agreement to set
aside arbitration awards reached in pursuance of the grievance
procedure, particularly in opposition to the union, so long as

the union has represented the employees fairly. These
principles, and the policies underlying them, reflect the
philosophy of collective bargaining incorporated in the LMRA and
exemplify the fundamental policy of entrusting labor disputes
and grievances to the good faith discretion of exclusive
bargaining agents."); U.S. Postal Serv. v. Am. Postal Workers
Union, 564 F. Supp. 545, 550 (S.D.N.Y. 1983) (quoting Acuff v.
Papermakers and Paperworkers, AFL-CIO, 404 F.2d 169, 171 (5th
Cir. 1968)) ("It would be paradoxical in the extreme if the
union, which is authorized to decide whether a grievance is to
be pursued to the arbitration stage at all, could not be
authorized to assume full responsibility for a grievance it did
pursue, without the intervention of the individual union member
immediately concerned."); Int'l Longshore & Warehouse Union,
Loc. 142 v. McCabe Hamilton & Renny Co., No. 08-cv-458, 2009 WL
2143639, at *2-4 (D. Haw. July 14, 2009); see also Rodriguez v.
New York Found. for Senior Citizens Home Attendant Servs., Inc.,
No. 15-cv-9817, 2016 WL 11707094, at *3 (S.D.N.Y. July 14,
2016); Germosen v. ABM Indus. Corp., No. 13-cv-1978, 2014 WL
4211347, at *6 & n.16 (S.D.N.Y. Aug. 26, 2014).

    Accordingly, because all the Movants lack standing and
because they have not demonstrated that they have a sufficient
interest in this action to warrant intervention as of right or
permissively, the Movants' motion to intervene is denied.

Case 22-1587, Document 54, 08/29/2022, 3416486, Page101 of 111

## IV

The Union has petitioned this Court to confirm the Award
and the respondents have not opposed its confirmation. The
Movants filed a motion to vacate the aspects of the Award that
relate to the Movants and all Pre-2015 MOA Employees of
Alliance, FCP, and CPC.[7]

"Section 301 of the [LMRA] provides federal courts with
jurisdiction over petitions brought to confirm labor arbitration
awards." Local 802, Associated Musicians of Greater N.Y. v.
Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998); 29 U.S.C.
§ 185. The LMRA "establishes a federal policy of promoting
industrial stabilization through collective bargaining
agreements, with a particular emphasis on private arbitration of
grievances," and a "clear preference for the private resolution
of labor disputes." Nat'l Football League Mgmt. Council v. Nat'l
Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016).
"Under [the LMRA's] framework of self-government, the collective
bargaining agreement is not just a contract, but 'a generalized
code to govern a myriad of cases which the draftsmen cannot
wholly anticipate,'" that "are negotiated and refined over time

---

[7] Because the Movants lack standing to seek partial vacatur of the Award and
may not intervene in this action, the Movants' motion to vacate the Award in
part is moot. However, for the sake of completeness, the arguments advanced
in that motion are addressed here and, for the reasons explained below, are
without merit.

by the parties themselves so as to best reflect their
priorities, expectations, and experience." Id.

Accordingly, a federal court's review of an LMRA
arbitration award is "narrowly circumscribed and highly
deferential." A&A Maint. Enter., Inc. v. Ramnarain, 982 F.3d
864, 868 (2d Cir. 2020). "As long as the arbitrator is even
arguably construing or applying the contract and acting within
the scope of his authority, that a court is convinced he
committed serious error does not suffice to overturn his
decision." Int'l Bhd. of Elec. Workers, Local 97 v. Niagara
Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998) (quoting
United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484
U.S. 29, 38 (1987)). Instead, a court's role is "simply to
determine whether the arbitrator acted within the scope of his
authority as defined by the collective bargaining agreement."
New York City & Vicinity Dist. Council of United Bhd. of
Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry
Indus. of New York, Inc., 826 F.3d 611, 618 (2d Cir. 2016).
"Because it is the arbitrator's view of the facts and the
meaning of the contract for which the parties
bargained, . . . [i]t is the arbitrator's construction of the
contract and assessment of the facts that are dispositive,
'however good, bad, or ugly.'" Nat'l Football League Mgmt.
Council, 820 F.3d at 536 (quoting Oxford Health Plans LLC v.

Sutter, 569 U.S. 564, 573 (2013)). The Supreme Court has

explained that district courts "are not authorized to reconsider

the merits of an award even though the parties may allege that

the award rests on errors of fact or on misinterpretation of the

contract," or "improvident, even silly" mistakes. Misco, 484

U.S. at 36, 39; see also Nat'l Football League Mgmt. Council,

820 F.3d at 536. Accordingly, an arbitration award is to be

confirmed if there is even a "barely colorable justification"

for the decision. United States Steel & Carnegie Pension Fund v.

Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

        The Union argues persuasively that the Award is thorough,

rational, and well-founded. As summarized in the Preliminary

Injunction Order:

        The arbitrator determined that the respondents violated
        the Covered Statutes during relevant time periods. The
        arbitrator ordered a per capita contribution remedy to
        compensate the respondents' current and former employees
        for these violations. The arbitrator explained that he
        arrived at the per capita contribution remedy after
        considering several submissions, including employee
        affidavits and the respondents' financial records, along
        with other factors including the financial stability of
        the home care industry. The arbitrator ultimately
        concluded that a per capita contribution greater than
        two hundred fifty ($250) dollars is not sustainable and
        will, inevitably, lead to deserving employees failing to
        recover upon their meritorious claims.

Preliminary Injunction Order, 2022 WL 1046464, at *2.

        In making these determinations, the arbitrator also relied

on "the parties' submissions, including their joint stipulation

29

of facts, addenda to the joint stipulation of facts, evidence of
the [respondents'] pay practices, and assertions made during
conference and hearings held during the course of this
proceeding." Amended Petition ¶ 29. The arbitrator further
explained that in rendering the Award, he was guided by the
parties' intention of adopting a "fair and expeditious process
for resolving that disputes" and empowering the arbitrator "to
fashion a remedy which takes into account conditions in the
industry and existing realities affecting the [respondents] and
employees alike." Id. ¶ 32. A review of the Award demonstrates
that the arbitrator carefully balanced these considerations when
he fashioned a remedy that resulted in a Fund of more than $30
million for over 100,000 current and former Union members.

The Movants advance no arguments that go to the substantive
merits of the Award.[8] Accordingly, because an arbitration award
rendered pursuant to the LMRA is entitled to a high level of
deference and because the Award is reasonable and well-founded,
the Award should be confirmed.

---

[8] Although the Movants did not advance any arguments in their motion to vacate
the Award in part that go to the merits of the Award, Chan and Chu appear to
have raised issues relating to the Award's compensation formula in their
charge before the NLRB. In its decision dismissing the charge, Region 29 of
the NLRB found the arguments by Chan and Chu to be without merit. See ECF No.
261 at 2-3 ("Contrary to what you have claimed, the [Award] does not
arbitrarily distribute funds equally to all employees in the class, but
rather compensates employees consistent with a formula that accounts for
which employees had worked 24-hour shifts.").

In support of their argument that the Award should be
vacated in part, the Movants largely recycle arguments that this
Court has previously considered and found to be without merit.
The Movants first argue that the arbitrator exceeded his power
because he resolved the claims of the Pre-2015 MOA Employees of
Alliance, FCP, and CPC even though these former employees are
not bound by the 2015 MOA. The Movants contend that the
arbitrator's prior rulings regarding arbitrability and arbitral
jurisdiction in the first jurisdictional award were erroneous
and that this Court should review the arbitrator's threshold
determination of the arbitrability of the Pre-2015 MOA
Employees' claims under a de novo standard of review. But in the
case on which the Movants rely for this argument, First Options
of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995), the Supreme
Court explained that "a court must defer to an arbitrator's
arbitrability decision when the parties submitted that matter to
arbitration." Id. at 943. And in the First Confirmation Order,
this Court already concluded that:

> The CBA delegated questions of arbitrability to the
> Arbitrator by reference to the AAA Rules. Although the
> question of whether the parties have submitted a
> particular dispute to arbitration, i.e., the question of
> arbitrability, is presumptively an issue for judicial
> determination, the matter may be committed to the
> arbitrator if the parties clearly and unmistakably so
> provide. Courts in this Circuit have recognized that
> when parties explicitly incorporate rules that empower
> an arbitrator to decide issues of arbitrability, such as
> the AAA Rules, the incorporation serves as clear and

> unmistakable evidence of the parties' intent to delegate
> such issues to an arbitrator.
> . . .
> [T]he CBA and 2015 MOA evince a clear consent to
> arbitrate and delegate questions of arbitrability to the
> arbitrator . . . .

First Confirmation Order, 520 F. Supp. 3d at 606-08.

This Court then confirmed the first jurisdictional award,
including the arbitrator's determinations regarding the
arbitrability of the Pre-2015 MOA Employees' claims. The Movants
have offered no persuasive reason for why these conclusions
should be revisited or upset at this stage in the litigation.

Next, the Movants cite various court decisions that largely
pre-date the First Confirmation Order in which other courts
found that the claims of certain Pre-2015 MOA Employees should
not be arbitrated.[9] But the arbitrator determined in the first
jurisdictional award that the claims of nearly all the Pre-2015
MOA Employees were arbitrable, and the Court confirmed that
award. The Movants contend that these decisions by other courts
somehow bind this Court now as "law of the case," but this
argument is without merit. Under the law of the case doctrine,
courts "generally adhere to prior decisions in subsequent stages

---

[9] Once again, the Movants also argue that the Court is "bound" to follow
Agarunova v. Stella Orton Home Care Agency, Inc., 794 F. App'x 138 (2d Cir.
2020). The Court rejected this argument in both the First Confirmation Order
and the Preliminary Injunction Order because in Agarunova, the court of
appeals expressly declined to consider whether the question of arbitrability
was delegated to the arbitrator. First Confirmation Order, 520 F. Supp. 3d at
608; Preliminary Injunction Order, 2022 WL 1046464, at *8 n.12.

of the same case unless cogent and compelling reasons militate
otherwise." Choi v. Tower Res. Capital LLC, 2 F.4th 10, 21 (2d
Cir. 2021) (emphasis added). Unlike the First Confirmation
Order, the decisions cited by the Movants were not rendered by
this Court in the course of this case. To the extent that the
law of the case doctrine is applicable here, it suggests that
the Court should not depart from the First Confirmation Order
absent compelling reasons, which the Movants have failed to
provide.

    Finally, for the first time in their reply brief, the
Movants argue that this Court lacks subject matter jurisdiction
to consider the Amended Petition because of the pending appeal
of the First Confirmation Order. This Court already rejected a
substantially identical argument in the Preliminary Injunction
Order:

        A pending appeal only divests the district court of
        jurisdiction respecting the questions raised and decided
        in the order that is on appeal. Accordingly, the issue
        of this Court's jurisdiction over the [Amended] Petition
        turns on whether questions relating to the confirmation
        of the [Award] are "involved in" the pending appeal of
        the [First] Confirmation Order.

        The appeal of the [First] Confirmation Order and the
        pending [Amended] Petition to confirm the [Award] raise
        distinct questions. The questions currently before the
        court of appeals concern the arbitrability of the Pre-
        2015 MOA Employees' claims and whether this Court's
        confirmation of the arbitrator's jurisdictional
        determinations was correct. By contrast, the [Amended]
        Petition concerns the merits of the entirety of the
        [Award], which resolved the wages and hours claims of

33

> approximately 100,000 current and former Union members and fashioned a remedy that the arbitrator deemed to be appropriate in view of several competing considerations. These circumstances are illustrative of the general principle that merits issues on the one hand, and issues of jurisdiction and arbitrability on the other, are distinct inquiries that turn on the resolution of different questions. Accordingly, because the questions raised and decided in the [First] Confirmation Order are distinct from those raised by the [Amended] Petition to confirm the [Award], this Court has jurisdiction to consider the [Amended] Petition.

Preliminary Injunction Order, 2022 WL 1046464, at *8-9. None of the twelve movants who previously sought a preliminary injunction enjoining enforcement of the Award and dismissal of the Amended Petition (eight of whom are movants here) filed an appeal of the Preliminary Injunction Order.

The Movants contend that the Union's opposition to the Movants' motion to vacate demonstrates that the Court's prior ruling on subject matter jurisdiction was erroneous because in their papers, the Union raised issues that are "involved in" the pending appeal of the First Confirmation Order such as arbitrability. This argument is misplaced. The only reason that the Union addressed these issues was because the Movants chose to rehash previously rejected arguments attacking the first jurisdictional award in their opening brief rather than to discuss the Award presently before the Court. The fact that the Movants opted to raise inapposite, previously resolved arguments in its motion and thereby forced the Union to respond to them

does not demonstrate that the issues that are actually raised by the Amended Petition and are currently before this Court — those relating to the merits of the Award — are "involved in" the issues that will be decided in the pending appeal of the First Confirmation Order.

In sum, the Court has subject matter jurisdiction over the Amended Petition and all the Movants' arguments against confirmation of the Award are without merit. Accordingly, Union's Amended Petition to confirm the Award is granted.[10]

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons, the Movants' motion to intervene is **denied.** The Movants' motion to vacate the Award in part is **denied.** The Union's Amended Petition to confirm the Award is **granted.**

---

[10] The Movants' motion to intervene and motion to vacate the Award in part were due by April 26, 2022. See ECF No. 240. On June 8, 2022, the Movants filed a letter motion for leave to file affidavits by three individuals who purport to be Pre-2015 MOA Employees of CPC and requested that these affidavits be incorporated into the Movants' motions. See ECF No. 259. The three affiants have never appeared in this action and have not filed motions to intervene. Moreover, the affidavits include impermissible legal conclusions regarding the arbitrability of these affiants' wage and hour claims against CPC. See, e.g., ECF No. 259-1 ¶¶ 5-6. Finally, these affidavits were filed nearly a month after the Movants' motions were fully briefed and the Movants provided no persuasive reason why this untimeliness should be excused. For these reasons, the Movants' motion for leave to file three additional affidavits in support of their motions is denied.

The Clerk is directed to enter judgment accordingly. The Clerk is further directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**    **New York, New York**
             **June 24, 2022**

                                            **John G. Koeltl**
                              **United States District Judge**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
1199 SEIU UNITED HEALTHCARE WORKERS
EAST,

                              Petitioner,

          -against-                                                20 **CIVIL** 3611 (JGK)

                                                                   **<u>JUDGMENT</u>**

PSC COMMUNITY SERVICES, ET AL.,

                              Respondents.
------------------------------------------------------------X

          It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Opinion and Order dated June 24, 2022, the Court has considered all of the

arguments of the parties. To the extent not discussed, the arguments are either moot or without

merit. For the foregoing reasons, the Movants' motion to intervene is denied. The Movants'

motion to vacate the Award in part is denied. The Union's Amended Petition to confirm the

Award is granted; accordingly, the case is closed.

**Dated:**  New York, New York

          June 28, 2022


                                                        **RUBY J. KRAJICK**
                                                   _____
                                                        **Clerk of Court**
                                     **BY:**
                                                        *K. Mango*
                                                   _____
                                                        **Deputy Clerk**